1  James I. Stang (CA Bar No. 94435)
   Gail Greenwood (CA Bar No. 169939)
2  Brittany M. Michael *(Pro Hac Vice)*
   PACHULSKI STANG ZIEHL & JONES LLP
3  One Sansome Street, 34th Floor, Suite 3430
   San Francisco, California 94104-4436
4  Telephone: 415-263-7000
   Email:  jstang@pszjlaw.com
5          ggreenwood@pszjlaw.com
           bmichael@pszjlaw.com
6

7  Attorneys for the Official Committee of
   Unsecured Creditors
8
                  **UNITED STATES BANKRUPTCY COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10
                       **SAN FRANCISCO DIVISION**
11

| | |
|---|---|
| 12  In re | Case No. 23-30564 |
|     | Chapter 11 |
| 13  THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | |
| 14         Debtor. | |
|     | Adv. Proc. 25-03021 |
| 15 | |
|     THE OFFICIAL COMMITTEE OF | **THE OFFICIAL COMMITTEE OF** |
| 16  UNSECURED CREDITORS, | **UNSECURED CREDITORS' OMNIBUS** |
|     | **OPPOSITION TO DEFENDANTS'** |
| 17         Plaintiff, | **MOTIONS TO DISMISS THE AMENDED** |
|     | **ADVERSARY COMPLAINT** |
| 18  vs. | |
| 19  THE ROMAN CATHOLIC ARCHBISHOP | |
|     OF SAN FRANCISCO; PARISHES LISTED | |
| 20  IN **EXHIBIT A**; HOLY CROSS CATHOLIC | |
|     CEMETERIES; SAINT MARY | |
| 21  MAGDALENE CATHOLIC CEMETERY; | |
|     MT. OLIVET CEMETERY; OUR LADY OF | |
| 22  PILLAR CEMETERY; TOMALES | |
|     CATHOLIC CEMETERY; ARCHBISHOP | |
| 23  RIORDAN HIGH SCHOOL; SACRED | |
|     HEART CATHEDRAL PREPARATORY; | |
| 24  MARIN CATHOLIC HIGH SCHOOL; | |
|     JUNIPERO SERRA HIGH SCHOOL; | |
| 25  VALLOMBROSA RETREAT CENTER; | |
|     AND SERRA CLERGY HOUSE, | |
| 26 | |
|            Defendants. | |
| 27 | |

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARDS ........................................................................................3

III.    SACRED HEART'S MOTION UNDER FRCP 12(B)(1) SHOULD BE DENIED............4

    A.     The Bankruptcy Court Has Subject Matter Jurisdiction to Issue Declaratory Relief Under 28 U.S.C. Sections 1334, 157(b)(2), and Bankruptcy Rule 7001. ...........................................................................................4

    B.     The Allegations of the Complaint Establish a Substantial Controversy of Sufficient Immediacy. ........................................................................5

    C.     The Court Should Exercise Its Discretion to Determine the Declaratory Relief Claims. .................................................................................7

IV.     DEFENDANTS' MOTIONS UNDER 12(B)(6) SHOULD BE DENIED .........................8

    A.     The Committee Has Standing to Bring Declaratory Relief Claims. .........................9

    B.     Declaratory Relief in Bankruptcy Does Not Require an "Independent Underlying Claim." ...........................................................................10

    C.     The Complaint Alleges With Specificity Why Each Division Defendant Is an Operating Division of the Debtor. ........................................................13

        1.     The Defendants Have Clear Notice of the Claims. ....................................13

            a.     The Complaint Is Far From Devoid of Facts. ................................13

            b.     Redactions for Confidentiality Are Not a Basis for Dismissal. ......................................................................16

            c.     The Complaint Is Not Subject to Dismissal for Group Pleading. ........................................................................17

        2.     The Complaint Does Not Require Exhibits.............................................19

    D.     The Complaint States Cognizable Legal Claims for Declaratory Relief. ................20

        1.     The Complaint States a Claim for Recognition that the Division Defendants are "Not Separate Legal Entities". ...........................................20

        2.     The Complaint Does Not Ignore "Statutory Protections" Under Neutral Law and the Corporations Code.....................................................21

        3.     The Second Cause of Action States a Claim for Declaratory Relief and Is Not Subject to Dismissal for Failure to Analyze the Elements of a Trust Relationship. ........................................................22

E.     The Complaint Is Not Subject to Dismissal as a "Disguised" Claim for Substantive Consolidation, Involuntary Bankruptcy, or Other Inapplicable Claims................................................................................................24

V.     CONCLUSION ...............................................................................................26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) .................................................................................. 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................. 3, 13

*BBeautiful v. Rieke-Arminak Corp. (In re BBeautiful),*
2017 Bankr. LEXIS 615 (Bankr. C.D. Cal. Mar. 8, 2017) ....................... 8

*Bell Atlantic Corp. v. Twombly,*
50 U.S. 544 (2007) .............................................................................. 3, 13

*Bethel Native Corp. v. Dep't of the Interior,*
208 F.3d 1171 (9th Cir. 2000) ............................................................... 11

*Bilbrey ex rel. Bilbrey v. Brown*, 738 F.2d 1462 (9th Cir. 1984) ................. 11

*Bohnert v. Roman Catholic Archbishop of San Francisco,*
136 F. Supp. 3d 1094 (N.D. Cal. 2015) ................................................... 8

*Boston Global Constr. Co. v. Rahim,*
2025 U.S. Dist. LEXIS 99325 (N.D. Cal. Apr. 11, 2025) ...................... 12

*Butner v. U.S.,*
440 U.S. 48 (1979) .................................................................................. 21

*Cecconi v. Cecconi (In re Cecconi),*
366 B.R. 83 (Bankr. N.D. Cal. 2007) ..................................................... 22

*City of Reno v. Netflix, Inc.,*
52 F.4th 874 (9th Cir. 2022) .................................................................. 11

*Clark v. Field (In re Clark),*
536 B.R. 450 (Bankr. D. Haw. 2015) ....................................................... 7

*Comm. of Tort Litigants v. The Catholic Diocese of Spokane*
*(In re Catholic Bishop of Spokane),*
2006 U.S. LEXIS 6025 (E.D. Wash. Jan. 24, 2006) ..................... 9, 10, 20

*Conley v. Gibson,*
355 U.S. 41 (1957) .................................................................................. 13

*County of San Luis Obispo v. Ashurst,*
146 Cal. App. 3d 380 (1983) .................................................................. 22

*Cutter v. Seror (In re Cutter),*
398 B.R. 6 (B.A.P. 9th Cir. 2008) .......................................................... 23

*Deutsche Bank Nat'l Trust Co. v. McGurk,*
206 Cal. App. 4th 201 (2012) ................................................................ 21

*Dragnea v. Dragnea (In re Dragnea)*,
  609 B.R. 239 (Bankr. E.D. Cal. 2019) ........................................................................... 4

*Gigax v. Ralston Purina Co.*,
  136 Cal. App. 3d 591 (1982) ................................................................................ 20, 21

*Huber v. Jackson*,
  175 Cal. App. 4th 663 (2009) ..................................................................................... 15

*In re Bonham*,
  229 F.3d 750 (9th Cir. 2000) ...................................................................................... 24

*In re Curry & Sorenson, Inc.*,
  57 B.R. 824 (B.A.P. 9th Cir. 1986) .............................................................................. 9

*In re Demas Wai Yan*,
  703 F. App'x 582 (9th Cir. 2017) ................................................................................. 5

*In re First Capital Holdings Corp.*,
  146 B.R. 7 (Bankr. C.D. Cal. 1992) ....................................................................... 9, 10

*In re Moore*,
  2019 U.S. Dist. LEXIS 237039 (C.D. Cal. Apr. 30, 2019) ........................................... 5

*In re Morpheus Lights, Inc.*,
  228 B.R. 449 (Bankr. N.D. Cal. 1998) ......................................................................... 9

*In re Perroton*,
  958 F.2d 889 (9th Cir. 1992) ....................................................................................... 4

*In re Ringard-Guirma*,
  654 B.R. 390 (Bankr. D. Or. 2023) .............................................................................. 6

*Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of
Portland)*,
  335 B.R. 842 (Bankr. D. Or. 2005) ........................................................................ 1, 12

*In re Roman Catholic Bishop of Great Falls*,
  584 B.R. 335 (Bankr. D. Mont. 2018) .......................................................................... 9

*In re Sagent Tech., Derivative Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...................................................................... 17

*In re Sandoval*,
  186 B.R. 490 (B.A.P. 9th Cir. 1995) ............................................................................. 5

*In re Spaulding Composites Co., Inc.*,
  207 B.R. 899 (B.A.P. 9th Cir. 1997) ............................................................................ 9

*In re TFT-LCD Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................................... 17

*In re X-Treme Bullets, Inc.*,
  2024 U.S. App. LEXIS 4641 (9th Cir. Feb. 28, 2024) .................................................. 9

*Inciyan v. City of Carlsbad,*
  2020 U.S. Dist. LEXIS 2863 (S.D. Cal. Jan. 8, 2020) ............................................................... 11

*Jones v. Wolf,*
  443 U.S. 595 (1979) ............................................................... 21

*Lei v. Yan (In re Yan),*
  2011 Bankr. LEXIS 711 (Bankr. N.D. Cal. 2011) ............................................................... 5

*Little v. Pac Seafood Procurement, LLC,*
  2024 U.S. Dist. LEXIS 91213 (N.D. Cal. May 21, 2024) ............................................................... 12

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) ............................................................... 3

*Lopez v. Wells Fargo Bank, N.A.,*
  727 F. App'x 425 (9th Cir. 2018) ............................................................... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) ............................................................... 19

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
  312 U.S. 270 (1941) ............................................................... 11

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................... 6

*Melrose Place Holdings v. Socotra Opp. Fund, LLC,*
  2022 U.S. Dist. LEXIS 140036 (C.D. Cal. May 31, 2022) ............................................................... 17

*Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.),*
  141 B.R. 869 (E.D. Pa. 1992) ............................................................... 25

*Moss v. U.S. Secret Service,*
  572 F. 3d 962 (9th Cir. 2009) ............................................................... 3

*Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis*
  *(In re Archdiocese of St. Paul & Minneapolis),*
  888 F. 3d 944 (8th Cir. 2018) ............................................................... 25

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,*
  429 U.S. 363 (1977); ............................................................... 21

*Palmer v. Menser (In re Menser),*
  2021 Bankr. LEXIS 2977 (Bankr. N.D. Ga. 2021) ............................................................... 12

*Payne v. Sparkman (In re Silver Star of Nev., Inc.),*
  2025 Bankr. LEXIS 704, *15-16 (Bankr. W.D. Okal. Mar. 24, 2025) ....................................... 12

*Pintlar Corp. v. Fidelity and Casualty Co. (In re Pintlar Corp.),*
  180 B.R. 594 (Bankr. D. Id. 1995) ............................................................... 12

*Principal Life Ins. Co. v. Robinson,*
  394 F.3d 665 (9th Cir. 2005) ............................................................... 7, 8, 11

*Rhoades v. Avon Prods,*
  504 F.3d 1151 (9th Cir. 2007) .................................................................................... 7

*Roman Catholic Bishop of San Jose v. Bowen,*
  219 Cal. App. 4th 484 (2013) .................................................................................... 21

*Ryan S. v. UnitedHealth Gp., Inc.,*
  98 F.4th 965 (9th Cir. 2024) ...................................................................................... 3

*Schilling v. Rogers,*
  363 U.S. 666 (1960) .................................................................................................. 11

*Sebastian Brown Prods., LLC v. Muzooka, Inc.,*
  143 F. Supp. 3d 1026 (N.D. Cal. 2015) ................................................................... 17

*Sherman v. Wells Fargo Bank, N.A.,*
  2011 U.S. Dist. LEXIS 51641 (E.D. Cal. May 12, 2011) ....................................... 11

*Stokes v. Duncan (In re Stokes),*
  2013 Bankr. LEXIS 4654 (B.A.P. 9th Cir. Sept. 23, 2013) ..................................... 12

*Stoyas v. Toshiba Corp.,*
  896 F. 3d 933 (9th Cir. 2018) .................................................................................... 3

*Strassburger v. Quinn (In re Grace Christian Ministries, Inc.),*
  287 B.R. 352 (Bankr. W.D. Pa. 2002) ..................................................................... 25

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) .................................................................................................. 19

*United States v. Redwood City,*
  640 F.2d 963 (9th Cir. 1981) .................................................................................... 3

*Vitalich v. Alliance Bankcorp (In re Vitalich),*
  2016 Bankr. LEXIS 1805 (Bankr. N.D. Cal. Apr. 22, 2016) ................................... 17

**Statutes**

28 U.S.C. § 157(b)(2) ...................................................................................................... 5

28 U.S.C. § 2201(a) ..................................................................................................... 6, 10

28 U.S.C. § 2202 .......................................................................................................... 6, 10

28 U.S.C. § 451 ................................................................................................................ 4

28 U.S.C. §1334(b) .......................................................................................................... 5

Cal. Evid. Code § 662 .................................................................................................... 22

**Other Authorities**

10 Collier on Bankruptcy ¶1103.05 ................................................................. 9

10 Collier on Bankruptcy ¶7001.10 (16th ed. 2025) ........................................ 5

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................ 3, 13, 17

Fed. R. Civ. P. 9(b) ................................................................................... 13

The Official Committee of Unsecured Creditors ("Committee") of the Roman Catholic Archbishop of San Francisco (the "Debtor" or "Archdiocese") submits this omnibus opposition to six motions to dismiss the Committee's amended adversary complaint ("Complaint").[1] Motions have been filed by the Cemeteries [ECF 12], Archbishop Riordan High School, Marin Catholic High School, and Junipero High School (the "Three High Schools") [ECF 13], the fourth high school, Sacred Heart Cathedral Preparatory ("Sacred Heart") [ECF 18], the Parishes [ECF 15-17], Vallombrosa Retreat Center [ECF 29] (collectively, the "Division Defendants"), and the Debtor [ECF 14].

## I. INTRODUCTION

The Complaint seeks an answer to this question and only this question: Are the Division Defendants operating divisions of the Debtor, as the Committee contends, or are they legally separate unincorporated associations, as the Archdiocese claims? The answer will resolve an immediate and justiciable controversy before the Court that dramatically impacts the scope of the estate, all of which is central to administration of this bankruptcy and any plan of reorganization. The Seventh Circuit aptly described the consequence of finding that the nondebtor defendants are divisions:

> If you are injured because of a defect in a Chevrolet, you may sue General Motors and the dealer and individual employees of either but you may not sue the Chevrolet Division of General Motors or the dealer's maintenance department. The reason is practical. **An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part.** …A plaintiff therefore has nothing to gain in a practical sense by naming an unincorporated division as an additional defendant and if the result of doing so is to confuse the jury he has no one to blame but himself.

*Albers v. Church of the Nazarene*, 698 F. 2d 852, 857 (7th Cir. 1983) (emphasis added). Bankruptcy courts have granted summary judgment on similar complaints based upon facts demonstrating that a diocese's unincorporated parishes and schools are part of the debtor. *See Tort Claimants Com. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland in Oregon),* 335 B.R. 842, 865-67 (Bankr. Or. 2005) ("Because the parishes are not

---

[1] Unless otherwise defined, capitalized terms have the meanings set forth in the Complaint.

separately incorporated, as they could be under Oregon religious corporations law, they cannot hold title to real property. They are not separate from, but are merely a part of debtor."); *Off. Comm. of Unsecured Creditors v. Archbishop of Agana,* 2022 Bankr. LEXIS 860, *3 (Bankr. D. Guam Mar. 17, 2022) (ruling "that the parishes and schools are part of Debtor-Defendant and are unincorporated divisions of the Archdiocese of Agana" ).

The Defendants launch exaggerated ad hominem criticisms that the Committee's claims threaten to "eviscerate" the Catholic Church nationwide[2] (irrelevant) and amount to "breathtaking overreach"[3] (an overstatement), "unseemliness"[4] (incomprehensible), and "highly inappropriate litigation tactics"[5] (unexplained). The Defendants ignore that the Division Defendants do not comport with the civil law, which recognizes separately incorporated entities that follow appropriate corporate formalities, as distinguished from divisions of a larger corporation.

The Defendants seek to avoid the detailed facts of the Complaint – and the core issue before the Court – by their motions to dismiss. The Division Defendants are not separately incorporated or registered (Compl. ¶¶ 7, 27, 31), nor are they separately owned and operated (Compl. ¶¶ 32, 43-50, 53, 56-68, 62-64, 69-71, 75). Prior to bankruptcy, audited financials consistently identify the Division Defendants as operating divisions of the Debtor (Compl. ¶¶ 5, 28, 54, 61, 66) and the Archdiocese affirmatively asserted the divisions' legal non-existence in response to litigation. (e.g., Compl. ¶¶ 37, 41, 52). There are no CVA cases pending against parishes precisely because, according to the Archdiocese, they "do not exist" separate from the Debtor. (Compl. ¶42). These facts must be accepted as true and construed in the light most favorable to the Committee. Yet, the Defendants insist that the Complaint is vague and incomprehensible and is a disguised involuntary petition. It is none of those things.

The motions to dismiss should be denied in their entirety because (1) the Court has subject matter jurisdiction to issue declaratory relief, (2) the allegations establish a substantial controversy

---

[2] ECF 14 at p. 3:9-10.

[3] ECF 14 at p. 1:14.

[4] ECF 18-1 at p. 24:4-6

[5] ECF 18-1 at p. 24:13-14.

of sufficient immediacy to award relief, (3) the claims are central to this bankruptcy and warrant the Court's exercise of jurisdiction, (4) the Committee has standing to bring declaratory relief claims regarding property of the estate, (5) the Complaint alleges sufficient facts to demonstrate that each defendant is an operating division of the Debtor, all of which must be accepted as true at the pleading stage, and (6) the Complaint does not allege, nor does the Court need to consider, substantive consolidation, an involuntary petition, or other purported claims for relief. Declaratory relief will assist  in resolution of this case by eliminating the fiction that the operating divisions of the Debtor hold assets that are outside the purview of this bankruptcy.

## II.  LEGAL STANDARDS

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the factual allegations as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Ryan S. v. UnitedHealth Gp., Inc.*, 98 F.4th 965, 970 (9th Cir. 2024).  Detailed factual allegations are not required.  Rule 8(a)(2) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*  A complaint must allege sufficient facts that, accepted as true, state a claim for relief that is plausible on its face. *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 50 U.S. 544, 556 (2007)).  A claim is plausible if there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plausibility standard is not a probability requirement. *Id.*

Dismissal is proper only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations omitted).  *Twombly* and *Iqbal* did not change the longstanding rule that leave to amend is liberally granted.  *Moss v. U.S. Secret Service,* 572 F. 3d 962, 972 (9th Cir. 2009) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment;" quoting *Gompper v. VISX, Inc.*); *Stoyas v. Toshiba Corp.,* 896 F. 3d 933, 939 (9th Cir. 2018) (reversing dismissal to allow amendment).

4896-9140-7192.8 05068.002

### III.  SACRED HEART'S MOTION UNDER FRCP 12(B)(1) SHOULD BE DENIED

Sacred Heart seeks to portray itself as different from the Three High Schools, first by attaching a sponsorship agreement from outside the pleadings and second by raising jurisdictional arguments that this Court cannot, and should not, hear matters of declaratory relief.  The arguments do not withstand scrutiny and should be rejected.

**A.     The Bankruptcy Court Has Subject Matter Jurisdiction to Issue Declaratory Relief Under 28 U.S.C. Sections 1334, 157(b)(2), and Bankruptcy Rule 7001.**

Sacred Heart argues that the Bankruptcy Court lacks subject matter jurisdiction to issue declaratory relief under the Declaratory Judgment Act because it is not a "court of the United States."  [ECF 18-1 at pp. 8-9].  Such an interpretation of the Declaratory Judgment Act would strip the Court of jurisdiction in contravention of widespread contrary case authority, judicial procedure under title 28, and the explicit terms of Bankruptcy Rule 7001(i).

The case of *In re Perroton,* 958 F.2d 889, 896 (9th Cir. 1992), cited by Sacred Heart, involved an appeal from a pro se debtor who failed to pay filing fees.  The Ninth Circuit held that the bankruptcy court was not a "court of the United States" under 28 U.S.C. section 451 and therefore lacked authority to waive fees under section 1915(a).  Courts have narrowly interpreted the decision.  For example, in *Dragnea v. Dragnea (In re Dragnea),* 609 B.R. 239, 256-60 (Bankr. E.D. Cal. 2019), Judge Klein issued declaratory relief regarding the debtor's bankruptcy discharge after reviewing the holding of *Perroton.*  Judge Klein called the Declaratory Judgment Act's reference in section 2201 to a "court of the United States" a possible "procedural pothole," merely affecting whether the bankruptcy court must make a report and recommendations to the district court before a final judgment is entered.  *Id.* at 257.  Furthermore, Judge Klein noted that the fact that the Ninth Circuit has affirmed declaratory decisions from bankruptcy courts without questioning jurisdiction under section 2201 "suggests that *Perroton* is limited to §1915 *in forma pauperis* rulings and has otherwise lost vitality."  *Id.* at 258.  Consistent with the *Dragnea* court's

observation, other cases cited by Sacred Heart do not involve declaratory relief.[6] Bankruptcy courts have jurisdiction to issue declaratory relief in accordance with *Stern v. Marshall* principles.[7]

Nothing in the jurisdictional statutes (28 U.S.C. §§ 1334 and 157) precludes this Court from determining claims under the Declaratory Judgment Act. Collier concurs that bankruptcy courts may issue declaratory relief because bankruptcy judges are a unit of the district court that is empowered to refer cases arising in or related to a case under title 11.[8] The fact that bankruptcy courts may adjudicate declaratory relief claims is further demonstrated by Bankruptcy Rule 7001, which specifically addresses declaratory relief claims in a bankruptcy at subparagraph (i) and requires an adversary proceeding to seek declaratory relief for the determination of an interest in property.

In sum, this Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. sections 1334(b) and 157(b)(2). (Compl. ¶¶9, 11). The Committee's declaratory relief claims arise in a bankruptcy case and concern administration of the estate and the scope of the estate's assets.

## B. The Allegations of the Complaint Establish a Substantial Controversy of Sufficient Immediacy.

Sacred Heart inconceivably argues that the Complaint fails to allege facts establishing a substantial controversy, in part, because the Sacred Heart contends that the disagreement is between the Committee and the Archdiocese regarding *the Archdiocese's* characterization of the Division Defendants. [ECF 18-1 at p.11, emphasis in original]. Yet, by its very motion, Sacred

---

[6] *In re Demas Wai Yan,* 703 F. App'x 582, 583 (9th Cir. 2017) (cited by Sacred Heart; affirming denial of pro se plaintiff's motion for sanctions under 28 U.S.C. section 1927); *In re Sandoval,* 186 B.R. 490 (B.A.P. 9th Cir. 1995) (same).

[7] *See, e.g., In re Moore,* 2019 U.S. Dist. LEXIS 237039, *17 (C.D. Cal. Apr. 30, 2019) ("The declaratory relief claim is thus squarely within the Bankruptcy Court's jurisdiction, and whether the Property is part of the estate must necessarily be decided in order to adjudicate the larger bankruptcy proceeding."); *Lei v. Yan (In re Yan),* 2011 Bankr. LEXIS 711, *23-25 (Bankr. N.D. Cal. 2011) (denying motion to dismiss declaratory relief claim for lack of jurisdiction).

[8] *See generally* 10 Collier on Bankruptcy ¶7001.10 (16th ed. 2025) ("Thus, the bankruptcy court is an adjunct of the district court, which undoubtedly is a 'court of the United States' and has power to issue declaratory judgments pursuant to 28 U.S.C. §2201(a).").

1   Heart disputes that it is part of the Debtor and subject to this Court's jurisdiction thereby

2   demonstrating the substantial controversy.[9]  All of the other Defendants have similarly filed

3   dismissal motions demonstrating the substantial controversy.

4          The Declaratory Judgment Act, at section 2201, provides in relevant part:

5              In a case of actual controversy within its jurisdiction… any court of the
               United States,  upon the filing of an appropriate pleading, may declare the
6              rights and other legal relations of any interested party seeking such
               declaration, whether or not further relief is or could be sought.
7
        Section 2202 provides:
8
               Further necessary or proper relief based on a declaratory judgment or decree
9              may be granted, after reasonable notice and hearing, against any adverse
               party whose rights have been determined by such judgment.
10

11  28 U.S.C. §§ 2201(a), 2202.

12         Thus, the Declaratory Judgment Act expressly allows a federal court to declare the rights

13  and legal relations of interested parties when there is "an actual controversy within its

14  jurisdiction… whether or not further relief is or could be sought."  28 U.S.C. §2201(a); *see also*

15  *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) ("Basically, the question in each

16  case is whether the facts alleged, under all the circumstances, show that there is a substantial

17  controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

18  warrant the issuance of a declaratory judgment.").  In addition, the act expressly contemplates the

19  possibility, but not the requirement, of further relief against "any adverse party whose rights have

20  been determined" pursuant to section 2202.

21         Sacred Heart apparently disputes the ripeness of the actual controversy and whether it is

22  "of sufficient immediacy and reality" [ECF 18-1 at p.10] between the parties.  Whether the

23  Division Defendants are divisions of the Debtor, as opposed to legally separate entities, directly

24  impacts the scope of the estate and the ongoing mediation.  The importance of the issue is

25  undeniable.  The claims raised in the Complaint are not "nebulous or contingent," nor do they seek

26
    _____
    [9] *In re Rinegard-Guirma,* 654 B.R. 390, 396 n. 23 (Bankr. D. Or. 2023) ("Here, there is a substantial
27  controversy – the immediacy and reality of which is proved by the fact that Guirma is simultaneously
    seeking opposite relief against the bank – as to whether the bank's ongoing and proposed acts are or will be
28  stay violations.").

an "unconstitutional advisory opinion."[10]  The cases cited by Sacred Heart merely demonstrate that the actual controversy requirement is broadly construed in favor of resolving presently disputed issues.[11]  Declaratory relief claims are of sufficient immediacy and reality to warrant a decision where a dispute has crystalized regarding estate property.  For example, in *Clark v. Field (In re Clark),* 536 B.R. 450, 456 (Bankr. D. Haw. 2015), the court concluded that declaratory relief was appropriate to determine the validity of a tax lien in advance of an avoidance action because determination of the tax lien would answer whether the asset was over-encumbered and whether the trustee should pursue the avoidance action.

Here, an actual controversy exists regarding the legal status of the Division Defendants. Under the circumstances pleaded, the relief is essential to administration of the estate, including the formulation and voting on a plan of reorganization. As all of the Defendants recognize, the dispute significantly impacts the scope of the estate as well as who is getting a discharge. Contrary to Sacred Heart's argument, the dispute is not meaningless without a "follow-on declaration" as to specific assets [ECF 18-1 at p. 12] because it affects whether the school operations and assets used by it, or allegedly held in trust for its benefit, are already part of the estate or are subject to claims as a legally separate party.

**C.     The Court Should Exercise Its Discretion to Determine the Declaratory Relief Claims.**

Sacred Heart finally argues that even if the Bankruptcy Court has subject matter jurisdiction, it should abstain from exercising it.

The non-exclusive factors considered by the Ninth Circuit readily support this Court's exercise of jurisdiction.  In *Principal Life Ins. Co.,* 394 F.3d at 672 (cited by Sacred Heart), the

---

[10] *Rhoades v. Avon Prods,* 504 F.3d 1151, 1157 (9th Cir. 2007) (cited by Sacred Heart regarding declaratory relief standards; vacating dismissal and remanding dec relief claims based on existence of actual controversy arising from threats of trademark infringement).

[11] *Id.  See also Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 671-72 (9th Cir. 2005) (vacating dismissal and remanding dec relief claims regarding rent recalculation interpretation because the dispute was not hypothetical and there was sufficient immediacy to warrant resolution); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 236-44 (1937) (vacating dismissal and remanding dec relief claims regarding disability insurance based on actual controversy).

Ninth Circuit explained that the court must balance concerns of judicial administration, comity, and fairness to the litigants.  Factors to consider include that the district court should (1) avoid needless determination of state law issues, (2) discourage litigants from filing declaratory actions as a means of forum shopping, and (3) avoid duplicative litigation.  Additional factors include whether the litigation will serve a useful purpose in clarifying the legal relations at issue and whether the use of a declaratory action will result in entanglement between federal and state court systems. *Id.*

Sacred Heart's conclusion that the need to avoid entanglement in "thorny state law issues" [ECF 18-1 at p. 14] favor this Court's abstention is meritless.  Bankruptcy courts regularly apply state law to determine property interests.[12]  The Complaint does not concern competing forums or claims pending in state and federal court, nor is there is an issue of forum shopping or duplicative litigation.  The declaratory relief will serve an essential purpose in clarifying the legal relations at issue – to wit, whether the Division Defendants are part of the Debtor.  The declaratory relief will not result in entanglement between the federal and state court systems because the issue of the Division Defendants' legal status is not presently before the state court[13] and, instead, is squarely at issue in this bankruptcy.

## IV.  DEFENDANTS' MOTIONS UNDER 12(B)(6) SHOULD BE DENIED

The Defendants raise a host of reasons why the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The Committee's two causes of action for declaratory relief are based on well-pleaded facts and a concise statement of the claims.  Each of the arguments for dismissal should be rejected for reasons discussed below.

---

[12] *See, e.g., BBeautiful v. Rieke-Arminak Corp. (In re BBeautiful),* 2017 Bankr. LEXIS 615, *42-43 (Bankr. C.D. Cal. Mar. 8, 2017)* ("Although the Complaint primarily involves state law issues, the declaratory relief that BBeautiful seeks will assist BBeautiful in consummating a plan of reorganization.  Therefore, the efficient administration of the estate weighs against abstention.").

[13] To the extent that the Division Defendants' legal status has previously been raised in state or federal court, the Archdiocese has consistently and successfully argued that its parishes and schools are not separate entities.  *See, e.g., Bohnert v. Roman Catholic Archbishop of San Francisco,* 136 F. Supp. 3d 1094, 1113 (N.D. Cal. 2015).

## A. The Committee Has Standing to Bring Declaratory Relief Claims.

The Parishes contend that the Committee lacks standing to bring an adversary proceeding absent a motion for derivative standing and court approval. [ECF 17 at p. 8]. The Parishes fail to recognize that the Committee is not pursuing claims that belong to the Debtor, such as an avoidance claim or claim for breach of fiduciary duties owed to the estate.

Bankruptcy Code section 1103(c) grants broad powers to a committee, not only to investigate the financial condition and operation of the debtor and any other matter relevant to the case, but to "perform such other services as are in the interest of those represented." Bankr. Code §1103(c)(2), (5). The Parishes acknowledge that section 1103(c)(5) gives a committee an implied right to bring an adversary proceeding in appropriate circumstances. [ECF 17 at p. 8:5-7]. Thus, cases confirm that a committee has standing to bring an equitable subordination claim.[14] A committee also has standing to bring an adversary proceeding in its own name to determine assets of the estate. *In re Roman Catholic Bishop of Great Falls,* 584 B.R. 335, 337 n.3 (Bankr. D. Mont. 2018) (committee filed separate declaratory relief action that was not subject to derivative standing motion); *Comm. of Tort Litigants v. The Catholic Diocese of Spokane (In re Catholic Bishop of Spokane),* 2006 U.S. LEXIS 6025, *14-17 (E.D. Wash. Jan. 24, 2006) (affirming bankruptcy court's denial of motions to dismiss committee's declaratory relief action to determine property of the estate). *See generally* 10 Collier on Bankruptcy ¶1103.05.

Actions on behalf of the estate, belong to the estate. In contrast, nothing in the Declaratory Judgment Act or applicable statutes prohibits a declaratory relief action by the Committee on behalf of its creditor constituency. The cases cited by the Parishes are in accord.[15] Even if the

---

[14] *In re Morpheus Lights, Inc.,* 228 B.R. 449, 454 (Bankr. N.D. Cal. 1998) (cited by Parishes; debtor or committee are holders of equitable subordination claim).

[15] *Id. See also In re Spaulding Composites Co., Inc.,* 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997) (derivative standing by stipulation; "So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditor's committee to represent the estate presents no undue concerns."); *In re X-Treme Bullets, Inc.,* 2024 U.S. App. LEXIS 4641, *3 (9th Cir. Feb. 28, 2024) (cited by the Archdiocese; same); (*In re Curry & Sorenson, Inc.,* 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986) (individual creditor lacks standing to bring 548 action absent court approval); *In re First Capital Holdings Corp.,* 146 B.R. 7, 13 (Bankr. C.D. Cal. 1992) (discretion to excuse committee's demand on debtor to prosecute action where demand would be futile).

Committee was required to obtain this Court's permission to pursue declaratory relief regarding the estate's assets, bankruptcy courts can waive the requirement.[16]  Dismissal of the Complaint on standing grounds, where a demand that the debtor pursue the claims would clearly be futile, would be a waste of time and resources.

**B.  Declaratory Relief in Bankruptcy Does Not Require an "Independent Underlying Claim."**

Sacred Heart incorrectly argues that the Complaint should be dismissed because the Committee lacks an "independent underlying cause of action."  [ECF 18-1 at pp. 14-16].  Nothing in the text of the Declaratory Judgment Act, applicable rules, or case law requires a separate claim.

As set forth above, section 2201(a) of title 28 only requires an "actual controversy" and permits a court to declare "the rights and other relations of any interested party seeking such a declaration, *whether or not further relief is or could be sought*" (emphasis added).  Section 2202 anticipates further necessary or proper relief based on the declaratory judgment.  Bankruptcy Rule 7001(i) requires an adversary proceeding to obtain a declaratory judgment relating to certain provisions – including to recover property (Bankr. Rule 7001(a)) or to determine the validity of an interest in property (Bankr. Rule 7001(b)) – but does not condition declaratory relief on the pleading of separate claims under those provisions. "The purpose of a declaratory judgment is to clarify in an expeditious manner the 'rights, liabilities, and other legal relationships' between adverse parties. Declaratory relief is remedial but . . . it resolves disputes without creating

---

[16] *In re First Capital Corp.,* 146 B.R. at 13.  As the district court explained in *Catholic Bishop of Spokane*:

> **[I]t is not essential to the Bankruptcy Court's jurisdiction to decide the action, that specific permission be given to bring an adversary action to determine the assets of the estate.**  To hold that the Committee and Shea [creditor] were first obligated to make demand on the debtor Diocese, and if rejected, to then obtain permission of the court would be contrary to the letter and spirit of the bankruptcy laws and at this stage of the proceedings, requiring such precedent actions would seem to the court to be a further waste of scarce assets in this case.  **Also, to hold that only the trustee or debtor may bring an action to determine the assets of the estate**, particularly in a debtor in possession Chapter 11 case, where the debtor has claimed that the parish assets are not part of its bankruptcy estate, **would be contrary to the letter and intent of the bankruptcy laws and would prevent the court and the creditors from having full information as to all assets of the debtor** in voting and ruling upon a Chapter 11 reorganization plan.

2006 U.S. Dist. LEXIS 6025 at *14-15 (emphasis added) (rejecting demand argument).

additional substantive rights or duties between the parties." *Bethel Native Corp. v. Dep't of the Interior*, 208 F.3d 1171, 1176 (9th Cir. 2000) (citations omitted). In a bankruptcy, those rights include the determination of interests in property and recovery of money or property.

The Supreme Court explains that the Declaratory Judgment Act "is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citations omitted). Stated differently, a plaintiff's standing in federal court cannot be solely based on a claim under the Declaratory Judgement Act. There is no requirement, however, of a separate standalone cause of action. *See, e.g., Principal Life Ins. Co., supra* at fn. 11.[17]

In *City of Reno v. Netflix,*[18] cited by Sacred Heart, the plaintiff lacked a private right of action under a Nevada statute governing video streaming. In the other non-bankruptcy cases cited by Sacred Heart, the plaintiffs similarly lacked a basis for standing.[19] Sacred Heart does not identify a single bankruptcy case applying *Netflix* or similar rulings from other circuits, likely because standing in bankruptcy is more complex than a civil case. Here, the Complaint must be viewed in the context of the Archdiocese's bankruptcy filed in the wake of sexual abuse lawsuits. The Committee's constituency all have underlying claims against the Debtor, the very reason they are part of this bankruptcy. The Complaint "serve[s] a useful purpose in clarifying and settling the legal relations in issue" in the bankruptcy and it will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey ex rel. Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (explaining the appropriate uses of declaratory relief). There is no requirement that the Committee plead an independent cause of action in conjunction with a claim for declaratory relief, only that the Committee have standing to seek clarity on an issue for which there is actual controversy. As discussed above, an actual controversy unquestionably exists

---

[17] *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 274 (1941) (actual controversy regarding insurance obligations supports declaratory relief).

[18] *City of Reno v. Netflix, Inc.,* 52 F.4th 874, 878 (9th Cir. 2022) (quoted at ECF 18-1 p. 15:1-2).

[19] *Lopez v. Wells Fargo Bank, N.A.,* 727 F. App'x 425, 426 (9th Cir. 2018) (plaintiff lacked standing); *Inciyan v. City of Carlsbad,* 2020 U.S. Dist. LEXIS 2863, *5 (S.D. Cal. Jan. 8, 2020) (court lacked subject matter jurisdiction and there was no case or controversy); *Sherman v. Wells Fargo Bank, N.A.,* 2011 U.S. Dist. LEXIS 51641, *7 (E.D. Cal. May 12, 2011) (defendant fraudulently joined for diversity).

among the parties and the Committee's constituency has judicially remediable rights both against

the Debtor and to a determination of the scope of the Debtor's estate.

Sacred Heart similarly argues that Bankruptcy Code Section 541 does not create a cause of

action. The Committee agrees. By defining property of the estate, Bankruptcy Code section 541 is

often the context for a bankruptcy court to issue declaratory and equitable relief.[20] In the *Stokes*

case, cited by Sacred Heart, the bankruptcy court lacked jurisdiction over a dispute because its

decision would not impact the estate. The Bankruptcy Appellate Panel held that the court's

jurisdiction terminated upon sale of certain claims and the requested declaration was "completely

estate neutral …and in no way impacted administration of the estate."[21] By contrast, declaratory

relief is appropriate where there is an actual controversy that affects property of the estate.[22] The

cases cited by Sacred Heart are neither controlling nor applicable.[23]

In this case, an actual controversy exists regarding the legal status of the Division

Defendants that were consistently identified in pre-petition audited financials as operating

divisions of the Debtor. (Compl. ¶¶ 28, 54, 61, 66, 73). The Division Defendants are not

separately incorporated or registered in any manner with the Secretary of State (Compl. ¶27); the

Debtor has stated in other litigation that it owns and operates certain Division Defendants

(Compl., ¶¶ 41, 42, 52); and extensive facts demonstrate that the Division Defendants are

controlled by the Debtor (e.g., Compl. ¶¶ 32, 43-50, 53, 56-57, 71, 75). These facts must be

accepted as true for purposes of the pending motions to dismiss. The relief the Committee

---

[20] *See, e.g., In re Roman Catholic Archbishop of Portland,* 335 B.R. at 850-51.

[21] *Stokes v. Duncan (In re Stokes),* 2013 Bankr. LEXIS 4654, *15 (B.A.P. 9th Cir. Sept. 23, 2013) (declaratory judgment vacated for lack of jurisdiction).

[22] *See, e.g., Pintlar Corp. v. Fidelity and Casualty Co. (In re Pintlar Corp.),* 180 B.R. 594, 596 (Bankr. D. Id. 1995) ("Declaratory suits to determine the scope of insurance coverage are often brought independent of the underlying claims;" denying motion to dismiss).

[23] *See Boston Global Constr. Co. v. Rahim,* 2025 U.S. Dist. LEXIS 99325, *2 (N.D. Cal. Apr. 11, 2025) (tentative ruling on unspecified summary judgment after other claims dismissed); *Little v. Pac Seafood Procurement, LLC,* 2024 U.S. Dist. LEXIS 91213, *14 (N.D. Cal. May 21, 2024) (failure to state a plausible claim under anti-trust law); *Payne v. Sparkman (In re Silver Star of Nev., Inc.),* 2025 Bankr. LEXIS 704, *15-16 (Bankr. W.D. Okal. Mar. 24, 2025) (trustee did not seek a determination of assets owned by the estate where facts showed property transfers); *Palmer v. Menser (In re Menser),* 2021 Bankr. LEXIS 2977, *4 (Bankr. N.D. Ga. 2021) (reverse veil-piercing claims against corporations, LLCs, and trusts were not viable under Georgia law).

1  requests is essential to the administration of the estate and consistent with Bankruptcy Rule
2  7001(i). Indeed, nothing is more core to the bankruptcy than defining the legal boundaries of the
3  Debtor.

4  **C.   The Complaint Alleges With Specificity Why Each Division Defendant Is an**
5     **Operating Division of the Debtor.**

6     **1.   The Defendants Have Clear Notice of the Claims.**

7        The Defendants uniformly allege that the Committee has failed to state sufficient facts to
8  support declaratory relief claims.  The feigned protest regarding vagueness is a dispute regarding
9  the Committee's conclusions drawn from well-pleaded facts, not from the absence of facts.  Under
10 Fed. R. Civ. P. 8(a)(2), a complaint only requires a "short and plain statement of the claim
11 showing that the pleader is entitled to relief."  The short and plaint statement must "give the
12 defendant fair notice of what the …claim is and the grounds upon which it rests." *Twombly,* 550
13 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  The Complaint alleges more than
14 sufficient facts to give notice of plausible claims for declaratory relief that the Division
15 Defendants are divisions of the Debtor.

16     **a.   The Complaint Is Far From Devoid of Facts.**

17        The Complaint is not subject to detailed pleading requirements for fraud under Fed. R. Civ.
18 P. 9(b).  *Iqbal* and *Twombly* merely instruct that a complaint must offer more than "naked
19 assertions" devoid of facts.  *Iqbal,* 556 U.S. at 678 (quoting *Twombly*).

20        The Committee alleges detailed and sufficient facts against each of the Defendants to
21 demonstrate an actual controversy regarding the legal status of the Division Defendants and why
22 the Committee is entitled to declarations that (i) the Division Defendants are divisions of the
23 Debtor, not separate unincorporated associations, and (ii) assets allegedly "held in trust" by the
24 Debtor for the benefit of the Division Defendants are estate assets.  The facts are laid out against
25 each Defendant: the Archdiocese (Compl., ¶¶ 26-39), the Parishes (Compl., ¶¶ 27-32, 40-51),
26 Three High Schools and Sacred Heart (Compl., ¶¶ 27-32, 52-59), the Cemeteries (Compl., ¶¶ 27-
27 32, 60-65), Vallombrosa (Compl., ¶¶ 27-32, 66-72), and Serra Clergy (Compl., ¶¶ 27-32, 73-76).
28        The Defendants make boilerplate arguments for dismissal, while ignoring the facts.  For

1  example, the Cemeteries insist that they are "a separate unincorporated association" and "nothing

2  in the Complaint alleges otherwise." [ECF 12-1 at pp. 4:25-5:1]. In fact, the Complaint describes

3  audited financials for both the Chancery and the Cemeteries, each identifying the Cemeteries as an

4  "operating division of the Corporate Sole." (Compl. ¶¶ 28, 61). The Debtor owns all of the real

5  property used by the Cemeteries (Compl. ¶60); the Cemeteries are governed by a *Department*

6  Advisory Board overseen by the Archbishop (Compl. ¶¶62-63); and organization charts show the

7  Cemeteries as a *Department* under the supervision of the Archbishop (Compl. ¶64).

8       The Three High Schools insist that Complaint fails because "it assumes that the Three

9  High Schools cannot exist as separate entities." [ECF 13-1 at pp. 5:25-6:12]. The Complaint

10  assumes no such thing and *alleges* that the Three High Schools are *in fact* operating as divisions of

11  the Corporate Sole based on audited financials (Compl. ¶¶ 28, 54), the Debtor's internal operations

12  (Compl. ¶56), the Debtor's pleadings in prepetition litigation (Compl. ¶52), the absence of

13  registration with the Secretary of State (Compl. ¶27), and the Debtor's extensive policies and

14  practices that control the schools (Compl. ¶¶ 32, 44-46, 53, 56-58). These facts are accepted as

15  true on a motion to dismiss. If the Three High Schools wish to demonstrate separate existences as

16  alleged unincorporated associations, they must do so by countervailing facts at trial or by

17  summary judgment.

18       The Parishes argue that the Complaint is "incomprehensible" in the absence of facts

19  directed to specific Parishes. [ECF 17 at pp. 9:21-10:12]. The Parishes are on clear notice of the

20  declaratory relief sought by the Committee and the facts upon which it is based. The alleged facts

21  expressly apply to all the Parishes and there is no need to name individual entities as to each fact.

22  Among other matters, the Complaint alleges that the Parishes are not incorporated or registered

23  with the Secretary of State (Compl. ¶¶ 27, 31) so they lack individual agents for service of

24  process. The Chancery's audited financials, available on the Debtor's website, refer to the

25  Parishes as "operating divisions of the Corporate Sole" (Compl. ¶28), and the Archdiocese itself

26  refers to the Parishes as "part of" the Debtor (Compl. ¶29), owned and operated by the Debtor

27  (Compl. ¶41), and not appearing in lawsuits because they "do not exist." (Compl. ¶42). The

28  Parishes do not hold legal title to assets (Compl. ¶¶ 7, 34, 37-38); and they are substantially

1  controlled by the Debtor, either directly or through persons appointed and policies established by

2  the Debtor.  (Compl. ¶¶ 43-50).  These facts, accepted as true, provide ample notice to the Parishes

3  regarding the claims at issue and refute the fallacious notion that the Complaint is

4  incomprehensible.

5      The Archdiocese argues that the Complaint fails to include "necessary factual allegations

6  to resolve any ownership or title interest" in assets used by the Division Defendants, citing *Huber*

7  *v. Jackson,* 175 Cal. App. 4th 663, 673 (2009) as a basis for dismissal. [ECF 14 at p. 22:13-22].

8  The Committee seeks declaratory relief regarding the status of the divisions, not a judgment of

9  ownership as to particular assets.  In *Huber v. Jackson*, the appellate court applied neutral

10 principles of law to hold that governing documents did not allow a parish to assume ownership of

11 national church property when it broke away from the national church.  *Huber v. Jackson* does not

12 address, nor require, identification of deeds or title reports for purposes of a declaratory relief

13 complaint.  If anything, the case highlights that the Division Defendants are not separately

14 incorporated and never disaffiliated themselves as divisions of the Debtor.  (e.g., Compl. ¶¶ 26-

15 32).

16     Meanwhile, Sacred Heart repeatedly complains that the Complaint is "woefully deficient"

17 – allegedly because there are "no facts specific as to each Non-Debtor Defendant, and specifically

18 Sacred Heart Cathedral, to adequately allege that it is an operating division of the Debtor."  [ECF

19 18-1 at p. 23:22-24].  Allegations against Sacred Heart are set forth at length in connection with

20 the other Three High Schools.  Again, its status as a division of the Debtor is supported by audited

21 financials (Compl. ¶¶ 28, 54), internal operations (Compl. ¶56), and policies and practices

22 establishing control by the Debtor (Compl. ¶¶ 32, 44-46, 53, 56-58).  The one document that

23 Sacred Heart attaches as purported evidence of its separate governance is a sponsorship agreement

24 (not previously produced in Rule 2004 discovery, and insufficient to support a judgment on the

25 pleadings), signed by the Archbishop on the premise that he "is willing to agree to the

26 sponsorship."  [ECF18-1, Exh. A]. Sacred Heart is not even a signatory in its own right, which is

27 entirely consistent with the Committee's claim that the school is a division of the Debtor.  If

28 Sacred Heart seeks to distinguish itself as a legally separate entity from the Debtor, it will have to

demonstrate countervailing *facts* and legal argument to the allegations in the Complaint on a later date. On a motion to dismiss, the Complaint must be construed in the light most favorable to the Committee, with all allegations accepted as true and all reasonable inferences drawn therefrom regarding Sacred Heart operating as a division of the Debtor.

**b.** **Redactions for Confidentiality Are Not a Basis for Dismissal.**

The Complaint is not subject to dismissal on the basis that the filed copy contains redactions.

First, this is an issue of the Defendants' own making. In December 2024, the Court entered a Stipulated Protective Order (the "Protective Order") [Docket No. 370], which, among other things, permitted the Defendants to designate documents as "confidential" when producing them to the Committee. Such documents and the information in them could be disclosed with the producing party's consent or motion practice. Beginning in April 2025, the Committee met and conferred with each Defendant in an effort to remove the confidentiality designations on documents that were to be referenced in the Complaint.[24] The Committee disagrees that any of the information is confidential but is constrained from disclosing it under the Protective Order. An unredacted version of the Complaint identifying redactions is on file with the Court at Docket No. 1180.[25] The Defendants cannot simultaneously insist upon confidentiality and complain about redactions.

Second, none of the Defendants is at a disadvantage in responding to the Complaint because each received the unredacted Complaint from the Archdiocese or could have done so. The Committee directed the Division Defendants to address their redaction concerns to the Archdiocese, as the party that produced the documents under a confidentiality designation. The Three High Schools, Sacred Heart, and the Parishes expressly admit that they have an unredacted copy of the Complaint.[26] Even if the Cemeteries do not have an unredacted copy of the Complaint

---

[24] *See* Declaration of Gillian N. Brown [Docket No. 1181], ¶¶ 2-4.

[25] The Archdiocese and others make bizarre and false accusations that the Complaint is not under seal with the Court. [*See, e.g.,* ECF 14 at p. 5 fn. 4].

[26] ECF 13 at p. 4 fn. 5; ECF 17 at p. 9:14-17; ECF 18-1 at p. 5 fn. 4.

from the Archdiocese, they are not disadvantaged in responding because the Complaint provides ample specification of which facts pertain to which defendants and the facts pertaining to the Cemeteries are not redacted. (Compl. ¶¶ 20, 60-65; under the heading, "The Cemeteries are Not Separate Legal Entities. They Are Operating Divisions of the Archdiocese.").

### c. The Complaint Is Not Subject to Dismissal for Group Pleading.

The Cemeteries, Parishes, Sacred Heart, and to some degree the Archdiocese, each argue that the Complaint must be dismissed for impermissible "group pleading" or "shotgun" pleading. The arguments should be rejected.

First, Fed. R. Civ. P. 8(a)(2) only requires sufficient facts to put the Defendants on notice of the declaratory relief claims against them and the basis for such claims. The Committee has pleaded sufficient facts against each of the Defendants to put them on notice of the claims and supporting facts notwithstanding the use of defined terms.[27] Second, the declaratory relief claims are not subject to heightened pleading requirements and are easily distinguished from the objectionable complaints described in cases cited by the Defendants.[28]

The declaratory relief at issue is whether the Division Defendants are divisions of the Debtor as the Committee alleges, or legally separate unincorporated associations as the Defendants allege. (e.g., Compl. ¶¶ 4-8). The Defendants cannot credibly claim that they lack proper notice of the claims based on "group" pleading. The Cemeteries, Parishes, Sacred Heart, and the Archdiocese understand exactly what is alleged and are on notice of specific facts. The

---

[27] *See, e.g., In re TFT-LCD Antitrust Litig.,* 599 F. Supp. 2d 1179, 1184-85 (N.D. Cal. 2009) (rejecting arguments of failure to differentiate among related corporations where allegations adequately alleged involvement of defendants and the claims).

[28] *See, e.g., In re Sagent Tech., Derivative Litig.,* 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (cited by Sacred Heart; plaintiff failed to allege particularized facts regarding insider trading and breach of fiduciary duties); *Sebastian Brown Prods., LLC v. Muzooka, Inc.,* 143 F. Supp. 3d 1026, 1037-38 (N.D. Cal. 2015) (cited by Cemeteries; direct infringement of trademark properly alleged, but no facts re vicarious liability for inducing trademark infringement); *Vitalich v. Alliance Bankcorp (In re Vitalich),* 2016 Bankr. LEXIS 1805, *8 (Bankr. N.D. Cal. Apr. 22, 2016) (cited by Parishes; pro se defendant alleging quiet title, slander of title, fraud, civil conspiracy and numerous other claims related to foreclosure failed to identify "which defendant did what and when"), *aff'd* at 2017 U.S. Dist. LEXIS 155648 (N.D. Cal. Sept. 22, 2017); *Melrose Place Holdings v. Socotra Opp. Fund, LLC,* 2022 U.S. Dist. LEXIS 140036, *5-6 (C.D. Cal. May 31, 2022) (cited by Archdiocese; "impermissible shotgun pleading" based on assertion of 23 claims, including fraud, conspiracy, and statutory violations, against multiple defendants without differentiation or specificity subject to dismissal with leave to amend).

1   arguments regarding improper pleading are a pretense because no amount of additional facts

2   would satisfy the Defendants that the Committee is entitled to litigate declaratory relief on those

3   facts.

4        As an example, Sacred Heart criticizes the Complaint for "lumping" the high schools

5   together and only referring to it by name twice. [ECF 18-1 at p. 17:16-22]. The factual allegations

6   regarding the "High Schools" (Compl. ¶¶ 17, 2, 5-8, 31, 52-59) plainly apply to Sacred Heart and

7   those facts must be accepted as true on a motion to dismiss. Sacred Heart's complaint that it is

8   "fundamentally different" [ECF 18-1 at p. 18:1-4] from the other Three High Schools is a disputed

9   fact more appropriate for summary judgment. Nothing in the Sponsorship Agreement entitles

10  Sacred Heart to summary judgment, much less dismissal at the pleading stage.

11       The Cemeteries similarly argue that the Complaint makes group allegations, with "only six

12  paragraphs" that relate specifically to the Cemeteries, rendering the Complaint "impossible" for

13  the Cemeteries to determine which allegations are directed at them. [ECF 12 at p.5:14-17]. The

14  Complaint succinctly alleges that the Cemeteries are not separate legal entities and are operating

15  divisions of the Debtor based on facts, including references to the Cemetery *Department,* audited

16  financials, bylaws, and organization charts. (Compl. ¶¶ 5-8, 27-32, 60-65). The Complaints sets

17  forth more than sufficient facts to state a plausible claim that the Cemeteries are divisions of the

18  Debtor and the Cemeteries are fully capable of responding to these allegations.

19       In addition to arguing that the Complaint is a shotgun pleading, the Parishes

20  disingenuously claim that they "are not properly listed" in the caption or Exhibit A to the

21  Complaint. [ECF 17 at p. 11:5-9]. Fed. R. Civ. P. 10(c) expressly permits an exhibit to a pleading

22  to be part of the pleading "for all purposes." Here, counsel for the Parishes accepted service of the

23  Complaint on behalf of the Parishes listed by name and address on Exhibit A, and thereafter

24  corrected and stipulated to a corrected version of the list of Parishes (without addresses). *See* ECF

25  8-9, *Stipulation and Order to File Corrected Exhibit A to the Complaint.* The Parishes have been

26  properly named in the Complaint and served. Moreover, the Parishes have proper notice of the

27  Committee's declaratory relief claims, and facts supporting such claims, that they are not separate

28

legal entities.  *See supra* at C.1.a. (Complaint is not "incomprehensible").[29]  The Parishes'

arguments for dismissal based on how they are listed in the Complaint and collectively described

are meritless.

### 2.    The Complaint Does Not Require Exhibits.

The Archdiocese insists that the Complaint should be dismissed because the Committee

fails to attach certain cited documents.  Apart from the fact that the documents are in the

possession and control of the Archdiocese or are publicly available, the Complaint does not

require exhibits.  The Court does not need physical documents to take notice of what is pleaded on

the face of the Complaint.  The Archdiocese essentially argues that anything referenced in a

complaint should be attached in written form, its source identified, and its terms explained.

Nothing in the Federal Rules or applicable law so requires.

Fed. R. Civ. P. 8(a)(2) only requires a short and plain statement of the claim.  There is no

requirement that a plaintiff attach documents in order to state a claim.[30]  The court's review of a

complaint on a motion to dismiss is limited under notice pleading standards in order to focus

litigation on the merits of a claim and to avoid gamesmanship at the pleading stage.[31]

The Committee properly describes documents in the Complaint demonstrating the

Debtor's control of its divisions and their operations.  (Compl. ¶¶ 32, 43-50, 53, 56-58, 62-64, 69-

71, 75).  In this manner, the Committee supports its declaratory relief claims with factual

specificity by describing certain policies and documents of the Debtor.  The Committee should not

be faulted for declining to attach hundreds of pages of internal policies and records in

contravention of Rule 8's "short and plain" instruction.  Moreover, accepting the pleaded facts as

---

[29] The fact that the Parishes include a church that survived the 1906 earthquake and a shrine that no longer operates as a parish [ECF 17 at pp. 5-6, fn. 4-5] does not change the legal issue that these entities are not legally separate from the Debtor (Compl. ¶¶ 7, 15, 27), nor does it change the Parishes' notice of the claims at issue.

[30] *See, e.g., Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1030-31 (9th Cir. 2008) (On a motion to dismiss, the court only considers allegations in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice).

[31] *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ("[C]laims lacking in merit may be dealt with through summary judgment under Rule 56.  The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

true, the Archdiocese clearly has notice that the Committee seeks a declaration that the Division Defendants are divisions and why the Committee believes they are divisions. A dispute regarding the facts, including the source or admissibility of cited documents, is entirely outside the scope of these motions to dismiss.

**D.     The Complaint States Cognizable Legal Claims for Declaratory Relief.**

The Defendants variously argue that, in addition to the absence of facts, the Complaint fails to state a viable claim for declaratory relief. The Defendants are wrong for the reasons discussed *supra* at IV.B.

Section 2201(a) of title 28 allows a federal court to declare the rights and legal relations of interested parties where there is "an actual controversy within its jurisdiction… whether or not further relief is or could be sought." There is an actual controversy between parties with adverse interests of sufficient immediacy to warrant a decision regarding estate property. *In re Clark),* 536 B.R. at 456; *see also Catholic Bishop of Spokane,* 2006 U.S. Dist. LEXIS 6025 at *14 ("[I]n a Chapter 11 reorganization case, it is essential that the creditors and the Bankruptcy Court know what the assets of the estate are in order to vote and rule upon a Chapter 11 confirmation plan.").[32] Under the facts pleaded, and as further demonstrated by the Defendants' motions, an actual controversy clearly exists regarding the legal status of the Division Defendants. Declaratory relief is essential to administer the estate and engage in meaningful mediation geared to the development of a consensual plan.

**1.     The Complaint States a Claim for Recognition that the Division Defendants are "Not Separate Legal Entities".**

The Archdiocese asserts the Committee has not stated a cognizable theory because there is no legal meaning to the word "division" [ECF 14 at p. 21:15-17], citing *Gigax v. Ralston Purina Co.,* 136 Cal. App. 3d 591, 601-02 (1982). First, the legal meaning of a division is understood by

---

[32] *Compare Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 658 (9th Cir. 2002) (cited by Archdiocese; claim for prospective declaratory relief regarding school admission policy under certain conditions was "far too speculative" to warrant relief); *Reger v. Essex Bank (In re Landes),* 627 B.R. 144, 154-55 (Bankr. E.D. Cal. 2021) (cited by Archdiocese; claim for past monetary damages was not a dispute subject to declaratory relief).

the Archdiocese based on its own usage of the term in, among other things, audited financials. (Compl. ¶¶ 28-29).  Second, as the Complaint makes clear, the Committee contends that the Division Defendants are "not separate legal entities."  (Compl. pp. 9, 12, 14, 15, 17).   In *Gigax,* the court was asked, like here albeit in a different context, to determine whether two entities were part of one organization.  *Id.*  The *Gigax* court's disregard of the term "division" arose based on its determination that  "it is not the name given by a public relations office to a business entity that determines its legal status but rather "it is 'the act of  operation.' It is the substance, the hard realities, that are to determine whether one corporation is in fact separate and distinct." *Id.* at 606-07. The Committee here agrees with the *Gigax* holding: the Archdiocese's pronouncement in this bankruptcy that the Division Defendants are unincorporated associations does not make them so. It is due to the exact logic of the *Gigax* court that the Committee filed the Complaint in order for the Court to examine the "hard realities" of the relationship between the Archdiocese and the Division Defendants and make a determination of the Division Defendants' actual legal status.[33]

**2.**  **The Complaint Does Not Ignore "Statutory Protections" Under Neutral Law and the Corporations Code.**

The Archdiocese and Sacred Heart agree that this Court must apply neutral principles of law, not canon law, to determine the Debtor's interest in property.[34]  The Archdiocese attempts to use this premise as a basis for dismissal, arguing that the Complaint "ignores" statutory protections under the California Corporation Code.  [ECF 14 at pp. 16-20].  The Archdiocese's argument lacks any merit.

No party disputes that the Debtor filed bankruptcy with respect to the religious organization, not the individual holding office.[35]  The Committee does not ignore statutory

---

[33] Other cases cited by the Archdiocese stand for the uncontroverted principle that state law governs title and property ownership. *See, e.g., Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 372 (1977); *Butner v. U.S.,* 440 U.S. 48, 55 (1979); *Deutsche Bank Nat'l Trust Co. v. McGurk,* 206 Cal. App. 4th 201, 210 (2012).

[34] *See* ECF 14 at pp. 2:16-19, 20:3-19, *citing Jones v. Wolf,* 443 U.S. 595, 602 (1979); and ECF 18 at p. 20:15-17.

[35] The Archdiocese's cites to cases that are uncontroverted.  *Roman Catholic Bishop of San Jose v. Bowen,* 219 Cal. App. 4th 484, 493-96 (2013) (affirming Secretary of State's refusal to file corporate sole articles of

requirements for a corporation sole by alleging that the Debtor manages and administers the affairs of its parishes, schools, and cemeteries as divisions. In fact, the statutory provisions governing a corporation sole are entirely consistent with the Complaint.

The Committee similarly does not dispute the statutory rights and protections of unincorporated associations, only the Defendants' contention that the Division Defendants *are* unincorporated associations. The Complaint alleges detailed facts to support that the Division Defendants are operating divisions of the Debtor as described and cited above. These facts are accepted as true on a motion to dismiss. The provisions of the Corporation Code do not render the Complaint vague, nor do they support dismissal of the Complaint.

### 3. The Second Cause of Action States a Claim for Declaratory Relief and Is Not Subject to Dismissal for Failure to Analyze the Elements of a Trust Relationship.

The Cemeteries, the Archdiocese, Three High Schools, and Sacred Heart each argue that the Complaint fails to state sufficient facts to support the Second Cause of Action for declaratory relief that assets allegedly held in trust by the Debtor for the benefit of its operating divisions are estate assets. The arguments similarly lack merit.

Under California law, the burden of proving the elements of a trust rest upon the person asserting its existence.[36] There is a presumption that the holder of legal title also holds full beneficial title to property, which can only be rebutted by clear and convincing evidence.[37]

The Complaint states sufficient facts to describe a ripe and actual controversy arising from the Debtor's assertion of a trust by its Statement of Financial Affairs (SOFA), Docket Number 373, in favor of its own divisions. *See* Compl. ¶82 and Docket Number 373 at p. 11. To date, the Debtor has identified real and personal property to which it holds legal title, yet claims that the beneficial interests are held by the Division Defendants. The purported trust assets include real

---

incorporation that did not conform to statute); *County of San Luis Obispo v. Ashurst,* 146 Cal. App. 3d 380, 385 (1983) (affirming denial of writ of execution against church assets to satisfy obligations of the individual holding office of the corporation sole).

[36] *See, e.g., Cecconi v. Cecconi (In re Cecconi),* 366 B.R. 83, 115 (Bankr. N.D. Cal. 2007) (citing *Gomez v. Cecena,* 15 Cal. 2d 363 (1940)).

[37] *Id.* at 113-15*; see also* Cal. Evid. 662.

property used by the Vallombrosa Retreat Center, and cash and investment accounts used for the benefit of the specified entities. The Defendants bear the burden of demonstrating the alleged trust relationship and terms, not the Committee. An actual, substantial, and justiciable controversy exists between the Committee and the Defendants regarding ownership of the assets listed in the Debtor's SOFA (Compl. ¶83) because the Committee contends that if the assets are held for the benefit of the Division Defendants as operating divisions of the Debtor (as described throughout the Complaint), the assets are property of the estate.[38]

The Court should reject the Archdiocese's arguments that the Committee fails to identify specific trust documents, trust terms or restrictions, or explain the legal basis for eliminating a trust relationship as it pertains to an express trust, resulting trust, or constructive trust [ECF 14 at pp. 23:12-17 and 24:12-25:4] – because the Committee disputes that a valid trust exists. The Debtor (and beneficiaries) must establish the alleged trust in contravention of how legal title is held. Based on the Debtor's allegations of one or more trusts in the SOFA, the Debtor must be in possession and control of relevant evidence to advise the parties what kind of trust the Debtor alleges, as well as the specific assets at issue. Under the circumstances pleaded, the Debtor unquestionably is on notice of the declaratory relief claim and basis for the Committee's dispute that a valid trust exists in favor of the Division Defendants.

The Court should similarly reject Sacred Heart's argument that the Committee has failed to plead details regarding the Schwab Account identified on the SOFA. [ECF 18-1 at pp. 20:18-21:10]. The Committee's allegations of ownership come directly from the SOFA and statements by the Debtor that it owns "only legal title" and equitable interests are "held in trust" for the benefit of the entities listed. Presumably, these allegations are not naked unsupported conclusions and discovery will elicit the basis for the Debtor's statements.

Finally, the Court should reject the Cemeteries' argument that the Second Cause of Action does not apply to them because the claim only describes assets held in trust for others. [ECF 12-1

---

[38] Under California law, a debtor cannot hold assets in trust for itself to the exclusion of creditors. *Cutter v. Seror (In re Cutter),* 398 B.R. 6, 20-21 (B.A.P. 9th Cir. 2008) (citing *In re Moses,* 167 F. 3d 470 (9th Cir. 1999) and Cal. Probate Code) (spendthrift provisions are invalid if the settlor is also a beneficiary).

at p. 7:17-22]. The Complaint expressly identifies the Debtor's SOFA as the basis for a dispute regarding real and personal property "collectively valued in excess of $65 million 'in trust' for the benefit of another entity." (Compl. ¶82). That schedule lists Holy Cross Cemetery in Colma as the alleged beneficiary of a Charles Schwab account valued at approximately $6.5 million. A dispute exists regarding the ownership of the account and whether it is held in trust, for which the Committee seeks declaratory relief. No additional facts or pleading are necessary to place the Cemeteries or other defendants on notice of the Committee's claim and why it seeks relief.

**E.     The Complaint Is Not Subject to Dismissal as a "Disguised" Claim for Substantive Consolidation, Involuntary Bankruptcy, or Other Inapplicable Claims.**

The Defendants each argue that the Complaint should be dismissed because it is a "disguised" claim for substantive consolidation, fraudulent transfers, alter ego, involuntary bankruptcy, or other inapplicable claims. The Complaint properly pleads claims for declaratory relief and nothing else.

The Archdiocese itself acknowledges that substantive consolidation enables a court to disregard *separate non-debtor corporations* to satisfy debts of a related corporation. [ECF 14 at p. 8]. The controlling case, *In re Bonham,* 229 F.3d 750, 759 (9th Cir. 2000), involved an individual debtor who operated a failed Ponzi scheme through two separate corporations. The Committee does not seek substantive consolidation relief against legally separate entities. The Parishes and other defendants are not separately incorporated (Compl. ¶31); they are not registered as separate entities (Compl. ¶27); they are identified in audited financials as "operating divisions of the Corporation Sole," (Compl. ¶28); and they are treated as divisions that are part of the Debtor (e.g., Compl. ¶¶ 29, 32, 34, 41-50, 52-58). The Committee disputes that the Division Defendants are legally separate from the Debtor, and is *not* seeking to bring the Division Defendants into the bankruptcy *if* the Court finds that they are actually separate non-debtor entities.

Similarly, the Committee is not pursuing an involuntary petition against the Division Defendants because the Committee contends that the Division Defendants are already *part of* the Debtor and are not legally separate entities. Bankruptcy Code section 303(a) limits the

commencement of an involuntary case against non-profit corporations.[39]  Section 303(a) is not applicable to the Complaint because the Division Defendants are divisions of the one existing Debtor.  Contrary to Sacred Heart's reasoning, a group tax exemption does not mean that Sacred Heart is a legally separate non-profit entity under state law [ECF 18-1 at p. 21:20-24], nor is it a basis for dismissal of the Complaint as an involuntary petition.  Sacred Heart argues that the Complaint raises the "precise issue" presented in the *Archdiocese of St. Paul*. [p. 22:3-19].  However, the structure of the debtor in the *Archdiocese of St. Paul* was substantially different from San Francisco and reveals why the committee sought and was denied substantive consolidation: the "targeted" affiliates were each separately incorporated under Minnesota law.  There was no dispute as to the entities' corporate status or non-profit status.  *Archdiocese of St. Paul*, 888 F.3d at 948-49 and 953 (entities were incorporated under Mn. Stat. sections 315.15 and 315.16 governing parish & diocesan corporations).  Other cases cited by the Defendants also involved legally separate nondebtors.[40]

In this case, the Division Defendants are not separately incorporated. (Compl. ¶31).  The Committee does not seek substantive consolidation by its Complaint, nor does the Complaint contravene authority governing involuntary petitions against non-profit corporations, because the Division Defendants are simply operating divisions of the Debtor.  The issue of whether they are operating divisions, as opposed to separately cognizable legal entities, is squarely before the Court based on the Complaint's properly pleaded declaratory relief claims.  The Court should reject the Defendants' wholesale efforts to dismiss the Complaint based on faulty claims that the Defendants themselves are proposing.

---

[39] *See, e.g., Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis (In re Archdiocese of St. Paul & Minneapolis)*, 888 F. 3d 944, 952 (8th Cir. 2018). Determination of whether an entity is a non-profit organization is based on state law by reference to the charter of the entity in question. *Id.; see also* 2 Collier on Bankruptcy ¶303.05 ("Determination of eligibility is generally made by reference to the charter of the person in question, looking at state law power and characteristics.").

[40] *Strassburger v. Quinn (In re Grace Christian Ministries, Inc.),* 287 B.R. 352, 355 (Bankr. W.D. Pa. 2002) (cited by the Three High Schools and Sacred Heart; granting dismissal of involuntary petition against church corporation); *Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.),* 141 B.R. 869, 872 (E.D. Pa. 1992) (cited by Archdiocese; denying substantive consolidation of debtor and nondebtor non-religious corporation without reference to §303(a)).

4896-9140-7192.8 05068.002

1   Finally, the Committee has not alleged asset transfers, nor is it seeking an alter ego remedy

2   by the Complaint. The Committee has stated facts demonstrating the need for declaratory relief to

3   confirm that the Division Defendants are not legally separate entities from the Debtor.

4                                    **V. CONCLUSION**

5        The Defendants' attacks on the Complaint as lacking sufficient facts to support numerous

6   claims never pleaded (in addition to those pleaded) are a giant distraction and cause for delay. The

7   Committee has properly stated facts to support claims for declaratory relief that the Division

8   Defendants are divisions of the Debtor, whose operations and assets are part of the bankruptcy.

9   The issue is unquestionably disputed and essential to administration of the bankruptcy estate. The

10  Defendants may substantively dispute the allegations, but at this stage of the pleadings the

11  Defendants do not suffer any confusion regarding the claims at issue or the facts supporting the

12  claims.

13       For the foregoing reasons, the Court should enter an order denying each of the Defendants'

14  motions to dismiss, and require answers to the Complaint within fourteen (14) days.

15

16  Dated: August 14, 2025            **PACHULSKI STANG ZIEHL & JONES LLP**

17

18                        By   _/s/ Gail S. Greenwood_
                                 James I. Stang
19                               Gail S. Greenwood
                                 Brittany M. Michael
20

21                               Attorneys for the Official Committee of
                                 Unsecured Creditors
22

23

24

25

26

27

28

4896-9140-7192.8 05068.002