1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD WILLOUGHBY
3      PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA  95814
   Telephone:     (916) 329-7400
5  Facsimile:     (916) 329-7435
   Email:         ppascuzzi@ffwplaw.com
6                 jrios@ffwplaw.com
                  tphinney@ffwplaw.com
7
8  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
9    A Limited Liability Partnership
     Including Professional Corporations
10 ORI KATZ, State Bar No. 209561          AMANDA L. COTTRELL, Cal. Bar No. 360215
   ALAN H. MARTIN, State Bar No. 132301    2200 Ross Avenue, 20th Floor
11 JEANNIE KIM, State Bar No. 270713       Dallas, Texas 75201
   Four Embarcadero Center, 17th Floor     Telephone:     (469) 391-7400
12 San Francisco, California 94111-4109     Facsimile:     (469) 391-7401
   Telephone:     (415) 434-9100           Email:         acottrell@sheppardmullin.com
13 Facsimile:     (415) 434-3947
   Email:         okatz@sheppardmullin.com
14                amartin@sheppardmullin.com
                  jekim@sheppardmullin.com
15 Attorneys for The Roman Catholic Archbishop of
   San Francisco
16

17                    UNITED STATES BANKRUPTCY COURT

18        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

19 | In re                                | Case No. 23-30564
20 | The Roman Catholic Archbishop of San | Chapter 11
   | Francisco,
21 |
   |          Debtor and
22 |          Debtor in Possession.
   |
23 | The Official Committee of Unsecured   | Adv No. 25-03021
   | Creditors,
24 |                                       | **THE ROMAN CATHOLIC ARCHBISHOP
   |          Plaintiff,                    | OF SAN FRANCISCO'S REPLY IN
25 |                                       | SUPPORT OF MOTION TO DISMISS
   |          v.                            | ADVERSARY COMPLAINT**
26 |
   | The Roman Catholic Archbishop of San  | Judge:   Hon. Dennis Montali
27 | Francisco; Parishes Listed in Exhibit A; | Date:    August 28, 2025
   | Holy Cross Catholic Cemeteries; Saint  | Time:    1:30 p.m.
28 | Mary Magdalene Catholic Cemetery; Mt.  | Place:   Zoom.Gov

| | |
|---|---|
| 1 | Olivet Cemetery; Our Lady of Pillar Cemetery; Tomales Catholic Cemetery; |
| 2 | Archbishop Riordan High School; Sacred Heart Cathedral Preparatory; Marin |
| 3 | Catholic High School; Junipero Serra High School; Vallombrosa Retreat Center; and |
| 4 | Serra Clergy House, |
| 5 | Defendants, |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 4

      A.    The Committee Does Not Plead a Cognizable Declaratory Judgment Claim ........... 4

            1.    The Committee's Standalone Declaratory Relief Claims Fail Under Ninth Circuit Precedent ....................................................................... 4

            2.    Real Property Title Disputes Cannot Be Determined By A Standalone Declaratory Judgment Claim .................................................. 5

            3.    The Committee Seeks Impermissible Adjudication of Historical Formation Rather Than Future Rights ..................................................... 7

            4.    Committee's Two-Party Insurance Contract Disputes Are Inapplicable ...... 7

            5.    Bankruptcy Jurisdiction Does Not Eliminate the Requirement for Substantive Claims ............................................................................. 9

      B.    The Committee Legal Theory of "Operating Division" Is Contrary to California State Law Regarding Property Rights and Interests .................................... 9

      C.    Prior Attempts at a Similar Legal Theory Prove the Committee Cannot Cure the Complaint's Defects Under Controlling California and Ninth Circuit Law ........... 11

      D.    The Committee's Reliance on *Albers v. Church of the Nazarene* and Diocesan Cases Based on Non-California Law Demonstrates the Legal Inconsistency in the Committee's Approach ....................................................................... 13

      E.    The Committee's Adversary Proceeding is Counterproductive and Threatens the Reorganization Process ......................................................................... 15

      F.    Serra Clergy House ......................................................................................... 16

III.  CONCLUSION ................................................................................................... 17

SMRH:4903-7585-3663                                                                    DEBTOR'S REPLY ON MOTION TO DISMISS

Page(s)

Cases

*Accord Reger v. Essex Bank (In re Landes)*
    627 B.R. 144 (E.D. Cal. 2021) ........................................................................... 7

*Albers v. Church of the Nazarene*
    698 F. 2d 852 (7th Cir. 1983) ...................................................................... 13, 14

*In re Archbishop of Agana*
    No. 19-00001, 2022 WL 3093715 (Bankr. D. Guam Mar. 17, 2022) ................................ 3, 15

*In re Archdiocese of Milwaukee*
    483 B.R. 693, 695 (Bankr. E.D. Wis. 2012) ................................................ 12-13

*In re Archdiocese of Saint Paul & Minneapolis*
    888 F.3d 944 (8th Cir. 2018) ........................................................................ 12

*AuCopious, LLC v. SPG14, LLC*
    No. 1:22-CV-01073 JLT CDB, 2025 WL 1370232 (E.D. Cal. May 12, 2025) ....................... 4

*Azod v. Robinson*
    No. 22-56186, 2024 WL 163371 (9th Cir. Jan. 16, 2024), *cert. denied*, 145 S. Ct. 282
    (2024) .......................................................................................... 1

*In re Bohrer*
    628 B.R. 676 (Bankr. S.D. Cal. 2021) ............................................................. 2

*Bos. Glob. Constr. Co. v. Rahim*
    No. 4:22-cv-05855-YGR2025, WL 147917 (N.D. Cal. Apr. 11, 2025) ................................. 4

*In re Catholic Bishop of San Diego*
    Case No. 24-02202-CL11, ECF No. 851 (Aug. 14, 2025) ........................................ 16

*City of Reno v. Netflix, Inc.*
    52 F.4th 874 (9th Cir. 2022) .................................................................. 3, 4, 5

*Comm. of Tort Litigants v. The Catholic Diocese of Spokane (In re Catholic Bishop of Spokane)*
    No. CV-05-0274-JLQ, 2006 WL 211792 (E.D. Wash. Jan. 24, 2006) ............................... 12

*In re Comm. of Unsecured Creditors v. The Archdiocese of Santa Fe (In re Archdiocese of Santa Fe)*
    Case No. 20-01059, ECF No. 1 (Bankr. D.N.M. Oct. 16, 2020) ............................... 13

*Cunningham v. Ashley*
    45 Cal. 485 (Cal. 1873*)* ...................................................................... 10

*Deutsche Bank National Trust Company v. McGurk*
  206 Cal. App. 4th 201 (Cal. Ct. App. 2012) ....................................................... 10

*Dragnea v. Dragnea (In re Dragnea)*
  609 B.R. 239 (Bankr. E.D. Cal. 2019) .................................................................. 9

*Flores v. EMC Mortg. Co.*
  997 F. Supp. 2d 1088 (E.D. Cal. 2014) ............................................................ 2, 5

*Gigax v. Ralston Purina Co.*
  136 Cal. App. 3d 591 (1982) .......................................................................... 2, 10

*Gilbert v. Clear Recon Corp.*
  No. 2:24-CV-02308-DAD-CKD (PS), 2024 WL 4382754 (E.D. Cal. Oct. 3, 2024) .............. 6

*In re Gilmore*
  165 F.3d 915 (9th Cir. 1998) .............................................................................. 10

*Glue–Fold, Inc. v. Slautterback Corp.*
  82 Cal.App.4th 1018] (2000) ................................................................................ 2

*In re Gold Strike Heights Homeowners Ass'n*
  No. 15-90811-E-7, 2017 WL 1417189 (Bankr. E.D. Cal. Apr. 20, 2017) .............................. 7

*Hamilton v. State Farm Fire & Cas. Co.*
  270 F.3d 778 (9th Cir. 2001) ................................................................................ 1

*Kingsway Cap. Partners, LLC v. Caliber Home Loans, Inc.*
  No. 16-CV-04798-PJH, 2017 WL 713430 (N.D. Cal. Feb. 23, 2017) .................................. 4

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
  312 U.S. 270 (1941) ........................................................................................... 8

*In re Moore*
  2019 WL 11718805 (C.D. Cal. Apr. 30, 2019) ...................................................... 9

*Principal Life Ins. Co. v. Robinson*
  394 F.3d 665 (9th Cir. 2005) ............................................................................... 8

*Reger v. Essex Bank (In re Landes)*
  627 B.R. 144 (E.D. Cal. 2021) ............................................................................ 7

*Reynolds v. Amundsen*
  No. 1:15-CV-00185-MR-DCK, 2016 WL 11482357 (W.D.N.C. Feb. 1, 2016) ..................... 6

*In re Roman Catholic Bishop of Great Falls*
  584 B.R. 335 (Bankr. D. Mont. 2018) ................................................................. 12

*Shroyer v. New Cingular Wireless Servs., Inc.*
  622 F.3d 1035 (9th Cir. 2010) .............................................................................. 4

*Steinhart v. County of Los Angeles*
    47 Cal. 4th 1298 (Cal. 2010) ................................................................................... 11

*Takushi v. BAC Home Loans Servicing, LP*
    No. CIV. 11-00189 LEK, 2011 WL 2610208 (D. Haw. July 1, 2011) ..................................... 6

*Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop
    of Portland)*
    335 B.R. 842 (Bankr. D. Or. 2005) ........................................................................... 15

*United States v. Real Property Located at 7700 Stein Way, Unit 132, Park City, Utah*
    127 F. App'x 262 (9th Cir. 2005) .............................................................................. 11

*Vosburg v. Cnty. of Fresno*
    54 Cal. App. 5th 439 (Cal. Ct. App. 2020) ................................................................ 14

*Wynn v. Toll Bros. AZ Constr., LLC*
    No. 2:09-CV-01587-RCJ, 2011 WL 13157057 (D. Ariz. May 23, 2011) ............................. 6


Statutes

28 U.S.C. § 2201 ................................................................................................................ 5

11 U.S.C. § 303 ............................................................................................................... 12

11 U.S.C. § 362 ................................................................................................................. 9

11 U.S.C. § 502 ................................................................................................................. 9

11 U.S.C. § 542 ................................................................................................................. 9

11 U.S.C. § 544 ...................................................................................................... 9, 11, 13

11 U.S.C. § 548 ................................................................................................................. 9

11 U.S.C. § 549 ................................................................................................................. 9

11 U.S.C. § 550 ................................................................................................................. 9

11 U.S.C. § 551 ................................................................................................................. 9

Cal. Civ. Proc. Code § 369.5 .......................................................................................... 14

Cal. Civ. Proc. Code § 760.010 ...................................................................................... 10

Cal. Civ. Proc. Code § 760.020 ...................................................................................... 10

Cal. Corp. Code § 18250 ................................................................................................. 14

SMRH:4903-7585-3663
DEBTOR'S REPLY ON MOTION TO DISMISS

Cal. Probate Code §§ 15000, *et seq*. ........................................................................................... 11

Other Authorities

Bankruptcy Rule 7001 ............................................................................................................... 5

Federal Rule Civil Procedure 12 ............................................................................................. 16

SMRH:4903-7585-3663

# I. INTRODUCTION

The Committee "pleads claims for declaratory relief **and nothing else**." Opp. at 32.

* * * * *

The Committee's Opposition reveals the breathtaking scope of what it explicitly disclaims, leaving this Court to wonder what viable claims, if any, remain. The Committee's own words demonstrate that virtually every meaningful form of bankruptcy relief was not pled, was not intended to be pled, and cannot now be a basis to prevent dismissal. All traditionally recognized claims to marshal assets of the Debtor's estate under Chapter 5 of the Bankruptcy Code (and any state equivalents) are affirmatively discarded and abandoned:

- **Substantive Consolidation**: "The Committee does not seek substantive consolidation relief against legally separate entities." Opp. at 32.

- **Involuntary Bankruptcy**: "[T]he Committee is not pursuing an involuntary petition against the Division Defendants because the Committee contends that the Division Defendants are already part of the Debtor and are not legally separate entities." Opp. at 32.

- **Alter Ego Claims**: "[N]or is it seeking an alter ego remedy by the Complaint." Opp. at 34.

- **Fraudulent Transfer Claims**: "Finally, the Committee has not alleged asset transfers…." Opp. at 34.

- **Pursuing Claims Belonging to the Debtor**: "[T]he Committee is not pursuing claims that belong to the Debtor, such as an avoidance claim or claim for breach of fiduciary duties owed to the estate." Opp. at 17. "Actions on behalf of the estate, belong to the estate. In contrast, nothing in the Declaratory Judgment Act or applicable statutes prohibits a declaratory relief action by the Committee on behalf of its creditor constituency." *Id.*

Having made these sweeping disclaimers, the Committee is judicially estopped from pursuing such relief by amendment later. Judicial estoppel precludes a party from "gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal citations omitted); *Azod v. Robinson*, No. 22-56186, 2024 WL 163371, at *1-2 (9th Cir. Jan. 16, 2024), *cert. denied*, 145 S. Ct. 282 (2024) (party was estopped from moving to dismiss on *forum non conveniens* grounds when the party previously asserted venue was proper in the Central

District when it benefited them and then disavowing that position when it did not). Should this proceeding advance to final judgment, the Committee has further accepted the preclusive effects of disavowing these claims.

"As an equitable remedy, declaratory relief is 'dependent upon a substantive basis for liability' and has 'no separate viability' if all other causes of action are barred." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111, 1128 (E.D. Cal. 2014) (granting motion to dismiss and quoting *Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3 (2000)). Moreover, declaratory relief is not an end run around the causes of action which the Committee seeks to avoid. *See id.* at 1112 (purported declaratory relief claim properly dismissed because it sought to "redress past alleged wrongs in connection with authority to foreclose on the property, not prospective wrongdoing" and no independent legal claim was stated given dismissal of all other claims); *In re Bohrer*, 628 B.R. 676, 691-92 (Bankr. S.D. Cal. 2021) (declaratory relief claim properly dismissed as "duplicative of the relief sought under another cause of action" noting requested declaration could not be made without court making finding debt was non-dischargeable in bankruptcy) (internal citations omitted).

The Committee's position also reveals a fundamental contradiction: it has sued these Non-Debtor Defendants as parties capable of being sued, served them with process, and demands they file answers—all while simultaneously arguing they "do not exist" as separate legal entities and asking this bankruptcy judge to declare it so.

First, the Committee seeks declarations regarding "unincorporated operating divisions" or "operating divisions" or an "unincorporated division" — terms that the Committee must admit "confer[] no particular legal qualities on a specific corporate or unincorporated organization." *Gigax v. Ralston Purina Co.*, 136 Cal. App. 3d 591, 601-02 (1982). Courts cannot issue meaningful declaratory relief about legally meaningless concepts. The term "division" could be a "department" part of a single business enterprise "or it could be a totally separate entity." *Id.* Under California law, "the term 'division' confers no particular legal qualities on a specific corporate or unincorporated organization." *Id.*

Second, controlling Ninth Circuit precedent establishes strict limitations on standalone declaratory relief actions. In *City of Reno v. Netflix*, the Ninth Circuit held that standalone declaratory relief is permissible only for defensive purposes to preempt anticipated litigation, not for offensive affirmative relief where no independent cause of action exists. 52 F.4th 874, 879 (9th Cir. 2022). The Committee's standalone action is purely offensive, seeking declarations about legal relationships arising under state law principles without any underlying contractual relationship or viable turnover or avoidance cause of action that would support such relief.

Insofar as the Committee argues that two other bankruptcy courts have granted summary judgment relief on "similar complaints" against unincorporated associations—that's misleading. Opp. at 1, 9. The complaints in the *Portland* and *Guam (Agana)* diocesan bankruptcies were filed in jurisdictions where the controlling state law did not allow "unincorporated" associations to hold property or sue/be sued in lawsuits. The California Corporate Code—passed by the State Legislature to be enforced by the state and federal courts in California—expressly recognizes the existence and powers of "unincorporated associations." This important matter of state law is decisional in this case—yet omitted from the Committee's response.

Otherwise, the Committee's reliance on other diocesan cases exposes an improper litigation strategy rather than supporting legal precedent. None of those cases involved pure standalone declaratory relief claims like the one here, and none proceeded to trial or resulted in a final, non-appealable judgment establishing the viability of such claims. Notably, the Committee fails to cite cases where courts have rejected these exact theories—such as *Milwaukee*, where the court denied authorization for declaratory judgment and substantive consolidation against parishes, finding that the committee failed to state a colorable claim. The Committee's approach amounts to a litigation strategy of repeated attempts to circumvent established pleading requirements until some court accepts their novel theory and here the Debtor's wholly meritless and unsupported claim for relief under Ninth Circuit or California state law. The Debtor's motion to dismiss should be granted.

# II.  ARGUMENT

## A.  The Committee Does Not Plead a Cognizable Declaratory Judgment Claim

The Committee's explicit disclaimer that it seeks "declaratory relief and nothing else," Opp. at 32, fatally undermines its claims and is contrary to well established precedent because the Declaratory Judgment Act requires an independent substantive cause of action to support declaratory relief. Courts repeatedly warn that "declaratory relief is not an independent cause of action, but a remedy that must be based upon some other viable legal claim." *Kingsway Cap. Partners, LLC v. Caliber Home Loans, Inc.*, No. 16-CV-04798-PJH, 2017 WL 713430, at *5 (N.D. Cal. Feb. 23, 2017) (citation omitted); *see, e.g., Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because we affirm the district court's dismissal of the fraud and unfair competition claims, we affirm the dismissal of the claims for declaratory relief on those claims.").

The Debtor's motion identified multiple potential substantive theories that could theoretically support the Committee's requested relief—including substantive consolidation, fraudulent transfer, alter ego, and turnover claims—the Committee's opposition has now clarified that *none* of these theories apply, leaving only standalone declaratory relief claims that cannot survive under controlling precedent.

### 1.  The Committee's Standalone Declaratory Relief Claims Fail Under Ninth Circuit Precedent

Where a plaintiff brings a standalone declaratory judgment suit, the Ninth Circuit has clearly explained that is permissible only if it is filed for the defensive purpose of preempting a future anticipated suit by the defendant. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022) ("A plaintiff's inability to rely on the Declaratory Judgment Act to obtain affirmative relief where no cause of action otherwise exists contrasts with the well-established availability of the Act for defensive use against anticipated claims."); *see also Bos. Glob. Constr. Co. v. Rahim*, No. 4:22-cv-05855-YGR2025, WL 147917 at *2 (N.D. Cal. Apr. 11, 2025) ("Under the Ninth Circuit's straightforward articulation of the scope of the Act, whether a plaintiff's standalone claim for declaratory relief can proceed, as a matter of law, hinges on whether the requested

declaration is for the defensive purpose of preempting a suit by defendant."). In *Netflix*, the Ninth Circuit held that "Reno's suit is offensive, not defensive, and Reno lacks an independent cause of action, so the Declaratory Judgment Act provides no basis for relief." 52 F.4th at 879.

The Committee correctly quotes 28 U.S.C. § 2201(a), which permits courts to declare rights "whether or not further relief is or could be sought," but this language assumes an existing controversy over legal rights or obligations. Opp. at 18. A court cannot declare rights in a vacuum; there must be some underlying legal relationship or potential cause of action that gives rise to those rights.

Procedural devices and rules, such as the Declaratory Judgment Act and Bankruptcy Rule 7001(i), contrary to the Committee's suggestion, Opp at 18, also cannot provide a substantive legal foundation for the Committee's requested relief. The Declaratory Judgment Act is "procedural only," and it is "not a theory of recovery." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (granting motion to dismiss) (internal quotations omitted). Similarly, Rule 7001(i) governs the procedure for seeking declaratory relief in bankruptcy; it does not eliminate the requirement that such relief be grounded in substantive legal claims as established by Ninth Circuit precedent.

The Committee's admission that it seeks only declaratory relief, combined with its express disclaimers of all substantive claims, requires dismissal of the Complaint.

## 2. Real Property Title Disputes Cannot Be Determined By A Standalone Declaratory Judgment Claim

The Committee's effort to use declaratory relief as a substitute for real property claims fails. Federal courts consistently recognize that declaratory relief is not an appropriate vehicle for resolving disputes fundamentally rooted in state real property law, particularly where adequate state law remedies exist.

The Eastern District of California recently dismissed declaratory relief claims in *AuCopious, LLC v. SPG14, LLC*, concluding that because "the dispute was between California landowners over California real property," the dispute did not arise under federal law. No. 1:22-CV-01073 JLT CDB, 2025 WL 1370232, at *2, *5-6 (E.D. Cal. May 12, 2025). The court

properly recognized that such disputes belong in state court under state law. Similarly, in *Reynolds v. Amundsen*, the court declined declaratory relief because the dispute concerned neighbors' real property rights that arose under state law rather than federal law. No. 1:15-CV-00185-MR-DCK, 2016 WL 11482357, at *1, *5 (W.D.N.C. Feb. 1, 2016).

More fundamentally, the Declaratory Judgment Act is not designed to provide alternative remedies where adequate state law procedures already exist. As the District of Arizona explained in *Wynn v. Toll Bros. AZ Constr., LLC*, declaratory relief is inappropriate where claimants can pursue a quiet title action, because the declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists. No. 2:09-CV-01587-RCJ, 2011 WL 13157057, at *3 (D. Ariz. May 23, 2011) (internal citations omitted). California's comprehensive quiet title statutes provide precisely such adequate remedies for resolving property ownership disputes.

Therefore, courts have consistently held that declaratory relief cannot circumvent the substantive requirements for establishing property rights. In *Takushi v. BAC Home Loans Servicing, LP*, the court dismissed declaratory relief claims seeking to establish property ownership, explaining that such claims fail when they seek to "establish that [plaintiff] 'is presently the owner of title to the subject property'" without meeting the elements of an underlying property claim. No. CIV. 11-00189 LEK, 2011 WL 2610208, at *8 (D. Haw. July 1, 2011) (vacated on other grounds). The Eastern District of California reached the same conclusion in *Gilbert v. Clear Recon Corp.*, holding that declaratory relief "does not constitute a real property claim" under California law because it would not "affect title to, or the right to possession of the real property at issue." No. 2:24-CV-02308-DAD-CKD (PS), 2024 WL 4382754, at *2-*3 (E.D. Cal. Oct. 3, 2024).

The Committee's attempt to recharacterize property ownership through declaratory relief—without pleading any substantive basis under state or federal law for altering title or possession—falls squarely within this prohibited category and must be dismissed.

### 3. The Committee Seeks Impermissible Adjudication of Historical Formation Rather Than Future Rights

The Committee challenges the historical formation and decades-long operational structure of religious entities—precisely the type of retrospective adjudication that declaratory relief cannot provide. *Accord Reger v. Essex Bank (In re Landes)*, 627 B.R. 144, 155-156 (E.D. Cal. 2021) (declaratory relief not appropriate because claim did not present a dispute regarding future rights or conduct. Instead, sought declaration of entitlement to specific funds from past transactions. The purpose of declaratory relief is to resolve actual, concrete disputes about future rights or obligations, so that parties can avoid potential injury or liability before acting.).

Here, the organizational structures the Committee challenges have existed for decades. These parishes, schools, and cemeteries have operated under established canonical and legal frameworks, entered into countless transactions, and developed extensive relationships with their communities—all based on their understood legal status.

Where all relevant transactions and events have already taken place and the parties' rights are fixed, the controversy is solely about adjudicating entitlement based on past conduct—not the proper subject of declaratory relief. *See also In re Gold Strike Heights Homeowners Ass'n*, No. 15-90811-E-7, 2017 WL 1417189, at *8 (Bankr. E.D. Cal. Apr. 20, 2017) (no actual controversy because "the bell has rung" – parties were fighting over the effect of the foreclosure sales not whether the right to conduct such sales sometime in the future exists. The resolution of who owns the property is the subject of the quiet title claim, not the proper subject of a request for a declaration of rights so the parties can avoid taking action in violation of existing agreements and obligations).

### 4. Committee's Two-Party Insurance Contract Disputes Are Inapplicable

The Committee's reliance on insurance coverage declaratory judgment cases fundamentally mischaracterizes the legal foundation required for standalone declaratory relief. These cases involve parties with existing contractual relationships seeking interpretation of specific written policy terms—a scenario wholly absent here. In insurance declaratory judgment actions, the plaintiff insurance company or insured party seeks judicial interpretation of an existing

insurance contract's coverage provisions. The underlying substantive claim is the contractual dispute itself: whether coverage exists, the scope of coverage, or the interpretation of specific policy language.

The Committee's citation to *Maryland Casualty Co. v. Pacific Coal & Oil Co.* illustrates this mismatch. 312 U.S. 270, 274 (1941). That case involved an insurance company seeking a declaration that it was not obligated to indemnify its insured in a pending state court automobile accident case. *Id.* at 271-72. The Supreme Court found an actual controversy because the parties had adverse legal interests arising from their existing insurance contract and a concrete dispute over the insurer's indemnification obligations. *Id*. at 274. The Court emphasized that the difference between an abstract question and a justiciable controversy depends on whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273.

Here, no such contractual relationship exists. The Committee seeks to eliminate the legal existence of over 100 religious entities without identifying any specific contractual dispute, policy interpretation question, or concrete legal obligation at issue between the parties.

The Committee's reliance on *Principal Life Ins. Co. v. Robinson* is equally misplaced. 394 F.3d 665, 671-72 (9th Cir. 2005). That case involved a ground lessee seeking declaratory judgment regarding rent calculation under an existing lease agreement—again, a concrete contractual dispute between parties with defined legal relationships. *Id*. at 668. The Ninth Circuit explicitly limited its holding to "*private party contract disputes*" and applied traditional ripeness standards to determine whether there was "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 671 (emphasis added). The case provides no support for the Committee's novel theory that courts can issue to a plaintiff an affirmative, standalone declaratory relief about a novel issue of law supposedly eliminating the legal existence of over 100 entities absent any underlying substantive dispute or cognizable legal claim.

### 5. Bankruptcy Jurisdiction Does Not Eliminate the Requirement for Substantive Claims

The Committee's suggestion (Opp. at 13 n.7) that jurisdiction and declaratory relief are proper if property of the bankruptcy estate is at issue misstates the distinct factual and legal issues in their cited case. The claims in *In re Moore* were all based on and arose from a written trust, and the 16 substantive claims seeking a determination of property rights, did so based on recognized Bankruptcy procedures: claims seeking to avoid property transfers (under Bankruptcy Code §§ 544, 548, 549, 550, and 551); to turnover property (under Bankruptcy Code § 542); to disallow a claim (Bankruptcy Code § 502); and violation of the automatic stay (Bankruptcy Code § 362). *In re Moore,* 2019 WL 11718805, *2-*4 (C.D. Cal. Apr. 30, 2019). This was not – like here – a standalone declaratory relief action. The partial summary judgment decision at issue revolved around the fourteenth claim (to turnover property under Bankruptcy Code § 542(a)), where summary judgment was entered after the specific written trust relating to the property at issue was evaluated, under state law and Bankruptcy Code § 542(a), and then based on the determination of that substantive claim, judgment was likewise entered on the accounting claim and the declaratory relief claim (both of which required a determination of the substantive Bankruptcy claim). *Id.* at *5-*7. *In re Moore* does not assist the Committee because the Committee has specifically disclaimed any underlying, substantive claims, and there is nothing to support their standalone declaratory relief request.[1]

### B. The Committee Legal Theory of "Operating Division" Is Contrary to California State Law Regarding Property Rights and Interests

Even assuming *arguendo* that standalone declaratory relief could proceed without an underlying substantive claim (it cannot), the Committee's requested declarations fail because they

---

[1] The Committee's reliance on *Dragnea v. Dragnea (In re Dragnea)*, 609 B.R. 239 (Bankr. E.D. Cal. 2019), is also misplaced. Opp. at 12-13. That case involved declaratory relief regarding the scope of a debtor's discharge—a concrete legal determination arising from completed bankruptcy proceedings with consenting parties. Here, the Committee seeks no discharge-related relief or any other concrete bankruptcy determination on a plan or settlement agreement, but rather abstract pronouncements about entity status divorced from any substantive legal dispute.

seek legal conclusions that have no meaning or effect under California law. When stripped of all substantive claims, the Committee's complaint reduces to a request that this Court issue empty declarations about fictional legal categories that cannot affect property rights, entity status, or any other cognizable legal relationship.

The Committee's legal theory for the First Claim is based solely on a declaration (bereft of legal meaning) that the Non-Debtor Defendants are variously "operating divisions" or "unincorporated operating divisions" or an "unincorporated division." Complt., ¶ 80, Prayer. The Committee must admit, as it cites no contradictory authority, that each of these terms "confers no particular legal qualities" on an entity whether it is a "specific corporate or *unincorporated organization*." *Gigax v. Ralston Purina Co.*, 136 Cal. App. 3d 591, 601-02 (1982) (emphasis added). Despite the Committee's oft-repeated refrain that the Non-Debtor Defendants are "unincorporated" *Gigax* is unambiguous – the entity's **corporate status makes no difference** – the term has no legal meaning. Because the Committee's requested term is devoid of legal significance, it cannot form the basis of a justiciable controversy, let alone a declaratory relief claim.

The Committee relies on these meaningless terms as the necessary and only prerequisite (part a) for their follow-on requested declaration (part b) that "all assets" are property of the bankruptcy estate. Complt., ¶ 80, Prayer. This is a factual and legal non-sequitur. Under established law, the assignment of a legally irrelevant label, cannot serve as the operative mechanism to magically extinguish, eliminate, transfer, reassign, or even determine in any way the property rights and interests of the Non-Debtor Defendants. Instead, California law, usually via a state court action, determines real and personal property ownership, property interest, as well as legal and equitable title. *See Cunningham v. Ashley*, 45 Cal. 485, 494 (Cal. 1873*)* (real property ownership generally based on title under California law)*;* Cal. Civ. Proc. Code §§ 760.010(a), 760.020(a) (quiet title action required to determine legal or equitable right, title, estate, lien, or interest in real property); *Deutsche Bank National Trust Company v. McGurk*, 206 Cal. App. 4th 201, 210 (Cal. Ct. App. 2012) (same); *In re Gilmore*, 165 F.3d 915, 915 (9th Cir. 1998) (state law determines ownership of personal property). The Committee's attempt to treat the terms

"operating divisions" or "unincorporated operating divisions" or an "unincorporated division" as some sort of magical incantation that if repeated often enough or applied as a label to Non-Debtor Defendants then – presto – the mere term will somehow strip them of all rights and interest in "all" their "assets." There is no such legal shortcut. Should the Committee seek to adjudicate the property rights and interests of the Non-Debtor Defendants, it must do so through application of California state law, with the attendant due process and Constitutional safeguards, in the California Superior Courts.

The Complaint's Second Claim fails for the same reasons because there is no legal basis or substantive claim that underlies the requested declaration that "any assets . . . allegedly held for the benefit of the operating divisions" are "property of the bankruptcy estate." Complt., ¶ 84. Again, the term "operating divisions" has no legal meaning and thus cannot effect a dissolution or termination of a trust, nor can it determine equitable and legal interests in trust property simply by saying "operating divisions" instead of seeking legal redress in California Superior Courts under California law. *See, e.g.*, Cal. Probate Code §§ 15000, *et seq.* (California law governs creation, validity, administration, and judicial proceedings relating to trusts); *United States v. Real Property Located at 7700 Stein Way, Unit 132, Park City, Utah*, 127 F. App'x 262, 264 (9th Cir. 2005) (state law governs beneficial ownership in trust assets); *Steinhart v. County of Los Angeles*, 47 Cal. 4th 1298, 1319 (Cal. 2010) (trust beneficiaries hold the equitable or beneficial interest in trust property and are regarded as real owners while trustee is mere depository for property) (internal citations omitted).

**C.    Prior Attempts at a Similar Legal Theory Prove the Committee Cannot Cure the Complaint's Defects Under Controlling California and Ninth Circuit Law**

The Committee's citations to prior diocesan cases underscore why its complaint must be dismissed. Each cited case involved concrete substantive claims that are entirely absent from this proceeding.

**Montana Distinguished**. The Montana case demonstrates the procedural and substantive deficiencies here. The committee first obtained court authorization before filing suit and based their declaratory relief claims in concrete avoidance actions under Bankruptcy Code § 544(a)(3)

11

and quiet title claims. *See In re Roman Catholic Bishop of Great Falls*, 584 B.R. 335, 337 n.3 (Bankr. D. Mont. 2018). The declaratory relief was ancillary to these substantive claims, not standalone.

Here, the Committee filed this adversary proceeding without any demand letter or court authorization, violating the very procedural requirements it has previously recognized. More fundamentally, the Committee explicitly disclaims the substantive claims that supported the Montana action: "The Committee does not seek substantive consolidation relief," "nor is it seeking an alter ego remedy," and "the Committee has not alleged asset transfers." Opp. at 32-34.

**Spokane Distinguished**. The Committee's reliance on Spokane is equally unavailing. *Comm. of Tort Litigants v. The Catholic Diocese of Spokane (In re Catholic Bishop of Spokane)*, No. CV-05-0274-JLQ, 2006 WL 211792, at *3 (E.D. Wash. Jan. 24, 2006). There, the committee filed a "Complaint for Declaratory Relief and Substantive Consolidation" that included both theories and relied upon the same factual allegations for concrete substantive claims. *Comm. of Tort Litigants v. The Catholic Diocese of Spokane*, Case No. 05-80038-PCW, ECF No. 1 (Bankr. E.D. Wash. Feb. 4, 2005)*. The Spokane court emphasized that the proceedings were "core proceedings, similar to an action construed to be a turnover action" because determining estate assets was essential for plan confirmation. 2006 WL 211792, at *3 (Jan. 24, 2006).

**St. Paul & Minneapolis Distinguished.** The Committee concedes this was a *substantive consolidation* case (Opp. at 33) brought under a similar theory. The Committee attempts to distance itself by not mentioning that the substantive consolidation motion was denied. In addition to finding that the 200+ non-debtors were separate legal entities, the Court also found that the religious organization and non-profit status of the non-debtors under state law meant they could not be forced into involuntary bankruptcy and were protected by Bankruptcy Code § 303(a). *In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 953 (8th Cir. 2018).

**The Committee Omits Milwaukee**. Tellingly, the Committee fails to cite *In re Archdiocese of Milwaukee*, where the committee sought authorization to file an adversary proceeding for declaratory judgment and substantive consolidation against parishes. 483 B.R. 693, 695-96 (Bankr. E.D. Wis. 2012). The court denied the motion after finding that the committee

12

1   "failed to state a colorable claim for substantive consolidation" or "for the alter ego doctrine." *Id.*

2   at 700. This case directly contradicts the Committee's theory and demonstrates that courts will not

3   permit the very relief sought here when proper legal standards are applied.

4           **The Committee Omits Santa Fe**. Similarly, the Committee fails to cite *In re Comm. of*

5   *Unsecured Creditors v. The Archdiocese of Santa Fe (In re Archdiocese of Santa Fe)*, Case No.

6   20-01059, ECF No. 1 (Bankr. D.N.M. Oct. 16, 2020), where once again, the committee sought

7   authorization to file an adversary proceeding. This was a narrow complaint, which selected 10

8   allegedly representative parishes, and unlike here, asserted substantive claims to avoid property

9   transfers under Bankruptcy Code § 544 and to quiet title.

10          These cases confirm that declaratory relief in the bankruptcy context requires underlying

11  substantive claims—exactly what is missing from this complaint.[2]

12  **D.      The Committee's Reliance on *Albers v. Church of the Nazarene* and Diocesan Cases
13          Based on Non-California Law Demonstrates the Legal Inconsistency in the
            Committee's Approach**

14          The Committee directs this Court to inapposite, out-of-circuit cases it contends will answer

15  "this question and only this question: Are the Division Defendants operating divisions of the

16  Debtor, as the Committee contends, or are they legally separate unincorporated associations, as the

17  Archdiocese claims?" Opp. at 9. The Committee's selective quotation from their primary case that

18  purportedly explains the "consequences of finding that the nondebtor defendants are divisions

19  (*Albers v. Church of the Nazarene,* 698 F. 2d 852, 857 (7th Cir. 1983); Opp. at 9) exemplifies their

20  flawed approach to established law.

21          *Albers* involved a personal injury lawsuit in the District Court against a church and its day

22  care center in *Illinois*, arising from a child's accident on church premises that occurred when she

23  put sand in a pail, hung it on a tree branch, and the tree branch came down causing an eye injury.

24  698 F.2d 852, 857 (7th Cir. 1983). On appeal, the plaintiff complained that the district court

25  refused to submit a separate verdict form for each defendant, which confused the jury. *Id.* The

26  _____

27  [2] Each case discussed in this Section C was filed by the same law firm now representing this
    Committee.

28

combined jury verdict form required the jury to find both defendants were negligent (because they failed to prevent the child from hanging her pail on a tree branch) to award damages. *Id.* The Seventh Circuit rejected plaintiff's argument and explained that any jury confusion about the two defendants' liability was the plaintiff's own fault for naming the day care center "as an additional defendant." *Id.* In the tort context, the court held that suing the day care center separately was "both pointless" and "improper" because "the Church is fully liable for the negligence *of its staff* [at the day care center], whether or not that staff has an organizational title." *Id.* (emphasis added).

*Albers* was concerned with jury trial issues and tort liability – not determining ownership of real or personal property or even a declaratory judgment. Thus, the Committee's chosen block quote referencing a hypothetical unincorporated division of General Motors and observing that "an unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part," (Opp. at 9) is not only dicta but omits a key qualifier. The Committee omitted the sentence immediately preceding the quote, which qualified and limited quote to situations where a party created additional defendants (such as the day care center) by naming organizations that "*have no separate legal identity*." *Id.* (emphasis added).

Here, that is not comparable to the Non-Debtor Defendants which are unincorporated associations that have a separate legal identity under *California* law with the attendant rights to own and transfer real and personal property, take property under a will, and to sue and be sued. *See, e.g., Vosburg v. Cnty. of Fresno*, 54 Cal. App. 5th 439, 452 (Cal. Ct. App. 2020) (citations omitted) (*see also* Cal. Corp. Code § 18250 (stating an unincorporated association is liable for its own acts or omissions and for the acts and omissions of their directors, agents, offices, employees, acting within their scope); Cal. Civ. Proc. Code § 369.5(a) (an unincorporated association may sue or be sued in the name it has assumed or by which it is known). The Committee thus conspicuously omits the critical legal principle underlying their cited *Albers* block quote and the factual context that undermines their entire theory.

Likewise, the Committee's citation (Opp. at 9-10) to bankruptcy courts that found schools and parishes are not separate legal entities because as unincorporated associations under *Oregon state law* and *Guam* (an unincorporated territory) *territorial law* they cannot hold title to real

property and/or sue and be sued is in stark contrast to California law permitting them to do so. *Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland)*, 335 B.R. 842, 866 (Bankr. D. Or. 2005) (Oregon state law does not "authorize unincorporated parishes to sue and be sued or to hold and dispose of real property" nor does Oregon law recognize unincorporated religious associations as "legal persons that may take title to real property in their names."); *In re Archbishop of Agana*, No. 19-00001, 2022 WL 3093715, at *4, n. 13 (Bankr. D. Guam Mar. 17, 2022) (referring to prior partial summary judgment motion ECF No. 164 that determined this issue); *In re Archbishop of Agana*, No. 19-00001, ECF No. 164, pp. 10-13 (Bankr. D. Guam July 16, 2021) (partial summary judgment decision finding parishes and schools were not independent or separate legal persons because even if they are unincorporated associations under Guam law unincorporated associations cannot sue and be sued and noting same is true under Oregon law). Accordingly, neither case advances the Committee's theory.

## E. The Committee's Adversary Proceeding is Counterproductive and Threatens the Reorganization Process

The Committee's adversary proceeding is not only legally deficient but also strategically counterproductive to the reorganization process. This 'single enterprise' litigation strategy represents the same failed playbook that committees have repeatedly attempted in other diocesan cases, with consistently poor results and massive resource drain. In *St. Paul & Minneapolis*, after years of expensive litigation, the Eighth Circuit definitively rejected similar theories. These cases demonstrate that the Committee's approach leads to protracted, resource-draining litigation that ultimately fails and delays meaningful resolution.

The parties here are currently engaged in intensive mediation efforts that have progressed to eight in-person sessions, with dozens of additional conferences between formal sessions and the next in-person session scheduled for September 3, 2025. This adversary proceeding creates an unnecessary distraction that threatens to derail these productive settlement discussions and forces the estate to expend significant resources that could otherwise be devoted to a global settlement.

The Committee's broad-brush approach of challenging over 100 separate entities simultaneously multiplies complexity and cost exponentially, diverting resources from resolving actual claims while stipulated stay relief is being sought in several pending cases and trials proceed in San Francisco Superior Court. The Debtor cannot allow this case to become mired in the same multi-year litigation quagmire that has characterized other diocesan cases. Settlement data points and paths for these cases are readily known and achievable here. Rather than allowing this case to devolve into a litigation morass that benefits no one (except counsel), while actual creditors wait for resolution, this Court should dismiss the Complaint and direct the parties to focus their efforts on the productive mediation process already underway. *See In re Catholic Bishop of San Diego*, Case No. 24-02202-CL11, ECF No. 851 (Aug. 14, 2025) (denying stay relief for 16 survivor cases to proceed to trial finding relief would "interfere" with the case, be a "huge disruption for Debtor in time and focus" and "inevitably a distraction from mediation.").

**F.     Serra Clergy House**

Serra Clergy House was named as a defendant in the complaint and is only named in the First Claim for Relief seeking declaratory judgment. Serra Clergy House has never been served and has not appeared in this adversary proceeding.

The Debtor does not contest the Committee's allegation in the First Claim for Relief that Serra Clergy House is not a separate legal entity from the Debtor.  Otherwise, the Debtor has preserved its claims and defenses in this lawsuit through its Rule 12 motion to dismiss presently before the Court.

The Debtor offered to enter into a stipulation with the Committee acknowledging only that Serra Clergy House is not a separate legal entity while preserving all of Debtor's rights regarding any property ownership issues and without making any other admissions, determinations, or precedent regarding the legal status of any other defendants or waive any of the Debtor's arguments or defenses in this proceeding.

The Debtor does not agree that the Committee's phrases "unincorporated division" or "operating division" has any legal meaning and will not stipulate that it does.

To the extent property is held by non-parties to this lawsuit such as the Real Property Support Corporation, that is clearly not before the Court in this lawsuit as pleaded. The Debtor will not litigate that or any other unpled issues or claims by consent.

### III.  CONCLUSION

The Committee's strategic disclaimers have eliminated every legal theory that could support their requested relief. What remains cannot survive Rule 12(b)(6). For the reasons set forth above and in Debtor's motion, the Debtor respectfully requests that this Court enter an order dismissing the Complaint and each claim therein.

Dated:  August 21, 2025

FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By    _____
                  */s/ Paul J. Pascuzzi*
              PAUL J. PASCUZZI
              JASON E. RIOS
              THOMAS R. PHINNEY

Attorneys for The Roman Catholic Archbishop of San Francisco

Dated:  August 21, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
                  */s/ Ori Katz*
              ORI KATZ
              AMANDA L. COTTRELL

Attorneys for The Roman Catholic Archbishop of San Francisco