Robert M. Charles, Jr. (*pro hac vice*)
Robert.Charles@wbd-us.com
Katie Rios (*pro hac vice*)
Katie.Rios@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Tel:    520.629.4427

Attorneys for Parishes of the Roman Catholic
Archdiocese of San Francisco

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor. | Case No. 23-30564<br>Chapter 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; et al,<br><br>Defendants. | Adv. Proc. 25-03021<br><br>**Reply Memorandum in Support of The Parishes' Motion to Dismiss & Joinder**<br><br><u>Hearing</u><br>Date: August 28, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Dennis Montali<br>Location: Via Zoom |

Defendants "Parishes listed in Exhibit A" (the "Parishes") sought dismissal of the amended Adversary Complaint for Declaratory Relief (the "Complaint") [Adv. Dkt. 10] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because, among other things, The Official Committee of Unsecured Creditors (the "Committee") did not seek leave to bring an adversary proceeding, among other reasons. The Committee says it may bring suit with impunity; this is wrong.

Additionally, the Parishes explained that there are no specific allegations in the vague Complaint supporting actual causes of actions against the Parishes. In response, the Committee says their theory is that the Parishes do not exist, and so no specific allegations or legal theories are required. This is simply not a theory upon which relief may be granted.

The Committee's response declines to offer any California authority for the request for a naked *ipse dixit* determination that all assets of every Defendant belongs to the Archdiocese as debtor in possession. No elements of a cause of action and no particular factual allegation are offered for the proposition that all assets of every Defendant are property of the estate. In claiming this is solely a declaratory relief action, the Committee provides no notice to, among others, any (much less all) of Defendants' creditors that Defendants' property will be transmuted into Archdiocese property.

The Complaint should be dismissed.

### A. The Committee Presently Lacks Standing To Bring An Adversary Proceeding.

It is widely understood that before a creditors' committee tees off litigation that seeks to exercise control over estate property—and cost the estate dearly for litigation expense—the committee must seek this Court's prior approval for the suit, with the predicate of prior demand on the Debtor unjustifiably refused.[1] The Committee asserts this is only in the context of a derivative suit,[2] or a bankruptcy action.[3] The Committee says *Morpheus Lights* "confirm[s] that a committee has standing to bring an equitable subordination claim."[4] Like much of the Committee's brief, the citation has nothing to do with the question of whether prior approval of suit is or should be required. The authorities are not so limited as the Committee would like, and should not be.

The Committee claims authority to commence suit under § 1103(c)(5), which provides only a general grant of authority "to perform such other services as are in the interests of those represented." Even if the Committee's authority derives under this section, prior court approval is consistent with this grant as it allows the court to determine if the services proposed would

---

[1] *E.g., In re Roman Cath. Bishop of Great Falls, Mont.*, 584 B.R. 335, 338 (Bankr. D. Mont. 2018).
[2] *In re First Cap. Holdings Corp.*, 146 B.R. 7, 11 (Bankr. C.D. Cal. 1992).
[3] *In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997) (stay violation action with consent of debtor).
[4] Response at 9, line 11; citing *In re Morpheus Lights, Inc.*, 228 B.R. 449, 454 (Bankr. N.D. Cal. 1998).

benefit the estate, which the cases consistently require.[5] Prior court approval allows the court to consider the propriety of an exercise of control over estate property, rather than allowing the Committee to make its own unilateral determination.

The BAP's opinion in *Curry and Sorensen* persuasively explains why prior court involvement "promotes the fair and orderly administration of the bankruptcy estate."[6] And although unlikely, the Second Circuit's *Adelphia* opinion demonstrates another benefit of Court approval, termination of the approval to transfer claims asserted by a committee to a plan trust.[7]

The Committee's action, to the extent it has a basis, is to seek a determination of the scope of Debtor's interest in property. A determination that all property of any Defendant, however acquired, titled, or controlled, is property of the estate is at its heart a proceeding within the scope of Rule 7001(b) "to determine the validity, priority, or extent of … [any] other interest in property." The committee in *Great Falls, Montana*, knew and asked for permission to bring such a suit, and this Court should require and examine the same request here, if the Committee chooses to pick this legal theory.[8]

The prior approval process here need not be futile. For example, in *Archdiocese of Santa Fe* the creditors' committee (with the same lead counsel as here) sought and was granted leave to sue a few parishes and certain trusts in order to test their theories.[9] And the case settled consensually without every potential defendant in the Archdiocese having its assets put to the test and its limited cash resources put to the torch.

Despite the importance of such procedural safeguards, the Committee now complains that dismissal of the Complaint "would be a waste of time and resources." Even so, the blame for this waste cannot be laid at the feet of Defendants. The Committee decided to expend the time and

---

[5] *E.g., In re Gibson Grp., Inc.*, 66 F.3d 1436, 1438 (6th Cir. 1995); *In re Racing Servs., Inc.*, 540 F.3d 892, 901 (8th Cir. 2008).
[6] *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986).
[7] *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 425 (2d Cir. 2008) ("The bankruptcy court not only had the authority to confer derivative standing upon the Equity Committee, it also had the authority to—and did—effectively withdraw that standing when it concluded that the Equity Committee's role was no longer in the best interests of the estate, and to transfer the derivative claims to a litigation trust.").
[8] *In re Roman Cath. Bishop of Great Falls, Mont.*, 584 B.R. at 338.
[9] *In re Roman Cath. Church of Archdiocese of Santa Fe*, 621 B.R. 502 (Bankr. D.N.M. 2020).

resources of the Debtor[10] and each Defendant without a hint of Court approval. Defendants cannot be charged with causing that expense.

The Complaint should be dismissed without prejudice, the Committee's professionals' bills in connection with the Complaint disallowed, and a reasonable discussion had on the timing and scope of the proceedings raising the issues the Committee seeks to bring forth.

**B.      The Redactions Are A Real Problem.**

As noted, the filed Complaint contains redactions, and there is no unredacted Complaint publicly filed. The Committee asserts the unredacted Complaint is filed at Bk. Dkt. 1180. The problem is that this is a document filed under seal. Although undersigned counsel has confidentially received an unredacted copy, no one can fairly read the redacted copy[11] to understand its allegations, and counsel may not even disclose the unredacted copy to the defendant Parishes or reference its allegations in open court.

The Committee may not pawn this issue off on Defendants. The Committee chose to file a complaint full of redactions because it chose to include confidential information in the document. It could have filed the complaint without reference to confidential information. It could also have obtained a Court order addressing the issue. Instead, it chose to leave the problem to be dealt with by Defendants and ultimately the Court.

**C.      The Complaint's Vagueness Demonstrates It Is Incomprehensible.**

At its heart, the Committee's position is that the Parishes do not legally exist. The Committee states, "There are no CVA cases pending against parishes precisely because . . . they 'do not exist' separate from the Debtor." [Bk. Dkt. 20 at p. 2, lines 18-20.] The statement is in fact false. As alleged in the Archdiocese's papers in Adv. No. 25-03019, explaining that as a predicate for the request for extension of the stay, numerous civil actions against Debtor, mostly consolidated into *In re Northern California Clergy Cases*, JCCP No. 5108 in the Superior Court of California, County of Alameda, name Parishes as named defendants. Without this predicate,

---

[10] In July alone, Debtor's counsel Sheppard Mullin billed almost $112,000 in connection with the Complaint and motions to dismiss. [Bk. Dkt. 1295 at p. 15 of 21.] In July, lead Committee counsel billed $95,252.50 for Bankruptcy Litigation, which is substantially comprised of litigation over this action, often called the "enterprise complaint". [Bk. Dkt. 1279 at p. 17 of 41.]
[11] Adv. Dkt. 1.

the Archdiocese would not have sought to extend the stay to the Parishes. Moreover, the Committee itself named the Parishes as defendants in this proceeding, implicitly acknowledging the ability of the Parishes to be sued as independent entities.

Despite the breadth of the Committee's claims, the Complaint tells the Parishes nothing about what the legal basis for this conclusion is—whether California law, Bankruptcy Code, federal common law or otherwise. Without knowing the legal basis for the conclusion, the Complaint has no need to allege any required elements of a cause of action. Moreover, without the need to allege any required elements, the Committee need not address the facts required of the elements. This easily leads to the "mud on the wall" approach the Complaint demonstrates. Without required elements or an indication of factual predicates, the Parishes must plead and defend against a conclusion, forced to prove a negative. Without required elements or an indication of factual predicates, the Committee offers the Court the naked opportunity to transmute the Parishes and their property into the Debtor and property of the estate without any required proof. If the Court likes the conclusion and accepts it, the matter is concluded. Respectfully, *ipse dixit* is a poor rule for judicial decision making.

The analogy of a creditor seeking to collect from an unincorporated division of the defendant suggests this cause of action could have been framed as a demand by the Committee that Debtor seek to recover estate property from the Parishes under § 544(a) strong arm or § 542 turnover. In the former, the Committee would have to prove that under applicable California law, the creditor of the Archdiocese could recover its claim from the Parish. In the latter, the Committee would have to prove that a particular asset or group of assets was property of the estate. Under California law, the Committee could also assert some sort of alter ego theory. Literally any cause of action would impose by its nature the discipline of legal elements of the action, required proof, and give the Court a roadmap for resolution of the dispute.

The Court need not direct the Committee to a particular theory or theory. The Court may and should direct the Committee to articulate one or more theories upon which relief can be granted, rather than to articulate a hoped-for conclusion and leave it to the Court to decide what, if any, facts and analysis are required.

### D. The Complaint's Shotgun Approach

If there are 88 Parishes, each with its own real property (held in trust via RPSC), its own local bank and CASC accounts, with trade and other creditors, one might suppose that the Complaint gives some thought to the impact of a declaration that all assets of the Parishes are property of the estate on, for example, Parish secured or unsecured creditors. The Complaint ignores those parties. Take the example of a Parish secured creditor, holding a lien on Parish property pursuant to a secured loan. There is no explanation in the Complaint how the simplest notions of due process are satisfied by a request for a Bankruptcy Court judgment that the Parish borrower's property, which property is collateral for that loan, is really property of the Archdiocese estate, without notice to the creditor.

The Committee's rationale for ignoring this semblance of due process is why it disavows the Ninth Circuit authority on substantive consolidation.[12] If this is a substantive consolidation proceeding, the case law lays out specific procedural safeguards, including notice to affected creditors[13] and burdens of proof. Nor is the substantive consolidation doctrine is limited to organizations registered under applicable state law,[14] contrary to the Committee's assertion. For example, the *Madoff* Ponzi was liquidated under the Securities Investor Protection Act and substantively consolidated with an individual bankruptcy estate. The Committee would prefer no substantive theory, particularly not substantive consolidation, and thus no notice to anyone whose rights will be affected by the proposed judgment.

Section 303(a) limits an involuntary petition to persons that are not, among other things, "a corporation that is not a moneyed, business, or commercial corporation." An unincorporated association is a corporation under § 101(9)(A)(iv), and thus a "person" under § 101(41). Additionally, § 303(a) would impose the burden on the Committee to negate the status of the

---

[12] *In re Bonham*, 229 F.3d 750 (9th Cir. 2000).
[13] *In re Mihranian*, 937 F.3d 1214, 1218 (9th Cir. 2019) ("A creditor must be given notice of the motion for substantive consolidation and an opportunity to be heard in order to meet its burden of overcoming the presumption.").
[14] *In re Clark*, 692 F. App'x 946, 947 (9th Cir. 2017) (substantive consolidation of individual, LLC, and trust); see *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014) (avoidance action premised on alter ego theory and substantive consolidation of individual with entity); *In re Amco Ins.*, 444 F.3d 690 (5th Cir. 2006) (reversing *nunc pro tunc* substantive consolidation of individual and corporation).

Parishes as non-profit entities.[15] Similarly to its position on substantive consolidation, the Committee runs away from the prescription of § 303(a) against an involuntary petition for a nonprofit like a parish with the blithe assertion that since the parish does not exist, but is part of the Archdiocese, so the Archdiocese's voluntary bankruptcy petition is the relevant act. As the Committee knows, a bankruptcy filing requires approval of the Holy See. No one suggests that anyone, much less the Holy See, approved a voluntary bankruptcy filing by any, much less all, of the Parishes. The Archbishop did not and could not on the Archbishop's authority file a bankruptcy petition. This is an attempt at an illegal involuntary bankruptcy.

### E. Joinder

The Parishes reiterates its joinder in the additional arguments made by other Defendants as if fully stated herein, including:

- The Court lacks subject matter to issue a declaratory judgment as the Complaint is pled.
- The Court cannot adjudicate property ownership rights and interests on the basis of ecclesiastical principles or practice but must defer to the highest ecclesiastical authority that has decided the point.

Additionally, where a co-defendant's pleading makes the same arguments this pleading does, the Parishes join in that pleading's explanation of the issue and the defendants' arguments.

### Conclusion

The Complaint should be dismissed.

Dated: August 21, 2025

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Robert M. Charles, Jr.*
Robert M. Charles, Jr.
Katie Rios
*Attorneys for Parishes of the Roman Catholic Archdiocese of San Francisco*

---

[15] *In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 948 (8th Cir. 2018) ("The Committee failed to plausibly allege sufficient facts to negate the non-profit non-debtor status of the Targeted Entities.").

<u>Certificate of Service</u>

I, Renee L. Creswell, declare:

I am employed by Womble Bond Dickinson (US) LLP in Pima County, Arizona. I am over the age of 18 years and not a party to the within entitled cause. My business address is One South Church Avenue, Suite 2000, Tucson, AZ 85701.

On August 21, 2025, I served a true and correct copy of the following document(s):

Reply Memorandum in Support of The Parishes' Motion to Dismiss & Joinder

IN THE MANNER STATED BELOW:

SERVED VIA CM/ECF

| Attorneys for Creditors Committee<br>Pachulski, Stang, Ziehl & Jones LLP<br>James I. Stang, Esq.<br>Email: jstang@pszjlaw.com<br>Brittany Mitchell Michael, Esq<br>Email: bmichael@pszjlaw.com<br>Michael L. Cohen, Esq.<br>mcohen@pszjlaw.com<br>Gail S. Greenwood, Esq.<br>Email: ggreenwood@pszjlaw.com | Attorneys for Roman Catholic Archbishop of San Francisco, Vallombrosa Retreat Center and Serra Clergy House<br>Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP<br>Paul Pascuzzi, Esq.<br>Email: ppascuzzi@ffwplaw.com<br><br>Sheppard Mullin<br>Ori Katz, Esq.<br>Email: okatz@sheppardmullin.com |
|---|---|
| Attorneys for Catholic Cemeteries of the Archdiocese of San Francisco<br>Wilke Fleury<br>Daniel Egan, Esq.<br>Email: degan@wilkefleury.com | Attorney for Sacred Heart Cathedral Preparatory<br>McDermott Will & Schulte LLP<br>Jason D. Strabo, Esq.<br>Email: jstrabo@mwe.com |
| Attorneys for Archbishop Riordan High School, Marin Catholic High School and Junipero Serra High School<br>Julie H. Rome-Banks<br>Binder Malter Harris<br> & Rome-Banks LLP<br>Email: julie@bindermalter.com | |

4902-1046-3841.2

- 8 -

REPLY ON MOTION TO DISMISS
25-03021

4902-1046-3841, v. 2

SERVED VIA ELECTRONIC MAIL:

| Attorney for Sacred Heart Cathedral Preparatory<br>McDermott Will & Emery<br>Lisa A. Linsky, Esq.<br>Email: llinsky@mwe.com | Attorneys for Roman Catholic Archbishop of San Francisco, Vallombrosa Retreat Center and Serra Clergy House<br>Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP<br>Paul Pascuzzi, Esq.<br>Email: ppascuzzi@ffwplaw.com<br><br>Sheppard Mullin<br>Jennifer Nassiri, Esq.<br>Amanda Cottrell, Esq.<br>Email: jnassiri@sheppardmullin.com<br>Email: acottrell@sheppardmullin.com<br><br>Weintraub Tobin<br>Paul Gaspari, Esq.<br>Email: pgaspari@weintraub.com |
|---|---|
| Attorneys for Catholic Cemeteries of the Archdiocese of San Francisco<br>Wilke Fleury<br>Steven Williamson, Esq.<br>Email: swilliamson@wilkefleury.com | Attorneys for Archbishop Riordan High School, Marin Catholic High School and Junipero Serra High School<br>Julie H. Rome-Banks<br>Reno R.F. Fernandez<br>Binder Malter Harris & Rome-Banks LLP<br>Email: rob@bindermalter.com<br>Email: julie@bindermalter.com<br>Email: reno@bindermalter.com |

Executed on August 21, 2025., at Tucson, Arizona. I certify under penalty of perjury that the foregoing is true and correct.

                                           */s/ Renee L. Creswell*
                                           Renee L. Creswell