PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ORI KATZ, State Bar No. 209561
ALAN H. MARTIN, State Bar No. 132301
JEANNIE KIM, State Bar No. 270713
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: okatz@sheppardmullin.com
amartin@sheppardmullin.com
jekim@sheppardmullin.com

AMANDA L. COTTRELL, Cal. Bar No. 360215
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7401
Email: acottrell@sheppardmullin.com

Attorneys for The Roman Catholic Archbishop of San Francisco

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re

The Roman Catholic Archbishop of San Francisco,

Debtor and Debtor in Possession.

The Official Committee of Unsecured Creditors,

Plaintiff,

Case No. 23-30564

Chapter 11

Adv No. 25-03021

**DECLARATION OF FATHER PATRICK SUMMERHAYS IN SUPPORT OF THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO'S OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES BASED ON CANON LAW**

Judge: Hon. Dennis Montali
Date: January 15, 2026
Time: 1:30 p.m.
Place: Zoom.Gov

v.

The Roman Catholic Archbishop of San Francisco; Parishes Listed in Exhibit A; Holy Cross Catholic Cemeteries; Saint Mary Magdalene Catholic Cemetery; Mt. Olivet Cemetery; Our Lady of Pillar Cemetery; Tomales Catholic Cemetery; Archbishop Riordan High School; Sacred Heart Cathedral Preparatory; Marin Catholic High School; Junipero Serra High School; Vallombrosa Retreat Center; and Serra Clergy House,

Defendants,

I Patrick Summerhays, declare as follows:

1. I am the Vicar General and Moderator of the Curia for The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Debtor").

2. This declaration is made in support of the *Debtor's Opposition to the Official Committee of Unsecured Creditors' Motion for Partial Summary Judgment on Affirmative Defenses Based on Canon Law* (the "Motion"). I give capitalized terms not defined here the same meaning given to them in the Opposition to the Motion.

3. The matters stated herein are true and correct and are within my personal knowledge or information provided to me by other attorney, employees, or representatives of the Debtor, and if called upon to testify as a witness, I could and would testify competently thereto.

**Education and Experience**

4. In 1995, I received a Bachelor of Arts degree in Philosophy with a minor in Business Administration from the University of San Francisco. In 1998, I obtained a Masters in Business Administration, in Finance and Banking from the University of San Francisco in 1998. In 2008, I completed a certification program and qualified to sit for the Certified Financial Planners (CFP) Board Exam. In 2009, I took the exam and passed.

5. From 2010 to 2015, I was a Seminarian at St. Patrick's Seminary and University in Menlo Park, California. St. Patrick's Seminary is a Roman Catholic undergraduate and graduate seminary, which is governed by the Debtor and other sponsoring dioceses. St. Patrick's Seminary is accredited as a graduate educational institute by the Western Association of Schools and Colleges (WSCUC). I received the following degrees: Bachelor of Sacred Theology (S.T.B.), a Master of Arts (MA) in Theology, and a Master of Divinity (MDiv).

6. After attending St. Patrick's Seminary, I was ordained on June 6, 2015, as a Roman Catholic Priest. After my ordination, I began my priestly ministry at St. Cecilia Catholic Church in San Francisco and spent the next three years as a Parochial Vicar in the San Francisco Bay Area.

7. From 2016 to 2020, I attended the Licentiate program for Canon Law (J.C.L.) at The Catholic University of America, in Washington D.C. The degrees I obtained at St. Patrick's

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 3 of 103

Seminary (STB, M.Div., MA in Theology) were required prerequisites for the J.C.L. program. The J.C.L.is an advanced graduate degree that involves the comprehensive study of the whole corpus of Roman Catholic church law (Canon Law), not only in terms of its theological, philosophical, and historical background but also the methodology and practice of scholarly scientific research necessary for a professional canonists. The J.C.L. qualifies those who hold the degree to undertake the investigation of canonical questions in curial, tribunal, and similar practice, and to explain and demonstrate those findings in written opinions and briefs. I obtained my J.C.L. degree in 2020.

8. I then obtained a Masters of Science in Ecclesial Administration and Management from the University of St. Thomas in Houston, Texas, in July 2021.

9. In May 2020, I became the full-time Assistant Vicar for Administration and Moderator of the Curia for the Debtor. In January 2021, I became the Vicar General and Moderator of the Curia for the Debtor and continue to hold that position today.

**The Role of the Code of Canon Law**

10. The Code of Canon Law is the fundamental collection of internal regulations for the Roman Catholic Church (the "Church"). It is the oldest continuously functioning legal system in the world, originating nearly 2000 years ago with Church disciplines, evolving through Church councils, and later being systematized into a single collection in the 12th century. The Church's laws, regulations, norms, and guidelines were codified and officially published in 1917, with the most recent restatement and publication as the Code of Canon Law in 1983.

11. The Code of Canon Law is binding on the universal Catholic Church, (i.e., throughout the world) and is promulgated by the Holy Father, also known as the Pope. It is binding on the national Church, Roman Catholic Clergy, local churches, organizations, and the faithful (including parishioners).

12. The Code of Canon Law is the Church's internal regulatory system – a collection of rules, regulations and norms that govern all aspects of the Church. It identifies the internal political structure of the Church, the duties, responsibilities and qualifications for offices and positions in the Church, procedural and criminal laws for settling disputes and according due

process. While the Code of Canon Law does contain individual laws or canons that are related (directly or indirectly) to theological or religious concepts, the Code of Canon Law is not a collection of religious beliefs or a guide for worship.

13. Its breadth of coverage is evident from its organization into seven books, which are broadly described as follows:

- Book I. General Norms (Canons 1-203), sets out principles for interpreting and applying laws and also defines juridic persons, governance power, and ecclesiastical offices;

- Book II. The People of God (Canons 204-746), sets out the rights and duties of the faithful, the hierarchical Church from the Holy See to the local parish, and institutes and societies of consecrated and apostolic life;

- Book III. The Teaching Function of the Church (Canons 747-833), details ministry, preaching the word of God, catechetical instruction, missionary actions, Catholic education (schools, universities, and ecclesiastical universities), communication, books, and the profession of faith;

- Book IV. The Sanctifying Office of the Church (Canons 834–1258), explains the sacraments, acts of divine worship, sacred times, and sacred places dedicated for worship or burials of the faithful;

- Book V. The Temporal Goods of the Church (Canons 1259-1310), explains methods by which juridic persons acquire assets, administer assets, and enter into contracts including those relating to alienation of assets;

- Book VI. Penal Sanctions in the Church (Cannons 1311-1399), details offenses, punishments, and penalties; and

- Book VII. Processes (Cannons 1400-1752), contains the Church's legal procedure, including trial, special processes, penal processes, and procedures for hierarchical recourse.

**Code of Canon Law and the Debtor**

14. The Code of Canon Law details all the requirements, procedures, and norms that govern the office of Bishops, Diocesan Bishops, and Archbishops. Once appointed diocesan bishops or archbishops are "constituted pastors in the Church, so that they are teachers of doctrine, priests of sacred worship, and ministers of governance" (Canon 375, § 1) and must govern their particular church "with legislative, executive, and judicial power according to the norm of law".

(Canon 391 §1). The Debtor can exercise power either personally or through vicars general as allowed under Canon Law. (Canon 391, § 2).

15. The office I hold, Vicar General for the Debtor, is likewise mandated by Canon Law. The Debtor must appoint a vicar general to assist him in the governance of the whole diocese. (Canon 475, § 1). As Vicar General, Canon Law gives my office the same executive power as the Debtor to undertake all administrative acts, unless the Debtor has reserved a particular act. (Canon 479, § 1). All such duties that I undertake as Vicar General must not be contrary to the intention and mind of the Debtor. (Canon 480).

**Other Juridic Persons – Parishes, High Schools, Cemeteries**

16. The Debtor, consistent with Canon Law, oversees a particular territory and all the faithful living therein – here that territory if the Archdiocese of San Francisco. (Canon 372, §1). That territory, the Archdiocese of San Francisco, is likewise required to be divided into distinct parts or parishes. (Canon 374, §1).

17. A parish is a community of the faithful constituted in a particular church, that is entrusted to a pastor, whose appointment and duties are governed by Canon Law. (Canon 515, §1). Each parish is a separate juridic person. (Canons 116, 515, §3). None of the parishes have filed for bankruptcy protection in the above-captioned matter.

18. There are over 88 parishes scattered throughout the territorial jurisdiction of the Debtor. None of them have filed for bankruptcy protection in this court. Each parish exists and represents a distinct, unique ecclesial community and congregation of the faithful. Consistent with Canon Law, the pastor for each parish is responsible for teaching, sanctifying and governing its faithful. (Canon 519). The pastor is required by Canon Law to gather the faithful, instruct them in the word of God, including giving a homily on Sundays and other holy days. (Canon 528). As a practical matter, each parish is a separate community that gathers at least each Sunday for the celebration of the Holy Eucharist, they observe the liturgical calendar, and can engage with the word of God through study, proclamation, and preaching of scripture. Likewise, per Canon Law, each separate parish community may participate in the sacraments – functions that are entrusted to the pastor – including baptism, marriage, confirmation, anointing the sick, and performing funeral

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 6 of 103

rites. (Canon 530). The pastor is required to keep accurate records of sacraments administered. (Canon 535). Each parish is required to have a finance council to assist the pastor in administering the assets of the parish according to Canon Law. (Canon 537).

19. Schools are separate juridic persons, under their sponsoring institution. Canon Law directs the faithful to hold schools in esteem and to foster, assist, and attend Catholic schools. (Canons 796-799). A Catholic School is one established by an ecclesiastical authority and is recognized through a written document, which is grounded in principles of Catholic doctrine. (Canons 800-803). Schools have autonomy for their internal direction even though the Archbishop has the ability to watch over schools. (Canon 806, § 1). Four high schools, with different student bodies, in different locations are operating under Canon Law. None of them have filed for bankruptcy protection in this court.

20. Cemeteries are holy places and are governed by norms and Canon Law. (Canon 1243). Canon Law requires that cemeteries be established where the deceased members of the faithful and their graves can be blessed. (Canon 1240). Parishes and other juridic persons can have their own cemeteries. (Canon 1241). None of the cemeteries named in the above-captioned matter have filed for bankruptcy protection in this court.

**Juridic Persons – Management and Administration of Assets**

21. The Church is hierarchical and just as the Church itself can acquire temporal goods, so too can other juridic persons. (Canon 1259). For example, on the diocesan level, Canon Law requires the diocese to collect goods or offerings for the benefit of the clergy and those in need. (Canon 1274).

22. At all levels of the Church, regardless of the ownership of property, it must be administered carefully in accordance with Canon Law. (Canon 1276). Canon Law provides direction and processes to ensure vigilant administration of assets, like a good householder or shepherd. (Canons 1276-1287). In the case of a parish, the pastor is the direct administrator of parish property. (Canon 1279, § 1). The Roman Pontiff, as the leader of the Church, is the supreme indirect administrator and steward of all assets. (Canon 1273). The Debtor similarly

administers the property of the corporation sole, just as the pastor does for his parish. (Canon 1279).

23. Even if held by another individual, the property is owned by that juridic person who acquired such property. (Canon 1256). Personal and real property of the non-debtor defendants, named here as defendant parishes, cemeteries, high schools, and Vallombrosa, is held by two separate, non-profit religious organizations, which in turn are also bound by Canon Law. Those corporations are The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation ("CASC"), and The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation ("RPSC"). Both are incorporated under California law as non-profit religious corporations. CASC holds cash and investment funds for the benefit of certain non-debtor defendants, and RPSC holds real property for the benefit of certain non-debtor defendants. Both CASC's and RPSC's Articles of Incorporation and Bylaws specifically incorporate Canon Law.

24. A true and correct copy of CASC's Articles of Incorporation are attached to this declaration as **Exhibit 1**. A true and correct copy of CASC's Bylaws are attached to this declaration as **Exhibit 2**. A true and correct copy of RPSC's Articles of Incorporation are attached to this declaration as **Exhibit 3**. A true and correct copy of RPSC's Bylaws are attached to this declaration as **Exhibit 4**.

25. Each administrator of Church assets, including the Debtor, parish pastors, CASC, and RPSC, must ensure that the property of each juridic person maintains any restrictions imposed by a founder, donor, or other, that the property is "usefully set aside for the purposes" of the separate juridic person, such as a parish. (Canon 1276).

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 8 of 103

26. A true and correct copy of excerpts from the Code of Canon Law for each of the Canons cited herein is attached to this declaration as **Exhibit 5**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of December 2025, at San Francisco, California.

DocuSigned by:
Rev. Patrick Summerhays
4B8D6CFC7BE2431...

Rev. Patrick Summerhays, J.C.L.

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 9 of 103

**Exhibit 1**



3046158

# State of California
Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of 4 page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.

**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

SEP 15 2007

Debra Bowen

DEBRA BOWEN
Secretary of State

3046158

ENDORSED - FILED
In the office of the Secretary of State
of the State of California

SEP 1 0 2007

# ARTICLES OF INCORPORATION
# OF
# THE ARCHDIOCESE OF SAN FRANCISCO PARISH, SCHOOL AND CEMETERY JURIDIC PERSONS CAPITAL ASSETS SUPPORT CORPORATION

I.

The name of this corporation is The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation.

II.

This corporation is a religious corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law exclusively for religious purposes.

III.

This corporation is organized exclusively for religious purposes within the meaning of Internal Revenue Code Section 501(c)(3), including the corresponding section of any future federal internal revenue law ("IRC"), and the canon law of the Roman Catholic Church. Notwithstanding any other provision of these articles, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the purposes of this corporation, and this corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under IRC Section 501(c)(3), or (b) by a corporation, contributions to which are deductible under IRC Section 170(c)(2), or (c) by an entity subject to the Code

of Canon Law of the Roman Catholic Church or other applicable dispositions of canon law.

IV.

This corporation shall be supervised or controlled in connection with The Roman Catholic Archbishop of San Francisco, A Corporation Sole, as such relationship is defined for purposes of IRC Section 509(a)(3)(B)(ii) and the treasury regulations promulgated thereunder, and in accordance with the canon law of the Roman Catholic Church. Specifically, the following shall apply:

A. At no time shall a majority of the members of the Board of Directors of this corporation be "disqualified persons" as such term is defined for purposes of IRC Section 509(a)(3)(C) (other than those persons allowed under Section 509(a)(3)(C)); and

B. At no time may one or more "disqualified persons," as such term is defined for purposes of IRC Section 509(a)(3)(C), have the power to veto any action to be taken by this corporation.

V.

This corporation is organized, and at all times hereafter shall be operated exclusively to support, benefit, and carry out the purposes (within the meaning of IRC Section 509(a)(3)(B)(ii)) of The Roman Catholic Archbishop of San Francisco, A Corporation Sole, and specifically for the purpose of advancing the mission of those Parish, School and Cemetery Juridic Persons, duly established under the canon law of the Roman Catholic Church, that are, pursuant to the canon law of the Roman Catholic Church, governed by the Archbishop of The Roman Catholic Archdiocese of San Francisco, and operated civilly by The Roman Catholic Archbishop of San Francisco, A Corporation

Sole. This corporation shall not operate to support or benefit any organization other than The Roman Catholic Archbishop of San Francisco, A Corporation Sole, for the purposes stated herein and in accordance with the canon law of the Roman Catholic Church.

VI.

The name and address of this corporation's initial agent for service of process is: Mr. Jack M. Hammel, One Peter Yorke Way, San Francisco, California 94109.

VII.

(a) No substantial part of the activities of this corporation shall consist of lobbying or propaganda, or otherwise attempting to influence legislation; this corporation shall not participate or intervene, including publishing or distributing statements, in any political campaign on behalf of or in opposition to any candidate for public office.

(b) All corporate property is irrevocably dedicated to the purposes set forth in Article III and will be owned and administered in accordance with the provisions of the canon law of the Roman Catholic Church. No part of any net earnings shall inure to the benefit of any of its directors, trustees, officers, members, or to individuals.

(c) On the winding up and dissolution of this corporation, after paying or adequately providing for the debts, obligations, and liabilities of this corporation, the remaining assets of this corporation shall be distributed to The Roman Catholic Archbishop of San Francisco, A Corporation Sole, or, if The Roman Catholic Archbishop of San Francisco, A Corporation Sole, is not then a corporation sole exempt from taxation under IRC Section 501(c)(3), to such other form of religious organization which qualifies for tax-

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 14 of 103

exempt status under IRC Section 501(c)(3), all in accordance with applicable provisions of the Code of Canon Law and other applicable laws of the Roman Catholic Church.

VIII.

This corporation shall have one (1) member: The individual then serving in the ecclesiastical office of Archbishop of the Roman Catholic Archdiocese of San Francisco pursuant to appointment to such office by the Supreme Pontiff (Pope) of the Roman Catholic Church (or in the event of an incapacity or vacancy in the office of Archbishop, the individual then serving as canonical Administrator of said Archdiocese duly appointed by ecclesiastical authority).

IX.

Any amendment to these Articles of Incorporation or to the Bylaws of this corporation shall require the consent of the member of this corporation.

Dated: 9/10/07

[signature]

Jack M. Hammel, Incorporator

OFFICE OF THE SECRETARY OF STATE

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 15 of 103

**Exhibit 2**



3046160

**State of California**
Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of 4 page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.

**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

SEP 15 2007

DEBRA BOWEN
Secretary of State

3046160

ENDORSED - FILED
In the office of the Secretary of State
of the State of California

SEP 1 0 2007

# ARTICLES OF INCORPORATION OF THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION

I.

The name of this corporation is The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation.

II.

This corporation is a religious corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law exclusively for religious purposes.

III.

This corporation is organized exclusively for religious purposes within the meaning of Internal Revenue Code Section 501(c)(3), including the corresponding section of any future federal internal revenue law ("IRC"), and the canon law of the Roman Catholic Church. Notwithstanding any other provision of these articles, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the purposes of this corporation, and this corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under IRC Section 501(c)(3), or (b) by a corporation, contributions to which are deductible under IRC Section 170(c)(2), or (c) by an entity subject to the Code

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 18 of 103

of Canon Law of the Roman Catholic Church or other applicable dispositions of canon law.

IV.

This corporation shall be supervised or controlled in connection with The Roman Catholic Archbishop of San Francisco, A Corporation Sole, as such relationship is defined for purposes of IRC Section 509(a)(3)(B)(ii) and the treasury regulations promulgated thereunder, and in accordance with the canon law of the Roman Catholic Church. Specifically, the following shall apply:

A. At no time shall a majority of the members of the Board of Directors of this corporation be "disqualified persons" as such term is defined for purposes of IRC Section 509(a)(3)(C) (other than those persons allowed under Section 509(a)(3)(C)); and

B. At no time may one or more "disqualified persons," as such term is defined for purposes of IRC Section 509(a)(3)(C), have the power to veto any action to be taken by this corporation.

V.

This corporation is organized, and at all times hereafter shall be operated exclusively to support, benefit, and carry out the purposes (within the meaning of IRC Section 509(a)(3)(B)(ii)) of The Roman Catholic Archbishop of San Francisco, A Corporation Sole, and specifically for the purpose of advancing the mission of those Parish and School Juridic Persons, duly established under the canon law of the Roman Catholic Church, that are, pursuant to the canon law of the Roman Catholic Church, governed by the Archbishop of The Roman Catholic Archdiocese of San Francisco, and operated civilly by the The Roman Catholic Archbishop of San Francisco, A Corporation Sole.

This corporation shall not operate to support or benefit any organization other than The Roman Catholic Archbishop of San Francisco, A Corporation Sole, for the purposes stated herein and in accordance with the canon law of the Roman Catholic Church.

VI.

The name and address of this corporation's initial agent for service of process is: Mr. Jack M. Hammel, One Peter Yorke Way, San Francisco, California 94109.

VII.

(a) No substantial part of the activities of this corporation shall consist of lobbying or propaganda, or otherwise attempting to influence legislation; this corporation shall not participate or intervene, including publishing or distributing statements, in any political campaign on behalf of or in opposition to any candidate for public office.

(b) All corporate property is irrevocably dedicated to religious, charitable, or charitable and educational purposes meeting the requirements for exemption provided by Section 214 of the California Revenue and Taxation Code, and will be owned and administered in accordance with the provisions of the canon law of the Roman Catholic Church. No part of any net earnings shall inure to the benefit of any of its directors, trustees, officers, members, or to individuals.

(c) On the winding up and dissolution of this corporation, after paying or adequately providing for the debts, obligations, and liabilities of this corporation, the remaining assets of this corporation shall be distributed to The Roman Catholic Archbishop of

San Francisco, A Corporation Sole, or, if The Roman Catholic Archbishop of San Francisco, A Corporation Sole, is not then a corporation sole exempt from taxation under IRC Section 501(c)(3), to such other religious, charitable, or charitable and educational organization meeting the requirements for exemption provided by Section 214 of the California Revenue and Taxation Code, and which qualifies for tax-exempt status under IRC Section 501(c)(3), all in accordance with applicable provisions of the Code of Canon Law and other applicable laws of the Roman Catholic Church.

VIII.

This corporation shall have one (1) member: The individual then serving in the ecclesiastical office of Archbishop of the Roman Catholic Archdiocese of San Francisco pursuant to appointment to such office by the Supreme Pontiff (Pope) of the Roman Catholic Church (or in the event of an incapacity or vacancy in the office of Archbishop, the individual then serving as canonical Administrator of said Archdiocese duly appointed by ecclesiastical authority).

IX.

Any amendment to these Articles of Incorporation or to the Bylaws of this corporation, shall require the consent of the member of this corporation.

OFFICE OF THE SECRETARY OF STATE

Dated: 9/10/07

Jack M. Hammel, Incorporator

**Exhibit 3**

**ADOPTION OF BYLAWS OF**
**THE ARCHDIOCESE OF SAN FRANCISCO**
**PARISH, SCHOOL AND CEMETERY JURIDIC PERSONS CAPITAL ASSETS SUPPORT CORPORATION**
**A California Nonprofit Religious Corporation**

The undersigned, as Incorporator of the Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Corporation, a California nonprofit religious corporation (the Corporation), adopts the following resolutions on behalf of the Corporation:

WHEREAS, no bylaws have been adopted for the regulation of the affairs of the Corporation;

WHEREAS, it is deemed to be in the best interests of the Corporation that the bylaws be adopted as the bylaws of the Corporation; and

WHEREAS, under Corporations Code section 9134, the Incorporator is authorized to adopt the bylaws:

IT IS RESOLVED THAT the bylaws attached to these resolutions are adopted as the Corporation's bylaws; and

IT IS FURTHER RESOLVED THAT the Secretary of the Corporation is authorized and directed to execute a certificate of the adoption of these bylaws, to insert the bylaws as so certified in the minute book of the Corporation, and to see that a copy of the bylaws, similarly certified is kept at the principal office to transact the business of the Corporation.

Dated: 9/19/07

[signature]
Jack M. Hammel Incorporator

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 23 of 103

**BYLAWS**
**OF**
**THE ARCHDIOCESE OF SAN FRANCISCO PARISH, SCHOOL AND CEMETERY JURIDIC PERSONS CAPITAL ASSETS SUPPORT CORPORATION**
**A California Nonprofit Religious Corporation**
**Adopted by Action of Incorporator dated September 19, 2007**

## ARTICLE 1

## NAME AND CORPORATE OFFICE

### 1.1 Name.

As provided in the Articles of Incorporation of This Corporation, the name of This Corporation is The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation.

### 1.2 Principal Office.

The principal office for the transaction of the business of This Corporation shall be located in the City and County of San Francisco or at other locations determined from time to time by the Board of Directors.

## ARTICLE 2

## DEFINITIONS

### 2.1 Definitions.

As used in these Bylaws, the following definitions shall apply:

2.1.1 "The Church" shall mean the Roman Catholic Church. The Roman Catholic Church is the People of God, who manifest throughout the world the religious faith established by Jesus Christ and entrusted to the Apostles. The People of God are guided under the spiritual leadership of their bishops, the uninterrupted Apostolic successors, in unity with and fidelity to the Bishop of Rome, the Pope.

2.1.2 "Diocese" shall mean The Roman Catholic Archdiocese of San Francisco, which is a portion of the people of God, geographically defined, entrusted to the Archbishop, (as defined below in Paragraph 2.1.5), who maintains and exercises ecclesiastical jurisdiction over such territory.

2.1.3 "The Roman Catholic Archbishop of San Francisco, A Corporation Sole" and "Corporation Sole" shall each mean The Roman Catholic Archbishop of San Francisco, a California nonprofit corporation sole tax-exempt under Internal Revenue Code Section 501(c)(3).

2.1.4 "This Corporation" shall mean The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation, a California nonprofit religious corporation.

2.1.5 "Member" shall mean the individual holding the ecclesiastical office of Archbishop of The Diocese duly appointed by the Pope, or in the event of an incapacity or vacancy in the office of Archbishop, the individual then serving as canonical Administrator of said Diocese duly appointed by ecclesiastical authority, but only for so long as such office of Archbishop is vacant or the individual holding such office of Archbishop is incapacitated. Such office of Archbishop shall be referred to in these Bylaws as "Archbishop".

2.1.6 "College of Consultors" shall mean the College of Consultors of the Diocese. "Finance Council" shall mean the Finance Council of the Diocese.

2.1.7 "IRC" shall mean the Internal Revenue Code, or any future federal internal revenue law. References to specific sections of the IRC shall refer to the IRC section at the time of the adoption of these Bylaws, or the corresponding provision of any future federal internal revenue law.

2.1.8 "Designator" shall mean the individuals, acting collectively by majority vote, described in Paragraph 7.1.

## ARTICLE 3

## PURPOSES OF THIS CORPORATION

**3.1 Purposes.**

3.1.1 As provided in the Articles of Incorporation of This Corporation, This Corporation is organized exclusively for religious purposes within the meaning of IRC Section 501(c)(3). Its property is irrevocably dedicated to religious purposes which meet the requirements of IRC Section 501(c)(3) and Section 23701(d) of the California Revenue and Taxation Code.

3.1.2 As provided in the Articles of Incorporation of This Corporation, This Corporation has been organized and shall be operated to support, benefit, and carry out the purposes of (within the meaning of IRC Section 509(a)(3)(B)(ii)) the Corporation Sole – specifically, for the purpose of advancing the mission of those Parish, School and Cemetery Juridic persons, duly established under the laws of The Church, that are, pursuant to the laws of The Church, governed by the Archbishop, and operated civilly by the Corporation Sole, within the meaning of IRC Section 509(a)(3).

3.1.3 This Corporation shall engage solely and exclusively in activities that shall support, or benefit the Corporation Sole, for the purposes stated in This Corporation's Articles of Incorporation, such activities to include, but not be limited to:

1. Fundraising and fund development;
2. The creation, investment and maintenance of endowment funds;

3. The prudent investment of This Corporation's charitable revenues through establishing and following sound investment policies and procedures;

4. The operation of a Deposit and Loan Fund for the deposit of short term funds and prudent loans therefrom, in accord with enumerated policies and procedures, to or for the use of those Parish, School and Cemetery Juridic persons, duly established under the laws of The Church, that are, pursuant to the laws of The Church, governed by the Archbishop, and operated civilly by the Corporation Sole; all in accordance with the laws of The Church.

3.1.4 If the Corporation Sole (a) ceases to be an organization described in IRC Sections 501(c)(3), and either 509(a)(1) or 509(a)(2); or (b) shall substantially abandon the religious purposes This Corporation is organized to support, the Board of Directors shall promptly designate another publicly-supported religious organization described in IRC Sections 501(c)(3) and either 509(a)(1) or 509(a)(2), in substitution for the Corporation Sole, for purposes of the Articles of Incorporation of This Corporation and these Bylaws, and all references to the "Corporation Sole" in such documents shall refer to the substituted organization.

3.1.5 This Corporation shall have no power to borrow money, incur indebtedness, to execute or deliver promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, or other evidences of debt and securities.

## ARTICLE 4

## ETHICAL PRINCIPLES AND POLICIES

The activities of This Corporation shall be carried on at all times subject to the religious, moral and ethical principles of The Church as determined by the Archbishop in his sole and unfettered discretion.

## ARTICLE 5

## PROHIBITED ACTIVITIES

### 5.1 No Support or Benefit of Other Organizations.

As provided in the Articles of Incorporation of This Corporation, This Corporation shall not operate to support or benefit any organization other than The Corporation Sole for the purposes stated herein.

### 5.2 Other Prohibited Activities.

As provided in the Articles of Incorporation of This Corporation, This Corporation shall not: (1) except in insubstantial part, attempt to influence legislation by propaganda or otherwise; (2) intervene in, or participate in, any political campaign on behalf of or in opposition to any candidate for public office; or (3) take any other actions not permitted by the Articles of Incorporation.

## ARTICLE 6

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 26 of 103

## MEMBERSHIP

### 6.1 Corporate Membership.

As set forth in the Articles of Incorporation of This Corporation, there shall be one (1) Member of This Corporation within the meaning of California Nonprofit Corporation Law Section 5056, who shall be the individual specified in Paragraph 2.1.5.

### 6.2 Nonliability of Member.

The Member of This Corporation shall not be liable for the debts, liabilities, or obligations of This Corporation.

### 6.3 Action by Member.

A decision or act of the Member of This Corporation shall be evidenced by a writing signed by the Member, and delivered to an officer of This Corporation. All such written consents, approvals, and other acts of the Member, shall be filed with the minutes of This Corporation, as part of its permanent corporate records. All requirements relating to meetings of the membership of This Corporation are hereby dispensed with.

### 6.4 Accounting Records and Minutes.

On written demand made to This Corporation, the Member may inspect, copy, and make extracts of the accounting books and records, and minutes of the proceedings of the Board of Directors and Board Committees, at any reasonable time, for a purpose reasonably related to the Member's interests as a member. Any such inspection or copying may be made by the Member's designated agents.

## ARTICLE 7

## DESIGNATOR

### 7.1 Naming of Designator.

The Designator referred to in these Bylaws shall be the individuals collectively comprising the College of Consultors and the Finance Council, acting by majority vote.

### 7.2 Actions of Designator.

All actions of the Designator shall be evidenced by a writing, signed by the Chair of the Finance Council, or the delegate of the Chair of the Finance Council (such delegation to be evidenced in writing and signed by the Chair of the Finance Council) and delivered to an officer of This Corporation. Such writings shall be filed by the Secretary with the proceedings of the Board of Directors of This Corporation.

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 27 of 103

## ARTICLE 8

## RESERVED POWERS

**8.1 Reserved Rights.**

The Member shall have the right to vote on any matter properly presented to the Member for a vote, pursuant to This Corporation's Articles of Incorporation, Bylaws, or by operation of law. Furthermore, the Member of This Corporation reserves unto himself certain rights regarding certain corporate actions of This Corporation, as set forth below:

8.1.1 Approval of any merger or consolidation of This Corporation; the disposition of all or substantially all of the assets of This Corporation; any dissolution of This Corporation, except for dissolutions permitted to be approved by the Board of Directors alone under Section 9680(b)(2) of the California Nonprofit Religious Corporation Law; and the creation of any new entity to be controlled by This Corporation; all in accordance with applicable provisions of the Code of Canon Law and other applicable laws of The Church.

8.1.2 Approval of amendments to the Articles of Incorporation or these Bylaws, which amendments must be in accordance with applicable provisions of the Code of Canon Law and other applicable laws of The Church.

**8.2 No Action Without Written Approval.**

Neither the Board of Directors nor any officer or employee of This Corporation may take any action either in contradiction of any of the foregoing reserved rights or without first having secured the necessary approvals as may be required by these Bylaws.

**8.3 Archbishop Confirmation of Membership on Finance Council and College of Consultors.**

In accordance with the Code of Canon Law of The Church, the Archbishop has sole discretion to confirm that members of the College of Consultors and Finance Council satisfy canonical standards necessary for membership on those bodies. In the event of a question or dispute as to whether a director of This Corporation is or is no longer a member of the College of Consultors or Finance Council (and in the latter case, thereby no longer a director of This Corporation in accordance with Paragraphs 9.3 and 9.5), This Corporation may rely upon a written certification containing the official seal of office of the duly appointed Chancellor of the Diocese, which certification shall be final and binding.

## ARTICLE 9

## BOARD OF DIRECTORS

**9.1 Powers.**

9.1.1 Subject to the provisions and limitations of the California Nonprofit Religious Corporation Law and any other applicable laws, and subject to any limitations in the Articles of Incorporation or Bylaws relating to actions requiring approval by the Member, and in accordance with the rules, laws and regulations of The Church, This Corporation shall have powers to the full extent allowed by law, and its temporal activities, business, and affairs shall be managed, and all corporate powers shall be exercised by, or under the direction of, the Board of Directors in accordance with relevant provisions of the Code of Canon Law and other applicable laws of The Church. In the event of a question or dispute as to whether an action is in accordance with the Code of Canon Law and other applicable laws of The Church, any and all affected persons or parties may and shall rely upon a written certification, containing the official seal of office, of the duly appointed Chancellor of the Diocese, whose certification shall be final and binding proof that the requirements of Canon Law and other applicable laws of The Church have been met.

9.1.2 Without prejudice to the general powers set forth in Paragraph 9.1.1 of these Bylaws, but subject to the same limitations, the Board of Directors shall have the following powers:

9.1.2.1 To appoint and remove, at the pleasure of the Board, all corporate officers, agents, and employees (subject to any rights such persons may have under contract); prescribe powers and duties for them as are consistent with the law, the Articles of Incorporation, and these Bylaws, and the relevant provisions of the Code of Canon Law and other applicable laws of The Church; fix their compensation, as appropriate and consistent with law; and require from them security for faithful service.

9.1.2.2 To conduct, manage, and control This Corporation's temporal affairs and activities and make such rules and regulations for this purpose, consistent with law, the Articles of Incorporation, and these Bylaws, as the Board deems to be in the best interests of This Corporation.

9.1.2.3 To control, manage, invest and dispose of the property of This Corporation, which powers may, from time to time by resolution, be delegated in whole or in part, for the purpose of earning income on such property, to trust companies, banks or other financial institutions duly authorized to conduct such business in the State of California.

9.1.2.4 To exercise all other powers conferred by the California Nonprofit Religious Corporation Law, or other applicable laws consistent with the Articles of Incorporation of This Corporation, except that the Board of Directors shall not have the following powers: To borrow money and to incur indebtedness on This Corporation's behalf, and to cause to be executed and delivered for This Corporation's purposes, in This Corporation's name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, and other evidences of debt and securities.

**9.2 Number.**

The number of directors of This Corporation shall be seven (7).

**9.3 Directors; Qualifications.**

The Board of Directors shall be comprised of the following members:

9.3.1 Four persons then serving as members of the Finance Council.

9.3.2 Three persons then serving as members of the College of Consultors.

**9.4 Designation of Directors.**

The directors of This Corporation shall be selected by the Designator pursuant to the procedures described in Paragraphs 7.1 and 7.2. Only persons meeting the qualifications prescribed in Paragraph 9.3 may be selected to serve as a director of This Corporation.

**9.5 Term of Directors; Ceasing to Qualify.**

Directors shall serve for so long as they serve as members of the Finance Council or College of Consultors, respectively, and only for so long as they serve as members of the Finance Council or College of Consultors, or until their earlier resignation or removal. Any director who ceases to meet the qualifications for director shall immediately cease to be a director, without any action by the Board.

**9.6 Vacancies.**

A vacancy on the Board of Directors shall occur whenever the actual number of directors is less than the authorized number of directors for any reason. Vacancies shall be filled only by the Designator.

**9.7 Removal and Resignation.**

9.7.1 The Board of Directors, by a vote of a majority of the directors present at a duly called and noticed meeting, may remove any director who has been declared of unsound mind by a final order of court. The Board of Directors, by a vote of a majority of directors then in office, may remove a director without cause. Neither the Designator, nor the Member of This Corporation, in their capacities as such, shall have the right to remove a director of This Corporation, for any reason.

9.7.2 Any director may resign by giving written notice to the President or the Secretary of This Corporation. The resignation shall be effective when the notice is given unless it specifies a later time for the resignation to become effective. The Secretary of This Corporation shall promptly notify the Designator of the resignation by forwarding a copy of the notice to the Chair of the

Finance Council. If a director's resignation is effective at a later time, the Designator may designate a successor to take office as of the date when the resignation becomes effective.

**9.8 Annual Meeting.**

The annual meeting of the Board of Directors shall be held at such time and place as the President may determine. The Secretary shall cause written notice of the date, time and place of the annual meeting to be given to all directors of This Corporation no less than thirty (30) days prior to the meeting.

**9.9 Regular Meetings.**

9.9.1 In addition to the annual meeting, regular meetings of the Board of Directors shall be held at least semiannually. At these meetings the Board shall, among other things, review all major developments and transactions relevant to This Corporation which have occurred or are foreseen. In particular, the Board shall: 1) assure that the processes of administrative oversight for the capital assets are functioning well; and 2) scrutinize and encourage improvements in the role of the parishes and schools, operated through the Corporation Sole, in terms of their generating funds for the necessary maintenance and improvement of the respective properties owned by The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation, a California nonprofit religious corporation, bearing in mind that users of that corporation's property have a corresponding obligation to provide funds to facilitate adequate maintenance and improvement of the property.

9.9.2 Prior notice of the regular meetings of the Board of Directors shall not be required; rather, at each regular meeting, the Board by resolution shall fix the date and time of the next regular meeting, and further regular meetings, if desired.

9.9.3 Meetings shall be held at the principal office of This Corporation or at such other place or places within or without the State of California that have been designated from time to time by resolution of the Board. In the absence of such designation, meetings shall be held at the principal offices of This Corporation.

**9.10 Special Meetings.**

9.10.1 Special meetings of the Board of Directors for any purpose whatsoever may be called at any time by the President, or by any two (2) directors.

9.10.2 Notice of any special meeting of the Board of Directors shall be deemed sufficient if mailed first class four (4) days prior to the meeting or delivered personally, by telephone, by facsimile, or by electronic mail in compliance with Paragraph 16.1 no less than twenty-four (24) hours prior to the meeting. The notice shall state the time and date of the meeting and the place, if the place is other than This Corporation's principal office. The notice need not specify the purpose of the meeting.

9.10.3 The transactions of any meeting of the Board of Directors, however called and noticed and wherever held, shall be valid as though taken at a meeting duly held after proper call and notice, if a quorum is present, and if, either before or after the meeting, each of the directors not present provides a waiver of notice, a consent to holding the meeting, or an approval of the minutes in writing, which may include electronic mail or facsimile. The waiver of notice or consent need not specify the purpose of the meeting. All waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting the lack of adequate notice before the meeting or at its commencement.

**9.11 Quorum.**

Except for adjournment, which shall require no quorum, a majority of the directors then in office shall constitute a quorum for the transaction of any business at any meeting of the Board of Directors. A meeting at which a quorum is initially present may continue to transact business, despite the withdrawal of some directors, if any action taken or decision made is approved by at least a majority of the required quorum for that meeting.

**9.12 Voting.**

If a quorum is present, the affirmative vote of a majority of the directors present at the meeting shall be the act of the Board of Directors, subject to any applicable limitations or requirements of the Code of Canon Law or any other applicable laws of The Church, unless the vote of a greater number is required by these Bylaws, the Articles of Incorporation or the California Nonprofit Religious Corporation law.

**9.13 Action Without Meeting by Written Consent.**

Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all directors shall individually or collectively consent in writing to such action, subject to any applicable limitations or requirements of the Code of Canon Law or any other applicable laws of The Church. The written consent shall be filed with the minutes of the proceedings of the Board. Action by written consent shall have the same force and effect as the unanimous vote of the Board of Directors.

**9.14 Telephonic Meetings.**

Directors may participate in a meeting through use of a conference telephone, electronic video screen communication, or other electronic transmission in compliance with Paragraph 16.1, so long as all directors participating in such meeting can communicate with all of the other directors concurrently, and each director is provided with the means of participating in all matters before the Board, including the capacity to propose, or to interpose an objection to, a specific action to be taken by This Corporation. Participation in the meeting pursuant to this Paragraph constitutes presence in person at such meeting, and meetings so held shall constitute the valid action of the Board provided that the other requirements of this Article are met with respect to such meeting.

**9.15 Standard of Care.**

A director shall perform the duties of a director, including duties as a member of any Board Committee on which the director may serve, in good faith, in a manner such director believes to be in the best interests of This Corporation and with such care, including reasonable inquiry, as is appropriate under the circumstances. In making a good faith determination, a director may consider what the director believes are the Roman Catholic purposes of This Corporation, and any applicable religious tenets, canons, laws, policies, and authority of The Church.

In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:

(i) one or more officers or employees of This Corporation whom the director believes to be reliable and competent as to the matters presented;

(ii) counsel (including canon lawyers), independent accountants, or other persons as to matters which the director believes to be within such person's professional or expert competence;

(iii) a Board Committee with authority to act on behalf of the Board upon which the director does not serve, as to matters within its designated authority, provided that the director believes such committee merits confidence; or

(iv) religious authorities and persons whose position or duties in The Church the director believes justify reliance and confidence (including written certifications of the Chancellor described in Paragraph 9.1.1), and whom the director believes to be reliable and competent in the matters presented;

so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

Except as provided in Article 13 below, a person who performs the duties of a director in accordance with this Paragraph shall have no liability based upon any failure or alleged failure to discharge that person's obligations as a director, including, without limiting the generality of the foregoing, any actions or omissions which exceed or defeat any purpose to which This Corporation, or assets held by it, may be dedicated. The duties and liabilities set forth in this Paragraph shall apply without regard to whether a director is compensated by This Corporation.

This standard of care shall apply, without limitation, to directors' actions in investing, reinvesting, purchasing or acquiring, exchanging, selling, and managing This Corporation's investments. This standard of care shall also apply, without limitation, to directors' actions or omissions relating to compensation paid to any director (whether for service

as a director or an officer). The directors benefited by any such act or omission are not prohibited from participating in the Board's decision thereon.

**9.16 Compensation.**

9.16.1 Directors shall receive no compensation for services as directors. Except as provided in 9.16.2 below, directors may be reimbursed for any expenses of attendance at meetings of the Board of Directors or of any committees thereof or such other meetings or events as the President may so request in accordance with policies and procedures of This Corporation. This Paragraph shall not be construed to preclude any director from serving This Corporation in any other capacity and, except as provided in 9.16.2 below, receiving compensation for such services on such terms as approved by the Board of Directors.

9.16.2 Notwithstanding Paragraph 9.16.1, This Corporation may make no advance or reimbursement to any person, including a director, who is a substantial contributor to This Corporation as defined in IRC Section 4958(c)(3), a member of a substantial contributor's family, or an entity that is 35% controlled (within the meaning of IRC Sections 4958(f)(3) and 4958(c)(3)(B)(iii)) by substantial contributors and their family members.

9.16.3 The Board of Directors shall review any compensation packages (including all benefits), if any, of the President or chief executive officer and the Treasurer or chief financial officer (regardless of title), and shall approve such compensation only after determining that the compensation is just and reasonable. This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

**9.17 Indemnification.**

9.17.1 To the fullest extent permitted by law, including IRC Section 4958, This Corporation shall indemnify its directors, officers, employees, member(s) and other persons described in Corporations Code Section 9246(a), including persons formerly occupying any such positions, against all expenses, judgments, fines, settlements, and other amounts actually and reasonable incurred by them in connection with any "proceeding," as that term is used in that section, and including an action by or in the right of This Corporation, by reason of the fact that the person is or was a person described in that section. "Expenses," as used in this Paragraph 9.17, shall have the same meaning as in Section 9246(a) of the Corporations Code.

9.17.2 On written request to the Board by any person seeking indemnification under Corporations Code Section 9246(b) or Section 9246(c), the Board, without the vote of any director who is a party to the indemnification request, shall promptly decide under Corporations Code Section 9246(e) whether the applicable standard of conduct set forth in Corporations Code Section 9246(b) or Section 9246(c) has been met and, if so, the Board shall authorize indemnification, if permitted by IRC Section 4958. If the Board cannot authorize indemnification because the number of directors who are parties to the proceeding with respect to which indemnification is sought prevents mustering a quorum of directors who are not parties

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 34 of 103

to that proceeding, the Board shall promptly request that the Member determine under Corporations Code Section 9246(e) whether the applicable standard of conduct has been met and, if so, the Member shall authorize indemnification, if permitted by IRC Section 4958.

**9.18 Insurance.**

This Corporation shall have the right, and shall use its best efforts, to purchase and maintain insurance to cover the indemnification obligations set forth in Paragraph 9.17.

**9.19 Right to Inspect Records.**

Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of This Corporation for a purpose reasonably related to the director's interests as a director

## ARTICLE 10

## OFFICERS

**10.1 Officers.**

The officers of This Corporation shall be a President, a Vice-President, a Secretary, an Assistant Secretary, a Treasurer, an Assistant Treasurer, and such other officers as the Board of Directors may from time to time appoint. The Vice President, Assistant Secretary and Assistant Treasurer shall be subordinate to the President, Secretary and Treasurer, respectively, and shall fulfill the duties of the President, Secretary, and Treasurer, respectively, in the event of the absence or incapacity of same. Neither the Secretary, Assistant Secretary, Treasurer, or Assistant Treasurer may serve concurrently as either President or Vice-President.

**10.2 Appointment; Resignation.**

All corporate officers shall be appointed by the Board of Directors at the beginning of each fiscal year. An officer shall hold office until his successor is elected, or until his earlier resignation or removal. Any officer may resign at any time by giving written notice to the Board or to the President of This Corporation. Any such resignation shall take effect on the date of the receipt of such notice, or at any later time specified therein, and unless otherwise specified therein, the acceptance of the resignation by the Board shall not be necessary to make it effective.

**10.3 Removal.**

Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by a majority vote of the directors then in office.

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 35 of 103

**10.4 Vacancies.**

A vacancy in any office for any reason may be filled by the Board of Directors in the same manner as these Bylaws provide for appointment to that office.

**10.5 President of This Corporation.**

The Board of Directors shall appoint a director to serve as President of This Corporation. The President shall preside at all meetings of the Board of Directors. The President shall have all the general powers and duties of management usually vested in the office of President, and such other powers and duties as may be prescribed by the Board of Directors and these Bylaws consistent with the Code of Canon Law or other applicable laws of The Church.

**10.6 Secretary of This Corporation.**

The Board of Directors shall appoint a director to serve as Secretary of This Corporation. The Secretary shall:

10.6.1 Keep or cause to be kept the minutes of all meetings of the Board and Board Committees;

10.6.2 See that all notices are duly given in accordance with the provisions of these Bylaws and as required by law;

10.6.3 Have charge of all the records of the Board and the seal of This Corporation;

10.6.4 See that the execution of any document on behalf of This Corporation under its seal is duly authorized; and

10.6.5 In general perform all of the duties incident to the office of Secretary, subject to the control of the Board.

**10.7 Treasurer of This Corporation**.

The Board of Directors shall appoint a director to serve as Treasurer. The Treasurer shall keep and maintain, or cause to be kept and maintained, adequate and comprehensive books and records of the assets of This Corporation and of its transactions. In addition, the Treasurer shall have charge of the funds and liquid assets of This Corporation and shall deposit and/or invest such funds and liquid assets in accordance with the best interests of This Corporation and in accordance with the overall mission, policies, and plans of This Corporation and in accordance with the directives of the President and the Board of Directors. The Treasurer shall not, however, be responsible for retaining, or managing This Corporation's relationship with, independent auditors, if any.

**10.8 Compensation.**

The compensation of the officers, if any, shall be established from time to time by resolution of the Board of Directors.

## ARTICLE 11

## STAFF

**11.1 Executive Director**

This Corporation shall have an Executive Director, who shall be the chief executive officer responsible for the general management of its affairs. The Executive Director shall be the most senior member of This Corporation's staff, and shall report directly to the Board of Directors. The Executive Director shall not serve as a director of This Corporation, nor shall he or she be deemed an officer of This Corporation, by virtue of holding the position described as chief executive officer.

**11.2 Other Staff**

This Corporation shall also have such other staff as may be approved by the Board.

## ARTICLE 12

## COMMITTEES

**12.1 Board Committees.**

The Board of Directors, by resolution adopted by a majority of the directors then in office, may create any number of Board Committees, each consisting of two or more directors, to serve at the pleasure of the Board. Appointments to any Board Committees shall be by majority vote of the directors then in office. Board Committees shall have such duties and responsibilities as provided for by the Board subject to those limitations imposed on the Board by law and the Articles and Bylaws of This Corporation. Board Committees may be given all the authority of the Board, except for the following powers:

(a) Approval of any action, member approval of which is also required under the California Nonprofit Religious Corporation Law;

(b) The filling of vacancies on the Board, or any Board Committee which has the authority of the Board;

(c) The fixing of compensation of the directors for serving on the Board or on any Board Committee;

(d) The amendment or repeal of these Bylaws;

(e) The amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable;

(f) The appointment of Board Committees which have the authority of the Board, or any member thereof.

**12.2 Advisory Committees.**

The Board of Directors may establish one or more Advisory Committees to the Board. The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines. Advisory committees may not exercise the authority of the Board to make decisions on behalf of This Corporation, but shall be restricted to making recommendations to the Board or Board Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

**12.3 Meetings.**

12.3.1 Meetings and actions of Board Committees shall be governed by, held, and taken under the provisions of these Bylaws concerning meetings or other Board actions, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors and its members. Notwithstanding the previous sentence, the time for general meetings of Board Committees and the calling of special meetings of Board Committees may be set either by Board resolution or, if none, by resolution of the Board Committee. Minutes shall be kept of each Board Committee meeting and shall be filed with the corporate records.

12.3.2 Subject to the authority of the Board of Directors, Advisory Committees may determine their own meeting rules and whether minutes shall be kept.

12.3.3 The Board may adopt rules for the governance of any Board Committee or Advisory Committee as long as the rules are consistent with these Bylaws.

**12.4 Executive Committee/Investment Committee/Deposit and Loan Committee.**

12.4.1 There shall be a permanent Executive Committee of the Board of Directors, which shall be a Board Committee as defined in Paragraph 12.1. The members of the Executive Committee shall be the President, Treasurer, and Secretary, each serving on the Committee *ex officio*. The President shall serve *ex officio* as the Chairperson of the Executive Committee. The Executive Committee shall have the same powers and limitations that apply to the full Board between meetings of the Board, subject to any such limitations, terms and conditions as may be set forth in any resolution adopted by the Board, the Nonprofit Religious Corporation Law, or these Bylaws. The Executive Committee shall meet at least bimonthly to review all major investments and loans pertaining to the capital assets of This Corporation.

12.4.2 An Investment Committee, which shall be an Advisory Committee as defined in Paragraph 12.2, shall have at least five members, and shall scrutinize the implementation of established Investment Policies and Procedures.

12.4.3 A Deposit and Loan Committee, which shall be an Advisory Committee as defined in Paragraph 12.2, shall have at least five members. The Deposit and Loan Committee shall scrutinize the implementation of established Deposit and Loan Procedures including but not limited to review of Corporation Sole applications for loans designed to benefit particular Parish, School and Cemetery Juridic persons operated through the Corporation Sole. The Deposit and Loan Committee shall make recommendations to the Executive Committee and/or Board of Directors, as needed or requested.

## ARTICLE 13
## CERTAIN TRANSACTIONS

### 13.1 Self-Dealing Transactions.

Except as provided in Paragraph 13.2 below, the Board of Directors shall not approve, or permit This Corporation to engage in, any self-dealing transaction. A self-dealing transaction is a transaction to which This Corporation is a party and in which one or more of its directors has a material financial interest, unless the transaction comes within Section 9243(b) of the California Nonprofit Religious Corporation Law.

### 13.2 Approval.

13.2.1 This Corporation may engage in a self-dealing transaction if the transaction is approved by a court or by the Attorney General. This Corporation may also engage in a self-dealing transaction if the Board determines, before the transaction, that (a) This Corporation is entering into the transaction for its own benefit or for the benefit of The Church; (b) the transaction is fair and reasonable to This Corporation or is in furtherance of its religious purposes, at the time of the transaction; and (c) after reasonable investigation, either it could not have obtained a more advantageous arrangement with reasonable effort under the circumstances or the transaction is in furtherance of its religious purposes. Such determinations must be made by the Board in good faith, with knowledge of the material facts concerning the transaction and the director's interest in the transaction, and by a vote of a majority of the directors then in office, without counting the vote of the interested director or directors.

13.2.2 Where it is not reasonably practicable to obtain approval of the Board before entering into a self-dealing transaction, the Executive Committee may approve such transaction in a manner consistent with the foregoing requirements, provided that, at its next meeting, the full Board determines in good faith that the Executive Committee's approval of the transaction was consistent with such requirements and that it was not reasonably practical to obtain advance approval by the full Board, and ratifies the transaction by a majority of the directors then in office without the vote of any interested director.

**13.3 Excess Benefit Transactions.**

This Corporation shall not engage in any excess benefit transaction as defined in IRC Section 4958. So long as This Corporation is classified as a supporting organization within the meaning of IRC Section 509(a)(3), an excess benefit transaction includes, but is not limited to, any grant, loan, compensation, or other similar payment to a substantial contributor to This Corporation, a member of the family of a substantial contributor, and a 35-percent controlled entity (within the meaning of IRC Section 4958(f)(3) and 4958(c)(3)(B)(iii)). So long as This Corporation is classified as a supporting organization within the meaning of IRC Section 509(a)(3), an excess benefit transaction also includes, but is not limited to, a loan provided by This Corporation to a person who was, at any time during the 5-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of This Corporation, a member of the family of such a person, or a 35-percent controlled entity (within the meaning of IRC Section 4958(f)(3) and 4958(c)(3)(B)(iii)).

## ARTICLE 14

## RECORDS AND REPORTS

**14.1 Maintenance of Articles and Bylaws.**

This Corporation shall keep at its principal office a copy of its Articles of Incorporation and these Bylaws, as amended to date.

**14.2 Maintenance and Inspection of Other Corporate Records.**

Minutes of proceedings of the Board shall be kept in writing or typed form, and the accounting books and records shall be kept either in written or typed form or in any other form capable of being converted into written, typed or printed form.

**14.3 Annual Report.**

14.3.1 Upon request of the Member or the Board of Directors, This Corporation shall provide to the Member and to its directors, within one hundred eighty (180) days of the close of its fiscal year, a report which shall include, but not be limited to, the following information in reasonable detail:

14.3.1.1 The assets and liabilities, including the trust funds, of This Corporation as of the end of the fiscal year.

14.3.1.2 The principal changes in assets and liabilities, including trust funds, during the fiscal year.

14.3.1.3 The revenue or receipts of This Corporation, both unrestricted and restricted to particular purposes, for the fiscal year.

14.3.1.4 The expenses or disbursements of This Corporation, for both general and restricted purposes, during the fiscal year.

14.3.2 The report shall be accompanied by an independent auditor's report, or, if no such report, by the certificate of an authorized corporate officer stating that it was prepared without audit from the books and records of This Corporation.

14.3.3 The fiscal year of This Corporation shall end each year on June 30.

**14.4 Confidentiality.**

Except as otherwise publicly disclosed, as such disclosure may be required by law, or as required in order to appropriately conduct This Corporation's business, the records and reports of This Corporation shall be held in confidence by those persons with access to them.

## ARTICLE 15

## EXECUTION OF INSTRUMENTS, DEPOSITS, AND FUNDS

**15.1 Execution of Instruments.**

The Board of Directors, except as otherwise provided in these Bylaws, may by resolution authorize any officer or employee of This Corporation to enter into any contract, or execute and deliver any instrument in the name of and on behalf of This Corporation, and such authority may be general or confined to specific instances so long as such actions comply with the Code of Canon Law or any other applicable laws of The Church. Unless so authorized, no officer, agent, or employee shall have any power or authority to bind This Corporation by any contract or engagement or to pledge its credit or to render it liable pecuniarily for any purpose or in any amount.

**15.2 Checks and Notes.**

Except as otherwise specifically determined by resolution of the Board, or as otherwise required by law, all checks, drafts, promissory notes, orders for payment of money, and other evidences of indebtedness of This Corporation shall be signed by the Treasurer or the Executive Director, unless exceeding $50,000, in which case a countersignature by another officer of This Corporation shall be required.

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 41 of 103

**15.3 Deposits.**

All funds of This Corporation shall be deposited from time to time to the credit of This Corporation in such banks, trust companies, or other depositories as the Treasurer may approve.

## ARTICLE 16

## ELECTRONIC TRANSMISSIONS

**16.1 Definition of "Written" and "In Writing"; Requirements.**

Unless otherwise provided in these Bylaws, and subject to any guidelines and procedures that the Board of Directors may adopt from time to time, the terms "written" and "in writing" as used in these Bylaws include any form of recorded message in the English language capable of comprehension by ordinary visual means, and may include electronic transmissions, such as facsimile or email, provided (i) for electronic transmissions *from* This Corporation, This Corporation has obtained an unrevoked written consent from the recipient to the use of such means of communication, and if such communication is to the Member, such communication complies with Paragraph 16.2; (ii) for electronic transmissions *to* This Corporation, This Corporation has in effect reasonable measures to verify that the sender is the individual purporting to have sent such transmission; and (iii) the transmission creates a record that can be retained, retrieved, reviewed, and rendered into clearly legible tangible form.

**16.2 Requirements for Electronic Transmission from Corporation to Member.**

An electronic transmission by This Corporation to the Member is valid only if the following requirements have been satisfied:

(i) The Member has affirmatively consented (and has not withdrawn consent) to the use of electronic transmissions;

(ii) Prior to consenting, the Member was provided with a clear and conspicuous statement informing him of:

(a) any right or option to have the transmissions provided in nonelectronic form;

(b) the right to withdraw consent to the use of electronic transmissions and any conditions or consequences of such withdrawal;

(c) the procedure for withdrawing consent and for updating information needed to contact the member electronically; and

(d) the procedure for obtaining a paper copy of an electronic transmission upon request and whether any fee will be charged for such copy.

(iii) Prior to consenting, the Member was provided with a statement of the hardware and software requirements for access to and retention of the electronic transmissions, and consented electronically in a manner that reasonably demonstrates that he can access information in the electronic form that will be used.

If a change in the hardware or software requirements creates a material risk that the Member will not be able to access or retain the electronic transmissions, This Corporation shall provide a statement of the revised hardware and software requirements necessary, as well as the Member's right to withdraw consent without the imposition of any fees for such withdrawal.

## ARTICLE 17

## AMENDMENTS

These Bylaws may only be amended by affirmative vote of a majority of the directors then in office, so long as any such amendments in no way contravene any of the requirements of the Code of Canon Law and any other applicable laws of The Church, but all amendments shall be subject to the approval in writing of the Member, and shall be ineffective absent such approval. The Designator shall have no right to amend, or to approve the amendment of, either the Articles of Incorporation or the Bylaws of This Corporation. The Member acting alone shall have no power to amend these Bylaws.

## CERTIFICATE OF THE ACTING SECRETARY OF THIS CORPORATION

I, the undersigned, certify that I am presently the duly appointed and Acting Secretary of The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation, a California nonprofit religious corporation, and that the above Bylaws, consisting of 20 pages, are the Bylaws of This Corporation as adopted by Action of the Incorporator of This Corporation, and with the express written consent of the Member, on September 19, 2007.

Executed on this 19th Day of December 2007, at San Francisco, California.

[signature]

Acting Secretary of This Corporation

**Exhibit 4**

**ADOPTION OF BYLAWS OF**
**THE ARCHDIOCESE OF SAN FRANCISCO**
**PARISH AND SCHOOL JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION**
**A California Nonprofit Religious Corporation**

The undersigned, as Incorporator of the Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation, a California nonprofit religious corporation (the Corporation), adopts the following resolutions on behalf of the Corporation:

WHEREAS, no bylaws have been adopted for the regulation of the affairs of the Corporation;

WHEREAS, it is deemed to be in the best interests of the Corporation that the bylaws be adopted as the bylaws of the Corporation; and

WHEREAS, under Corporations Code section 9134, the Incorporator is authorized to adopt the bylaws:

IT IS RESOLVED THAT the bylaws attached to these resolutions are adopted as the Corporation's bylaws; and

IT IS FURTHER RESOLVED THAT the Secretary of the Corporation is authorized and directed to execute a certificate of the adoption of these bylaws, to insert the bylaws as so certified in the minute book of the Corporation, and to see that a copy of the bylaws, similarly certified is kept at the principal office to transact the business of the Corporation.

Dated: 9/19/07

[signature]
Jack M. Hammel Incorporator

**BYLAWS**
**OF**
**THE ARCHDIOCESE OF SAN FRANCISCO PARISH AND SCHOOL JURIDIC PERSONS REAL PROPERTY SUPPORT CORPORATION**
**A California Nonprofit Religious Corporation**
**Adopted by Action of Incorporator dated September 19, 2007**

## ARTICLE 1

## NAME AND CORPORATE OFFICE

### 1.1 Name.

As provided in the Articles of Incorporation of This Corporation, the name of This Corporation is The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation.

### 1.2 Principal Office.

The principal office for the transaction of the business of This Corporation shall be located in the City and County of San Francisco or at other locations determined from time to time by the Board of Directors.

## ARTICLE 2

## DEFINITIONS

### 2.1 Definitions.

As used in these Bylaws, the following definitions shall apply:

2.1.1 "The Church" shall mean the Roman Catholic Church. The Roman Catholic Church is the People of God, who manifest throughout the world the religious faith established by Jesus Christ and entrusted to the Apostles. The People of God are guided under the spiritual leadership of their bishops, the uninterrupted Apostolic successors, in unity with and fidelity to the Bishop of Rome, the Pope.

2.1.2 "Diocese" shall mean The Roman Catholic Archdiocese of San Francisco, which is a portion of the people of God, geographically defined, entrusted to the Archbishop, (as defined below in Paragraph 2.1.5), who maintains and exercises ecclesiastical jurisdiction over such territory.

2.1.3 "The Roman Catholic Archbishop of San Francisco, A Corporation Sole" and "Corporation Sole" shall each mean The Roman Catholic Archbishop of San Francisco, a California nonprofit corporation sole tax-exempt under Internal Revenue Code Section 501(c)(3).

2.1.4 "This Corporation" shall mean The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation, a California nonprofit religious corporation.

2.1.5 "Member" shall mean the individual holding the ecclesiastical office of Archbishop of The Diocese duly appointed by the Pope, or in the event of an incapacity or vacancy in the office of Archbishop, the individual then serving as canonical Administrator of said Diocese duly appointed by ecclesiastical authority, but only for so long as such office of Archbishop is vacant or the individual holding such office of Archbishop is incapacitated. Such office of Archbishop shall be referred to in these Bylaws as "Archbishop".

2.1.6 "College of Consultors" shall mean the College of Consultors of the Diocese. "Finance Council" shall mean the Finance Council of the Diocese.

2.1.7 "IRC" shall mean the Internal Revenue Code, or any future federal internal revenue law. References to specific sections of the IRC shall refer to the IRC section at the time of the adoption of these Bylaws, or the corresponding provision of any future federal internal revenue law.

2.1.8 "Designator" shall mean the individuals, acting collectively by majority vote, described in Paragraph 7.1.

## ARTICLE 3

## PURPOSES OF THIS CORPORATION

**3.1 Purposes.**

3.1.1 As provided in the Articles of Incorporation of This Corporation, This Corporation is organized exclusively for religious purposes within the meaning of IRC Section 501(c)(3). Its property is irrevocably dedicated to religious purposes which meet the requirements of IRC Section 501(c)(3) and Section 23701(d) of the California Revenue and Taxation Code.

3.1.2 As provided in the Articles of Incorporation of This Corporation, This Corporation has been organized and shall be operated to support, benefit, and carry out the purposes of (within the meaning of IRC Section 509(a)(3)(B)(ii)) the Corporation Sole – specifically, for the purpose of advancing the mission of those Parish and School Juridic persons, duly established under the laws of The Church, that are, pursuant to the laws of The Church, governed by the Archbishop, and operated civilly by the Corporation Sole, within the meaning of IRC Section 509(a)(3).

3.1.3 This Corporation shall engage solely and exclusively in activities that shall support, or benefit the Corporation Sole, for the purposes stated in This Corporation's Articles of Incorporation, such activities to include, but not be limited to, collecting rents from This Corporation's properties and making payments to or for the use of, or restoring or upgrading the facilities used by, the aforementioned Juridic persons affiliated with the Corporation Sole; all in accordance with the laws of The Church, which, *inter alia,* respects the special rights to use of

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 48 of 103

property by Juridic persons and the concomitant obligation to provide the financial means to maintain and enhance that property.

3.1.4 If the Corporation Sole (a) ceases to be an organization described in IRC Sections 501(c)(3), and either 509(a)(1) or 509(a)(2); or (b) shall substantially abandon the religious purposes This Corporation is organized to support, the Board of Directors shall promptly designate another publicly-supported religious organization described in IRC Sections 501(c)(3) and either 509(a)(1) or 509(a)(2), in substitution for the Corporation Sole, for purposes of the Articles of Incorporation of This Corporation and these Bylaws, and all references to the "Corporation Sole" in such documents shall refer to the substituted organization.

3.1.5 Notwithstanding any of the foregoing Paragraphs of this Article 3, the Board of Directors shall have no power to take any of the following actions without first obtaining a written certification, containing the official seal of office, of the duly appointed Chancellor of the Diocese certifying, in his or her sole and absolute discretion, that the requirements of Canon Law and other applicable laws of The Church concerning the alienation of The Church's property have been met:

    1. Sale of real property;

    2. Any lease in excess of nine (9) years;

    3. Incur any encumbrance or expenditure or other contractual obligation in excess of $500,000.

## ARTICLE 4

## ETHICAL PRINCIPLES AND POLICIES

The activities of This Corporation shall be carried on at all times subject to the religious, moral and ethical principles of The Church as determined by the Archbishop in his sole and unfettered discretion.

## ARTICLE 5

## PROHIBITED ACTIVITIES

### 5.1 No Support or Benefit of Other Organizations.

As provided in the Articles of Incorporation of This Corporation, This Corporation shall not operate to support or benefit any organization other than The Corporation Sole for the purposes stated herein.

### 5.2 Other Prohibited Activities.

As provided in the Articles of Incorporation of This Corporation, This Corporation shall not: (1) except in insubstantial part, attempt to influence legislation by propaganda or otherwise; (2) intervene in, or participate in, any political campaign on behalf of or in opposition to any

candidate for public office; or (3) take any other actions not permitted by the Articles of Incorporation.

## ARTICLE 6

## MEMBERSHIP

### 6.1 Corporate Membership.

As set forth in the Articles of Incorporation of This Corporation, there shall be one (1) Member of This Corporation within the meaning of California Nonprofit Corporation Law Section 5056, who shall be the individual specified in Paragraph 2.1.5.

### 6.2 Nonliability of Member.

The Member of This Corporation shall not be liable for the debts, liabilities, or obligations of This Corporation.

### 6.3 Action by Member.

A decision or act of the Member of This Corporation shall be evidenced by a writing signed by the Member, and delivered to an officer of This Corporation. All such written consents, approvals, and other acts of the Member, shall be filed with the minutes of This Corporation, as part of its permanent corporate records. All requirements relating to meetings of the membership of This Corporation are hereby dispensed with.

### 6.4 Accounting Records and Minutes.

On written demand made to This Corporation, the Member may inspect, copy, and make extracts of the accounting books and records, and minutes of the proceedings of the Board of Directors and Board committees, at any reasonable time, for a purpose reasonably related to the Member's interests as a member. Any such inspection or copying may be made by the Member's designated agents.

## ARTICLE 7

## DESIGNATOR

### 7.1 Naming of Designator.

The Designator referred to in these Bylaws shall be the individuals collectively comprising the College of Consultors and the Finance Council, acting by majority vote.

**7.2 Actions of Designator.**

All actions of the Designator shall be evidenced by a writing, signed by the Chair of the Finance Council, or the delegate of the Chair of the Finance Council (such delegation to be evidenced in writing and signed by the Chair of the Finance Council) and delivered to an officer of This Corporation. Such writings shall be filed by the Secretary with the proceedings of the Board of Directors of This Corporation.

## ARTICLE 8

## RESERVED POWERS

**8.1 Reserved Rights.**

The Member shall have the right to vote on any matter properly presented to the Member for a vote, pursuant to This Corporation's Articles of Incorporation, Bylaws, or by operation of law. Furthermore, the Member of This Corporation reserves unto himself certain rights regarding certain corporate actions of This Corporation, as set forth below:

8.1.1 Approval of any merger or consolidation of This Corporation; the disposition of all or substantially all of the assets of This Corporation; any dissolution of This Corporation, except for dissolutions permitted to be approved by the Board of Directors alone under Section 9680(b)(2) of the California Nonprofit Religious Corporation Law; and the creation of any new entity to be controlled by This Corporation; all in accordance with applicable provisions of the Code of Canon Law and other applicable laws of The Church.

8.1.2 Approval of amendments to the Articles of Incorporation or these Bylaws, which amendments must be in accordance with applicable provisions of the Code of Canon Law and other applicable laws of The Church.

**8.2 No Action Without Written Approval.**

Neither the Board of Directors nor any officer or employee of This Corporation may take any action either in contradiction of any of the foregoing reserved rights or without first having secured the necessary approvals as may be required by these Bylaws.

**8.3 Archbishop Confirmation of Membership on Finance Council and College of Consultors.**

In accordance with the Code of Canon Law of The Church, the Archbishop has sole discretion to confirm that members of the College of Consultors and Finance Council satisfy canonical standards necessary for membership on those bodies. In the event of a question or dispute as to whether a director of This Corporation is or is no longer a member of the College of Consultors or Finance Council (and in the latter case, thereby no longer a director of This Corporation in accordance with Paragraphs 9.3 and 9.5), This Corporation may rely upon a written certification

containing the official seal of office of the duly appointed Chancellor of the Diocese, which certification shall be final and binding.

## ARTICLE 9

## BOARD OF DIRECTORS

**9.1 Powers.**

9.1.1 Subject to the provisions and limitations of the California Nonprofit Religious Corporation Law and any other applicable laws, and subject to any limitations in the Articles of Incorporation or Bylaws relating to actions requiring approval by the Member, and in accordance with the rules, laws and regulations of The Church, This Corporation shall have powers to the full extent allowed by law, and its temporal activities, business, and affairs shall be managed, and all corporate powers shall be exercised by, or under the direction of, the Board of Directors in accordance with relevant provisions of the Code of Canon Law and other applicable laws of The Church. In the event of a question or dispute as to whether an action is in accordance with the Code of Canon Law and other applicable laws of The Church, any and all affected persons or parties may and shall rely upon a written certification, containing the official seal of office, of the duly appointed Chancellor of the Diocese, whose certification shall be final and binding proof that the requirements of Canon Law and other applicable laws of The Church have been met.

9.1.2 Without prejudice to the general powers set forth in Paragraph 9.1.1 of these Bylaws, but subject to the same limitations, the Board of Directors shall have the following powers:

9.1.2.1 To appoint and remove, at the pleasure of the Board, all corporate officers, agents, and employees (subject to any rights such persons may have under contract); prescribe powers and duties for them as are consistent with the law, the Articles of Incorporation, and these Bylaws, and the relevant provisions of the Code of Canon Law and other applicable laws of The Church; fix their compensation, as appropriate and consistent with law; and require from them security for faithful service.

9.1.2.2 To conduct, manage, and control This Corporation's temporal affairs and activities and make such rules and regulations for this purpose, consistent with law, the Articles of Incorporation, and these Bylaws, as the Board deems to be in the best interests of This Corporation.

9.1.2.3 To control, manage, invest and dispose of the property of This Corporation, which powers may, from time to time by resolution, be delegated in whole or in part, for the purpose of earning income on such property, to trust companies, banks or other financial institutions duly authorized to conduct such business in the State of California.

9.1.2.4 To exercise all other powers conferred by the California Nonprofit Religious Corporation Law, or other applicable laws consistent with the Articles of Incorporation of This Corporation, except that the Board of Directors shall not have the following powers: To borrow money and to incur indebtedness on This Corporation's behalf, and to cause to be executed and delivered for

This Corporation's purposes, in This Corporation's name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, and other evidences of debt and securities.

**9.2 Number.**

The number of directors of This Corporation shall be seven (7).

**9.3 Directors; Qualifications.**

The Board of Directors shall be comprised of the following members:

9.3.1 Three persons then serving as members of the Finance Council.

9.3.2 Four persons then serving as members of the College of Consultors.

**9.4 Designation of Directors.**

The directors of This Corporation shall be selected by the Designator pursuant to the procedures described in Paragraphs 7.1 and 7.2. Only persons meeting the qualifications prescribed in Paragraph 9.3 may be selected to serve as a director of This Corporation.

**9.5 Term of Directors; Ceasing to Qualify.**

Directors shall serve for so long as they serve as members of the Finance Council or College of Consultors, respectively, and only for so long as they serve as members of the Finance Council or College of Consultors, or until their earlier resignation or removal. Any director who ceases to meet the qualifications for director shall immediately cease to be a director, without any action by the Board.

**9.6 Vacancies.**

A vacancy on the Board of Directors shall occur whenever the actual number of directors is less than the authorized number of directors for any reason. Vacancies shall be filled only by the Designator.

**9.7 Removal and Resignation.**

9.7.1 The Board of Directors, by a vote of a majority of the directors present at a duly called and noticed meeting, may remove any director who has been declared of unsound mind by a final order of court. The Board of Directors, by a vote of a majority of directors then in office, may remove a director without cause. Neither the Designator, nor the Member of This Corporation, in their capacities as such, shall have the right to remove a director of This Corporation, for any reason.

9.7.2 Any director may resign by giving written notice to the President or the Secretary of This Corporation. The resignation shall be effective when the notice is given unless it specifies a later

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 53 of 103

time for the resignation to become effective. The Secretary of This Corporation shall promptly notify the Designator of the resignation by forwarding a copy of the notice to the Chair of the Finance Council. If a director's resignation is effective at a later time, the Designator may designate a successor to take office as of the date when the resignation becomes effective.

**9.8 Annual Meeting.**

The annual meeting of the Board of Directors shall be held at such time and place as the President may determine. The Secretary shall cause written notice of the date, time and place of the annual meeting to be given to all directors of This Corporation no less than thirty (30) days prior to the meeting.

**9.9 Regular Meetings.**

9.9.1 In addition to the annual meeting, regular meetings of the Board of Directors shall be held at least semiannually. At these meetings the Board shall, among other things, review all major developments and transactions relevant to This Corporation which have occurred or are foreseen. In particular, the Board shall: 1) assure that the processes of administrative oversight for the properties are functioning well; 2) scrutinize and encourage improvements in the role of the parishes and schools, operated through the Corporation Sole, in terms of their facilitating the necessary maintenance and improvement of the respective properties owned by This Corporation; 3) long-term planning for improvement of parish and school plants; all in accordance with the laws of The Church, which, *inter alia,* respects the special rights to use of property by Juridic persons and concomitant obligation to provide the financial means to maintain and enhance that property.

9.9.2 Prior notice of the regular meetings of the Board of Directors shall not be required; rather, at each regular meeting, the Board by resolution shall fix the date and time of the next regular meeting, and further regular meetings, if desired.

9.9.3 Meetings shall be held at the principal office of This Corporation or at such other place or places within or without the State of California that have been designated from time to time by resolution of the Board. In the absence of such designation, meetings shall be held at the principal offices of This Corporation.

**9.10 Special Meetings.**

9.10.1 Special meetings of the Board of Directors for any purpose whatsoever may be called at any time by the President, or by any two (2) directors.

9.10.2 Notice of any special meeting of the Board of Directors shall be deemed sufficient if mailed first class four (4) days prior to the meeting or delivered personally, by telephone, by facsimile, or by electronic mail in compliance with Paragraph 16.1 no less than twenty-four (24) hours prior to the meeting. The notice shall state the time and date of the meeting and the place, if the place is other than This Corporation's principal office. The notice need not specify the purpose of the meeting.

9.10.3 The transactions of any meeting of the Board of Directors, however called and noticed and wherever held, shall be valid as though taken at a meeting duly held after proper call and notice, if a quorum is present, and if, either before or after the meeting, each of the directors not present provides a waiver of notice, a consent to holding the meeting, or an approval of the minutes in writing, which may include electronic mail or facsimile. The waiver of notice or consent need not specify the purpose of the meeting. All waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting the lack of adequate notice before the meeting or at its commencement.

**9.11 Quorum.**

Except for adjournment, which shall require no quorum, a majority of the directors then in office shall constitute a quorum for the transaction of any business at any meeting of the Board of Directors. A meeting at which a quorum is initially present may continue to transact business, despite the withdrawal of some directors, if any action taken or decision made is approved by at least a majority of the required quorum for that meeting.

**9.12 Voting.**

If a quorum is present, the affirmative vote of a majority of the directors present at the meeting shall be the act of the Board of Directors, subject to any applicable limitations or requirements of the Code of Canon Law or any other applicable laws of The Church, unless the vote of a greater number is required by these Bylaws, the Articles of Incorporation or the California Nonprofit Religious Corporation law.

**9.13 Action Without Meeting by Written Consent.**

Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all directors shall individually or collectively consent in writing to such action, subject to any applicable limitations or requirements of the Code of Canon Law or any other applicable laws of The Church. The written consent shall be filed with the minutes of the proceedings of the Board. Action by written consent shall have the same force and effect as the unanimous vote of the Board of Directors.

**9.14 Telephonic Meetings.**

Directors may participate in a meeting through use of a conference telephone, electronic video screen communication, or other electronic transmission in compliance with Paragraph 16.1, so long as all directors participating in such meeting can communicate with all of the other directors concurrently, and each director is provided with the means of participating in all matters before the Board, including the capacity to propose, or to interpose an objection to, a specific action to be taken by This Corporation. Participation in the meeting pursuant to this Paragraph constitutes presence in person at such meeting, and meetings so held shall constitute the valid action of the Board provided that the other requirements of this Article are met with respect to such meeting.

**9.15 Standard of Care.**

A director shall perform the duties of a director, including duties as a member of any Board Committee on which the director may serve, in good faith, in a manner such director believes to be in the best interests of This Corporation and with such care, including reasonable inquiry, as is appropriate under the circumstances. In making a good faith determination, a director may consider what the director believes are the Roman Catholic purposes of This Corporation, and any applicable religious tenets, canons, laws, policies, and authority of The Church.

In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:

(i) one or more officers or employees of This Corporation whom the director believes to be reliable and competent as to the matters presented;

(ii) counsel (including canon lawyers), independent accountants, or other persons as to matters which the director believes to be within such person's professional or expert competence;

(iii) a Board Committee with authority to act on behalf of the Board upon which the director does not serve, as to matters within its designated authority, provided that the director believes such committee merits confidence; or

(iv) religious authorities and persons whose position or duties in The Church the director believes justify reliance and confidence (including written certifications of the Chancellor described in Paragraph 9.1.1), and whom the director believes to be reliable and competent in the matters presented;

so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances, and without knowledge that would cause such reliance to be unwarranted.

Except as provided in Article 13 below, a person who performs the duties of a director in accordance with this Paragraph shall have no liability based upon any failure or alleged failure to discharge that person's obligations as a director, including, without limiting the generality of the foregoing, any actions or omissions which exceed or defeat any purpose to which This Corporation, or assets held by it, may be dedicated. The duties and liabilities set forth in this Paragraph shall apply without regard to whether a director is compensated by This Corporation.

This standard of care shall apply, without limitation, to directors' actions in investing, reinvesting, purchasing or acquiring, exchanging, selling, and managing This Corporation's investments. This standard of care shall also apply, without limitation, to directors' actions or omissions relating to compensation paid to any director (whether for service

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 56 of 103

as a director or an officer). The directors benefited by any such act or omission are not prohibited from participating in the Board's decision thereon.

**9.16 Compensation.**

9.16.1 Directors shall receive no compensation for services as directors. Except as provided in 9.16.2 below, directors may be reimbursed for any expenses of attendance at meetings of the Board of Directors or of any committees thereof or such other meetings or events as the President may so request in accordance with policies and procedures of This Corporation. This Paragraph shall not be construed to preclude any director from serving This Corporation in any other capacity and, except as provided in 9.16.2 below, receiving compensation for such services on such terms as approved by the Board of Directors.

9.16.2 Notwithstanding Paragraph 9.16.1, This Corporation may make no advance or reimbursement to any person, including a director, who is a substantial contributor to This Corporation as defined in IRC Section 4958(c)(3), a member of a substantial contributor's family, or an entity that is 35% controlled (within the meaning of IRC Sections 4958(f)(3) and 4958(c)(3)(B)(iii)) by substantial contributors and their family members.

9.16.3 The Board of Directors shall review any compensation packages (including all benefits), if any, of the President or chief executive officer and the Treasurer or chief financial officer (regardless of title), and shall approve such compensation only after determining that the compensation is just and reasonable. This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

**9.17 Indemnification.**

9.17.1 To the fullest extent permitted by law, including IRC Section 4958, This Corporation shall indemnify its directors, officers, employees, member(s) and other persons described in Corporations Code Section 9246(a), including persons formerly occupying any such positions, against all expenses, judgments, fines, settlements, and other amounts actually and reasonable incurred by them in connection with any "proceeding," as that term is used in that section, and including an action by or in the right of This Corporation, by reason of the fact that the person is or was a person described in that section. "Expenses," as used in this Paragraph 9.17, shall have the same meaning as in Section 9246(a) of the Corporations Code.

9.17.2 On written request to the Board by any person seeking indemnification under Corporations Code Section 9246(b) or Section 9246(c), the Board, without the vote of any director who is a party to the indemnification request, shall promptly decide under Corporations Code Section 9246(e) whether the applicable standard of conduct set forth in Corporations Code Section 9246(b) or Section 9246(c) has been met and, if so, the Board shall authorize indemnification, if permitted by IRC Section 4958. If the Board cannot authorize indemnification because the number of directors who are parties to the proceeding with respect to which indemnification is sought prevents mustering a quorum of directors who are not parties

to that proceeding, the Board shall promptly request that the Member determine under Corporations Code Section 9246(e) whether the applicable standard of conduct has been met and, if so, the Member shall authorize indemnification, if permitted by IRC Section 4958.

**9.18 Insurance.**

This Corporation shall have the right, and shall use its best efforts, to purchase and maintain insurance to cover the indemnification obligations set forth in Paragraph 9.17.

**9.19 Right to Inspect Records.**

Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of This Corporation for a purpose reasonably related to the director's interests as a director.

## ARTICLE 10

## OFFICERS

**10.1 Officers.**

The officers of This Corporation shall be a President, a Vice-President, a Secretary, an Assistant Secretary, a Treasurer, an Assistant Treasurer, and such other officers as the Board of Directors may from time to time appoint. The Vice President, Assistant Secretary and Assistant Treasurer shall be subordinate to the President, Secretary and Treasurer, respectively, and shall fulfill the duties of the President, Secretary, and Treasurer, respectively, in the event of the absence or incapacity of same. Neither the Secretary, Assistant Secretary, Treasurer, or Assistant Treasurer may serve concurrently as either President or Vice-President.

**10.2 Appointment; Resignation.**

All corporate officers shall be appointed by the Board of Directors at the beginning of each fiscal year. An officer shall hold office until his successor is elected, or until his earlier resignation or removal. Any officer may resign at any time by giving written notice to the Board or to the President of This Corporation. Any such resignation shall take effect on the date of the receipt of such notice, or at any later time specified therein, and unless otherwise specified therein, the acceptance of the resignation by the Board shall not be necessary to make it effective.

**10.3 Removal.**

Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by a majority vote of the directors then in office.

**10.4 Vacancies.**

A vacancy in any office for any reason may be filled by the Board of Directors in the same manner as these Bylaws provide for appointment to that office.

**10.5 President of This Corporation.**

The Board of Directors shall appoint a director to serve as President of This Corporation. The President shall preside at all meetings of the Board of Directors. The President shall have all the general powers and duties of management usually vested in the office of President, and such other powers and duties as may be prescribed by the Board of Directors and these Bylaws consistent with the Code of Canon Law or other applicable laws of The Church.

**10.6 Secretary of This Corporation.**

The Board of Directors shall appoint a director to serve as Secretary of This Corporation. The Secretary shall:

10.6.1 Keep or cause to be kept the minutes of all meetings of the Board and Board Committees;

10.6.2 See that all notices are duly given in accordance with the provisions of these Bylaws and as required by law;

10.6.3 Have charge of all the records of the Board and the seal of This Corporation;

10.6.4 See that the execution of any document on behalf of This Corporation under its seal is duly authorized; and

10.6.5 In general perform all of the duties incident to the office of Secretary, subject to the control of the Board.

**10.7 Treasurer of This Corporation.**

The Board of Directors shall appoint a director to serve as Treasurer. The Treasurer shall keep and maintain, or cause to be kept and maintained, adequate and comprehensive books and records of the assets of This Corporation and of its transactions. In addition, the Treasurer shall have charge of the funds and liquid assets of This Corporation and shall deposit and/or invest such funds and liquid assets in accordance with the best interests of This Corporation and in accordance with the overall mission, policies, and plans of This Corporation and in accordance with the directives of the President and the Board of Directors. The Treasurer shall not, however, be responsible for retaining, or managing This Corporation's relationship with, independent auditors, if any.

**10.8 Compensation.**

The compensation of the officers, if any, shall be established from time to time by resolution of the Board of Directors.

## ARTICLE 11

## STAFF

**11.1 Executive Director of Real Property Holdings.**

This Corporation shall have an Executive Director of Real Property Holdings ("Executive Director"), who shall be the chief executive officer responsible for the general management of its affairs. The Executive Director shall be the most senior member of This Corporation's staff, and shall report directly to the Board of Directors. The Executive Director shall not serve as a director of This Corporation, nor shall he or she be deemed an officer of This Corporation, by virtue of holding the position described as chief executive officer.

**11.2 Assistant Director for Construction and Maintenance.**

This Corporation shall also have an Assistant Director for Construction and Maintenance, who shall be responsible for assessing the general condition of This Corporation's properties and coordinating construction and repair contracts associated with This Corporation's properties.

**11.3 Other Staff.**

This Corporation shall also have such other staff as may be approved by the Board.

## ARTICLE 12

## COMMITTEES

**12.1 Board Committees.**

The Board of Directors, by resolution adopted by a majority of the directors then in office, may create any number of Board Committees, each consisting of two or more directors, to serve at the pleasure of the Board. Appointments to any Board Committees shall be by majority vote of the directors then in office. Board Committees shall have such duties and responsibilities as provided for by the Board subject to those limitations imposed on the Board by law and the Articles and Bylaws of This Corporation. Board Committees may be given all the authority of the Board, except for the following powers:

(a) Approval of any action, member approval of which is also required under the California Nonprofit Religious Corporation Law;

(b) The filling of vacancies on the Board, or any Board Committee which has the authority of the Board;

(c) The fixing of compensation of the directors for serving on the Board or on any Board Committee;

(d) The amendment or repeal of these Bylaws;

(e) The amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable;

(f) The appointment of Board Committees which have the authority of the Board, or any member thereof.

**12.2 Advisory Committees.**

The Board of Directors may establish one or more Advisory Committees to the Board. The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines. Advisory committees may not exercise the authority of the Board to make decisions on behalf of This Corporation, but shall be restricted to making recommendations to the Board or Board Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

**12.3 Meetings.**

12.3.1 Meetings and actions of Board Committees shall be governed by, held, and taken under the provisions of these Bylaws concerning meetings or other Board actions, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors and its members. Notwithstanding the previous sentence, the time for general meetings of Board Committees and the calling of special meetings of Board Committees may be set either by Board resolution or, if none, by resolution of the Board Committee. Minutes shall be kept of each Board Committee meeting and shall be filed with the corporate records.

12.3.2 Subject to the authority of the Board of Directors, Advisory Committees may determine their own meeting rules and whether minutes shall be kept.

12.3.3 The Board may adopt rules for the governance of any Board Committee or Advisory Committee as long as the rules are consistent with these Bylaws.

**12.4 Executive Committee/Building Committee/Real Estate Committee.**

12.4.1 There shall be a permanent Executive Committee of the Board of Directors, which shall be a Board Committee as defined in Paragraph 12.1. The members of the Executive Committee shall be the President, Treasurer, and Secretary, each serving on the Committee *ex officio*. The

President shall serve *ex officio* as the Chairperson of the Executive Committee. The Executive Committee shall have the same powers and limitations that apply to the full Board between meetings of the Board, subject to any such limitations, terms and conditions as may be set forth in any resolution adopted by the Board, the Nonprofit Religious Corporation Law, or these Bylaws. The Executive Committee shall meet at least bimonthly to review and approve all major construction and repair projects pertaining to real property assets of This Corporation, as well as any property sale or acquisition proposals. The Executive Committee shall also have the power to approve real property leases to entities other than the Corporation Sole. The Executive Committee shall have no power to approve any project unless and until it has received adequate assurances from the Corporation Sole that the particular parish or school operation is capable of fulfilling its canonical financial responsibilities relating thereto.

12.4.2 A Building Committee, which shall be an Advisory Committee as defined in Paragraph 12.2, shall have at least five members, and shall scrutinize each proposed construction, remodeling, and major repair project and make recommendations on the merits of each project to the Executive Committee.

12.4.3 A Real Estate Committee, which shall be an Advisory Committee as defined in Paragraph 12.2, shall have at least five members. The Real Estate Committee shall advise the Executive Committee and/or Board of Directors, as needed or requested, on all proposed rental leases in excess of one year, and on sales and acquisitions. .

## ARTICLE 13

## CERTAIN TRANSACTIONS

### 13.1 Self-Dealing Transactions.

Except as provided in Paragraph 13.2 below, the Board of Directors shall not approve, or permit This Corporation to engage in, any self-dealing transaction. A self-dealing transaction is a transaction to which This Corporation is a party and in which one or more of its directors has a material financial interest, unless the transaction comes within Section 9243(b) of the California Nonprofit Religious Corporation Law.

### 13.2 Approval.

13.2.1 This Corporation may engage in a self-dealing transaction if the transaction is approved by a court or by the Attorney General. This Corporation may also engage in a self-dealing transaction if the Board determines, before the transaction, that (a) This Corporation is entering into the transaction for its own benefit or for the benefit of The Church; (b) the transaction is fair and reasonable to This Corporation or is in furtherance of its religious purposes, at the time of the transaction; and (c) after reasonable investigation, either it could not have obtained a more advantageous arrangement with reasonable effort under the circumstances or the transaction is in furtherance of its religious purposes. Such determinations must be made by the Board in good faith, with knowledge of the material facts concerning the transaction and the director's interest

in the transaction, and by a vote of a majority of the directors then in office, without counting the vote of the interested director or directors.

13.2.2 Where it is not reasonably practicable to obtain approval of the Board before entering into a self-dealing transaction, the Executive Committee may approve such transaction in a manner consistent with the foregoing requirements, provided that, at its next meeting, the full Board determines in good faith that the Executive Committee's approval of the transaction was consistent with such requirements and that it was not reasonably practical to obtain advance approval by the full Board, and ratifies the transaction by a majority of the directors then in office without the vote of any interested director.

**13.3 Excess Benefit Transactions.**

This Corporation shall not engage in any excess benefit transaction as defined in IRC Section 4958. So long as This Corporation is classified as a supporting organization within the meaning of IRC Section 509(a)(3), an excess benefit transaction includes, but is not limited to, any grant, loan, compensation, or other similar payment to a substantial contributor to This Corporation, a member of the family of a substantial contributor, and a 35-percent controlled entity (within the meaning of IRC Section 4958(f)(3) and 4958(c)(3)(B)(iii)). So long as This Corporation is classified as a supporting organization within the meaning of IRC Section 509(a)(3), an excess benefit transaction also includes, but is not limited to, a loan provided by This Corporation to a person who was, at any time during the 5-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of This Corporation, a member of the family of such a person, or a 35-percent controlled entity (within the meaning of IRC Section 4958(f)(3) and 4958(c)(3)(B)(iii)).

## ARTICLE 14

## RECORDS AND REPORTS

**14.1 Maintenance of Articles and Bylaws.**

This Corporation shall keep at its principal office a copy of its Articles of Incorporation and these Bylaws, as amended to date.

**14.2 Maintenance and Inspection of Other Corporate Records.**

Minutes of proceedings of the Board shall be kept in writing or typed form, and the accounting books and records shall be kept either in written or typed form or in any other form capable of being converted into written, typed or printed form.

**14.3 Annual Report.**

14.3.1 Upon request of the Member or the Board of Directors, This Corporation shall provide to the Member and to its directors, within one hundred eighty (180) days of the close of its fiscal

year, a report which shall include, but not be limited to, the following information in reasonable detail:

14.3.1.1 The assets and liabilities, including the trust funds, of This Corporation as of the end of the fiscal year.

14.3.1.2 The principal changes in assets and liabilities, including trust funds, during the fiscal year.

14.3.1.3 The revenue or receipts of This Corporation, both unrestricted and restricted to particular purposes, for the fiscal year.

14.3.1.4 The expenses or disbursements of This Corporation, for both general and restricted purposes, during the fiscal year.

14.3.2 The report shall be accompanied by an independent auditor's report, or, if no such report, by the certificate of an authorized corporate officer stating that it was prepared without audit from the books and records of This Corporation.

14.3.3 The fiscal year of This Corporation shall end each year on June 30.

**14.4 Confidentiality.**

Except as otherwise publicly disclosed, as such disclosure may be required by law, or as required in order to appropriately conduct This Corporation's business, the records and reports of This Corporation shall be held in confidence by those persons with access to them.

## ARTICLE 15

## EXECUTION OF INSTRUMENTS, DEPOSITS, AND FUNDS

**15.1 Execution of Instruments.**

The Board of Directors, except as otherwise provided in these Bylaws, may by resolution authorize any officer or employee of This Corporation to enter into any contract, or execute and deliver any instrument in the name of and on behalf of This Corporation, and such authority may be general or confined to specific instances so long as such actions comply with the Code of Canon Law or any other applicable laws of The Church. Unless so authorized, no officer, agent, or employee shall have any power or authority to bind This Corporation by any contract or engagement or to pledge its credit or to render it liable pecuniarily for any purpose or in any amount.

**15.2 Checks and Notes.**

Except as otherwise specifically determined by resolution of the Board, or as otherwise required by law, all checks, drafts, promissory notes, orders for payment of money, and other evidences of

indebtedness of This Corporation shall be signed by the Treasurer or the Executive Director, unless exceeding $50,000, in which case a countersignature by another officer of This Corporation shall be required.

**15.3 Deposits.**

All funds of This Corporation shall be deposited from time to time to the credit of This Corporation in such banks, trust companies, or other depositories as the Treasurer may approve.

## ARTICLE 16

## ELECTRONIC TRANSMISSIONS

**16.1 Definition of "Written" and "In Writing"; Requirements.**

Unless otherwise provided in these Bylaws, and subject to any guidelines and procedures that the Board of Directors may adopt from time to time, the terms "written" and "in writing" as used in these Bylaws include any form of recorded message in the English language capable of comprehension by ordinary visual means, and may include electronic transmissions, such as facsimile or email, provided (i) for electronic transmissions *from* This Corporation, This Corporation has obtained an unrevoked written consent from the recipient to the use of such means of communication, and if such communication is to the Member, such communication complies with Paragraph 16.2; (ii) for electronic transmissions *to* This Corporation, This Corporation has in effect reasonable measures to verify that the sender is the individual purporting to have sent such transmission; and (iii) the transmission creates a record that can be retained, retrieved, reviewed, and rendered into clearly legible tangible form.

**16.2 Requirements for Electronic Transmission from Corporation to Member.**

An electronic transmission by This Corporation to the Member is valid only if the following requirements have been satisfied:

(i) The Member has affirmatively consented (and has not withdrawn consent) to the use of electronic transmissions;

(ii) Prior to consenting, the Member was provided with a clear and conspicuous statement informing him of:

(a) any right or option to have the transmissions provided in nonelectronic form;

(b) the right to withdraw consent to the use of electronic transmissions and any conditions or consequences of such withdrawal;

(c) the procedure for withdrawing consent and for updating information needed to contact the member electronically; and

(d) the procedure for obtaining a paper copy of an electronic transmission upon request and whether any fee will be charged for such copy.

(iii) Prior to consenting, the Member was provided with a statement of the hardware and software requirements for access to and retention of the electronic transmissions, and consented electronically in a manner that reasonably demonstrates that he can access information in the electronic form that will be used.

If a change in the hardware or software requirements creates a material risk that the Member will not be able to access or retain the electronic transmissions, This Corporation shall provide a statement of the revised hardware and software requirements necessary, as well as the Member's right to withdraw consent without the imposition of any fees for such withdrawal.

## ARTICLE 17

## AMENDMENTS

These Bylaws may only be amended by affirmative vote of a majority of the directors then in office, so long as any such amendments in no way contravene any of the requirements of the Code of Canon Law and any other applicable laws of The Church, but all amendments shall be subject to the approval in writing of the Member, and shall be ineffective absent such approval. The Designator shall have no right to amend, or to approve the amendment of, either the Articles of Incorporation or the Bylaws of This Corporation. The Member acting alone shall have no power to amend these Bylaws.

## CERTIFICATE OF THE ACTING SECRETARY OF THIS CORPORATION

I, the undersigned, certify that I am presently the duly appointed and Acting Secretary of The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corporation, a California nonprofit religious corporation, and that the above Bylaws, consisting of 20 pages, are the Bylaws of This Corporation as adopted by Action of the Incorporator of This Corporation, and with the express written consent of the Member, on September 19, 2007.

Executed on this 19th Day of December 2007, at San Francisco, California.

[signature]

Acting Secretary of This Corporation

**Exhibit 5**

# CODE OF CANON LAW

## LATIN-ENGLISH EDITION

NEW ENGLISH TRANSLATION

FOURTH PRINTING

CANON LAW SOCIETY OF AMERICA

# CODE OF CANON LAW

## LATIN-ENGLISH EDITION

NEW ENGLISH TRANSLATION

FOURTH PRINTING

Prepared under the auspices of the Canon Law Society of America

CANON LAW SOCIETY OF AMERICA
Washington, DC 20017

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 70 of 103

CODE OF CANON LAW: LATIN-ENGLISH EDITION (FOURTH PRINTING) © 2023 United States Conference of Catholic Bishops, Washington, D.C.

Translation, foreword, glossary, abbreviations, sigla, and index © 2023 Canon Law Society of American, Washington, D.C. All rights reserved. Printed in the United States of America. No part of this book may be used or reproduced in any manner whatsoever without written permission expect in the case of brief quotations embodied in critical articles and reviews.

*CODEX IURIS CANONICI* © 2020 Patrimony of the Holy Apostolic See (*Amministrazione del Patrimonio della Santa Sede Apostólica)* and © Vatican Publishing House (*Librería Editrice Vaticana)* – Vatican City (Città del Vaticano) – All rights reserved – International Copyright handled by the Vatican Publishing House, Vatican City (Libreria Editrice Vaticana, Città del Vaticano). Latin text printed with permission of the USCCB.

*Sancta Sedes omnia sibi vindicat iura. Nemini liceat, sine venia Sanctae Sedis, hunc codicem denuo imprimere aut in aliam linguam vertere.*

CODE OF CANON LAW: NEW ENGLISH TRANSLATION (FOURTH PRINTING) © 2023 Canon Law Society of America, Washington, D.C. All rights reserved. Available for purchase for educational, business, or sales promotions.

For information, contact Canon Law Society of America, 415 Michigan Avenue, NE, Suite 101, Washington, DC 20017, admin@CLSA.org, www.clsa.org.

*Nihil obstat* Most Rev. Anthony M. Pilla, President
National Conference of Catholic Bishops

*Imprimatur* Most Rev. William E. Lori, S.T.D., V.G.
Auxiliary Bishop of the Archdiocese of Washington

ISBN 978-1-932208-65-8

LC number 99-093240
SAN 237-6296

1999 First Printing
2012 Second Printing
2020 Third Printing
2023 Fourth Printing

The Fourth Printing contains modifications necessitated by the promulgation by Pope Francis of *Authenticum charismatis*, 1 nov. 2020 (c. 579); *Spiritus Domini*, 10 jan. 2021 (c. 230 §1); *Pascite gregem Dei*, 1 jun. 2021 (cc. 1311-1399); *Competentias quasdam decernere*, 11 fev. 2022 (cc. 237 §2; 242 §1; 265; 604 §3; 686 §1; 688 §2; 699 §2; 700; 775 §2; 1308 §§1-4; 1310 §§1-2); *Recognitum Librum VI*, 26 apr. 2022 (c. 695 §1); *Expedit ut iura*, 2 apr. 2023 (c. 700).

C
—
Ou
For
Ab
Ap
Pre
CO
Ne
*Pro*
Inc
Tal

not, according to the norm of law and the statutes; otherwise it is non-collegial.

non, ad normam iuris et statutorum; secus est non collegialis.

§3. An aggregate of things (*universitas rerum*), or an autonomous foundation, consists of goods or things, whether spiritual or material, and either one or more physical persons or a college directs it according to the norm of law and the statutes.

§3. Universitas rerum seu fundatio autonoma constat bonis seu rebus, sive spiritualibus sive materialibus, eamque, ad normam iuris et statutorum, moderantur sive una vel plures personae physicae sive collegium.

**CAN. 116** §1. Public juridic persons are aggregates of persons (*universitates personarum*) or of things (*universitates rerum*) which are constituted by competent ecclesiastical authority so that, within the purposes set out for them, they fulfill in the name of the Church, according to the norm of the prescripts of the law, the proper function entrusted to them in view of the public good; other juridic persons are private.

**CAN. 116** §1. Personae iuridicae publicae sunt universitates personarum aut rerum, quae ab ecclesiastica auctoritate competenti constituuntur ut intra fines sibi praestitutos nomine Ecclesiae, ad normam praescriptorum iuris, munus proprium intuitu boni publici ipsis commissum expleant; ceterae personae iuridicae sunt privatae.

§2. Public juridic persons are given this personality either by the law itself or by a special decree of competent authority expressly granting it. Private juridic persons are given this personality only through a special decree of competent authority expressly granting it.

§2. Personae iuridicae publicae hac personalitate donantur sive ipso iure sive speciali competentis auctoritatis decreto eandem expresse concedenti; personae iuridicae privatae hac personalitate donantur tantum per speciale competentis auctoritatis decretum eandem personalitatem expresse concedens.

**CAN. 117** No aggregate of persons (*universitas personarum*) or of things (*universitas rerum*), intending to obtain juridic personality, is able to acquire it unless competent authority has approved its statutes.

**CAN. 117** Nulla personarum vel rerum universitas personalitatem iuridicam obtinere intendens, eandem consequi valet nisi ipsius statuta a competenti auctoritate sint probata.

**CAN. 118** Representing a public juridic person and acting in its name are those whose competence is acknowledged by universal or particular law or by its own statutes. Representing a private juridic person are those whose competence is granted by statute.

**CAN. 118** Personam iuridicam publicam repraesentant, eius nomine agentes, ii quibus iure universali vel particulari aut propriis statutis haec competentia agnoscitur; personam iuridicam privatam, ii quibus eadem competentia per statuta tribuitur.

**117:** PIUS PP. XII, Litt. Ap. *Quam Romani Pontifices*, 14 sep. 1949 (AAS 43 [1951] 722–724); Sec Notif., 15 iun. 1953 (AAS 45 [1953] 570); Sec Notif., 26 oct. 1953 (AAS 45 [1953] 821); Sec Notif., 16 nov. 1959 (AAS 51 [1959] 875); IOANNES PP. XXIII, Litt. Ap. *Religiosissimo*, 8 dec. 1962 (AAS 55 [1963] 444–446)

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 72 of 103

*Ecclesiis*
*; Deque*
*ɔetibus*

**Ecclesiis**
**Et De Auctoritate**
**tituta**

**esiis Particularibus**

siae particulares, in
ına et unica Ecclesia
ıt imprimis dioeceses,
stet, assimilantur
; et abbatia territo-
tolicus et praefectura
ministratio apostolica

esis est populi Dei
ı cum cooperatio-
da concreditur, ita
ens ab eoque per
istiam in Spiritu
clesiam particularem
inest et operatur
t apostolica Christi

ura territorialis aut
certa populi Dei por-
m circumscripta, cu-
diuncta, committitur
ati, qui eam, ad instar
mquam proprius eius

ı 11; PO 4, 5
2, 4; SCE Notif., 17

**CAN. 371** §1. An apostolic vicariate or apostolic prefecture is a certain portion of the people of God which has not yet been established as a diocese due to special circumstances and which, to be shepherded, is entrusted to an apostolic vicar or apostolic prefect who governs it in the name of the Supreme Pontiff.

§2. An apostolic administration is a certain portion of the people of God which is not erected as a diocese by the Supreme Pontiff due to special and particularly grave reasons and whose pastoral care is entrusted to an apostolic administrator who governs it in the name of the Supreme Pontiff.

**CAN. 372** §1. As a rule, a portion of the people of God which constitutes a diocese or other particular church is limited to a definite territory so that it includes all the faithful living in the territory.

§2. Nevertheless, where in the judgment of the supreme authority of the Church it seems advantageous after the conferences of bishops concerned have been heard, particular churches distinguished by the rite of the faithful or some other similar reason can be erected in the same territory.

**CAN. 373** It is only for the supreme authority to erect particular churches; those legitimately erected possess juridic personality by the law itself.

**CAN. 374** §1. Every diocese or other particular church is to be divided into distinct parts or parishes.

**CAN. 371** §1. Vicariatus apostolicus vel praefectura apostolica est certa populi Dei portio quae, ob peculiaria adiuncta, in dioecesim nondum est constituta, quaeque pascenda committitur Vicario apostolico aut Praefecto apostolico, qui eam nomine Summi Pontificis regant.

§2. Administratio apostolica est certa populi Dei portio, quae ob speciales et graves omnino rationes a Summo Pontifice in dioecesim non erigitur, et cuius cura pastoralis committitur Administratori apostolico, qui eam nomine Summi Pontificis regat.

**CAN. 372** §1. Pro regula habeatur ut portio populi Dei quae dioecesim aliamve Ecclesiam particularem constituat, certo territorio circumscribatur, ita ut omnes comprehendat fideles in territorio habitantes.

§2. Attamen, ubi de iudicio supremae Ecclesiae auctoritatis, auditis Episcoporum conferentiis quarum interest, utilitas id suadeat, in eodem territorio erigi possunt Ecclesiae particulares ritu fidelium aliave simili ratione distinctae.

**CAN. 373** Unius supremae auctoritatis est Ecclesias particulares erigere; quae legitime erectae, ipso iure personalitate iuridica gaudent.

**CAN. 374** §1. Quaelibet dioecesis aliave Ecclesia particularis dividatur in distinctas partes seu paroecias.

**371 §1:** c. 293 §1; SCPF Instr., 21 iun. 1942 (AAS 34 [1942] 347–348)

**372 §1:** c. 216; CD 22; ES I, 4; DPME 172

**372 §2:** Pius PP. XII, Const. Ap. *Exsul familia*, 1 aug. 1952, Tit. alter, IV (AAS 44 [1952] 699–700); OE 4; CD 23, 43; Princ. 8

**373:** cc. 100 §1, 215 §1; Pius PP. XII, Enc. *Mystici Corporis*, 29 iun. 1943 (AAS 35 [1943] 211); CI Resp., 23 iun. 1953; LG 22; CD 2; REU 49 §1

**374 §1:** c. 216 §§1–3; SCPF Instr. *Cum a pluribus*, 25 iul. 1920 (AAS 12 [1920] 331–333); CD 32; ES 1, 21; DPME 174–177

§2. To foster pastoral care through common action, several neighboring parishes can be joined into special groups, such as vicariates forane.

## CHAPTER II. Bishops

### ART. 1. *Bishops in General*

**CAN. 375** §1. Bishops, who by divine institution succeed to the place of the Apostles through the Holy Spirit who has been given to them, are constituted pastors in the Church, so that they are teachers of doctrine, priests of sacred worship, and ministers of governance.

§2. Through episcopal consecration itself, bishops receive with the function of sanctifying also the functions of teaching and governing; by their nature, however, these can only be exercised in hierarchical communion with the head and members of the college.

**CAN. 376** Bishops to whom the care of some diocese is entrusted are called *diocesan*; others are called *titular*.

**CAN. 377** §1. The Supreme Pontiff freely appoints bishops or confirms those legitimately elected.

§2. At least every three years, bishops of an ecclesiastical province or, where circumstances suggest it, of a conference of bishops, are in common counsel and in secret to compose a list of presbyters, even including members of institutes of consecrated life, who are more suitable for the episcopate. They are to send it to the Apostolic See, without prejudice to the right of each bish-

§2. Ad curam pastoralem per communem actionem fovendam plures paroeciae viciniores coniungi possunt in peculiares coetus, uti sunt vicariatus foranei.

## CAPUT II. De Episcopis

### ART. 1. *De Episcopis In Genere*

**CAN. 375** §1. Episcopi, qui ex divina institutione in Apostolorum locum succedunt per Spiritum Sanctum qui datus est eis, in Ecclesia Pastores constituuntur, ut sint et ipsi doctrinae magistri, sacri cultus sacerdotes et gubernationis ministri.

§2. Episcopi ipsa consecratione episcopali recipiunt cum munere sanctificandi munera quoque docendi et regendi, quae tamen natura sua nonnisi in hierarchica communione cum Collegii capite et membris exercere possunt.

**CAN. 376** Episcopi vocantur *dioecesani*, quibus scilicet alicuius dioecesis cura commissa est; ceteri *titulares* appellantur.

**CAN. 377** §1. Episcopos libere Summus Pontifex nominat, aut legitime electos confirmat.

§2. Singulis saltem trienniis Episcopi provinciae ecclesiasticae vel, ubi adiuncta id suadeant, Episcoporum conferentiae, communi consilio et secreto elenchum componant presbyterorum etiam sodalium institutorum vitae consecratae, ad episcopatum aptiorum, eumque Apostolicae Sedi transmittant, firmo manente iure uniuscuiu-

**374 §2:** c. 217; DPME 184–188
**375 §1:** c. 329 §1; Pius PP. XII, Enc. *Mystici Corporis*, 29 iun. 1943 (AAS 35 [1943] 211–212); LG 19, 20; CD 2; DPME 32–38
**375 §2:** LG 21, nep 2; CD 11; DPME 39–43
**376:** CD passim
**377 §1:** cc. 329 §§2 et 3, 332 §1; CD 20; ES I, 10
**377 §2:** SCC Decr. *Inter suprema*, 19 mar. 1919 (AAS 11 [1919] 124–128); SCC Decr. *Maximam semper*, 20 nov. 1921 (AAS 13 [1921] 13–16); SCC Decr. *Quae de eligendis*, 19 mar. 1921 (AAS 13 [1921] 222–225); SCC Decr. *Quo expeditiori*, 30 apr. 1921 (AAS 13 [1921] 379–382); SCC Decr. *Ad proponendos*, 20 aug. 1921 (AAS 13 [1921] 430–432); ES I, 10; NPEM II–X

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 74 of 103

ebrate and apply a Mass for the people on the days mentioned in §1. If he is legitimately impeded from this celebration, however, he is to apply the Masses either on the same days through another or on other days himself.

§3. A bishop to whom other dioceses besides his own have been entrusted, even under title of administration, satisfies the obligation by applying one Mass for all the people entrusted to him.

§4. A bishop who has not satisfied the obligation mentioned in §§1–3 is to apply as soon as possible as many Masses for the people as he has omitted.

**CAN. 389** He is frequently to preside at the celebration of the Most Holy Eucharist in the cathedral church or another church of his diocese, especially on holy days of obligation and other solemnities.

**CAN. 390** A diocesan bishop can perform pontifical functions in his entire diocese but not outside his own diocese without the express, or at least reasonably presumed, consent of the local ordinary.

**CAN. 391** §1. It is for the diocesan bishop to govern the particular church entrusted to him with legislative, executive, and judicial power according to the norm of law.

§2. The bishop exercises legislative power himself. He exercises executive power either personally or through vicars general or episcopal vicars according to the norm of law. He exercises judicial power either personally or through the judicial vicar and judges according to the norm of law.

bus, de quibus in §1, per se ipse celebrare et applicare debet; si vero ab hac celebratione legitime impediatur, iisdem diebus per alium, vel aliis diebus per se ipse applicet.

§3. Episcopus cui praeter propriam dioecesim aliae, titulo etiam administrationis, sunt commissae, obligationi satisfacit unam Missam pro universo populo sibi commisso applicando.

§4. Episcopus qui obligationi, de qua in §§1–3, non satisfecerit, quam primum pro populo tot Missas applicet quot omiserit.

**CAN. 389** Frequenter praesit in ecclesia cathedrali aliave ecclesia suae dioecesis sanctissimae Eucharistiae celebrationi, in festis praesertim de praecepto aliisque sollemnitatibus.

**CAN. 390** Episcopus dioecesanus in universa sua dioecesi pontificalia exercere potest; non vero extra propriam dioecesim sine expresso vel saltem rationabiliter praesumpto Ordinarii loci consensu.

**CAN. 391** §1. Episcopi dioecesani est Ecclesiam particularem sibi commissam cum potestate legislativa, exsecutiva et iudiciali regere, ad normam iuris.

§2. Potestatem legislativam exercet ipse Episcopus; potestatem exsecutivam exercet sive per se sive per Vicarios generales aut episcopales ad normam iuris; potestatem iudicialem sive per se sive per Vicarium iudicialem et iudices ad normam iuris.

**388 §3:** c. 339 §5
**388 §4:** c. 339 §6
**389:** SC 41; LG 26; DPME 81; EMys 7, 42
**390:** c. 337 §1; PAULUS PP. VI, Instr. *Pontificales ritus,* 21 iun. 1968 (AAS 60 [1968] 406–412); DPME 81
**391 §1:** c. 335 §1; SCConc Resol., 19 feb. 1921 (AAS 13 [1921] 228–230); SA Decisio, 15 dec. 1923 (AAS 16

[1924] 105–112); PIUS PP. XII, Enc. *Mystici Corporis,* 29 iun. 1943 (AAS 35 [1943] 211–212); LG 27; DPME 32–38
**391 §2:** cc. 362, 366 §1, 368, 369, 1572, 1573; CD 27; COMMISSIO CENTRALIS COORDINANDIS POST CONCILIUM LABORIBUS ET CONCILII DECRETIS INTERPRETANDIS Resp., 10 iun. 1966 (AAS 60 [1968] 361); ES I, 14 §2

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 75 of 103

ɔrudenti iudicio synodum
ɪendere necnon dissol-

:l impedita sede
ıs dioecesana ipso iure
c Episcopus dioecesanus,
n continuari decreverit aut
ı declaraverit.

**:uria Dioecesana**

ıria dioecesana constat
:rsonis, quae Episcopo
in regimine universae dio-
in actione pastorali diri-
tratione dioecesis curanda,
ıte iudiciali exercenda.
ɔminatio eorum, qui officia
ıa exercent, spectat ad
esanum.
mnes qui ad officia in curia
nt:
ıem emittere de munere
do, secundum rationem
ɪpo determinatam;
ervare intra fines et
n iure aut ab Episcopo

irca causas atque
curia ad exercitium
lis pertinent, serventur
VII *De processibus*; de iis
dministrationem dioecesis
ur praescripta canonum

ı. Episcopus dioecesa-

;pC Ep., 19 iul. 1972; Pau-
ıriae potestatis, 6 ian. 1977,

care that all the affairs which belong to the administration of the whole diocese are duly coordinated and are ordered to attain more suitably the good of the portion of the people of God entrusted to him.

§2. It is for the diocesan bishop himself to coordinate the pastoral action of the vicars general or episcopal vicars. Where it is expedient, a moderator of the curia can be appointed who must be a priest and who, under the authority of the bishop, is to coordinate those things which pertain to the treatment of administrative affairs and to take care that the other members of the curia properly fulfill the office entrusted to them.

§3. Unless in the judgment of the bishop local circumstances suggest otherwise, the vicar general or if there are several, one of the vicars general, is to be appointed moderator of the curia.

§4. Where the bishop has judged it expedient, he can establish an episcopal council, consisting of the vicars general and episcopal vicars, to foster pastoral action more suitably.

CAN. 474 For validity, acts of the curia which are to have juridic effect must be signed by the ordinary from whom they emanate; they must also be signed by the chancellor of the curia or a notary. The chancellor, moreover, is bound to inform the moderator of the curia concerning such acts.

ART. 1. *Vicars General and Episcopal Vicars*

CAN. 475 §1. In each diocese the diocesan bishop must appoint a vicar general who is provided with ordinary power according to the

nus curare debet ut omnia negotia quae ad universae dioecesis administrationem pertinent, debite coordinentur et ad bonum portionis populi Dei sibi commissae aptius procurandum ordinentur.

§2. Ipsius Episcopi dioecesani est coordinare actionem pastoralem Vicariorum sive generalium sive episcopalium; ubi id expediat, nominari potest Moderator curiae, qui sacerdos sit oportet, cuius est sub Episcopi auctoritate ea coordinare quae ad negotia administrativa tractanda attinent, itemque curare ut ceteri curiae addicti officium sibi commissum rite adimpleant.

§3. Nisi locorum adiuncta iudicio Episcopi aliud suadeant, Moderator curiae nominetur Vicarius generalis aut, si plures sint, unus ex Vicariis generalibus.

§4. Ubi id expedire iudicaverit, Episcopus, ad actionem pastoralem aptius fovendam, constituere potest consilium episcopale, constans scilicet Vicariis generalibus et Vicariis episcopalibus.

CAN. 474 Acta curiae quae effectum iuridicum habere nata sunt, subscribi debent ab Ordinario a quo emanant, et quidem ad validitatem, ac simul a curiae cancellario vel notario; cancellarius vero Moderatorem curiae de actis certiorem facere tenetur.

ART. 1. *De Vicariis Generalibus Et Episcopalibus*

CAN. 475 §1. In unaquaque dioecesi constituendus est ab Episcopo dioecesano Vicarius generalis, qui potestate ordina-

473 §2: CD 25, 26
474: cc. 372 §3, 373 §1, 374 §1, 2°

475 §1: c. 366 §1; SCPF Rescr., 7 nov. 1929: CD 27; DPME 201

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 76 of 103

norm of the following canons and who is to assist him in the governance of the whole diocese.

ria ad normam canonum qui sequuntur instructus, ipsum in universae dioecesis regimine adiuvet.

§2. As a general rule, one vicar general is to be appointed unless the size of the diocese, the number of inhabitants, or other pastoral reasons suggest otherwise

§2. Pro regula generali habeatur ut unus constituatur Vicarius generalis, nisi dioecesis amplitudo vel incolarum numerus aut aliae rationes pastorales aliud suadeant.

**CAN. 476** Whenever the correct governance of a diocese requires it, the diocesan bishop can also appoint one or more episcopal vicars, namely, those who in a specific part of the diocese or in a certain type of affairs or over the faithful of a specific rite or over certain groups of persons possess the same ordinary power which a vicar general has by universal law, according to the norm of the following canons.

**CAN. 476** Quoties rectum dioecesis regimen id requirat, constitui etiam possunt ab Episcopo dioecesano unus vel plures Vicarii episcopales, qui nempe aut in determinata dioecesis parte aut in certo negotiorum genere aut quoad fideles determinati ritus vel certi personarum coetus, eadem gaudent potestate ordinaria, quae iure universali Vicario generali competit, ad normam canonum qui sequuntur.

**CAN. 477** §1. The diocesan bishop freely appoints a vicar general and an episcopal vicar and can freely remove them, without prejudice to the prescript of can. 406. An episcopal vicar who is not an auxiliary bishop is to be appointed only for a time to be determined in the act of appointment.

**CAN. 477** §1. Vicarius generalis et episcopalis libere ab Episcopo dioecesano nominantur et ab ipso libere removeri possunt, firmo praescripto can. 406; Vicarius episcopalis, qui non sit Episcopus auxiliaris, nominetur tantum ad tempus, in ipso constitutionis actu determinandum.

§2. When a vicar general is absent or legitimately impeded, a diocesan bishop can appoint another to take his place; the same norm applies to an episcopal vicar.

§2. Vicario generali absente vel legitime impedito, Episcopus dioecesanus alium nominare potest, qui eius vices suppleat; eadem norma applicatur pro Vicario episcopali.

**CAN. 478** §1. A vicar general and an episcopal vicar are to be priests not less than thirty years old, doctors or licensed in canon law or theology or at least truly expert in these disciplines, and recommended by sound doctrine, integrity, prudence, and experience in handling matters.

**CAN. 478** §1. Vicarius generalis et episcopalis sint sacerdotes annos nati non minus triginta, in iure canonico aut theologia doctores vel licentiati vel saltem in iisdem disciplinis vere periti, sana doctrina, probitate, prudentia ac rerum gerendarum experientia commendati.

**475 §2:** c. 366 §3; ES I, 14 §1; DPME 161, 201
**476:** CD 23, 27; ES I, 14 §§1 et 2; DPME 119, 161, 202
**477 §1:** c. 366 §2; ES I, 14 §§2 et 5
**477 §2:** c. 366 §3; ES I, 14 §2
**478 §1:** c. 367 §1; ES I, 14 §2; DPME 201

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 77 of 103

§2. The function of vicar general and episcopal vicar can neither be coupled with the function of canon penitentiary nor be entrusted to blood relatives of the bishop up to the fourth degree.

**CAN. 479** §1. By virtue of office, the vicar general has the executive power over the whole diocese which belongs to the diocesan bishop by law, namely, the power to place all administrative acts except those, however, which the bishop has reserved to himself or which require a special mandate of the bishop by law.

§2. By the law itself an episcopal vicar has the same power mentioned in §1 but only over the specific part of the territory or the type of affairs or the faithful of a specific rite or group for which he was appointed, except those cases which the bishop has reserved to himself or to a vicar general or which require a special mandate of the bishop by law.

§3. Within the limit of their competence, the habitual faculties granted by the Apostolic See to the bishop and the execution of rescripts also pertain to a vicar general and an episcopal vicar, unless it has been expressly provided otherwise or the personal qualifications of the diocesan bishop were chosen.

**CAN. 480** A vicar general and an episcopal vicar must report to the diocesan bishop concerning the more important affairs which are to be handled or have been handled, and they are never to act contrary to the intention and mind of the diocesan bishop.

**CAN. 481** §1. The power of a vicar general and an episcopal vicar ceases at the expiration of the time of the mandate, by resignation, by removal made known to them by the diocesan

§2. Vicarii generalis et episcopalis munus componi non potest cum munere canonici paenitentiarii, neque committi consanguineis Episcopi usque ad quartum gradum.

**CAN. 479** §1. Vicario generali, vi officii, in universa dioecesi competit potestas exsecutiva quae ad Episcopum dioecesanum iure pertinet, ad ponendos scilicet omnes actus administrativos, iis tamen exceptis quos Episcopus sibi reservaverit vel qui ex iure requirant speciale Episcopi mandatum.

§2. Vicario episcopali ipso iure eadem competit potestas de qua in §1, sed quoad determinatam territorii partem aut negotiorum genus aut fideles determinati ritus vel coetus tantum pro quibus constitutus est, iis causis exceptis quas Episcopus sibi aut Vicario generali reservaverit, aut quae ex iure requirunt speciale Episcopi mandatum.

§3. Ad Vicarium generalem atque ad Vicarium episcopalem, intra ambitum eorum competentiae, pertinent etiam facultates habituales ab Apostolica Sede Episcopo concessae, necnon rescriptorum exsecutio, nisi aliud expresse cautum fuerit aut electa fuerit industria personae Episcopi dioecesani.

**CAN. 480** Vicarius generalis et Vicarius episcopalis de praecipuis negotiis et gerendis et gestis Episcopo dioecesano referre debent, nec umquam contra voluntatem et mentem Episcopi dioecesani agant.

**CAN. 481** §1. Expirat potestas Vicarii generalis et Vicarii episcopalis expleto tempore mandati, renuntiatione, itemque, salvis cann. 406 et 409, remotione eisdem

**478 §2:** c. 367 §3; ES I, 14 §2
**479 §1:** c. 368 §1
**479 §2:** ES I, 14 §2
**479 §3:** c. 368 §2; ES I, 14 §2
**480:** c. 369 §§1 et 2; ES I, 14 §3; DPME 202
**481 §1:** c. 371; ES I, 14 §§2 et 5

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 78 of 103

avendo ne parochus
:ulum paroecialibus
:nto sit; conflictus,
dirimat Episcopus
mis curet ut fidelium
libus apte prospi-

:, paroeciali simul et
eleemosynae, praesu-
e, nisi aliud constet.

ilio Pastorali

alis dioecesibus,
iuncta id suadeant,
pastorale, cuius est
pi ea quae opera
pectant investigare,
is conclusiones

nsilium pastorale
qui in plena com-
esia catholica, tum
nstitutorum vitae
certim laicis, quique
Episcopo dioecesano

ui deputantur ad
seligantur ut per eos
rtio, quae dioecesim
guretur, ratione
cesis regionum,
et professionum,
e singuli sive cum
olatu habent.
astorale ne depu-

faithful outstanding in firm faith, good morals, and prudence is to be designated to a pastoral council.

tentur nisi christifideles certa fide, bonis moribus et prudentia praestantes.

**CAN. 513** §1. A pastoral council is constituted for a period of time according to the prescripts of the statutes which are issued by the bishop.

**CAN. 513** §1. Consilium pastorale constituitur ad tempus, iuxta praescripta statutorum, quae ab Episcopo dantur.

§2. When the see is vacant, a pastoral council ceases.

§2. Sede vacante, consilium pastorale cessat.

**CAN. 514** §1. A pastoral council possesses only a consultative vote. It belongs to the diocesan bishop alone to convoke it according to the needs of the apostolate and to preside over it; it also belongs to him alone to make public what has been done in the council.

**CAN. 514** §1. Consilium pastorale, quod voto gaudet tantum consultivo, iuxta necessitates apostolatus convocare eique praeesse ad solum Episcopum dioecesanum pertinet; ad quem etiam unice spectat, quae in consilio pertractata sunt publici iuris facere.

§2. The pastoral council is to be convoked at least once a year.

§2. Saltem semel in anno convocetur.

## CHAPTER VI. Parishes, Pastors, and Parochial Vicars

## CAPUT VI. De Paroeciis, De Parochis et de Vicariis Paroecialibus

**CAN. 515** §1. A parish is a certain community of the Christian faithful stably constituted in a particular church, whose pastoral care is entrusted to a pastor (*parochus*) as its proper pastor (*pastor*) under the authority of the diocesan bishop.

**CAN. 515** §1. Paroecia est certa communitas christifidelium in Ecclesia particulari stabiliter constituta, cuius cura pastoralis, sub auctoritate Episcopi dioecesani, committitur parocho, qua proprio eiusdem pastori.

§2. It is only for the diocesan bishop to erect, suppress, or alter parishes. He is neither to erect, suppress, nor alter notably parishes, unless he has heard the presbyteral council.

§2. Paroecias erigere, supprimere aut eas innovare unius est Episcopi dioecesani, qui paroecias ne erigat aut supprimat, neve eas notabiliter innovet, nisi audito consilio presbyterali.

**513 § 1:** ES I, 16 §2; OChr 7
**513 §2:** OChr 11
**514 §1:** CD 27; ES I, 16 §2; OChr 8, 10; DPME 204
**514 §2:** ES I, 16 §2
**515 §1:** cc. 216 §§1–3, 451 §1; SC 42; LG 26; CD 30; AA 10; AG 37
**515 §2:** c. 216 §1; CI Resp., 26 sep. 1921; SCConc Resol., 14 ian. 1922 (AAS 14 [1922] 229–233); Sec Decl., 10 nov. 1922; CD 32; ES I, 21 §3; CIV Resp., 3 iul. 1969 (AAS [1969] 551); DPME 206

§3. A legitimately erected parish possesses juridic personality by the law itself.

§3. Paroecia legitime erecta personalitate iuridica ipso iure gaudet.

**CAN. 516** §1. Unless the law provides otherwise, a quasi-parish is equivalent to a parish; a quasi-parish is a definite community of the Christian faithful in a particular church, entrusted to a priest as its proper pastor but not yet erected as a parish because of particular circumstances.

**CAN. 516** §1. Nisi aliud iure caveatur, paroeciae aequiparatur quasi-paroecia, quae est certa in Ecclesia particulari communitas christifidelium, sacerdoti uti pastori proprio commissa, ob peculiaria adiuncta in paroeciam nondum erecta.

§2. When certain communities cannot be erected as parishes or quasi-parishes, the diocesan bishop is to provide for their pastoral care in another way.

§2. Ubi quaedam communitates in paroeciam vel quasi-paroeciam erigi non possint, Episcopus dioecesanus alio modo earundem pastorali curae prospiciat.

**CAN. 517** §1. When circumstances require it, the pastoral care of a parish or of different parishes together can be entrusted to several priests *in solidum*, with the requirement, however, that in exercising pastoral care one of them must be the moderator, namely, the one who is to direct the joint action and to answer for it to the bishop.

**CAN. 517** §1. Ubi adiuncta id requirant, paroeciae aut diversarum simul paroeciarum cura pastoralis committi potest pluribus in solidum sacerdotibus, ea tamen lege, ut eorundem unus curae pastoralis exercendae sit moderator, qui nempe actionem coniunctam dirigat atque de eadem coram Episcopo respondeat.

§2. If, because of a lack of priests, the diocesan bishop has decided that participation in the exercise of the pastoral care of a parish is to be entrusted to a deacon, to another person who is not a priest, or to a community of persons, he is to appoint some priest who, provided with the powers and faculties of a pastor, is to direct the pastoral care.

§2. Si ob sacerdotum penuriam Episcopus dioecesanus aestimaverit participationem in exercitio curae pastoralis paroeciae concredendam esse diacono aliive personae sacerdotali charactere non insignitae aut personarum communitati, sacerdotem constituat aliquem qui, potestatibus et facultatibus parochi instructus, curam pastoralem moderetur.

**CAN. 518** As a general rule a parish is to be territorial, that is, one which includes all the Christian faithful of a certain territory. When it

**CAN. 518** Paroecia regula generali sit territorialis, quae scilicet omnes complectatur christifideles certi territorii; ubi

**515 §3:** cc. 99, 100 §1

**516 §1:** c. 216 §3; SCC Decl., 1 aug. 1919 (AAS 11 [1919] 346–347); SCPF Instr. *Cum e pluribus*, 25 iul. 1920 (AAS 12 [1920] 331–333); SCPF Decr. *Ordinarii quarumdam*, 9 dec. 1920 (AAS 13 [1921] 17–18)

**516 §2:** DPME 174, 183; EN 58

**517 §1:** c. 460 §2; CI Resp. IV, 14 iul. 1922 (AAS 14 [1922] 527)

**517 §2:** SCGE Instr. *La fonction évangélisatrice*, 19 nov. 1976, V

**518** c. 216 §§1, 2 et 4; CI Resp., 26 sep. 1921, 3; CI Resp. I, 20 maii 1923 (AAS 16 [1924] 113); PIUS PP. XII, Const. Ap. *Exsul Familia*, 1 aug. 1952, 32 (AAS 44 [1952] 699–700); CD 23; ES I, 21, 13; SCE Decl., 21 nov. 1966; DPME 174

is exp
be esta
langua
of som
CA
proper
him, e
nity cc
the dio
he has
comm
teachir
the coc
and wi
Christi
CAN
be a pa
superio
diocesa
a cleric
apostol
the inst
howeve
the pari
several
in can.
§2. T
§1 can b
cific, pr
to be m
betweer
tent sup
expressl
things, t
sons to t
cial arra

519: cc.
520 §1:
ian. 1931; E

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 80 of 103

is expedient, however, personal parishes are to be established determined by reason of the rite, language, or nationality of the Christian faithful of some territory, or even for some other reason.

**CAN. 519** The pastor (*parochus*) is the proper pastor (*pastor*) of the parish entrusted to him, exercising the pastoral care of the community committed to him under the authority of the diocesan bishop in whose ministry of Christ he has been called to share, so that for that same community he carries out the functions of teaching, sanctifying, and governing, also with the cooperation of other presbyters or deacons and with the assistance of lay members of the Christian faithful, according to the norm of law.

**CAN. 520** §1. A juridic person is not to be a pastor. With the consent of the competent superior, however, a diocesan bishop, but not a diocesan administrator, can entrust a parish to a clerical religious institute or clerical society of apostolic life, even by erecting it in a church of the institute or society, with the requirement, however, that one presbyter is to be the pastor of the parish or, if the pastoral care is entrusted to several *in solidum*, the moderator as mentioned in can. 517 §1.

§2. The entrusting of a parish mentioned in §1 can be made either perpetually or for a specific, predetermined time. In either case it is to be made by means of a written agreement between the diocesan bishop and the competent superior of the institute or society, which expressly and accurately defines, among other things, the work to be accomplished, the persons to be assigned to the parish, and the financial arrangements.

vero id expediat, constituantur paroeciae personales, ratione ritus, linguae, nationis christifidelium alicuius territorii atque alia etiam ratione determinatae.

**CAN. 519** Parochus est pastor proprius paroeciae sibi commissae, cura pastorali communitatis sibi concreditae fungens sub auctoritate Episcopi dioecesani, cuius in partem ministerii Christi vocatus est, ut pro eadem communitate munera exsequatur docendi, sanctificandi et regendi, cooperantibus etiam aliis presbyteris vel diaconis atque operam conferentibus christifidelibus laicis, ad normam iuris.

**CAN. 520** §1. Persona iuridica ne sit parochus; Episcopus autem dioecesanus, non vero Administrator dioecesanus, de consensu competentis Superioris, potest paroeciam committere instituto religioso clericali vel societati clericali vitae apostolicae, eam erigendo etiam in ecclesia instituti aut societatis, hac tamen lege ut unus presbyter sit paroeciae parochus, aut, si cura pastoralis pluribus in solidum committatur, moderator, de quo in can. 517, §1.

§2. Paroeciae commissio, de qua in §1, fieri potest sive in perpetuum sive ad certum praefinitum tempus; in utroque casu fiat mediante conventione scripta inter Episcopum dioecesanum et competentem Superiorem instituti vel societatis inita, qua inter alia expresse et accurate definiantur, quae ad opus explendum, ad personas eidem addicendas et ad res oeconomicas spectent.

**519:** cc. 216 §1, 415 §1; CD 30; DPME 176

**520 §1:** c. 452 §1; SCConc Instr. *A chiarimento*, 23 ian. 1931; ES I, 33 §1

**520 §2:** SCConc Instr. *A chiarimento*, 23 ian. 1931; SCR Normae, 15 feb. 1949, ES I, 33 §1; SCRIS Normae, 1 mar. 1975

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 81 of 103

valide in
tet sit in sacro
itutus.
doctrina et
s, animarum zelo
s, atque insuper
ad paroeciam,
ire sive universali

i alicui conferen-
eitate, modo ab
rminato, etiam

tabilitate gaudeat
s indefinitum
ous tantum ab
inari potest, si id
ia per decretum

scripto can. 682,
Episcopo dioece-
ibera collatione,
tationis aut

paroeciam Epi-
rat illi quem, om-
aestimet idoneum
eadem implendam,
one remota; ut
at, audiat vicarium
igationes peragat,
is presbyteris
cis.

sol., 19 feb. 1921
esol., 21 iun. 1930

2

**CAN. 525** When a see is vacant or impeded, it belongs to the diocesan administrator or another who governs the diocese temporarily:

1° to install or confirm presbyters who have been legitimately presented or elected for a parish;

2° to appoint pastors if the see has been vacant or impeded for a year.

**CAN. 526** §1. A pastor is to have the parochial care of only one parish; nevertheless, because of a lack of priests or other circumstances, the care of several neighboring parishes can be entrusted to the same pastor.

§2. In the same parish there is to be only one pastor or moderator in accord with the norm of can. 517 §1; any contrary custom is reprobated and any contrary privilege whatsoever is revoked.

**CAN. 527** §1. The person who has been promoted to carry out the pastoral care of a parish obtains this care and is bound to exercise it from the moment of taking possession.

§2. The local ordinary or a priest delegated by him places the pastor in possession; he is to observe the method accepted by particular law or legitimate custom. The same ordinary, however, can dispense from that method for a just cause; in this case, the notification of the dispensation to the parish replaces the taking of possession.

§3. The local ordinary is to prescribe the time within which possession of a parish must be taken. When this has elapsed without action, he can declare the parish vacant unless there was a just impediment.

**CAN. 528** §1. A pastor is obliged to make

**CAN. 525** Sede vacante aut impedita, ad Administratorem dioecesanum aliumve dioecesim ad interim regentem pertinet:

1° institutionem vel confirmationem concedere presbyteris, qui ad paroeciam legitime praesentati aut electi fuerint;

2° parochos nominare, si sedes ab anno vacaverit aut impedita sit.

**CAN. 526** §1. Parochus unius paroeciae tantum curam paroecialem habeat; ob penuriam tamen sacerdotum aut alia adiuncta, plurium vicinarum paroeciarum cura eidem parocho concredi potest.

§2. In eadem paroecia unus tantum habeatur parochus aut moderator ad normam can. 517, §1, reprobata contraria consuetudine et revocato quolibet contrario privilegio.

**CAN. 527** §1. Qui ad curam pastoralem paroeciae gerendam promotus est, eandem obtinet et exercere tenetur a momento captae possessionis.

§2. Parochum in possessionem mittit loci Ordinarius aut sacerdos ab eodem delegatus, servato modo lege particulari aut legitima consuetudine recepto; iusta tamen de causa potest idem Ordinarius ab eo modo dispensare; quo in casu dispensatio paroeciae notificata locum tenet captae possessionis.

§3. Loci Ordinarius praefiniat tempus intra quod paroeciae possessio capi debeat; quo inutiliter praeterlapso, nisi iustum obstiterit impedimentum, paroeciam vacare declarare potest.

**CAN. 528** §1. Parochus obligatione

**525:** c. 455 §2
**526 §1:** cc. 156 §§1 et 2, 460 §1
**526 §2:** c. 460 §2
**527 §1:** c. 461
**527 §2:** c. 1444 §1
**527 §3:** c. 1444 §2
**528 §1:** cc. 467 §1, 468, 469; SC 35, 52; UR 11; CD 30; PO 6, 9; PAULUS PP. VI, m.p. *Sacram Liturgiam*, 25 ian. 1964, III (AAS 56 [1964] 139–144); IOe 53

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 82 of 103

provision so that the word of God is proclaimed in its entirety to those living in the parish; for this reason, he is to take care that the lay members of the Christian faithful are instructed in the truths of the faith, especially by giving a homily on Sundays and holy days of obligation and by offering catechetical instruction. He is to foster works through which the spirit of the gospel is promoted, even in what pertains to social justice. He is to have particular care for the Catholic education of children and youth. He is to make every effort, even with the collaboration of the Christian faithful, so that the message of the gospel comes also to those who have ceased the practice of their religion or do not profess the true faith.

tenetur providendi ut Dei verbum integre in paroecia degentibus annuntietur; quare curet ut christifideles laici in fidei veritatibus edoceantur, praesertim homilia diebus dominicis et festis de praecepto habenda necnon catechetica institutione tradenda, atque foveat opera quibus spiritus evangelicus, etiam ad iustitiam socialem quod attinet, promoveatur; peculiarem curam habeat de puerorum iuvenumque educatione catholica; omni ope satagat, associata etiam sibi christifidelium opera, ut nuntius evangelicus ad eos quoque perveniat, qui a religione colenda recesserint aut veram fidem non profiteantur.

§2. The pastor is to see to it that the Most Holy Eucharist is the center of the parish assembly of the faithful. He is to work so that the Christian faithful are nourished through the devout celebration of the sacraments and, in a special way, that they frequently approach the sacraments of the Most Holy Eucharist and penance. He is also to endeavor that they are led to practice prayer even as families and take part consciously and actively in the sacred liturgy which, under the authority of the diocesan bishop, the pastor must direct in his own parish and is bound to watch over so that no abuses creep in.

§2. Consulat parochus ut sanctissima Eucharistia centrum sit congregationis fidelium paroecialis; allaboret ut christifideles, per devotam sacramentorum celebrationem, pascantur, peculiarique modo ut frequenter ad sanctissimae Eucharistiae et paenitentiae sacramenta accedant; annitatur item ut iidem ad orationem etiam in familiis peragendam ducantur atque conscie et actuose partem habeant in sacra liturgia, quam quidem, sub auctoritate Episcopi dioecesani, parochus in sua paroecia moderari debet et, ne abusus irrepant, invigilare tenetur.

**CAN. 529** §1. In order to fulfill his office diligently, a pastor is to strive to know the faithful entrusted to his care. Therefore he is to visit families, sharing especially in the cares, anxieties, and griefs of the faithful, strengthening them in the Lord, and prudently correcting them if they are failing in certain areas. With generous love he is to help the sick, particularly

**CAN. 529** §1. Officium pastoris sedulo ut adimpleat, parochus fideles suae curae commissos cognoscere satagat; ideo familias visitet, fidelium sollicitudines, angores et luctus praesertim participans eosque in Domino confortans necnon, si in quibusdam defecerint, prudenter corrigens; aegrotos, praesertim morti proximos, effusa caritate

**528 §2:** Pius PP. XII, All., 17 feb. 1945; SC 42, 59; CD 30; EMys 26

**529 §1:** cc. 467 §1, 468 §1; Pius PP. XII, All., 6 feb. 1940; CD 18, 30; PO 6

those close to de
itously with the
their souls to Go
is to seek out the
those exiled fron
those weighed d
is to work so tha
ported in fulfillin
foster growth of
§2. A pastor
the proper part
Christian faithfu
Church, by foste
purposes of religi
own bishop and t
also working so
for parochial con
members of the
Church, and part
promote this sam
**CAN. 530** T
pecially entruste
1° the adminis
2° the admini
confirmation to
death, according
3° the adminis
anointing of the
prescript of can. 1
ing of the apostol
4° the assistan
blessing;
5° the perform
6° the blessing
ter time, the lea
the church, and
church;

**529 §2:** CD 30; PO
**530:** cc. 462, 466

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 83 of 103

verbum integre
ıuntietur; quare
in fidei veritatibus
milia diebus do-
pto habenda nec-
ıe tradenda, atque
ıs evangelicus,
n quod attinet,
:uram habeat de
ıcatione catholica;
ta etiam sibi
ıntius evangelicus
qui a religione
ram fidem non

ut sanctissima
ngregationis fide-
ut christifideles,
ım celebrationem,
ɔdo ut frequenter
iae et paeniten-
annitatur item ut
in familiis pera-
ɔnscie et actuose
turgia, quam qui-
:opi dioecesani,
moderari debet et,
are tenetur.

n pastoris sedulo
eles suae curae
tagat; ideo fami-
udines, angores
ipans eosque in
n, si in quibusdam
gens; aegrotos,
;, effusa caritate

'P. XII, All., 6 feb.

those close to death, by refreshing them solicitously with the sacraments and commending their souls to God; with particular diligence he is to seek out the poor, the afflicted, the lonely, those exiled from their country, and similarly those weighed down by special difficulties. He is to work so that spouses and parents are supported in fulfilling their proper duties and is to foster growth of Christian life in the family.

§2. A pastor is to recognize and promote the proper part which the lay members of the Christian faithful have in the mission of the Church, by fostering their associations for the purposes of religion. He is to cooperate with his own bishop and the *presbyterium* of the diocese, also working so that the faithful have concern for parochial communion, consider themselves members of the diocese and of the universal Church, and participate in and sustain efforts to promote this same communion.

**CAN. 530** The following functions are especially entrusted to a pastor:

1° the administration of baptism;

2° the administration of the sacrament of confirmation to those who are in danger of death, according to the norm of can. 883, n. 3;

3° the administration of Viaticum and of the anointing of the sick, without prejudice to the prescript of can. 1003 §§2 and 3, and the imparting of the apostolic blessing;

4° the assistance at marriages and the nuptial blessing;

5° the performance of funeral rites;

6° the blessing of the baptismal font at Easter time, the leading of processions outside the church, and solemn blessings outside the church;

adiuvet, eos sollicite sacramentis reficiendo eorumque animas Deo commendando; peculiari diligentia prosequatur pauperes, afflictos, solitarios, e patria exsules itemque peculiaribus difficultatibus gravatos; allaboret etiam ut coniuges et parentes ad officia propria implenda sustineantur et in familia vitae christianae incrementum foveat.

§2. Partem quam christifideles laici in missione Ecclesiae propriam habent, parochus agnoscat et promoveat, consociationes eorundem ad fines religionis fovendo. Cum proprio Episcopo et cum dioecesis presbyterio cooperetur, allaborans etiam ut fideles communionis paroecialis curam habeant, iidemque tum dioecesis tum Ecclesiae universae membra se sentiant operaque ad eandem communionem promovendam participent vel sustineant.

**CAN. 530** Functiones specialiter parocho commissae sunt quae sequuntur:

1° administratio baptismi;

2° administratio sacramenti confirmationis iis qui in periculo mortis versantur, ad normam can. 883, n. 3;

3° administratio Viatici necnon unctionis infirmorum, firmo praescripto can. 1003, §§2 et 3, atque apostolicae benedictionis impertitio;

4° assistentia matrimoniis et benedictio nuptiarum;

5° persolutio funerum;

6° fontis baptismalis tempore paschali benedictio, ductus processionum extra ecclesiam, necnon benedictiones extra ecclesiam sollemnes;

**529 §2:** CD 30; PO 7–9
**530:** cc. 462, 466 §1, 938 §2; SCConc Resol., 11 feb. 1928; SCDS Decr. *Spiritus Sancti Munera*, 14 sep. 1946, I (AAS 38 [1946] 352)

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 84 of 103

7° the more solemn eucharistic celebration on Sundays and holy days of obligation.

**CAN. 531** Although another person has performed a certain parochial function, that person is to put the offerings received from the Christian faithful on that occasion in the parochial account, unless in the case of voluntary offerings the contrary intention of the donor is certain. The diocesan bishop, after having heard the presbyteral council, is competent to establish prescripts which provide for the allocation of these offerings and the remuneration of clerics fulfilling the same function.

**CAN. 532** In all juridic affairs the pastor represents the parish according to the norm of law. He is to take care that the goods of the parish are administered according to the norm of cann. 1281–1288.

**CAN. 533** §1. A pastor is obliged to reside in a rectory near the church. Nevertheless, in particular cases and if there is a just cause, the local ordinary can permit him to reside elsewhere, especially in a house shared by several presbyters, provided that the performance of parochial functions is properly and suitably provided for.

§2. Unless there is a grave reason to the contrary, a pastor is permitted to be absent from the parish each year for vacation for at most one continuous or interrupted month; those days which the pastor spends once a year in spiritual retreat are not computed in the time of vacation. In order to be absent from the parish for more than a week, however, a pastor is bound to inform the local ordinary.

§3. It is for the diocesan bishop to establish norms which see to it that during the absence of

7° celebratio eucharistica sollemnior diebus dominicis et festis de praecepto.

**CAN. 531** Licet paroeciale quoddam munus alius expleverit, oblationes quas hac occasione a christifidelibus recipit ad massam paroecialem deferat, nisi de contraria offerentis voluntate constet quoad oblationes voluntarias; Episcopo dioecesano, audito consilio presbyterali, competit statuere praescripta, quibus destinationi harum oblationum necnon remunerationi clericorum idem munus implentium provideatur.

**CAN. 532** In omnibus negotiis iuridicis parochus personam gerit paroeciae, ad normam iuris; curet ut bona paroeciae administrentur ad normam cann. 1281–1288.

**CAN. 533** §1. Parochus obligatione tenetur residendi in domo paroeciali prope ecclesiam; in casibus tamen particularibus, si iusta adsit causa, loci Ordinarius permittere potest ut alibi commoretur, praesertim in domo pluribus presbyteris communi, dummodo paroecialium perfunctioni munerum rite apteque sit provisum.

§2. Nisi gravis obstet ratio, parocho, feriarum gratia, licet quotannis a paroecia abesse ad summum per unum mensem continuum aut intermissum; quo in feriarum tempore dies non computantur, quibus semel in anno parochus spirituali recessui vacat; parochus autem, ut ultra hebdomadam a paroecia absit, tenetur de hoc loci Ordinarium monere.

§3. Episcopi dioecesani est normas statuere quibus prospiciatur ut, parochi

**531:** c. 463 §3; PO 20, 21; ES I, 8
**533 §1:** c. 465 §1; CD 30, 1
**533 §2:** c. 465 §§2, 3 et 5
**533 §3:** c. 465 §§4 et 5

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 85 of 103

aristica sollemnior
stis de praecepto.
ıaroeciale quoddam
t, oblationes quas
tifidelibus recipit
em deferat, nisi de
luntate constet quoad
s; Episcopo dioece-
presbyterali, competit
quibus destinationi
cnon remunerationi
us implentium provi-

nibus negotiis iuridicis
gerit paroeciae, ad
t bona paroeciae admi-
n cann. 1281–1288.

ırochus obligatione
omo paroeciali prope
tamen particularibus, si
i Ordinarius permittere
oretur, praesertim in
yteris communi, dummo-
unctioni munerum rite
ı.
bstet ratio, parocho,
quotannis a paroecia
per unum mensem
nissum; quo in feriarum
omputantur, quibus
chus spirituali recessui
em, ut ultra hebdoma-
it, tenetur de hoc loci

ıecesani est normas
spiciatur ut, parochi

the pastor, a priest endowed with the necessary faculties provides for the care of the parish.

**CAN. 534** §1. After a pastor has taken possession of his parish, he is obliged to apply a Mass for the people entrusted to him on each Sunday and holy day of obligation in his diocese. If he is legitimately impeded from this celebration, however, he is to apply it on the same days through another or on other days himself.

§2. A pastor who has the care of several parishes is bound to apply only one Mass for the entire people entrusted to him on the days mentioned in §1.

§3. A pastor who has not satisfied the obligation mentioned in §§1 and 2 is to apply as soon as possible as many Masses for the people as he has omitted.

**CAN. 535** §1. Each parish is to have parochial registers, that is, those of baptisms, marriages, deaths, and others as prescribed by the conference of bishops or the diocesan bishop. The pastor is to see to it that these registers are accurately inscribed and carefully preserved.

§2. In the baptismal register are also to be noted enrollment in a Church *sui iuris* or transfer to another Church, confirmation and those things which pertain to the canonical status of the Christian faithful by reason of marriage, without prejudice to the prescript of can. 1133, of adoption, of reception of sacred orders, and of perpetual profession made in a religious in-

absentia durante, curae provideatur paroeciae per sacerdotem debitis facultatibus instructum.

**CAN. 534** §1. Parochus, post captam paroeciae possessionem, obligatione tenetur singulis diebus dominicis atque festis in sua dioecesi de praecepto Missam pro populo sibi commisso applicandi; qui vero ab hac celebratione legitime impediatur, iisdem diebus per alium aut aliis diebus per se ipse applicet.

§2. Parochus, qui plurium paroeciarum curam habet, diebus de quibus in §1, unam tantum Missam pro universo sibi commisso populo applicare tenetur.

§3. Parochus qui obligationi de qua in §§1 et 2 non satisfecerit, quam primum pro populo tot Missas applicet, quot omiserit.

**CAN. 535** §1. In unaquaque paroecia habeantur libri paroeciales, liber scilicet baptizatorum, matrimoniorum, defunctorum, aliique secundum Episcoporum conferentiae aut Episcopi dioecesani praescripta; prospiciat parochus ut iidem libri accurate conscribantur atque diligenter asserventur.

§2. In libro baptizatorum adnotentur quoque adscriptio Ecclesiae sui iuris vel ad aliam transitus, necnon confirmatio, item quae pertinent ad statum canonicum christifidelium, ratione matrimonii, salvo quidem praescripto can. 1133, ratione adoptionis, ratione suscepti ordinis sacri, necnon professionis perpetuae in instituto religioso

**534 §1:** c. 466 §§1, 3 et 5; SCConc Resol., 5 mar. 1932 (AAS 25 [1933] 436–438); SCpC Decr. *Litteris Apostolicis*, 25 iul. 1970 (ASS 63 [1971] 943–944)

**534 §2:** c. 466 §2; CI Resp. VI, 14 iul. 1922 (AAS 14 [1922] 528); SCConc Resol., 12 nov. 1927 (AAS 20 [1928] 84–87)

**534 §3:** c. 339 §4

**535 §1:** c. 470 §1; SCPF Resp. 2, 14 mar. 1922; PIUS PP. XII, Const. AP. *Exsul Familia*, 1 aug. 1952, 35 §2 (AAS 44 [1952] 700)

**535 §2:** c. 470 §2; CIC/83 c. 535 §2; DCIC art. 3

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 86 of 103

stitute. These notations are always to be noted on a baptismal certificate.

§3. Each parish is to have its own seal. Documents regarding the canonical status of the Christian faithful and all acts which can have juridic importance are to be signed by the pastor or his delegate and sealed with the parochial seal.

§4. In each parish there is to be a storage area, or archive, in which the parochial registers are protected along with letters of bishops and other documents which are to be preserved for reason of necessity or advantage. The pastor is to take care that all of these things, which are to be inspected by the diocesan bishop or his delegate at the time of visitation or at some other opportune time, do not come into the hands of outsiders.

§5. Older parochial registers are also to be carefully protected according to the prescripts of particular law.

**CAN. 536** §1. If the diocesan bishop judges it opportune after he has heard the presbyteral council, a pastoral council is to be established in each parish, over which the pastor presides and in which the Christian faithful, together with those who share in pastoral care by virtue of their office in the parish, assist in fostering pastoral activity.

§2. A pastoral council possesses a consultative vote only and is governed by the norms established by the diocesan bishop.

**CAN. 537** In each parish there is to be a finance council which is governed, in addition to universal law, by norms issued by the dioce-

emissae; eaeque adnotationes in documento accepti baptismi semper referantur.

§3. Unicuique paroeciae sit proprium sigillum; testimonia quae de statu canonico christifidelium dantur, sicut et acta omnia quae momentum iuridicum habere possunt, ab ipso parocho eiusve delegato subscribantur et sigillo paroeciali muniantur.

§4. In unaquaque paroecia habeatur tabularium seu archivum, in quo libri paroeciales custodiantur, una cum Episcoporum epistulis aliisque documentis, necessitatis utilitatisve causa servandis; quae omnia, ab Episcopo dioecesano eiusve delegato, visitationis vel alio opportuno tempore inspicienda, parochus caveat ne ad extraneorum manus perveniant.

§5. Libri paroeciales antiquiores quoque diligenter custodiantur, secundum praescripta iuris particularis.

**CAN. 536** §1. Si, de iudicio Episcopi dioecesani, audito consilio presbyterali, opportunum sit, in unaquaque paroecia constituatur consilium pastorale, cui parochus praeest et in quo christifideles una cum illis qui curam pastoralem vi officii sui in paroecia participant, ad actionem pastoralem fovendam suum adiutorium praestent.

§2. Consilium pastorale voto gaudet tantum consultivo et regitur normis ab Episcopo dioecesano statutis.

**CAN. 537** In unaquaque paroecia habeatur consilium a rebus oeconomicis, quod praeterquam iure universali, regitur normis

**535 §3:** c. 470 §4

**535 §4:** c. 470 §4

**535 §5:** Sec Litt. circ., 15 apr. 1923; SCConc Normae, 24 maii 1939 (AAS 31 [1939] 266–268); PONTIFICIUM CONSILIUM ECCLESIASTICIS ITALIAE TABULARIIS CURANDIS Instr. *A seguito*, 5 dec. 1960 (AAS 52 [1960] 1022–1025)

**536 §1:** CD 27; ES I, 16 §§1–3; OChr 6–12; DPME 179, 204; SDO V, 25

**536 §2:** CD 27; ES I, 16 §2; OChr 8, 10; DPME 204

**537:** cc. 1183, 1184, 1520 §§1 et 2, 1521 §1, 1525 §1; PO 17, DPME 131

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 87 of 103

san bishop and in which the Christian faithful, selected according to these same norms, are to assist the pastor in the administration of the goods of the parish, without prejudice to the prescript of can. 532.

**CAN. 538** §1. A pastor ceases from office by removal or transfer carried out by the diocesan bishop according to the norm of law, by resignation made by the pastor himself for a just cause and accepted by the same bishop for validity, and by lapse of time if he had been appointed for a definite period according to the prescripts of particular law mentioned in can. 522.

§2. A pastor who is a member of a religious institute or is incardinated in a society of apostolic life is removed according to the norm of can. 682 §2.

§3. When a pastor has completed seventy-five years of age, he is requested to submit his resignation from office to the diocesan bishop who is to decide to accept or defer it after he has considered all the circumstances of the person and place. Attentive to the norms established by the conference of bishops, the diocesan bishop must provide suitable support and housing for a retired pastor.

**CAN. 539** When a parish becomes vacant or when a pastor is prevented from exercising his pastoral function in the parish by reason of captivity, exile or banishment, incapacity or ill health, or some other cause, the diocesan bishop is to designate as soon as possible a parochial administrator, that is, a priest who takes the place of the pastor according to the norm of can. 540.

ab Episcopo dioecesano latis et in quo christifideles, secundum easdem normas selecti, parocho in administratione bonorum paroeciae adiutorio sint, firmo praescripto can. 532.

**CAN. 538** §1. Parochus ab officio cessat amotione aut translatione ab Episcopo dioecesano ad normam iuris peracta, renuntiatione iusta de causa ab ipso parocho facta et, ut valeat, ab eodem Episcopo acceptata, necnon lapsu temporis si, iuxta iuris particularis de quo in can. 522 praescripta, ad tempus determinatum constitutus fuerit.

§2. Parochus, qui est sodalis instituti religiosi aut in societate vitae apostolicae incardinatus, ad normam can. 682, §2 amovetur.

§3. Parochus, expleto septuagesimo quinto aetatis anno, rogatur ut renuntiationem ab officio exhibeat Episcopo dioecesano, qui, omnibus personae et loci inspectis adiunctis, de eadem acceptanda aut differenda decernat; renuntiantis congruae sustentationi et habitationi ab Episcopo dioecesano providendum est, attentis normis ab Episcoporum conferentia statutis.

**CAN. 539** Cum vacat paroecia aut cum parochus ratione captivitatis, exsilii vel relegationis, inhabilitatis vel infirmae valetudinis aliusve causae a munere pastorali in paroecia exercendo praepeditur, ab Episcopo dioecesano quam primum deputetur administrator paroecialis, sacerdos scilicet qui parochi vicem suppleat ad normam can. 540.

**538 §1:** SCConc Resol., 11 nov. 1922 (AAS 15 [1923] 454–456); CI Resp. IX, 20 maii 1923 (AAS 16 [1924] 116); CD 31; ES I, 20 §§1–3; CIV Resp., 7 iul. 1978 (AAS 70 [1978] 534)

**538 §2:** ES I, 20 §1; MR 58

**538 §3:** CD 31; ES I, 20 §3; CIV Resp., 7 iul. 1978 (AAS 70 [1978] 534)

**539:** c. 429 §1; 472, 1°

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 88 of 103

possess the right of educating their offspring. Catholic parents also have the duty and right of choosing those means and institutions through which they can provide more suitably for the Catholic education of their children, according to local circumstances.

§2. Parents also have the right to that assistance, to be furnished by civil society, which they need to secure the Catholic education of their children.

**CAN. 794** §1. The duty and right of educating belongs in a special way to the Church, to which has been divinely entrusted the mission of assisting persons so that they are able to reach the fullness of the Christian life.

§2. Pastors of souls have the duty of arranging everything so that all the faithful have a Catholic education.

**CAN. 795** Since true education must strive for complete formation of the human person that looks to his or her final end as well as to the common good of societies, children and youth are to be nurtured in such a way that they are able to develop their physical, moral, and intellectual talents harmoniously, acquire a more perfect sense of responsibility and right use of freedom, and are formed to participate actively in social life.

## CHAPTER I. Schools

**CAN. 796** §1. Among the means to foster education, the Christian faithful are to hold

guntur et iure gaudent prolem educandi; parentes catholici officium quoque et ius habent ea eligendi media et instituta quibus, iuxta locorum adiuncta, catholicae filiorum educationi aptius prospicere queant.

§2. Parentibus ius est etiam iis fruendi auxiliis a societate civili praestandis, quibus in catholica educatione filiorum procuranda indigeant.

**CAN. 794** §1. Singulari ratione officium et ius educandi spectat ad Ecclesiam, cui divinitus missio concredita est homines adiuvandi, ut ad christianae vitae plenitudinem pervenire valeant.

§2. Animarum pastoribus officium est omnia disponendi, ut educatione catholica omnes fideles fruantur.

**CAN. 795** Cum vera educatio integram persequi debeat personae humanae formationem, spectantem ad finem eius ultimum et simul ad bonum commune societatum, pueri et iuvenes ita excolantur ut suas dotes physicas, morales et intellectuales harmonice evolvere valeant, perfectiorem responsabilitatis sensum libertatisque rectum usum acquirant et ad vitam socialem active participandam conformentur.

## CAPUT I. De Scholis

**CAN. 796** §1. Inter media ad excolendam educationem christifideles magni

**793 §2:** GE 6, 7; SCIC Instr. *La Scuola Cattolica,* 19 mar. 1977, 81, 82

**794 §1:** PIUS PP. XI, Enc. *Divini illius Magistri,* 31 dec. 1929, 59s (AAS 22 [1930] 49–86); PIUS PP. XI, Enc. *Mit brennender Sorge,* 14 mar. 1937, 164s (AAS 29 [1937] 145–167); PIUS PP. XII, All., 8 Sept. 1946; GE Intro., 3

**794 §2:** PIUS PP. XI, Enc. *Divini illius Magistri,* 31 dec. 1929, 53–59 (AAS 22 [1930] 49–86); GE 3, 4

**795:** PIUS PP. XI, Enc. *Divini illius Magistri,* 31 dec. 1929, 50, 69–71, 83–85 (AAS 22 [1930] 49–86); GE 1; PAULUS PP. VI, Ep. *A maintes reprises,* 8 dec. 1970; CIP Decl., 10 dec. 1974

**796 §1:** PIUS PP. XI, Enc. *Divini illius Magistri,* 31 dec. 1929, 76 (AAS 22 [1930] 49–86); PIUS PP. XII, All., 31 dec. 1956; GE 5

schools in esteem; schoo assistance to parents in ful education.

§2. Parents must coope teachers of the schools tc their children to be e teachers in fulfilling their d very closely with parents, willingly and for whom ass are to be established and h

**CAN. 797** Parents mu dom in choosing schools; tian faithful must be conce recognizes this freedom f supports it with subsidies; to be observed.

**CAN. 798** Parents ar dren to those schools whi education. If they are unab obliged to take care that s cation is provided for thei schools.

**CAN. 799** The Chr strive so that in civil soc regulate the formation o for their religious and mo schools themselves, accord of the parents.

**CAN. 800** §1. The Cl establish and direct scho type, and level.

§2. The Christian faithf

**796 §2:** PIUS PP. XII, All., 5 ian Instr. *La Scuola Cattolica,* 19 mar. 1

**797:** PIUS PP. XI, Enc. *Divini* dec. 1929, 60, 63–64 (AAS 22 [193

**798:** c. 1374; GE 8; AA 30; SCI *Cattolica,* 19 mar. 1977, 73

**799:** GE 7

**800 §1:** c. 1375; BENEDICTUS

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 89 of 103

schools in esteem; schools are the principal assistance to parents in fulfilling the function of education.

§2. Parents must cooperate closely with the teachers of the schools to which they entrust their children to be educated; moreover, teachers in fulfilling their duty are to collaborate very closely with parents, who are to be heard willingly and for whom associations or meetings are to be established and highly esteemed.

**CAN. 797** Parents must possess a true freedom in choosing schools; therefore, the Christian faithful must be concerned that civil society recognizes this freedom for parents and even supports it with subsidies; distributive justice is to be observed.

**CAN. 798** Parents are to entrust their children to those schools which provide a Catholic education. If they are unable to do this, they are obliged to take care that suitable Catholic education is provided for their children outside the schools.

**CAN. 799** The Christian faithful are to strive so that in civil society the laws which regulate the formation of youth also provide for their religious and moral education in the schools themselves, according to the conscience of the parents.

**CAN. 800** §1. The Church has the right to establish and direct schools of any discipline, type, and level.

§2. The Christian faithful are to foster Cath-

faciant scholas, quae quidem parentibus, in munere educationis implendo, praecipuo auxilio sunt.

§2. Cum magistris scholarum, quibus filios educandos concredant, parentes arcte cooperentur oportet; magistri vero in officio suo persolvendo intime collaborent cum parentibus, qui quidem libenter audiendi sunt eorumque consociationes vel conventus instaurentur atque magni existimentur.

**CAN. 797** Parentes in scholis eligendis vera libertate gaudeant oportet; quare christifideles solliciti esse debent ut societas civilis hanc libertatem parentibus agnoscat atque, servata iustitia distributiva, etiam subsidiis tueatur.

**CAN. 798** Parentes filios concredant illis scholis in quibus educationi catholicae provideatur; quod si facere non valeant, obligatione tenentur curandi, ut extra scholas debitae eorundem educationi catholicae prospiciatur.

**CAN. 799** Christifideles enitantur ut in societate civili leges quae iuvenum formationem ordinant, educationi eorum religiosae et morali quoque, iuxta parentum conscientiam, in ipsis scholis prospiciant.

**CAN. 800** §1. Ecclesiae ius est scholas cuiusvis disciplinae, generis et gradus condendi ac moderandi.

§2. Christifideles scholas catholicas

**796 §2:** PIUS PP. XII, All., 5 ian. 1954; GE 7; SCIC Instr. *La Scuola Cattolica*, 19 mar. 1977, 73

**797:** PIUS PP. XI, Enc. *Divini illius Magistri*, 31 dec. 1929, 60, 63–64 (AAS 22 [1930] 49–86); GE 6

**798:** c. 1374; GE 8; AA 30; SCIC Instr. *La Scuola Cattolica*, 19 mar. 1977, 73

**799:** GE 7

**800 §1:** c. 1375; BENEDICTUS PP. XV, Ep. Ap. *Communes litteras*, 10 apr. 1919 (AAS 11 [1919] 172); PIUS PP. XI, Enc. *Divini illius Magistri*, 31 dec. 1929 (AAS 22 [1930] 49–86); SCSSU Normae, 28 iul. 1948, 2; IOANNES PP. XXIII, Nuntius, 30 dec. 1959 (AAS 52 [1960] 57–59); GE 8

**800 §2:** c. 1379 §3; GE 8, 9; SCIC Instr. *La Scuola Cattolica*, 19 mar. 1977

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 90 of 103

olic schools, assisting in their establishment and maintenance according to their means.

foveant, pro viribus adiutricem operam conferentes ad easdem condendas et sustentandas.

**CAN. 801** Religious institutes whose proper mission is education, retaining their mission faithfully, are also to strive to devote themselves to Catholic education through their schools, established with the consent of the diocesan bishop.

**CAN. 801** Instituta religiosa quibus missio educationis propria est, fideliter hanc suam missionem retinentes, satagant educationi catholicae etiam per suas scholas, consentiente Episcopo dioecesano conditas, sese impendere.

**CAN. 802** §1. If schools which offer an education imbued with a Christian spirit are not available, it is for the diocesan bishop to take care that they are established.

**CAN. 802** §1. Si praesto non sint scholae in quibus educatio tradatur christiano spiritu imbuta, Episcopi dioecesani est curare ut condantur.

§2. Where it is expedient, the diocesan bishop is to make provision for the establishment of professional schools, technical schools, and other schools required by special needs.

§2. Ubi id expediat, Episcopus dioecesanus provideat ut scholae quoque condantur professionales et technicae necnon aliae quae specialibus necessitatibus requirantur.

**CAN. 803** §1. A Catholic school is understood as one which a competent ecclesiastical authority or a public ecclesiastical juridic person directs or which ecclesiastical authority recognizes as such through a written document.

**CAN. 803** §1. Schola catholica ea intellegitur quam auctoritas ecclesiastica competens aut persona iuridica ecclesiastica publica moderatur, aut auctoritas ecclesiastica documento scripto uti talem agnoscit.

§2. The instruction and education in a Catholic school must be grounded in the principles of Catholic doctrine; teachers are to be outstanding in correct doctrine and integrity of life.

§2. Institutio et educatio in schola catholica principiis doctrinae catholicae nitatur oportet; magistri recta doctrina et vitae probitate praestent.

§3. Even if it is in fact Catholic, no school is to bear the name *Catholic school* without the consent of competent ecclesiastical authority.

§3. Nulla schola, etsi reapse catholica, nomen *scholae catholicae* gerat, nisi de consensu competentis auctoritatis ecclesiasticae.

**CAN. 804** §1. The Catholic religious in-

**CAN. 804** §1. Ecclesiae auctoritati

**801:** PIUS PP. XI, Ep. *Procuratores generales,* 31 mar. 1954 (AAS 46 [1954] 202–205); CD 35: 4; ES I, 39 §1; SCIC Decl., 1 feb. 1971 (AAS 63 [1971] 250–251); SCIC Instr. *La Scuola Cattolica,* 19 mar. 1977, 74–76, 89

**802 §1:** c. 1379 §1

**802 §2:** GE 9; DPME 66

**803 §1:** SCIC Instr. *La Scuola Cattolica,* 19 mar. 1977, 33–37, 71

**803 §2:** PIUS PP. XI, Enc. *Divini illius Magistri,* 31 dec. 1929, 77–79 (AAS 22 [1930] 49–86); PIUS PP. XII, All., 14 sep. 1958 (AAS 50 [1958] 696–700); GE 8, 9; AA 30; SCIC Instr. *La Scuola Cattolica,* 19 mar. 1977, 33–37, 43, 49, 71, 73, 78

**803 §3:** AA 24

**804 §1:** c. 1381 §§1 et 2; SCConc Normae, 28 aug. 1924; SCConc Litt. circ., 21 iun. 1930 (AAS 22 [1930] 395–400); PIUS PP. XII, Enc. *Humani generis,* 12 aug. 1950 (AAS 42 [1950] 561–578, 577); SCIC Instr. *La Scuola Cattolica,* 19 mar. 1977, 73

struction and ed
any schools what
the various instru
are subject to the
the conference of
about this field
bishop to regulat

§2. The local
those who are d
instruction in s
ones, are outsta
witness of a Chr

**CAN. 805**
ordinary has th
teachers of relig
or demand that
religion or mora

**CAN. 806**
the right to wa
schools in his
members of reli
direct. He also is
the general regu
prescripts are va
religious direct,
their autonomy
of their schools

§2. Director
care under the v
that the instruc
least as academ
other schools o

**804 §2:** SCConc
Resp., 26 iul. 1948;
SCIC Instr. *La Scuol*
**805:** c. 1381 §3; S
**806 §1:** c. 1382; S

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 91 of 103

adiutricem operam
em condendas et

:uta religiosa quibus
›ropria est, fideliter hanc
inentes, satagant edu-
iam per suas scholas,
po dioecesano conditas,

;i praesto non sint scho-
io tradatur christiano
:opi dioecesani est

liat, Episcopus dioece-
;cholae quoque condan-
: technicae necnon aliae
cessitatibus requirantur.
;chola catholica ea
ctoritas ecclesiastica
ona iuridica ecclesia-
atur, aut auctoritas
ento scripto uti talem

educatio in schola
doctrinae catholicae
istri recta doctrina et
stent.
, etsi reapse catholica,
›licae gerat, nisi de
tis auctoritatis eccle-

:cclesiae auctoritati

58] 696–700); GE 8, 9;
*Cattolica*, 19 mar. 1977,

:Conc Normae, 28 aug.
n. 1930 (AAS 22 [1930]
*Humani generis*, 12 aug.
, 577); SCIC Instr. *La*
73

struction and education which are imparted in any schools whatsoever or are provided through the various instruments of social communication are subject to the authority of the Church. It is for the conference of bishops to issue general norms about this field of action and for the diocesan bishop to regulate and watch over it.

§2. The local ordinary is to be concerned that those who are designated teachers of religious instruction in schools, even in non-Catholic ones, are outstanding in correct doctrine, the witness of a Christian life, and teaching skill.

**CAN. 805** For his own diocese, the local ordinary has the right to appoint or approve teachers of religion and even to remove them or demand that they be removed if a reason of religion or morals requires it.

**CAN. 806** §1. The diocesan bishop has the right to watch over and visit the Catholic schools in his territory, even those which members of religious institutes have founded or direct. He also issues prescripts which pertain to the general regulation of Catholic schools; these prescripts are valid also for schools which these religious direct, without prejudice, however, to their autonomy regarding the internal direction of their schools.

§2. Directors of Catholic schools are to take care under the watchfulness of the local ordinary that the instruction which is given in them is at least as academically distinguished as that in the other schools of the area.

subicitur institutio et educatio religiosa catholica quae in quibuslibet scholis impertitur aut variis communicationis socialis instrumentis procuratur; Episcoporum conferentiae est de hoc actionis campo normas generales edicere, atque Episcopi dioecesani est eundem ordinare et in eum invigilare.

§2. Loci Ordinarius sollicitus sit, ut qui ad religionis institutionem in scholis, etiam non catholicis, deputentur magistri recta doctrina, vitae christianae testimonio atque arte paedagogica sint praestantes.

**CAN. 805** Loci Ordinario pro sua dioecesi ius est nominandi aut approbandi magistros religionis, itemque, si religionis morumve ratio id requirat, amovendi aut exigendi ut amoveantur.

**CAN. 806** §1. Episcopo dioecesano competit ius invigilandi et invisendi scholas catholicas in suo territorio sitas, eas etiam quae ab institutorum religiosorum sodalibus conditae sint aut dirigantur; eidem item competit praescripta edere quae ad generalem attinent ordinationem scholarum catholicarum: quae praescripta valent de scholis quoque quae ab iisdem sodalibus diriguntur, salva quidem eorundem quoad internum earum scholarum moderamen autonomia.

§2. Curent scholarum catholicarum Moderatores, advigilante loci Ordinario, ut institutio quae in iisdem traditur pari saltem gradu ac in aliis scholis regionis, ratione scientifica sit praestans.

**804 §2:** SCConc Litt. circ., 28 ian. 1924; SCConc Resp., 26 iul. 1948; SCR Resp., 26 ian. 1959; AA 30; SCIC Instr. *LaScuolaCattolica*, 19 mar. 1977, 43, 78
**805:** c. 1381 §3; SCConc Litt. circ., 28 ian. 1924
**806 §1:** c. 1382; SCSSU Litt. circ., 2 aug. 1939; SCR Resp., 26 ian. 1959; CD 35: 4; ES I, 39 §§1 et 2; DPME 66
**806 §2:** SCSSU Normae, 28 iul. 1948, 2°; PIUS PP. XII, All. 13 sep. 1951

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 92 of 103

:ntia; ad statuta san-
;, sola Sancta Sedes.
terminentur praesertim
ris, dominium et admi-

ctuariis quaedam
terunt, quoties locorum
ȝrinantium frequentia
n bonum id suadere

In sanctuariis abundan-
itentur media salutis,
nnuntiando, vitam
ı per Eucharistiae et
tionem apte fovendo,
tatis popularis formas

ıopularis et pietatis
ıariis aut locis adia-
serventur atque secure

**taribus**

Altare, seu mensa super
charisticum celebratur,
‹struatur ut cum pavi-
oque amoveri nequeat;
erri possit.
nni ecclesia altare fixum
n locis, sacris celebra-
ltare fixum vel mobile.
Iuxta traditum Eccle-
ltaris fixi sit lapidea, et

S 58 [1966] 266); SCpC
63 [1971] 317)
4; IGMR 259–261, 264;

ı62; ODE cap. IV, 6
ŁC Resp., 17 oct. 1931;
63; ODE cap. IV, 9
cap. VI, 2

altar is to be of stone, and indeed of a single natural stone. Nevertheless, another worthy and solid material can also be used in the judgment of the conference of bishops. The supports or base, however, can be made of any material.

§2. A movable altar can be constructed of any solid material suitable for liturgical use.

CAN. 1237 §1. Fixed altars must be dedicated, and movable altars must be dedicated or blessed, according to the rites prescribed in the liturgical books.

§2. The ancient tradition of placing relics of martyrs or other saints under a fixed altar is to be preserved, according to the norms given in the liturgical books.

CAN. 1238 §1. An altar loses its dedication or blessing according to the norm of can. 1212.

§2. Altars, whether fixed or movable, do not lose their dedication or blessing if the church or other sacred place is relegated to profane uses.

CAN. 1239 §1. An altar, whether fixed or movable, must be reserved for divine worship alone, to the absolute exclusion of any profane use.

§2. A body is not to be buried beneath an altar; otherwise, it is not permitted to celebrate Mass on the altar.

## CHAPTER V. Cemeteries

CAN. 1240 §1. Where possible, the Church is to have its own cemeteries or at least areas in

quidem ex unico lapide naturali; attamen etiam alia materia digna et solida, de iudicio Episcoporum conferentiae, adhiberi potest. Stipites vero seu basis ex qualibet materia confici possunt.

§2. Altare mobile ex qualibet materia solida, usui liturgico congruenti, extrui potest.

CAN. 1237 §1. Altaria fixa dedicanda sunt, mobilia vero dedicanda aut benedicenda, iuxta ritus in liturgicis libris praescriptos.

§2. Antiqua traditio Martyrum aliorumve Sanctorum reliquias sub altari fixo condendi servetur, iuxta normas in libris liturgicis traditas.

CAN. 1238 §1. Altare dedicationem vel benedictionem amittit ad normam can. 1212.

§2. Per reductionem ecclesiae vel alius loci sacri ad usus profanos, altaria sive fixa sive mobilia non amittunt dedicationem vel benedictionem.

CAN. 1239 §1. Altare tum fixum tum mobile divino dumtaxat cultui reservandum est, quolibet profano usu prorsus excluso.

§2. Subtus altare nullum sit reconditum cadaver; secus Missam super illud celebrare non licet.

## CAPUT V. De Coemeteriis

CAN. 1240 §1. Coemeteria Ecclesiae propria, ubi fieri potest, habeantur, vel sal-

**1237 §1:** cc. 1197 §1, 1° et 2°; 1199 §§1–3; SRC *Ritus … brevior consecrationis altaris immobilis…l,* (AAS 12 [1920] 449); SRC *Ritus … brevior in consecratione altarium…l,* (AAS 12 [1920] 450–453); IGMR 265; ODE cap. IV, 2; VI, 1

**1237 §2:** c. 1198 §4; IGMR 266: ODE cap. II, 5, 14; cap. IV, 5, 11; cap. VI, 3

**1238 §1:** c. 1200 §§1–3

**1238 §2:** c. 1200 §4

**1239 §1:** c. 1202 §1

**1239 §2:** c. 1202 §2; SRC Resp., 25 oct. 1933; SRC Resp., 25 oct. 1942

**1240 §1:** cc. 1205 §1, 1206 §§1 et 2; SCSO Resp., 13 feb. 1936; IOe 77

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 93 of 103

civil cemeteries that are designated for the deceased members of the faithful and properly blessed.

§2. If this cannot be achieved, however, then individual graves are to be properly blessed.

CAN. 1241 §1. Parishes and religious institutes can have their own cemetery.

§2. Other juridic persons or families can also have a special cemetery or tomb, to be blessed according to the judgment of the local ordinary.

CAN. 1242 Bodies are not to be buried in churches unless it is a question of burying in their own church the Roman Pontiff, cardinals, or diocesan bishops, including retired ones.

CAN. 1243 Particular law is to establish appropriate norms about the discipline to be observed in cemeteries, especially with regard to protecting and fostering their sacred character.

## TITLE II. Sacred Times

CAN. 1244 §1. It is only for the supreme ecclesiastical authority to establish, transfer, and suppress feast days and days of penance common to the universal Church, without prejudice to the prescript of can. 1246 §2.

§2. Diocesan bishops can decree special feast days or days of penance for their dioceses or places, but only in individual instances.

tem spatia in coemeteriis civilibus fidelibus defunctis destinata, rite benedicenda.

§2. Si vero hoc obtineri nequeat, toties quoties singuli tumuli rite benedicantur.

CAN. 1241 §1. Paroeciae et instituta religiosa coemeterium proprium habere possunt.

§2. Etiam aliae personae iuridicae vel familiae habere possunt peculiare coemeterium seu sepulcrum, de iudicio Ordinarii loci benedicendum.

CAN. 1242 In ecclesiis cadavera ne sepeliantur, nisi agatur de Romano Pontifice aut Cardinalibus vel Episcopis dioecesanis etiam emeritis in propria ecclesia sepeliendis.

CAN. 1243 Opportunae normae de disciplina in coemeteriis servanda, praesertim ad eorum indolem sacram tuendam et fovendam quod attinet, iure particulari statuantur.

## TITULUS II. De Temporibus Sacris

CAN. 1244 §1. Dies festos itemque dies paenitentiae, universae Ecclesiae communes, constituere, transferre, abolere, unius est supremae ecclesiasticae auctoritatis, firmo praescripto can. 1246, §2.

§2. Episcopi dioecesani peculiares suis dioecesibus seu locis dies festos aut dies paenitentiae possunt, per modum tantum actus, indicere.

**1240 §2:** c. 1206 §3
**1241 §1:** c. 1208 §§1 et 2; SCConc Resol., 12 nov. 1927 (AAS 20 [1928] 142–145)
**1241 §2:** cc. 1208 §3, 1209; SCConc Resol., 12 nov. 1927 (AAS 20 [1928] 142–145)
**1242:** c. 1205 §2; CI Resp. 15, 16 oct. 1919 (AAS 11 [1919] 479); SCConc Resol., 10 dec. 1927 (AAS 20 [1928] 261–264)
**1243:** cc. 1209–1211
**1244 §1:** cc. 1243, 1244 §1: SCPF Ind., 15 mar. 1951, 3 et 4
**1244 §2:** c. 1244 §2

CAN. 1245
of diocesan bisl
a just cause and
the diocesan bi
dividual cases a
tion of observin
or can grant a
into other pious
institute or soci
clerical and of p
in regard to his
in the house da

CHAPTER I. F

CAN. 1246
tolic tradition t
must be observ
primordial hol
days must also
Lord Jesus Chr
the Body and
Mother of Go
her Assumptio
Saint Paul the

§2. With th
ic See, howeve
suppress some
transfer them t
CAN. 124
days of obliga

**1245:** c. 1245; C
[1929] 170); SCNE
516–517); SCConc
27); Paen. VII
**1246 §1:** c. 124
PAULUS PP. VI, m.
(AAS 61 [1969] 223
DPME 86; PAULUS
feb. 1974, 20 (AAS

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 94 of 103

**CAN. 1254** §1. To pursue its proper purposes, the Catholic Church by innate right is able to acquire, retain, administer, and alienate temporal goods independently from civil power.

§2. The proper purposes are principally: to order divine worship, to care for the decent support of the clergy and other ministers, and to exercise works of the sacred apostolate and of charity, especially toward the needy.

**CAN. 1255** The universal Church and the Apostolic See, the particular churches, as well as any other juridic person, public or private, are subjects capable of acquiring, retaining, administering, and alienating temporal goods according to the norm of law.

**CAN. 1256** Under the supreme authority of the Roman Pontiff, ownership of goods belongs to that juridic person which has acquired them legitimately.

**CAN. 1257** §1. All temporal goods which belong to the universal Church, the Apostolic See, or other public juridic persons in the Church are ecclesiastical goods and are governed by the following canons and their own statutes.

§2. The temporal goods of a private juridic person are governed by its own statutes but not by these canons unless other provision is expressly made.

**CAN. 1258** In the following canons, the term Church signifies not only the universal

**CAN. 1254** §1. Ecclesia catholica bona temporalia iure nativo, independenter a civili potestate, acquirere, retinere, administrare et alienare valet ad fines sibi proprios prosequendos.

§2. Fines vero proprii praecipue sunt: cultus divinus ordinandus, honesta cleri aliorumque ministrorum sustentatio procuranda, opera sacri apostolatus et caritatis, praesertim erga egenos, exercenda.

**CAN. 1255** Ecclesia universa atque Apostolica Sedes, Ecclesiae particulares necnon alia quaevis persona iuridica, sive publica sive privata, subiecta sunt capacia bona temporalia acquirendi, retinendi, administrandi et alienandi ad normam iuris.

**CAN. 1256** Dominium bonorum, sub suprema auctoritate Romani Pontificis, ad eam pertinet iuridicam personam, quae eadem bona legitime acquisiverit.

**CAN. 1257** §1. Bona temporalia omnia quae ad Ecclesiam universam, Apostolicam Sedem aliasve in Ecclesia personas iuridicas publicas pertinent, sunt bona ecclesiastica et reguntur canonibus qui sequuntur, necnon propriis statutis.

§2. Bona temporalia personae iuridicae privatae reguntur propriis statutis, non autem hisce canonibus, nisi expresse aliud caveatur.

**CAN. 1258** In canonibus qui sequuntur nomine Ecclesiae significatur non solum

**1254 §1:** c. 1495 §1; BENEDICTUS PP. XV, Ep., 12 mar. 1919 (AAS 11 [1919] 123); LG 8; CD 28; DH 13, 14; GS 76

**1254 §2:** c. 1496; AA 8; PO 17; GS 42; DPME 117; 124–130; 133–137

**1255:** c. 1495 §2; CONCORDATO fra la Santa Sede e l'Italia, 11 feb. 1929, art. 30 (AAS 21 [1929] 289); CI Resp., 23 iun. 1953; PC 13; DPME 123, 127,133,134

**1256:** c. 1499 §2

**1257 §1:** c. 1497 §1

**1258:** c. 1498

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 95 of 103

Church or the Apostolic See but also any public juridic person in the Church unless it is otherwise apparent from the context or the nature of the matter.

## TITLE I. The Acquisition of Goods

**CAN. 1259** The Church can acquire temporal goods by every just means of natural or positive law permitted to others.

**CAN. 1260** The Church has an innate right to require from the Christian faithful those things which are necessary for the purposes proper to it.

**CAN. 1261** §1. The Christian faithful are free to give temporal goods for the benefit of the Church.

§2. The diocesan bishop is bound to admonish the faithful of the obligation mentioned in can. 222 §1 and in an appropriate manner to urge its observance.

**CAN. 1262** The faithful are to give support to the Church by responding to appeals and according to the norms issued by the conference of bishops.

**CAN. 1263** After the diocesan bishop has heard the finance council and the presbyteral council, he has the right to impose a moderate tax for the needs of the diocese upon public juridic persons subject to his governance; this tax is to be proportionate to their income. He is permitted only to impose an extraordinary and moderate exaction upon other physical and

Ecclesia universa aut Sedes Apostolica, sed etiam quaelibet persona iuridica publica in Ecclesia, nisi ex contextu sermonis vel ex natura rei aliud appareat.

## TITULUS I. De Acquisitione Bonorum

**CAN. 1259** Ecclesia acquirere bona temporalia potest omnibus iustis modis iuris sive naturalis sive positivi, quibus aliis licet.

**CAN. 1260** Ecclesiae nativum ius est exigendi a christifidelibus, quae ad fines sibi proprios sint necessaria.

**CAN. 1261** §1. Integrum est christifidelibus bona temporalia in favorem Ecclesiae conferre.

§2. Episcopus dioecesanus fideles de obligatione, de qua in can. 222, §1, monere tenetur et opportuno modo eam urgere.

**CAN. 1262** Fideles subsidia Ecclesiae conferant per subventiones rogatas et iuxta normas ab Episcoporum conferentia latas.

**CAN. 1263** Ius est Episcopo dioecesano, auditis consilio a rebus oeconomicis et consilio presbyterali, pro dioecesis necessitatibus, personis iuridicis publicis suo regimini subiectis moderatum tributum, earum redditibus proportionatum, imponendi; ceteris personis physicis et iuridicis ipsi licet tantum, in casu gravis necessitatis et

**1259:** c. 1499 §1; SA Sententia, 12 dec. 1972
**1260:** c. 1496; CONCORDATO fra Sua Santità il Papa Pio XI e lo Stato Bavarese, 29 mar. 1924, art. 10 §5 (AAS 17 [1925] 50)
**1261 §1:** c. 1513
**1261 §2:** CD 6, 17; PO 20; GS 88; DPME 117, 124–129, 133, 134
**1263:** cc. 1504, 1506; SCConc Resol., 20 aug. 1917 (AAS 9 [1917] 497–502); SCConc Resol., 13 mar. 1920 (AAS 12 [1920] 444–447); SCConc Rescr., 9 ian. 1951; SCConc Rescr., 3 mar. 1955; SCConc Ind., 23 iul. 1955; SCConc Rescr., 15 ian. 1960

juridic perso
under the sa
to particular
greater rights
CAN. 126
otherwise, it
a province:
1° to fix th
granting a fav
of the Aposto
ostolic See its
2° to set a
casion of the
sacramentals
CAN. 126
right of relig
son, whether
beg for alms
tute or purpo
of that perso
ordinary.
§2. The co
norms for be
serve, includ
are called an
CAN. 12
which are, in
tian faithful,
religious inst
the taking u
parochial, di
ects; this col
terwards to t

1264: c. 1507
13 [1921] 350–352
1265 §1: c. 15
11 [1919] 478); S
*Sedes*, 7 ian. 193

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 96 of 103

Iisi contrarium constet,
Superioribus vel ad-
/is personae iuridicae
privatae, praesumuntur
e factae.
quibus in §1, repudia-
de causa et, in rebus
icentia Ordinarii, si
dica publica; eiusdem
iritur ut acceptentur
l condicione gravan-
can. 1295.

idelibus ad certum
ad eundem finem

scriptionem, tamquam
ndi modum, Ecclesia
is recipit, ad normam

sacrae, si in dominio
scriptione acquiri a
unt, sed eas adhibere
licet, nisi dedicatio-
m amiserint; si vero
n ecclesiasticam
ntum ab alia persona
publica acquiri

mmobiles, mobiles
nes sive persona-
ertinent ad Sedem
entum annorum
id aliam personam
clesiasticam pertinent,
n.
opi, ratione vinculi

138

and charity and according to the resources of their dioceses, bishops are to assist in procuring those means which the Apostolic See needs, according to the conditions of the times, so that it is able to offer service properly to the universal Church.

unitatis et caritatis, pro suae dioecesis facultatibus, conferant ad media procuranda, quibus Sedes Apostolica secundum temporum condiciones indiget, ut servitium erga Ecclesiam universam rite praestare valeat.

**CAN. 1272** In regions where benefices properly so called still exist, it is for the conference of bishops, through appropriate norms agreed to and approved by the Apostolic See, to direct the governance of such benefices in such a way that the income and even, insofar as possible, the endowment itself of the benefices are gradually transferred to the institute mentioned in can. 1274 §1.

**CAN. 1272** In regionibus ubi beneficia proprie dicta adhuc exsistunt, Episcoporum conferentiae est, opportunis normis cum Apostolica Sede concordatis et ab ea approbatis, huiusmodi beneficiorum regimen moderari, ita ut reditus, immo quatenus possibile sit ipsa dos beneficiorum ad institutum, de quo in can. 1274, §1, paulatim deferatur.

## TITLE II. The Administration of Goods

## TITULUS II. De Administratione Bonorum

**CAN. 1273** By virtue of his primacy of governance, the Roman Pontiff is the supreme administrator and steward of all ecclesiastical goods.

**CAN. 1273** Romanus Pontifex, vi primatus regiminis, est omnium bonorum ecclesiasticorum supremus administrator et dispensator.

**CAN. 1274** §1. Each diocese is to have a special institute which is to collect goods or offerings for the purpose of providing, according to the norm of can. 281, for the support of clerics who offer service for the benefit of the diocese, unless provision is made for them in another way.

§2. Where social provision for the benefit of clergy has not yet been suitably arranged, the conference of bishops is to take care that there

**CAN. 1274** §1. Habeatur in singulis dioecesibus speciale institutum, quod bona vel oblationes colligat eum in finem ut sustentationi clericorum, qui in favorem dioecesis servitium praestant, ad normam can. 281 provideatur, nisi aliter eisdem provisum sit.

§2. Ubi praevidentia socialis in favorem cleri nondum apte ordinata est, curet Episcoporum conferentia ut habeatur

**1272:** CI Resp. 24 nov. 1920 (AAS 12 [1920] 577); CD 28; PO 20, 21; ES I, 8, 18, 21; PAULUS PP. VI, m.p. *Ad hoc usque tempus*, III (AAS 61 [1969] 226–227); CIV Resp., 3 iul. 1969 (AAS 61 [1969] 551)

**1273:** c. 1518

**1274 §1:** SCConc Litt. circ., 25 feb. 1950; SCConc Decl., 17 dec. 1951 (AAS 41 [1952] 44); LG 13, 23; CD 6, 21, 31; PC 13: AG 17, 38; PO 8, 20, 21; ES I, 8, 11, 20: ES III, 8, 19; SDO IV, 19–21; DPME 117, 134–138

**1274 §2:** SCConc Litt. circ., 1 iul. 1941; SCConc Regolamento della Cassa di Sovvenzioni per il Clero secolare d'Italia, 15 iun. 1943

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 97 of 103

is an institute which provides sufficiently for the social security of clerics.

§3. Insofar as necessary, each diocese is to establish a common fund through which bishops are able to satisfy obligations towards other persons who serve the Church and meet the various needs of the diocese and through which the richer dioceses can also assist the poorer ones.

§4. According to different local circumstances, the purposes mentioned in §§2 and 3 can be obtained more suitably through a federation of diocesan institutes, through a cooperative endeavor, or even through an appropriate association established for various dioceses or for the entire territory of the conference of bishops.

§5. If possible, these institutes are to be established in such a way that they also have recognition in civil law.

**CAN. 1275** An aggregate of goods which come from different dioceses is administered according to the norms appropriately agreed upon by the bishops concerned.

**CAN. 1276** §1. It is for the ordinary to exercise careful vigilance over the administration of all the goods which belong to public juridic persons subject to him, without prejudice to legitimate titles which attribute more significant rights to him.

§2. With due regard for rights, legitimate customs, and circumstances, ordinaries are to take care of the ordering of the entire matter of the administration of ecclesiastical goods by issuing special instructions within the limits of universal and particular law.

institutum, quo securitati sociali clericorum satis provideatur.

§3. In singulis dioecesibus constituatur, quatenus opus sit, massa communis qua valeant Episcopi obligationibus erga alias personas Ecclesiae deservientes satisfacere variisque dioecesis necessitatibus occurrere, quaque etiam dioeceses divitiores possint pauperioribus subvenire.

§4. Pro diversis locorum adiunctis, fines de quibus in §§2 et 3 aptius obtineri possunt per instituta dioecesana inter se foederata, vel per cooperationem aut etiam per convenientem consociationem pro variis dioecesibus, immo et pro toto territorio ipsius Episcoporum conferentiae constitutam.

§5. Haec instituta, si fieri possit, ita constituenda sunt, ut efficaciam quoque in iure civili obtineant.

**CAN. 1275** Massa bonorum ex diversis dioecesibus provenientium administratur secundum normas ab Episcopis, quorum interest, opportune concordatas.

**CAN. 1276** §1. Ordinarii est sedulo advigilare administrationi omnium bonorum, quae ad personas iuridicas publicas sibi subiectas pertinent, salvis legitimis titulis quibus eidem Ordinario potiora iura tribuantur.

§2. Habita ratione iurium, legitimarum consuetudinum et circumstantiarum, Ordinarii, editis peculiaribus instructionibus intra fines iuris universalis et particularis, universum administrationis bonorum ecclesiasticorum negotium ordinandum curent.

**1275:** DPME 138
**1276 §1:** c. 1519 §1; SRR Decisio, 28 feb. 1919 (AAS 12 [1920] 85–91)
**1276 §2:** c. 1519 §2; SCConc Litt. circ., 20 iun. 1929 (AAS 21 [1929] 384–399); SCC Normae, 30 iun. 1934 (AAS 27 [1934] 551–556); SCConc Litt. circ., 24 maii 1939 (AAS 31 [1939] 266–268); SCConc Litt. circ., 10 sep. 1960

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 98 of 103

**CAN. 1277** The diocesan bishop must hear the finance council and college of consultors to place acts of administration which are more important in light of the economic condition of the diocese. In addition to the cases specially expressed in universal law or the charter of a foundation, however, he needs the consent of the finance council and of the college of consultors to place acts of extraordinary administration. It is for the conference of bishops to define which acts are to be considered of extraordinary administration.

**CAN. 1278** In addition to the functions mentioned in can. 494 §§3 and 4, the diocesan bishop can entrust to the finance officer the functions mentioned in cann. 1276 §1 and 1279 §2.

**CAN. 1279** §1. The administration of ecclesiastical goods pertains to the one who immediately governs the person to which the goods belong unless particular law, statutes, or legitimate custom determine otherwise and without prejudice to the right of the ordinary to intervene in case of negligence by an administrator.

§2. In the administration of the goods of a public juridic person which does not have its own administrators by law, the charter of the foundation, or its own statutes, the ordinary to whom it is subject is to appoint suitable persons for three years; the same persons can be reappointed by the ordinary.

**CAN. 1280** Each juridic person is to have its own finance council or at least two counselors who, according to the norm of the statutes, are to assist the administrator in fulfilling his or her function.

**CAN. 1277** Episcopus dioecesanus quod attinet ad actus administrationis ponendos, qui, attento statu oeconomico dioecesis, sunt maioris momenti, consilium a rebus oeconomicis et collegium consultorum audire debet; eiusdem tamen consilii atque etiam collegii consultorum consensu eget, praeterquam in casibus iure universali vel tabulis fundationis specialiter expressis, ad ponendos actus extraordinariae administrationis. Conferentiae autem Episcoporum est definire quinam actus habendi sint extraordinariae administrationis.

**CAN. 1278** Praeter munera de quibus in can. 494, §§3 et 4, oeconomo committi possunt ab Episcopo dioecesano munera de quibus in cann. 1276, §1 et 1279, §2.

**CAN. 1279** §1. Administratio bonorum ecclesiasticorum ei competit, qui immediate regit personam ad quam eadem bona pertinent, nisi aliud ferant ius particulare, statuta aut legitima consuetudo, et salvo iure Ordinarii interveniendi in casu neglegentiae administratoris.

§2. In administratione bonorum personae iuridicae publicae, quae ex iure vel tabulis fundationis aut propriis statutis suos non habeat administratores, Ordinarius, cui eadem subiecta est, personas idoneas ad triennium assumat; eaedem ab Ordinario iterum nominari possunt.

**CAN. 1280** Quaevis persona iuridica suum habeat consilium a rebus oeconomicis vel saltem duos consiliarios, qui administratorem, ad normam statutorum, in munere adimplendo adiuvent.

**1277:** c. 1520 §3; AA 10; AG 41; PO 17; ES I, 8
**1279 §1:** c. 1182 §2
**1279 §2:** c. 1521 §1
**1281 §1:** c. 1527 §1

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 99 of 103

**CAN. 1281** §1. Without prejudice to the prescripts of the statutes, administrators invalidly place acts which exceed the limits and manner of ordinary administration unless they have first obtained a written faculty from the ordinary.

**CAN. 1281** §1. Firmis statutorum praescriptis, administratores invalide ponunt actus qui fines modumque ordinariae administrationis excedunt, nisi prius ab Ordinario facultatem scripto datam obtinuerint.

§2. The statutes are to define the acts which exceed the limit and manner of ordinary administration; if the statutes are silent in this regard, however, the diocesan bishop is competent to determine such acts for the persons subject to him, after having heard the finance council.

§2. In statutis definiantur actus qui finem et modum ordinariae administrationis excedunt; si vero de hac re sileant statuta, competit Episcopo dioecesano, audito consilio a rebus oeconomicis, huiusmodi actus pro personis sibi subiectis determinare.

§3. Unless and to the extent that it is to its own advantage, a juridic person is not bound to answer for acts invalidly placed by its administrators. A juridic person itself, however, will answer for acts illegitimately but validly placed by its administrators, without prejudice to its right of action or recourse against the administrators who have damaged it.

§3. Nisi quando et quatenus in rem suam versum sit, persona iuridica non tenetur respondere de actibus ab administratoribus invalide positis; de actibus autem ab administratoribus illegitime sed valide positis respondebit ipsa persona iuridica, salva eius actione seu recursu adversus administratores qui damna eidem intulerint.

**CAN. 1282** All clerics or lay persons who take part in the administration of ecclesiastical goods by a legitimate title are bound to fulfill their functions in the name of the Church according to the norm of law.

**CAN. 1282** Omnes, sive clerici sive laici, qui legitimo titulo partes habent in administratione bonorum ecclesiasticorum, munera sua adimplere tenentur nomine Ecclesiae, ad normam iuris.

**CAN. 1283** Before administrators begin their function:

**CAN. 1283** Antequam administratores suum munus ineant:

1° they must take an oath before the ordinary or his delegate that they will administer well and faithfully;

1° debent se bene et fideliter administraturos coram Ordinario vel eius delegato iureiurando spondere;

2° they are to prepare and sign an accurate and clear inventory of immovable property, movable objects, whether precious or of some cultural value, or other goods, with their description and appraisal; any inventory already done is to be reviewed;

2° accuratum ac distinctum inventarium, ab ipsis subscribendum, rerum immobilium, rerum mobilium sive pretiosarum sive utcumque ad bona culturalia pertinentium aliarumve cum descriptione atque aestimatione earundem redigatur, redactumque recognoscatur;

**1281 §3:** c. 1527 §2
**1282:** c. 1521 §2; PO 17
**1283:** c. 1522

3° one
served in t
another in
which the
be noted i
CAN.
bound to f
of a good
§2. Cor
1° exer
trusted to
aged, taki
pose insol
2° take
astical go
ods;
3° obse
civil law
nor, or leg
guard so
from the
4° coll
accuratel
ed, and u
the found
5° pay
loan or n
debt itsel
6° wit
the mone
can be us
juridic p
7° kee
expendit
8° dra
the end c
9° org
1284 §1

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 100 of 103

3° one copy of this inventory is to be preserved in the archive of the administration and another in the archive of the curia; any change which the patrimony happens to undergo is to be noted in each copy.

**CAN. 1284** §1. All administrators are bound to fulfill their function with the diligence of a good householder.

§2. Consequently they must:

1° exercise vigilance so that the goods entrusted to their care are in no way lost or damaged, taking out insurance policies for this purpose insofar as necessary;

2° take care that the ownership of ecclesiastical goods is protected by civilly valid methods;

3° observe the prescripts of both canon and civil law or those imposed by a founder, a donor, or legitimate authority, and especially be on guard so that no damage comes to the Church from the non-observance of civil laws;

4° collect the return of goods and the income accurately and on time, protect what is collected, and use them according to the intention of the founder or legitimate norms;

5° pay at the stated time the interest due on a loan or mortgage and take care that the capital debt itself is repaid in a timely manner;

6° with the consent of the ordinary, invest the money which is left over after expenses and can be usefully set aside for the purposes of the juridic person;

7° keep well organized books of receipts and expenditures;

8° draw up a report of the administration at the end of each year;

9° organize correctly and protect in a suitable

3° huius inventarii alterum exemplar conservetur in tabulario administrationis, alterum in archivo curiae; et in utroque quaelibet immutatio adnotetur, quam patrimonium subire contingat.

**CAN. 1284** §1. Omnes administratores diligentia boni patrisfamilias suum munus implere tenentur.

§2. Exinde debent:

1° vigilare ne bona suae curae concredita quoquo modo pereant aut detrimentum capiant, initis in hunc finem, quatenus opus sit, contractibus assecurationis;

2° curare ut proprietas bonorum ecclesiasticorum modis civiliter validis in tuto ponatur;

3° praescripta servare iuris tam canonici quam civilis, aut quae a fundatore vel donatore vel legitima auctoritate imposita sint, ac praesertim cavere ne ex legum civilium inobservantia damnum Ecclesiae obveniat;

4° reditus bonorum ac proventus accurate et iusto tempore exigere exactosque tuto servare et secundum fundatoris mentem aut legitimas normas impendere;

5° foenus vel mutui vel hypothecae causa solvendum, statuto tempore solvere, ipsamque debiti summam capitalem opportune reddendam curare;

6° pecuniam, quae de expensis supersit et utiliter collocari possit, de consensu Ordinarii in fines personae iuridicae occupare;

7° accepti et expensi libros bene ordinatos habere;

8° rationem administrationis singulis exeuntibus annis componere;

9° documenta et instrumenta, quibus

**1284 §1:** c. 1523

**1284 §2:** c. 1523

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 101 of 103

and proper archive the documents and records on which the property rights of the Church or the institute are based, and deposit authentic copies of them in the archive of the curia when it can be done conveniently.

§3. It is strongly recommended that administrators prepare budgets of incomes and expenditures each year; it is left to particular law, however, to require them and to determine more precisely the ways in which they are to be presented.

**CAN. 1285** Within the limits of ordinary administration only, administrators are permitted to make donations for purposes of piety or Christian charity from movable goods which do not belong to the stable patrimony.

**CAN. 1286** Administrators of goods:

1° in the employment of workers are to observe meticulously also the civil laws concerning labor and social policy, according to the principles handed on by the Church;

2° are to pay a just and decent wage to employees so that they are able to provide fittingly for their own needs and those of their dependents.

**CAN. 1287** §1. Both clerical and lay administrators of any ecclesiastical goods whatever which have not been legitimately exempted from the power of governance of the diocesan bishop are bound by their office to present an annual report to the local ordinary who is to present it for examination by the finance council; any contrary custom is reprobated.

§2. According to norms to be determined by particular law, administrators are to render an

Ecclesiae aut instituti iura in bona nituntur, rite ordinare et in archivo convenienti et apto custodire; authentica vero eorum exemplaria, ubi commode fieri potest, in archivo curiae deponere.

§3. Provisiones accepti et expensi, ut ab administratoribus quotannis componantur, enixe commendatur; iuri autem particulari relinquitur eas praecipere et pressius determinare modos quibus exhibendae sint.

**CAN. 1285** Intra limites dumtaxat ordinariae administrationis fas est administratoribus de bonis mobilibus, quae ad patrimonium stabile non pertinent, donationes ad fines pietatis aut christianae caritatis facere.

**CAN. 1286** Administratores bonorum:

1° in operarum locatione leges etiam civiles, quae ad laborem et vitam socialem attinent, adamussim servent, iuxta principia ab Ecclesia tradita;

2° iis, qui operam ex condicto praestant, iustam et honestam mercedem tribuant, ita ut iidem suis et suorum necessitatibus convenienter providere valeant.

**CAN. 1287** §1. Reprobata contraria consuetudine, administratores tam clerici quam laici quorumvis bonorum ecclesiasticorum, quae ab Episcopi dioecesani potestate regiminis non sint legitime subducta, singulis annis officio tenentur rationes Ordinario loci exhibendi, qui eas consilio a rebus oeconomicis examinandas committat.

§2. De bonis, quae a fidelibus Ecclesiae offeruntur, administratores rationes fidelibus

**1285:** c. 1535

**1286:** c. 1524; Pius PP. XI, Enc. *Quadragesimo anno* (AAS 23 [1931] 200–201); Pius PP. XI, Enc. *Divini Redemptoris* (AAS 29 [1937] 92); Pius PP. XII, Radiomessagio per Natale 1942 (AAS 35 [1943] 20; Pius PP. XII, Discorso, 13 iun. 1943 (AAS 35 [1943] 172; Ioannes PP. XXIII, Enc. *Mater et Magistra* (AAS 53 [1961] 419); AA 22; GS 67

**1287 §1:** c. 1525 §1; SCRIS Decl., 30 sep. 1972

**1287 §2:** c. 1525 §2

account to
fered by th
CAN. 1
initiate no
in the nan
they have
their own
CAN. 1
istration b
administra
on their ov
from an a
are bound

TITLE II
Especiall

CAN. 1
provisions
establishe
are to be o
on law ins
power of g
provisions
law provid
to the pres
CAN. 1
ity compet
required fc
constitute
patrimony
value exce
CAN. 1
prescript c

1288: c. 15
1289: c. 15
1290: c. 15
1291: c. 15
(AAS 11 [1919
(AAS 11 [1919]

Case: 25-03021 Doc# 114-1 Filed: 12/16/25 Entered: 12/16/25 18:04:14 Page 102 of 103

account to the faithful concerning the goods offered by the faithful to the Church.

**CAN. 1288** Administrators are neither to initiate nor to contest litigation in a civil forum in the name of a public juridic person unless they have obtained the written permission of their own ordinary.

**CAN. 1289** Even if not bound to administration by the title of an ecclesiastical office, administrators cannot relinquish their function on their own initiative; if the Church is harmed from an arbitrary withdrawal, moreover, they are bound to restitution.

## TITLE III. Contracts and Especially Alienation

**CAN. 1290** The general and particular provisions which the civil law in a territory has established for contracts and their disposition are to be observed with the same effects in canon law insofar as the matters are subject to the power of governance of the Church unless the provisions are contrary to divine law or canon law provides otherwise, and without prejudice to the prescript of can. 1547.

**CAN. 1291** The permission of the authority competent according to the norm of law is required for the valid alienation of goods which constitute by legitimate designation the stable patrimony of a public juridic person and whose value exceeds the sum defined by law.

**CAN. 1292** §1. Without prejudice to the prescript of can. 638 §3, when the value of the

reddant iuxta normas iure particulari statuendas.

**CAN. 1288** Administratores litem nomine personae iuridicae publicae ne inchoent neve contestentur in foro civili, nisi licentiam scripto datam Ordinarii proprii obtinuerint.

**CAN. 1289** Quamvis ad administrationem non teneantur titulo officii ecclesiastici, administratores munus susceptum arbitratu suo dimittere nequeunt; quod si ex arbitraria dimissione damnum Ecclesiae obveniat, ad restitutionem tenentur.

## TITULUS III. De Contractibus ac Praesertim de Alienatione

**CAN. 1290** Quae ius civile in territorio statuit de contractibus tam in genere, quam in specie et de solutionibus, eadem iure canonico quoad res potestati regiminis Ecclesiae subiectas iisdem cum effectibus serventur, nisi iuri divino contraria sint aut aliud iure canonico caveatur, et firmo praescripto can. 1547.

**CAN. 1291** Ad valide alienanda bona, quae personae iuridicae publicae ex legitima assignatione patrimonium stabile constituunt et quorum valor summam iure definitam excedit, requiritur licentia auctoritatis ad normam iuris competentis.

**CAN. 1292** §1. Salvo praescripto can. 638, §3, cum valor bonorum, quorum

**1288:** c. 1526
**1289:** c. 1528
**1290:** c. 1529
**1291:** c. 1530 §1, 3°; SCConc Resol., 17 maii 1919 (AAS 11 [1919] 382–387); SCConc Resol., 12 iul. 1919 (AAS 11 [1919] 416–419); CI Resp., 24 nov. 1920 (AAS 12 [1920] 577); SCConc Litt. circ., 20 iun. 1929, art. 41 (AAS 21 [1929] 384–399); SCIC Decl. (Prot. 427/70/15), 2 ian. 1974; SCIC-SCRIS Decl. (Prot. 300/74), 7 oct. 1974
**1292 §1:** c. 1532 §3; SCConc Resol., 17 maii 1919 (AAS 11 [1919] 382–387); SCConc Resol., 12 iul. 1919