James I. Stang (CA Bar No. 94435)
Brittany M. Michael *(Pro Hac Vice)*
Gail Greenwood (CA Bar No. 169939)
Gillian N. Brown (CA Bar No. 205132)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104-4436
Email: jstang@pszjlaw.com
       bmichael@pszjlaw.com
       ggreenwood@pszjlaw.com
       gbrown@pszjlaw.com

*Attorneys for The Official
Committee of the Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor. | Case No. 23-30564<br>Chapter 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; PARISHES LISTED IN **EXHIBIT A** TO THE COMPLAINT; HOLY CROSS CATHOLIC CEMETERIES; SAINT MARY MAGDALENE CATHOLIC CEMETERY; MT. OLIVET CEMETERY; OUR LADY OF PILLAR CEMETERY; TOMALES CATHOLIC CEMETERY; ARCHBISHOP RIORDAN HIGH SCHOOL; SACRED HEART CATHEDRAL PREPARATORY; MARIN CATHOLIC HIGH SCHOOL; JUNIPERO SERRA HIGH SCHOOL; VALLOMBROSA RETREAT CENTER; AND SERRA CLERGY HOUSE,<br><br>Defendants. | Adv. Proc. 25-03021<br><br>**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE ARCHDIOCESE OF SAN FRANCISCO CAPITAL ASSETS SUPPORT CORPORATION'S MOTION TO INTERVENE UNDER FED. R. CIV. P. 24**<br><br>Date: January 15, 2026<br>Time: 1:30 p.m.<br>Place: Via Zoom Teleconference<br>Hon. Dennis Montali |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | WHAT IS CASC? | 4 |
| III. | THE STANDARD FOR INTERVENTION | 5 |
| IV. | CASC MEETS NONE OF THE REQUIREMENTS FOR INTERVENTION | 6 |
| | A. CASC's Intervention Is Not Timely. | 6 |
| | B. CASC Has No Significantly Protectable Interest Nor Any Interest That Will Be Impaired or Impeded by the Division Litigation. | 6 |
| |     1. There Is No Significantly Protectable Interest Distinct From the Existing Defendants. | 6 |
| |     2. CASC's Alleged Interest Will Not Be Impaired Absent Intervention. | 8 |
| |     3. Relevant Cases Do Not Support Intervention by CASC. | 9 |
| | C. CASC's Alleged Interest Is More Than Adequately Represented by the Existing Defendants. | 10 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
  162 F. Supp. 3d 1053 (C.D. Cal. 2014) .................................................................................... 9

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ..................................................................................... 6, 7, 10

*Ariz. Yage Assembly v. Bondi*,
  2025 U.S. App. LEXIS 28472, at *2 (9th Cir. Oct. 28, 2025) ................................................ 10

*Bustos v. Molasky (In re Molasky)*,
  843 F.3d 1179 (9th Cir. 2016) ................................................................................................ 2

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
  54 F.4th 1078 (9th Cir. 2022) ................................................................................................. 7

*California v. Tahoe Reg'l Planning Agency*,
  792 F.2d 775 (9th Cir. 1986) ................................................................................................ 10

*Callahan v. Brookdale Senior Living Cmtys, Inc.*,
  42 F.4th 1013 (9th Cir. 2022) ........................................................................................... 5, 10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) .................................................................................................. 5

*Donaldson v. United States*,
  400 U.S. 517 (1971) ................................................................................................................ 6

*Educ. Credit Mgmt. Corp. v. Bernal (In re Bernal)*,
  223 B.R. 542 (B.A.P. 9th Cir. 1998) ................................................................................. 5, 10

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) .............................................................................................. 7, 9

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
  534 F. App'x 665 (9th Cir. 2013) ........................................................................................ 7, 9

*Oregon v. Allen*,
  2025 U.S. App. LEXIS 18249, at *2 (9th Cir. July 23, 2025) ................................................. 6

*Perry v. Prop. 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009) .................................................................................................. 5

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) .................................................................................................. 2

*S. Cal. Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) .............................................................................................. 7, 8

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ................................................................................................... 6

**Statutes**

Fed. R. Civ. P. 24 ............................................................................................................. passim

The Official Committee of Unsecured Creditors (the "Committee") submits this objection (the "Objection") to the *Motion to Intervene of the Archdiocese of San Francisco Capital Assets Support Corporation's Motion to Intervene Under Fed. R. Civ. P. 24* [Docket No. 111] (the "Intervention Motion").

## I. INTRODUCTION

The Archdiocese of San Francisco Parish, School, and Cemetery Juridic Persons Capital Assets Support Corporation ("CASC") satisfies none of the requirements for intervention in this action (the "Division Litigation"). The Intervention Motion is just another piece in the obstructionist approach of The Roman Catholic Bishop of San Francisco (the "Archdiocese") to this Bankruptcy Case, and yet another strategy to delay resolution of this adversary by persisting in disingenuous efforts to shield estate assets from creditors by (contrary to the facts, its past practices, and representations to numerous courts) asserting that its operating divisions (identified as defendants in this action, the "Divisions") are separate legal entities.

The Committee's goal, in the bankruptcy case and this adversary proceeding, is to move toward a confirmable plan *and* a consensual resolution as quickly as possible. In furtherance of that goal, notwithstanding that CASC lacks any legitimate basis for intervention, the Committee offered to permit CASC to intervene if CASC agreed not to seek to "alter or impact the existing schedule for the motion for partial summary judgment." *See* Michael Dec.[1] Exh. A. Betraying the true motivation behind the Intervention Motion, CASC rejected a stipulation permitting its conditional intervention stating, "we're not able to agree to stipulation language that might restrict any potential relief we may need to seek on our client's behalf if the intervention is granted." Michael Dec. Exh. B..

---

[1] The *Declaration of Brittany Michael in Support of The Official Committee of Unsecured Creditors' Objection to the Archdiocese of San Francisco Capital Assets Support Corporation's Motion to Intervene Under Fed. R. Civ. P. 24* ("Michael Dec.") is filed concurrently herewith.

It is not a coincidence that CASC has scheduled the Intervention Motion for hearing on the same date that this Court hears the Partial Summary Judgment Motion.[2] The Committee submits that resolution of the Partial Summary Judgment Motion is critical to moving the adversary proceeding forward and that there should be no delay in the Partial Summary Judgment Motion or otherwise in the Division Litigation. In light of CASC's unwillingness to agree not to delay this matter, the Committee objects to CASC's intervention.

CASC meets none of the requirements for intervention under Rule 24[3] in the Ninth Circuit: (i) the application must be timely, (ii) the applicant must have a "significant protectable interest relating to the property or transaction that is the subject of the action;" (iii) resolution of the action "may, as a practical matter, impair or impede the applicant's ability to protect its interest;" and (iv) the current parties "may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

*First*, despite its efforts to manufacture one, CASC has no "significant protectable interest relating to the property or transaction that is the subject of the action." CASC holds and manages assets of the Archdiocese "exclusively to support, benefit, and carry out the purposes" of the Archdiocese and may not operate "to support or benefit any organization other than The Roman Catholic Archbishop of San Francisco, a Corporation Sole." CASC Articles of Incorporation ("CASC Articles"),[4] Article V. The Division Litigation seeks a declaration that the Divisions are not legally separate entities from the Archdiocese and assets of the Divisions are property of the bankruptcy estate. Stated differently, the Division Litigation seeks to establish who the actual

---

[2] *The Official Committee of Unsecured Creditors' Corrected Motion for Partial Summary Judgment on Affirmative Defenses Based on Canon Law* [Docket No. 108] (the "Partial Summary Judgment Motion").

[3] Federal Rule of Civil Procedure 24 ("Rule 24"). Rule 24 is made applicable to bankruptcy cases pursuant to Bankruptcy Rule 7024 which incorporates Rule 24. "Courts apply Rule 24 jurisprudence to intervention in bankruptcy proceedings." *Bustos v. Molasky (In re Molasky)*, 843 F.3d 1179, 1184 n.4 (9th Cir. 2016) (citing *Educ. Credit Mgmt. Corp. v. Bernal (In re Bernal)*, 207 F.3d 595, 597 (9th Cir. 2000)).

[4] CASC's Articles of Incorporation are attached as Exhibit 2 to the *Declaration of Father Patrick Summerhays in Support of the Roman Catholic Archbishop of San Francisco's Opposition to the Official Committee of Unsecured Creditors' Motion for Summary Judgment on Affirmative Defenses Based on Canon Law* [Docket 114-1] ("Summerhays Dec.").

beneficiaries of the assets managed by CASC are (and always have been). It does not seek to alter CASC's existing role with respect to those assets or any relief from CASC.[5]

*Second*, as described above, CASC has no significant protectable interest because disposition of the Division Litigation will not, actually or practically, impair or impede CASC's ability to protect any interest it may have. All the Division Litigation will decide is whether, as a legal matter, the Divisions of the Archdiocese have an independent interest in the assets held by CASC. The determination of the Division Litigation will not change any of CASC's rights or obligations with respect to the assets it holds for the benefit of the Archdiocese or the Divisions.

*Third*, the existing parties adequately represent CASC's interests, if any, and CASC does not bring anything new to the Division Litigation. Worse yet, it adds another team of professionals paid for out of assets of the Archdiocese, further eroding potential recoveries to survivors of childhood sexual abuse, dissipating monies for the Archdiocese to continue operations following bankruptcy, and hampering the parties in interest's ability to achieve global resolution.

*Finally*, CASC's application is not timely. This litigation was first filed in May of 2025, motions to dismiss were filed and denied months later, and defendants were required to file answers on October 1. Furthermore, while CASC asserts that there has been no significant motion practice (Intervention Motion at 3:11-13), CASC ignores that the Partial Summary Judgment Motion was filed on November 19, 2025, and CASC waited to move for intervention until December 15, 2025 and timed its hearing with the hearing on Partial Summary Judgment Motion. The Committee submits that this timing is not accidental, but rather fits into the Archdiocese's strategy to delay and complicate the Division Litigation.

This Court should not permit intervention by CASC unless CASC agrees that it will not take any action to delay the litigation.

---

[5] The Committee did not sue CASC or seek relief from it. CASC concedes as much in ¶ 89 of its proposed answer to the Complaint stating, "CASC denies that the Committee has stated facts sufficient to support any claim for relief or that the Committee is entitled to any relief whatsoever, whether legal or equitable, against CASC."

4915-6697-3572.4 05068.002

3

Case: 25-03021   Doc# 133   Filed: 01/02/26   Entered: 01/02/26 12:21:58   Page 6 of 15

## II.  WHAT IS CASC?

CASC is a "support corporation" formed by the Archdiocese (Intervention Motion at 1:10-11) to hold cash and investments.  It operates solely for the benefit of the Archdiocese.

CASC's Articles of Incorporation make clear that the corporation is operated exclusively to support the Archdiocese, advancing the mission of the division parishes and schools, which are operated civilly by the Archdiocese:

> This corporation is organized, and at all times hereafter shall be operated ***exclusively to support, benefit, and carry out the purposes*** (within the meaning of IRC Section 509(a)(3)(B)(ii)) of ***The Roman Catholic Archbishop of San Francisco,*** **A Corporation Sole**, and specifically for the purpose of advancing the mission of those Parish and School Juridic Persons, duly established under the canon law of the Roman Catholic Church, that are, pursuant to the canon law of the Roman Catholic Church, ***governed by the Archbishop*** of The Roman Catholic Archdiocese of San Francisco, ***and operated civilly by The Roman Catholic Archbishop of San Francisco***, **A Corporation Sole**. This corporation ***shall not operate to support or benefit any organization other than The Roman Catholic Archbishop of San Francisco***, **A Corporation Sole**, for the purposes stated herein and in accordance with the canon law of the Roman Catholic Church.

Summerhays Dec., Exh. 2 at Art. V (emphasis added).  The Intervention Motion mischaracterizes CASC's purpose as holding assets at the behest, and solely for the benefit of, the Divisions.  While the Articles state that CASC's purpose is in advancing the missions of the Divisions, that purpose is expressly carried out at the direction of and for the benefit of the Archdiocese, which civilly operates those Divisions.

CASC argues that intervention is necessary to protect its legal title to assets held for the Divisions (Intervention Motion at 3-5).  However, the Complaint does not alter CASC's legal status or obligations to the assets it holds; rather the Complaint seeks a declaration that those assets are (and have always been) the property of the Archdiocese, as the operating Divisions are civilly part of the Archdiocese.  If the Committee is successful, it will not "destroy[] CASC's legal ownership, and cast[] confusion on CASC's responsibilities, obligations, and administrative practices."  Intervention Motion at 4.  Rather, the Complaint simply seeks to end the Archdiocese's efforts to unilaterally restrict estate property at the core of the Bankruptcy Case.  By CASC's own admission, its obligations will not change as a result of the Division Litigation.

Intervention Motion at 1: 17-18 ("This structure [for holding assets] is consistent with Canon Law and practice and is not altered by the incorporated or unincorporated status of the underlying parish or beneficiary."). Irrespective of the legal status of the Divisions, CASC must operate "exclusively to support, benefit, and carry out the purposes… of *The Roman Catholic Archbishop of San Francisco, A Corporation Sole*," and to ensure that it is not operating to "*support or benefit any organization other than The Roman Catholic Archbishop of San Francisco*." Summerhays Dec., Exh. 2 at Art. V (emphasis added). Nor does the Complaint seek to undo any actual legal restrictions that may be applicable to the assets held by CASC. The legal rights of any natural person or separate corporate entity with an interest in the assets held by CASC will not be altered.

## III. THE STANDARD FOR INTERVENTION

Pursuant to Rule 24, intervention is permitted as "of right" when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies a four-part test to determine motions to intervene pursuant to Rule 24:

> An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*Educ. Credit Mgmt. Corp. v. Bernal (In re Bernal)*, 223 B.R. 542, 547 (B.A.P. 9th Cir. 1998). In evaluating these requirements courts "are guided primarily by practical and equitable considerations." *Callahan v. Brookdale Senior Living Cmtys, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (internal quotation marks and citation omitted). The party seeking intervention bears the burden of proving each requirement is met. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "**Failure to satisfy any one of the requirements is fatal to the application.**" *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (emphasis added).

## IV. CASC MEETS NONE OF THE REQUIREMENTS FOR INTERVENTION

Fundamentally, CASC has filed an untimely motion and is *not* a real party in interest to this litigation. Contrary to its arguments, CASC's "role and legal status are" *not* "central to any determination of whether such assets are property of the Debtor's estate." Intervention Motion at 2. The alleged interest of CASC with respect to title to investment assets and cash are more than adequately represented by the existing defendants. CASC meets none of the requirements for intervention under Rule 24.

### A. CASC's Intervention Is Not Timely.

Timeliness is evaluated by review of "the totality of circumstances facing the would-be intervenor, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Oregon v. Allen*, 2025 U.S. App. LEXIS 18249, at *2 (9th Cir. July 23, 2025)(internal quotation and citations omitted). Crucial to this analysis "is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022).

Here, CASC could easily have intervened upon filing of the Complaint over six months ago. The core facts and legal issue of the separateness of the Divisions from the Archdiocese have not changed. CASC seeks intervention now, concurrent with the pending Motion for Partial Summary Judgment and conditioned on its ability to seek a continuance of such motion, in order to raise irrelevant facts and otherwise cause prejudicial delay.

### B. CASC Has No Significantly Protectable Interest Nor Any Interest That Will Be Impaired or Impeded by the Division Litigation.

#### 1. There Is No Significantly Protectable Interest Distinct From the Existing Defendants.

The Supreme Court requires an intervenor's interest to be one that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). This requirement is met in the Ninth Circuit "when the interest is protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). "At an irreducible minimum Rule 24(a)(2) requires that the asserted

Case: 25-03021  Doc# 133  Filed: 01/02/26  Entered: 01/02/26 12:21:58  Page 9 of 15

4915-6697-3572.4 05068.002                                        6

interest be protectable under some law and that there exist a relationship between the legally protected interest and the claims at issue. If these two core elements are not satisfied, a putative intervenor lacks any interest under Rule 24(a)(2), full stop. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022). The interest must be "direct, non-contingent, substantial and legally protectable." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)). An economic stake in the outcome alone is not a sufficient interest warranting standing. *See, e.g., Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). The relationship requirement is only satisfied "if the resolution of the plaintiff's claims *actually will affect the applicant.*" *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667-68 (9th Cir. 2013) (citing *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)).

CASC has no significantly protectable interest in the litigation. *See, e.g., Arakaki v. Cayetano*, 324 F.3d at 1084. CASC's purported interest, notwithstanding the CASC Articles, that it holds legal title of the assets solely for the benefit of the Divisions, is meritless. The Committee does not seek to alter CASC's obligations to the Archdiocese, only a declaration that the Divisions are not separate civil legal entities with any interest that is independent from the interests of the Archdiocese. CASC does not have a legally protected interest that is actually the subject of the Division Litigation and therefore lacks "any 'interest' under Rule 24(a)(2), full stop." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022).

CASC is effectively the *res* in an interpleader action. The interpleader action impacts who owns the res, not the res directly. For example, if a settlement trust holds assets for distribution to abuse survivors and another party, such as counsel or lien creditor asserts an interest in those assets, the settlement trust does not have a stake as between those competing interests, it only needs to ensure that it does not make a distribution contrary to a legal determination as to which party has an interest in the funds the settlement trust holds. Similarly, here, CASC – which by its own articles of incorporation is obligated solely to the Archdiocese – has no interest in the outcome of the Division Litigation. Whether the Divisions are actually separate legal entities from

the Archdiocese has no impact on CASC. The Division Litigation is not changing any ownership rights – it is merely resolving who holds those rights as a matter of law.[6]

### 2. CASC's Alleged Interest Will Not Be Impaired Absent Intervention.

CASC impenetrably asserts:

> If the Court finds that the assets in CASC's possession are property of the Debtor, that destroys CASC's legal ownership, and casts confusion on CASC's responsibilities, obligations, and administrative practices. Moreover, a ruling in the Committee's favor may place CASC in the untenable position of conflicting obligations to depositors, insurers, or regulators.

Intervention Motion at 4. CASC's position is a nonsensical non sequitur. A declaration that the assets held by CASC belong to the Archdiocese will not impact CASC's alleged legal ownership of those assets. Nor would a declaration create any confusion as to CASC's obligations and responsibilities – it would simply clarify, as has always been the fact, that those obligations and responsibilities of CASC are owed to the Archdiocese. Moreover, CASC's assertion of speculative and unexplained risks to CASC with respect to insurers, depositors, or regulators does not implicate "direct, non-contingent, substantial and legally protectable" interests at issue in the Division Litigation. *See S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (plaintiff's creditors did not have right to intervene in action that would not resolve their claims even though the outcome of the litigation could impact the ability of the plaintiff to pay those creditors because the creditors' interests in the action were not "direct, non-contingent, substantial and legally protectible" as required by Rule 24).

Furthermore, the resolution of the Committee's claims will not affect CASC's existing legal responsibilities or expose it to some amorphous potential liability because the Division Litigation only seeks a declaration that the Divisions are part of the Archdiocese and the Divisions' assets are part of the bankruptcy estate. If the Committee is successful, CASC would

---

[6] CASC's references to the impact on alleged "donor-restricted funds" is of no moment, as the Division Litigation does not seek any determination with respect to alleged donor-restricted funds. The estate may include donor-restricted assets.

not reasonably be exposed to liability by the Divisions because it cannot have separate obligations to entities that are part of the Archdiocese.

### 3. Relevant Cases Do Not Support Intervention by CASC.

CASC's efforts to analogize its intervention to the government's intervention in *In re Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District* (Intervention Motion at 4) is to no avail. The court in *Agua Caliente* found that the United States not only had an interest because of its status as a trustee of the tribe's water rights but also because it "*has a governmental interest in protecting tribal trust property.*" *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 162 F. Supp. 3d 1053, 1055-56 (C.D. Cal. 2014) (emphasis added) (citing *Cramer v. U.S.*, 261 U.S. 219, 231, 43 S. Ct. 342, 67 L. Ed. 622 (1923). The Court further found that "[d]isposition of the action may affect the United States' ownership, trust, and governmental interests in the water rights and Agua Caliente Reservation." *Id.* As discussed above, the disposition of this action will not impact CASC's interests.

CASC's position is more analogous to that of the Tualip Tribe in *Greene v. United States*, where the Tulalip Tribes sought to intervene in an action between the Samish Tribe and the Department of Interior regarding federal recognition of the Samish Tribe. The Tualip Tribe asserted that the acknowledgment of the Samish would dilute the Tulalip's treaty fishing right because recognition of the Samish could then lead to the Samish sharing in those fishing rights because as a recognized tribe, the Samish would be entitled to the benefit of the treaty. The Ninth Circuit affirmed the denial of the Tulalip's intervention because the Tulalip had no protectable interest, because the recognition of the Samish would not directly lead to the dilution of the treaty fishing rights. *Greene v. United States*, 996 F.2d 973, 975 (9th Cir. 1993); *see also Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 F. App'x 665, 667 (9th Cir. 2013) (relying on *Greene* to revoke previously granted standing to certain Counties seeking to intervene in the Mishewal Wappo Tribe's action relating to the transfer by the Secretary of the Interior of certain properties in the jurisdictions of the Counties back to the Mishewal Wappo Tribe holding that the "regulatory, sovereignty, and taxation interests" that Counties sought to enforce relating to any such transfer of property were unrelated to the subject matter of the action).

Similarly, no interest of CASC is directly (or even indirectly) at issue in the Division Litigation. The Committee does not seek to change title or challenge the rights and obligations of CASC to its alleged account holders. In sum, CASC has no substantial protectable legal interest warranting intervention.

### C. CASC's Alleged Interest Is More Than Adequately Represented by the Existing Defendants.

Even if an applicant has a significant interest at stake in the litigation that may be impacted by the litigation, intervention should still be prohibited where the applicant's interest are already adequately represented. *See, e.g., California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). The Ninth Circuit analyses three factors in determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.*, 792 F.2d at 778; *see also In re Bernal*, 223 B.R. at 547 (same).

The critical factor is how the intervenor's asserted interest compares with the interests of other parties. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a **compelling showing should be required to demonstrate inadequate representation**." *Arakaki v. Cayetano*, 324 F.3d at 1086 (emphasis added); *see also Ariz. Yage Assembly v. Bondi*, 2025 U.S. App. LEXIS 28472, at *2 (9th Cir. Oct. 28, 2025) (finding a presumption of adequate representation when the proposed intervenor's interests are identical to those of an existing party); *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th at 1020-21, 1021 n.5 (holding that where the interests are identical to those of an existing party "a compelling showing should be required to demonstrate inadequate representation").

CASC wholly fails to offer a compelling showing of inadequate representation. CASC asserts in a one-paragraph argument that no other party adequately represents its "unique" interests because the Divisions are the intended beneficiaries of funds --

> [B]ut they do not hold legal title to those funds, are not charged with their management, and do not have the same responsibility for ensuring compliance with donor restrictions, civil obligations, or canonical requirements. CASC alone holds legal title to the funds and maintains detailed accounting of the beneficial interests, and it has assumed ongoing obligations to administer, segregate, and safeguard those assets. Its legal exposure and accountability are distinct from the interests of the parishes, schools, and other non-debtors it supports. Additionally, CASC is financially supported by the fees that it charges to those beneficial owners for CASC's management of the assets.

Intervention Motion at 5. As discussed above, CASC will suffer no immediate legal exposure by the Court declaring, based on existing documents and long-established law (not to mention the Archdiocese's long-held position), that the Divisions are not separate civil legal entities. CASC will continue to hold the assets, just as it did prior to the Petition Date. The Archdiocese and the Divisions are forcefully defending the Division Litigation and do not require additional assistance on behalf of an entity holding title to assets. CASC brings no new or novel arguments to bear – in fact its Answer copies verbatim the substantive assertions of the Archdiocese regarding the Divisions being unincorporated associations, including extraneous and unresponsive statements. *Compare* CASC Proposed Answer[7] (¶¶ 9, 27, 31, and 51) to the Archdiocese Answer[8] (¶¶ 9, 27, 31, and 51). CASC also offers many of the same affirmative defenses to the Complaint. *Compare* CASC Proposed Answer (¶¶ 91, 94, 95 and 96) to Archdiocese Answer (Second, Seventh, Ninth and Tenth Affirmative Defenses).

Ironically, CASC points to the fees it is paid by the "beneficial owners" of the assets as a reason it has an interest in the action. Any fees incurred by CASC intervening in this litigation, will be siphoned to yet one more set of professionals effectively being paid from the estate, negatively impacting and prejudicing the creditors of the Archdiocese, first and foremost the

---

[7] CASC's proposed answer to the Complaint is attached to the Intervention Motion.

[8] *The Roman Catholic Archbishop of San Francisco's Answer to Adversary Second Amended Complaint* [Docket No. 64] (the "Archdiocese Answer").

survivors. These fees are being incurred for the benefit of the existing defendants, not for the protection of any unique interest of CASC, and are wholly duplicative.

## V. CONCLUSION

CASC seeks to intervene as a defendant strictly in furtherance of the Archdiocese's goal of keeping assets out of the Archdiocese's bankruptcy based on a fictitious characterization of the Divisions that is unmoored from the law, long-established fact, or the Archdiocese's historical assertions. Intervention is unnecessary and unwarranted under applicable Ninth Circuit law.

WHEREFORE, the Committee requests that the Court deny the Intervention Motion, or, to the extent that it is inclined to grant the Intervention Motion, condition any intervention by CASC on not delaying any of the proceedings in the Division Litigation, including any hearing or ruling on the Partial Summary Judgment Motion.

Dated: January 2, 2026                    PACHULSKI STANG ZIEHL & JONES LLP

                                          By  /s/ Brittany M. Michael
                                              James I. Stang
                                              Gail S. Greenwood
                                              Brittany M. Michael

                                              Attorneys for the Official Committee of
                                              Unsecured Creditors