James I. Stang (CA Bar No. 94435)
Brittany M. Michael *(Pro Hac Vice)*
Gail Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Email:  jstang@pszjlaw.com
       bmichael@pszjlaw.com
       ggreenwood@pszjlaw.com

Attorneys for the Official Committee of
Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor. | Case No. 23-30564<br>Chapter 11 |
| | Adv. Proc. 25-03021 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; PARISHES LISTED IN **EXHIBIT A** TO THE COMPLAINT; HOLY CROSS CATHOLIC CEMETERIES; SAINT MARY MAGDALENE CATHOLIC CEMETERY; MT. OLIVET CEMETERY; OUR LADY OF PILLAR CEMETERY; TOMALES CATHOLIC CEMETERY; ARCHBISHOP RIORDAN HIGH SCHOOL; SACRED HEART CATHEDRAL PREPARATORY; MARIN CATHOLIC HIGH SCHOOL; JUNIPERO SERRA HIGH SCHOOL; VALLOMBROSA RETREAT CENTER; AND SERRA CLERGY HOUSE,<br><br>Defendants. | **REPLY IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DIVISION DEFENDANTS' "CANON LAW" AFFIRMATIVE DEFENSE**<br><br>Date: January 15, 2026<br>Time: 1:30 p.m.<br>Place: Via Zoom Teleconference<br>Hon. Dennis Montali |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .....1

II. THE MOTION IS PROCEDURALLY PROPER AND RIPE FOR SUMMARY ADJUDICATION .....2

A. The Committee Has Satisfied Its Burden for Summary Adjudication of the Division Defendants' "Canon Law" Defense Because, as a Matter of Law, the Legal Status of the Division Defendants Is Governed by Civil Law. .....2

B. Rule 56 Permits Summary Adjudication of an Affirmative Defense That Is Defective as a Matter of Law. .....3

C. FRCP 56(d) Does Not Salvage an Affirmative Defense That Fails as a Matter of Law. .....3

III. THE CANON LAW AFFIRMATIVE DEFENSE IS UNCONSTITUTIONAL .....5

IV. THE CASES CITED BY THE DEFENDANTS DO NOT SUPPORT "CANON LAW" AS A SUBSTITUTE FOR CIVIL LAW, AND THE LABEL "JURIDIC PERSON" DOES NOT ESTABLISH THE EXISTENCE OF AN UNINCORPORATED ASSOCIATION ABSENT CIVIL DOCUMENTS INCORPORATING THIS CONCEPT .....7

A. The Different Organizational Structures of Neighboring Dioceses Demonstrate Why Civil Law Governs the Legal Status of the Division Defendants. .....7

B. Controlling Case Law Supports Application of Neutral Principles of Civil Law to Resolve Church Property Disputes. .....8

C. The California Supreme Court in *Episcopal Church Cases* Resolved Property Ownership Under Neutral Principles by Examining Legally Cognizable Civil Documents. .....10

V. CONCLUSION .....12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Loretto High School*
  2010 Cal. App. Unpub. LEXIS 6348, *5 (Cal. App. Aug. 10, 2010) .......................................... 10

*Brice v. Haynes Investments, LLC,*
  548 F. Supp. 3d 882 (N.D. Cal. 2021) ........................................................................................ 3

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................................................... 2

*Committee v. Archbishop of Agana (In re Archbishop of Agana),*
  Adv. No. 19-00001, ECF No. 164 at *5 (Bankr. D. Guam July 16, 2021) ................................ 8

*Compare Serbian Orthodox Diocese v. Milivojevich,*
  426 U.S. 696 (1976) .................................................................................................................... 8

*Episcopal Church Cases,*
  45 Cal. 4th 467 (2009) .................................................................................................. 8, 9, 10, 11

*Huber v. Jackson,*
  175 Cal. App. 4th 663 (2009) ..................................................................................................... 8

*In re First Korean Christian Church of San Jose,*
  567 B.R. 575 (Bankr. N.D. Cal. 2017) .................................................................................... 4, 9

*In re Roman Catholic Archbishop of Portland in Oregon,*
  335 B.R. 842 (Bankr. D. Or. 2005) ......................................................................................... 8, 9

*Jones v. Wolf,*
  443 U.S. 595 (1979) ............................................................................................................ passim

*Korean United Presbyterian Church v. Presbytery of Pac.,*
  230 Cal. App. 3d 480 (1991) ................................................................................................... 8, 9

*Lies v. Farrell Lines, Inc.,*
  641 F.2d 765 (9th Cir. 1981) ....................................................................................................... 2

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar,*
  179 F.3d 1244 (9th Cir. 1999) ............................................................................................. 4, 8, 9

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.,*
  966 F.3d 346 (5th Cir. 2020) ....................................................................................................... 8

*New v. Kroeger,*
  167 Cal. App. 4th 800 (2009) ..................................................................................................... 8

*Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,*
  393 U.S. 440 (1969) .................................................................................................................... 9

*Puri v. Khalsa,*
  844 F. 3d 1152 (9th Cir. 2017) ................................................................................................ 4, 8

*Scotts African Union Methodist Protestant Church v. Conf. of African
   Union First Colored Methodist Protestant Church,*
  98 F. 3d 78 (3d Cir. 1996) .......................................................................................................... 8

*Serbian Orthodox Diocese v. Milivojevich,*
    426 U.S. 696 (1976) .................................................................................................. 8

**Statutes**

Fed. R. Bankr. P. 9011. ................................................................................................... 5

Fed. R. Civ. P. 56 ....................................................................................................... 3, 4

## I. INTRODUCTION

The Committee seeks summary adjudication of an affirmative defense asserted by each of the Division Defendants that canon law controls this Court's determination of whether the Division Defendants are unincorporated associations under California civil law.[1] The defense demands the Court treat canon law as dispositive of whether a civil controversy exists and whether declaratory relief can proceed. Instead of responding to the Committee's requested relief, the Defendants attempt to re-write the record in two ways:

First, the Division Defendants (including St. Dominic, represented by separate counsel) try to modify their canon law affirmative defense. Instead of arguing that canon law *controls* this Court's decision about the Division Defendants' independent legal existence under civil law, the Division Defendants pivot and contend that the Court should merely *consider* canon law. The Court need look no further than the table of contents in the Division Defendants' opposition to confirm that the words "consider" and "consideration" appear in six separate headings. The Committee moves for summary adjudication of the canon law affirmative defense as set forth in the Division Defendants' answers, not as rephrased in the Division Defendants' opposition briefs.

Next, the Defendants attempt to recast the Committee's Motion as either a premature evidentiary motion or as a merits determination on the Division Defendants' legal separateness. The Division Defendants are trying to obfuscate the real issue by previewing an answer to a question that the Committee's Motion did not raise. The relevant question is whether civil law controls this Court or whether this Court is controlled by the law of the Holy See. Internal religious doctrine is relevant only to the extent it is embodied in forms recognized by civil law.

Granting the Committee's Motion will simplify this litigation by reducing the number of issues in dispute and by making clear that civil law, not Catholic Church canons, controls the Court's decision making.

---

[1] The Parishes plead, as a stand-alone defense: "Declaratory relief is not available as there is no justiciable case or controversy. The independent legal existence of non-debtor entities and ownership of real property related thereto is not reasonably under dispute in canon law." UF 4. Other defendants plead nearly identical defenses. *Id.* (quoting defenses of Sacred Heart Cathedral Preparatory; Vallombrosa; Archbishop Riordan High School, Marin Catholic High School, and Junipero Serra High School; and Cemeteries).

## II.
## THE MOTION IS PROCEDURALLY PROPER AND RIPE FOR SUMMARY ADJUDICATION

**A.  The Committee Has Satisfied Its Burden for Summary Adjudication of the Division Defendants' "Canon Law" Defense Because, as a Matter of Law, the Legal Status of the Division Defendants Is Governed by Civil Law.**

The Committee is entitled to summary adjudication dismissing an affirmative defense if an essential element of the defense cannot be met.[2] The Division Defendants acknowledge that California state law applies to determine whether the entities are unincorporated associations.[3] As a matter of law, the legal status of the Division Defendants is governed by civil law and their affirmative defense to the contrary must be dismissed.

The Division Defendants mischaracterize their own affirmative defense so they can argue that the Committee fails to meet its burden to exclude documentary evidence and testimony concerning canon law.[4] The Division Defendants' canon law defense and the pending Motion are not about evidentiary issues or relevance. Under Supreme Court precedent adopting neutral principles of law, this Court must focus on the applicable civil documents to determine whether the Division Defendants are legally separate from the Archdiocese. The internal church law is not by itself controlling, nor is it equally applicable with civil law[5] as the Division Defendants contend.

The Court should note that the Archdiocese did not plead a "canon law controls" affirmative defense and the Motion does not seek relief against the Archdiocese. Nevertheless, the Archdiocese filed a separate opposition and argues that the Committee fails to meet its burden of proof by

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986) (moving party may carry its burden by showing that there is an absence of evidence to support the nonmoving party's claim). *See also Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 n.3 (9th Cir. 1981) (summary adjudication is appropriate to determine issues in advance of trial "to avoid a useless trial of facts and issues over which there was really never any controversy") (cited by Division Defendants).

[3] *See* Non Debtor Co Defendants' Response in Opposition [Docket No. 129] ("DD Opp.") at 13:17-19 ("There is no question that California state law will apply to determine whether the Non-Debtor Co-Defendants are unincorporated associations and if their assets constitute property of the estate.") and 16:4-6 ("The Committee and Non-Debtor Co-Defendants agree that the Court should apply 'neutral principles of *state* law' in determining whether the Committee is entitled to the declaratory relief it seeks in this proceeding and that California law governs in this case.").

[4] DD Opp. at pp. 11-12.

[5] DD. Opp. at 16:7-9 ("both canon law (as internal governance) and secular civil law apply").

misconstruing the Motion as a request for judgment on the Committee's claims for declaratory relief.[6] This Court does not require expert testimony to determine that civil law governs the legal status of the Division Defendants in this adversary proceeding, nor are there disputed facts to preclude such a determination. Summary adjudication dismissing the canon law affirmative defense is appropriate because the Committee's claims must be decided under civil law.

### B. Rule 56 Permits Summary Adjudication of an Affirmative Defense That Is Defective as a Matter of Law.

The Defendants argue that the Committee's Motion is principally an evidentiary motion and should be treated like a motion in limine that is premature. It is not. The Motion seeks summary adjudication of the Division Defendants' affirmative defense alleging that the Court should categorically defer to canon law to determine the Division Defendants' civil status and the status of their alleged property. The affirmative defense is a legal issue that is ripe for adjudication now.[7]

### C. FRCP 56(d) Does Not Salvage an Affirmative Defense That Fails as a Matter of Law.

The Division Defendants contend discovery is needed because they have not hired a canon law expert and because "the record is developing."[8] Apart from the obvious question of why the Division Defendants need time to discover their own status as unincorporated associations (a factual matter alleged by the Archdiocese since the Petition Date),[9] discovery cannot salvage an affirmative defense that fails as a matter of law.

Rule 56(d) of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7056, permits a nonmovant to show by declaration that "for specified reasons, it cannot

---

[6] See Archdiocese's Opposition [Docket No. 114] ("ASF Opp.") at 5:4-8 (arguing that the Committee seeks adjudication of "unspecified 'elements'" of the complaint causes of action).

[7] Fed. R. Civ. P. 56(a). See, e.g., Brice v. Haynes Investments, LLC, 548 F. Supp. 3d 882, 899-901 (N.D. Cal. 2021) (granting partial summary judgment as to application of California law and dismissing defendants' affirmative defense alleging tribal immunity).

[8] DD Opp. at 14:8-15:22, and Ex. E.

[9] See Passarello First Day Declaration [Main Case, Docket No. 14], ¶¶18, 32, 34.

present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The "missing facts" the Division Defendants identify are neither facts nor are they essential to oppose summary adjudication on the legal issue presented. They are requests to generate interpretive opinions about canon law. Discovery aimed at developing canon law interpretations does not justify a continuance of the Motion.

Vallombrosa claims it lacks access to "archival records" in the Chancery that might support information crucial to its defense.[10] As an initial matter, the canon law affirmative defense is not a factual issue requiring discovery. Furthermore, the status of a civil entity is not a secret buried in religious archives that requires an expert on Catholic canons to decipher. Civil status under California law is determined by secular documents, *e.g.* matters of public record, deeds, secular corporate/entity documents, financial records, email communications, memoranda and the like.[11] Summary adjudication dismissing the Division Defendants' canon law defense will not preclude the introduction of such secular documents. Rather, it precludes the argument that canon law, as an internal religious guideline, controls the civil legal status of the Division Defendants. The legal issue raised by the canon law affirmative defense is not altered by additional facts, much less essential facts, which Rule 56(d) requires.

In addition, the Division Defendants' lack of diligence undermines their request for additional time for discovery. The Archdiocese first took the position that the Division Defendants are unincorporated associations in August 2023, nearly two and a half years ago. Counsel for the Division Defendants affirmed their support for this position as early as January 2024, when they filed notices of appearance without applying for retention by the bankruptcy estate,[12] which was

---

[10] DD Opp., Ex. E (Raja Dec.).

[11] *See Jones v. Wolf,* 443 U.S. 595, 603 (1979); *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar,* 179 F.3d 1244, 1249 (9th Cir. 1999) (reviewing registration of trademarks in trademark infringement dispute); *Puri v. Khalsa,* 844 F. 3d 1152, 1167 (9th Cir. 2017) (reviewing secular governing documents, including articles of incorporation of nonprofit religious corporation and operating agreement of nonprofit LLC of which corporation was the sole member); *In re First Korean Christian Church of San Jose,* 567 B.R. 575, 579 (Bankr. N.D. Cal. 2017) (court can consider relevant bylaws, minutes, and orders from governing bodies to resolve church property dispute).

[12] *See, e.g.,* Notice of Appearance and Request for Notice by Parishes and RPSC, filed Jan. 23, 2024 [Main Case, Docket No. 442].

approximately sixteen months before this adversary proceeding commenced. Each of the Defendants had an affirmative obligation to examine in good faith their legal position and supporting facts before making representations to this Court.[13] To date, not a single Division Defendant has pursued discovery from the Archdiocese or from any third party, which belies the Division Defendants' assertion that critical documents are inaccessible or outside their possession.

### III. THE CANON LAW AFFIRMATIVE DEFENSE IS UNCONSTITUTIONAL

A party is free to offer evidence of internal structure when *civil law* gives that evidence legal effect (e.g., bylaws, deeds, civil constitutions, express trusts, corporate charters), and when the court can apply neutral principles *without interpreting* religious doctrine.[14] But that is not what the Division Defendants' affirmative defense purports to do. The Division Defendants assert that because canon law does not "reasonably" dispute their independent existence and ownership, there is no *civil* case or controversy. The Division Defendants even include canon citations in their table of authorities alongside binding statutes and case law.[15] Thus, according to the Division Defendants, canon law controls the determination of justiciability and civil legal existence.

For example, Defendants repeatedly describe what they intend to prove "under canon law," including that parishes are "juridic persons," and that internal religious guidelines allocate authority and various management responsibilities to the Division Defendants.[16] The relevant inquiry is not how the Division Defendants "own and manage parish property under canon law,"[17] but how they own and manage property under *civil* law, through *civilly* operative instruments, including articles, bylaws, deeds, recorded instruments, trusts recognized by civil law, and governance documents that may be given civil effect.[18]

---

[13] Fed. R. Bank. P. 9011.

[14] *Jones v. Wolf,* 443 U.S. at 604.

[15] DD Opp. at pp. vi-viii (listing canon law citations *above* the citation to the First Amendment).

[16] DD Opp. at pp. 2-4 (outlining canon law concepts); ASF Opp. at pp. 7-10 (alleged disputed facts requiring canon law opinion testimony).

[17] DD Opp. at 20:9-12 and Ex. B.

[18] *See* fn. 11, *supra.*

The Division Defendants' canon law affirmative defense is constitutionally defective precisely because application of Catholic canons to determine the scope of the bankruptcy estate would impermissibly entangle this Court in religious doctrine. Whether a "case or controversy" exists is a question of federal law. The decision cannot turn on whether an internal religious doctrine deems the matter "not reasonably under dispute."[19] If the Court were to accede the Division Defendants' affirmative defense as framed, it would have to decide at least the following three issues under Catholic Church canons: (1) what canon law says about "independent legal existence" and "ownership of real property related thereto;" (2) whether these issues are actually undisputed under canon law (and what "reasonably under dispute" means under the canons); and (3) whether canon law eliminates the civil controversy that the Committee has alleged. These are questions about church doctrine and internal church governance. Such inquiries involve much more than the application of neutral principles to relevant civil documents.

Under longstanding Supreme Court precedent, the Court should not entangle itself in the interpretation of religious doctrine and must instead apply civil law to relevant facts and documents to determine the Division Defendants' status under civil law. The entanglement problem is highlighted, not solved, by Defendants' insistence that they should be allowed to offer testimony from canon law experts to "explain" canon law's general application, as well as their concurrent submission of testimony on the subject (Fr. Summerhays), a general handbook on the subject (Linsky Dec., Ex. 2), and citation to over three dozen canons (DD. Opp. *passim*). If the Court needs experts to interpret canon law to decide whether a civil controversy exists or whether a party has separate civil legal existence, the Court is being asked to adjudicate religious doctrine. Neutral principles are designed to avoid precisely that exercise.

//

//

//

---

[19] *Jones v. Wolf,* 443 U.S. at 602-06 (First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine).

# IV.
## THE CASES CITED BY THE DEFENDANTS DO NOT SUPPORT "CANON LAW" AS A SUBSTITUTE FOR CIVIL LAW, AND THE LABEL "JURIDIC PERSON" DOES NOT ESTABLISH THE EXISTENCE OF AN UNINCORPORATED ASSOCIATION ABSENT CIVIL DOCUMENTS INCORPORATING THIS CONCEPT

### A. The Different Organizational Structures of Neighboring Dioceses Demonstrate Why Civil Law Governs the Legal Status of the Division Defendants.

The Division Defendants agree that neutral principles of civil law control this dispute and the Court's analysis should be confined to "secular legal documents including ...bylaws."[20] However, the Division Defendants try to avoid the plain meaning of secular legal documents by arguing that canon law must be deemed to constitute "the bylaws" of the Division Defendants based on a faulty reading of the Corporations Code.[21] Specifically, the Division Defendants argue that section 9150(a) of the Corporations Code broadly defines their "bylaws" to include all canon law. Among other matters, the Division Defendants ignore that the definition is expressly limited to nonprofit religious corporations described in Part 4 (Corp. Code §9110). It does not apply to a corporation sole (Part 6, Corp. Code §§ 10000 *et seq.*) or unincorporated associations (Title 3, Corp. Code §§ 18000). In this manner, the Division Defendants argue that general canon law, untethered to any particular civil document, defines their legal structure and purportedly requires expert testimony for explanation to the Court.

The Defendants' underlying argument that canon law defines and controls the Division Defendants' legal status should be rejected. The differences in the civil organizational structure between the dioceses of Santa Rosa and Oakland prove the point. Canon law supposedly is universal within the Catholic Church. If canon law by itself dictated civil structure and civil ownership consequences, dioceses governed by the same canon law would have the same civil structures. Yet they do. The Santa Rosa diocese oversees separately incorporated parishes, while the parishes of the Oakland diocese, like here, are not separately incorporated and "as a matter of California law they are not separate from the Debtor."[22]

---

[20] DD Opp. at 18:8.

[21] *See id.* at 17:19-18:9.

[22] Michael Dec. [Docket No. 105], Ex. C (excerpt of Oakland Diocese's disclosure statement).

Different dioceses have used different civil forms for parish entities and parish property arrangements, demonstrating that their civil structure follows civil memorialization, not ecclesiastical labels. "Juridic person" is a canonical classification, not a California civil law form of organization. The Division Defendants' cited authority recognizes this distinction, but the Division Defendants omitted the relevant chapter from their submission to the Court.[23] The canons do not control the Division Defendants' civil form or their civil status.

**B.  Controlling Case Law Supports Application of Neutral Principles of Civil Law to Resolve Church Property Disputes.**

The Defendants cite to numerous cases that reference or discuss religious doctrine. The cases overwhelmingly support application of neutral principles of civil law in accordance with *Jones v. Wolf, supra*.

While courts may consider religious laws, they only do so based on their inclusion in governing civil documents and civil law, not as a wholesale application of religious law. The arguments and cases cited by the Defendants are in accord.[24] These cases recognize the holding of *Jones v. Wolf,* 443 U.S. at 606, that neutral principles apply to civilly operative documents and the burden is on a religious entities to conform their civil structure:

> Under the neutral-principles approach, the outcome of a church property

---

[23] *See* Declaration of Gail Greenwood, filed concurrently herewith, at Ex. A (chapter 14 of canon law handbook excerpted and attached at DD Opp. Ex. D2) at p. 131 ("The public juridic person, as such, has no civil law equivalent and no civil law identity. **It is a religious concept and not a civil one**;" emphasis added). *See also In re Roman Catholic Archbishop of Portland in Oregon,* 335 B.R. 842, 865-66 (Bankr. D. Or. 2005) ("*Portland II*") (being a separate juridic person does not give that juridic person a civil law identity; citing canon law handbook).

[24] *See, e.g., Episcopal Church Cases,* 45 Cal. 4th 467, 473 (2009) (applying neutral principles of law); *Korean United Presbyterian Church v. Presbytery of Pac.*, 230 Cal. App. 3d 480, 486 (1991) (same); *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar,* 179 F. 3d 1244, 1249 (9th Cir. 1999) (same); *Puri v. Khalsa,* 844 F. 3d 1152, 1166 (9th Cir. 2017) (same); *Portland II,* 335 B.R. at 854 (same); *Committee v. Archbishop of Agana (In re Archbishop of Agana),* Adv. No. 19-00001, ECF No. 164 at *5 (Bankr. D. Guam July 16, 2021) (same); *Huber v. Jackson,* 175 Cal. App. 4th 663, 683 (2009) (same); *Scotts African Union Methodist Protestant Church v. Conf. of African Union First Colored Methodist Protestant Church,* 98 F. 3d 78, 97 (3d Cir. 1996) (same); *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.,* 966 F.3d 346, 349 (5th Cir. 2020) (same). *Compare Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 724 (1976) (neutral principles do not extend to removal of a bishop based on matters of church governance, discipline, or doctrine); *New v. Kroeger,* 167 Cal. App. 4th 800, 820 (2009) (neutral principles do not extend to dispute between loyalist and dissident members of church to determine lawful directors of parish corporation).

dispute is not foreordained. ...[Religious parties] can **modify the deeds or the corporate charter** to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, **provided it is embodied in some legally cognizable form**. (Emphasis added).

In *First Korean Christian Church of San Jose,* 567 B.R. 575, 579 (Bankr. N.D. Cal. 2017), as quoted by the Division Defendants and St. Dominic, this Court considered "the relevant by-laws as well as minutes and orders from governing bodies," referring to its analysis as a "secular examination of documents of governance." The Court specifically avoided an interpretation of religious doctrine in favor of applying neutral principles to determine estate property.

Similarly, in *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar,* 179 F.3d 1244, 1249-50 (9th Cir. 1999), the Ninth Circuit declined to defer to the hierarchical decision-making body and concluded that trademark infringement claims could be determined by "neutral, secular principles" by relying on "state statutes concerning the holding of religious property, the language in the relevant deeds, and the terms of the corporate charters of religious organizations."[25] The *Maktab* court observed that the actions of the plaintiff in "registering trademarks and incorporating itself under state law appear to be examples of a tendency that the Supreme Court has encouraged" and therefore, "having adopted certain state and federal legal structures, it is incumbent upon the civil court now to apply to those structures the **secular law that governs** them."[26]

For purposes of a church property dispute, internal church rules matter only when a legally cognizable document or civil statute establishes civil legal consequences (such as by creating a civil commitment or an enforceable trust obligation).[27] For example, in *Anderson v. Loretto High*

---

[25] DD Opp. at 18 (quoting *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*).

[26] *Maktab,* 179 F.3d at 1250 (citing *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,* 393 U.S. 440, 449 (1969) and *Jones v. Wolf,* 443 U.S. at 606) (emphasis added).

[27] *See, e.g., Portland II,* 335 B.R. 842, 854 (Bankr. D. Or. 2005) ("The religious organization's internal law is not relevant to the dispute, unless neutral principles of civil law make it so."); *Episcopal Church Cases, infra,* 45 Cal. 4th 467, 487-88 (2009) (parish's articles of incorporation created civil commitment to hold property in trust that was applicable under the Corporations Code); *Korean United Presbyterian Church v. Presbytery of the Pac.,* 230 Cal. App. 3d 480, 508-12 (1991), *overruled on other grounds* (local church's

*School*,[28] cited by the Division Defendants, the court resolved a dispute between donors to a religious school and the religious institute that owned and operated the school. The plaintiff donors argued that canon law imposed a constructive trust over school funds pursuant to sections of the Corporations Code governing nonprofit religious corporations. Starting with the statute, the court reviewed the canon at issue and found that the language did not expressly create a civil law trust under the Corporations Code and, if plaintiffs intended their donation to create a trust, "they could have created a trust for their gift."[29] The court further noted that competing canon law experts demonstrated that the canon language was not express.[30] The unpublished opinion supports a thoughtful analysis of the Corporations Code, not reliance on Catholic Church canons as a substitute for civil law.

Courts can independently review the terms of a formation document, charter, bylaw, or deed without adjudicating internal church doctrine. *See id.* at *17 n. 5 (rejecting opinions of canon experts and declining to interpret canon law). Defendants' insistence on a canon law expert (and blanket recitation of canons) is a red flag that the Court is being asked to *interpret* religious doctrine to generate civil outcomes, which is precisely the entanglement neutral principles avoids. Likewise, Defendants' emphasis on the Division Defendants' internal status as "juridic persons" in the absence of any civil document incorporating the concept underscores the risk of entanglement. A canon law label cannot substitute for civil law requirements, and expert interpretation cannot convert ecclesiastical status into civil separateness.

**C.    The California Supreme Court in *Episcopal Church Cases* Resolved Property Ownership Under Neutral Principles by Examining Legally Cognizable Civil Documents.**

The Defendants rely heavily on *Episcopal Church Cases,* 45 Cal. 4th 467 (2009) to argue that religious doctrine is "enforceable" (ASF Opp. at 14-15) and may be "considered" (DD Opp.

---

articles of incorporation and bylaws created express trust in favor of national organization, as did the national organization's constitution).

[28] 2010 Cal. App. Unpub. LEXIS 6348, *5 (Cal. App. Aug. 10, 2010).

[29] *Id.* at *17 (citing Corp. Code §9142(c)).

[30] *Id.*

at 16-17, St. Dominic Opp. at 6-8) under neutral principles. *Episcopal Church Cases* does not save the Division Defendants' canon law defense from dismissal. The California Supreme Court unequivocally applied neutral principles to its analysis of legally cognizable civil documents for purposes of resolving an intrachurch property dispute.

In *Episcopal Church Cases,* the local parish was incorporated and received title to real property from the parent church in 1950. Years later, the local parish disaffiliated and claimed ownership of the property. Applying neutral principles*,* the court concluded that the parish's articles of incorporation reflected a commitment to be bound by the constitution and canons of the church, including a religious canon expressly establishing that all parish property was held in trust for the parent church. *Id.* at 484 (quoting articles of incorporation stating that constitution and canons shall always form a part of the bylaws and articles and "shall prevail against and govern anything herein") and 485-86 ("Such commitment [to be bound by canons] is found in the original application to the higher church authorities to organize as a parish and in the articles of incorporation."). Of particular significance, the court did not simply enforce the canons as governing law, nor did it consider religious canons in the abstract. Quoting *Jones v. Wolf, supra*, the court explained that religious entities may modify their corporate documents and civil courts will give effect to the result "provided it is embodied in some legally cognizable form."[31] The court summarized its finding as follows:

> **The only intent a secular court can effectively discern is that expressed in legally cognizable documents.** In this case, those documents show that the local church agreed and intended to be part of a larger entity and to be bound by the rules and governing documents of that greater entity.[32]

The *Episcopal Church Cases* does not support canon law as dispositive of the property dispute. Rather, civil law applied and governed the court's analysis of legally cognizable civil documents.

---

[31] *Id.* at 487.

[32] *Id.* at 493 (emphasis added).

The Division Defendants are welcome to introduce relevant and legally cognizable documents in the course of this litigation. The pending Motion, however, is not about such facts or documents. The Court should dismiss each Division Defendants' canon law affirmative defense because the internal Catholic Church doctrines do not determine their civil legal status.

## V. CONCLUSION

The Defendants cannot avoid summary adjudication by recasting the Motion as an evidentiary motion that excludes potentially relevant evidence. Their submission of myriad canons and canonical arguments are not relevant to the civil law question presented, and their request for additional time to submit facts and expert testimony interpreting canons is unnecessary. The Motion seeks threshold relief on the Division Defendants' "canon law controls" affirmative defense, not a final adjudication of claims or title.

The Committee respectfully requests that the Court grant its Motion and dismiss the canon law affirmative defense asserted by each of the Division Defendants.

Dated: January 8, 2026                    PACHULSKI STANG ZIEHL & JONES LLP

By  /s/ Gail S. Greenwood
    James I. Stang
    Brittany M. Michael (*Pro Hac Vice*)
    Gail S. Greenwood

    Attorneys for the Official Committee of Unsecured Creditors