James I. Stang (CA Bar No. 94435)
Brittany M. Michael *(Pro Hac Vice)*
Gail Greenwood (CA Bar No. 169939)
Michael L. Cohen (CA Bar No. 206253)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Email: jstang@pszjlaw.com
        bmichael@pszjlaw.com
        ggreenwood@pszjlaw.com
        mcohen@pszjlaw.com

Attorneys for the Official Committee of
Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor. | Case No. 23-30564<br>Chapter 11<br><br><br>Adv. Proc. 25-03021 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO; PARISHES LISTED IN EXHIBIT A; HOLY CROSS CATHOLIC CEMETERIES; SAINT MARY MAGDALENE CATHOLIC CEMETERY; MT. OLIVET CEMETERY; OUR LADY OF PILLAR CEMETERY; TOMALES CATHOLIC CEMETERY; ARCHBISHOP RIORDAN HIGH SCHOOL; SACRED HEART CATHEDRAL PREPARATORY; MARIN CATHOLIC HIGH SCHOOL; JUNIPERO SERRA HIGH SCHOOL; VALLOMBROSA RETREAT CENTER; AND SERRA CLERGY HOUSE,<br><br>Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR SUMMARY JUDGMENT REGARDING THE DIVISION DEFENDANTS' ALLEGED SEPARATE LEGAL EXISTENCE**<br><br>Date: March 26, 2026<br>Time: 1:30 p.m.<br>Place: Via Zoom Teleconference<br>Hon. Dennis Montali |

4907-9488-6480.12 05068.002

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...........................................................................................1

II.  PROCEDURAL BACKGROUND ....................................................................1

III.  FACTUAL STATEMENT...............................................................................2

IV.  SUMMARY JUDGMENT STANDARDS ........................................................2

V.  LEGAL ARGUMENT ....................................................................................4

    A.  The Division Defendants Are Part of the Archdiocese's Civil Entity ......................4

        1.  The Division Defendants Operate Within the Archdiocese's Charter. ..........9

        2.  The Division Defendants Are Subject to Financial Reporting and Budget Controls That the Archdiocese Imposes on Them......................12

        3.  The Archdiocese Imposes Substantial Controls on Nearly Every Aspect of the Division Defendants' Operations and Personnel. ..............................13

        4.  The Division Defendants Do Not Separately Own Property and Have Never Held Property in Their Own Names. ...................................14

        5.  The Archdiocese Appoints and Retains Authority to Terminate the Division Defendants' Leaders.................................................................15

    B.  The Archdiocese Chose a Civil Structure of Centralized Control. ..........................17

    C.  The Division Defendants Do Not Qualify as Unincorporated Associations Under Applicable California Law. ...........................................................20

        1.  The Division Defendants Are Not Unincorporated Associations. ...............20

        2.  Fairness Requires That This Court Treat the Division Defendants Not as Unincorporated Association but, Instead, as Part of the Archdiocese. ..............................................................................21

    D.  The Archdiocese Should Be Judicially Estopped From Asserting that the Parishes, High Schools, and Cemeteries Are Unincorporated Associations............22

    E.  Canon Law Does Not Make the Division Defendants Unincorporated Associations Under California Law ................................................................23

VI.  CONCLUSION.............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acevedo Feliciano v. Catholic, Apostolic and Roman Church et al.,*
    2018 TSPR 106, 2018 WL 3078885 (P.R. 2018) ........................................ 18

*Akoury v. Roman Catholic Archbishop of Boston,*
    2004 WL 2341333 (Mass. Super. Sept. 14, 2004) .................................... 18

*Albers v. Church of Nazarene,*
    698 F.2d 852 (7th Cir. 1983) .................................................................... 4

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................ 2, 3

*Baker v. Roman Catholic Archdiocese of San Diego,*
    2014 U.S. Dist. Lexis 119145 (S.D. Cal. Aug. 26, 2014) ......................... 6

*Barr v. United Methodist Church,*
    90 Cal. App. 3d 259 (1979) ........................................................ 20, 21, 22

*Bohnert v. Roman Catholic Archbishop of San Francisco,*
    136 F. Supp. 3d 1094 (N.D. Cal. 2015) ............................................ passim

*Breitman v. May Co. Cal.,*
    37 F.3d 562 (9th Cir. 1994) ................................................................... 4, 7

*Canovaro v. Bros. of Order of Hermits of St. Augustine,*
    326 Pa. 76 (1937) .................................................................................... 18

*Celotex Corp. v. Catrett,*
    477 U.S. 321 (1986) ............................................................................. 3, 4

*Comm. of Tort Litigants v. Catholic Diocese of Spokane,*
    364 B.R. 81 (E.D. Wash. 2006) ......................................................... 18, 19

*Commodity Futures Trading Commission v. Ooki DAO,*
    2022 WL 17822445 (N.D. Cal. Dec. 20, 2022) ....................................... 22

*County of San Luis Obispo v. Ashurst,*
    146 Cal. App. 3d 380 (1983) .................................................................. 19

*EEOC v. St. Francis Xavier Parochial School,*
    77 F. Supp. 2d 71 (D.D.C. 1999) ...................................................... passim

*F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,*
    754 F.2d 216 (7th Cir. 1985) ................................................................ 6, 18

*Finn v. Sullivan,*
    228 F. Supp. 3d 972 (N.D. Cal. 2017) .................................................... 23

*Galiano v. Inst. of Gov't Studies at the Univ. of Cal.,*
    2008 U.S. Dist. LEXIS 68527 (N.D. Cal. Sept. 5, 2008) .................... passim

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) .................................................................. 23

*Henry v. Red Hill Evangelical Lutheran Church of Tustin,*
    201 Cal. App. 4th 1041 (2011) ............................................................. 4, 6

*In re Fox Ortega Enterprises, Inc.,*
    631 B.R. 425 (Bankr. N.D. Cal. 2021) ................................................. 3, 17

4907-9488-6480.12 05068.002

*In re Roman Catholic Archbishop of Portland in Oregon,*
  335 B.R. 842 (Bankr. D. Or. 2005) ................................................... 17, 18, 19

*In re Valley Media, Inc.,*
  279 B.R. 105 (Bankr. D. Del. 2002) .......................................................... 8

*Jones v. Wolf,*
  443 U.S. 595 (1979) ............................................................................. 24

*Kaupthing Ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio,*
  291 F. Supp. 3d 21 (D.D.C. 2017) ................................................. 4, 12, 14

*Klimkiewicz v. Regents of the Univ. of Cal.,*
  2020 WL 1140477 (Cal. W.C.A.B. Feb. 28, 2020) .................................... 8

*L'Garde, Inc. v. Raytheon Space and Airborne Systems,*
  805 F. Supp. 2d 932 (C.D. Cal. 2011)...................................................... 7

*LM v. Doe,*
  2025 U.S. Dist. Lexis 8761 (C.D. Cal. Jan. 16, 2025) ......................... 4, 7, 9

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................... 3

*Neville v. Salvation Army Nat'l Corp.,*
  2025 WL 3641846 (W.D. Ky. Dec. 16, 2025) ..................................... 9, 21

*Rissetto v. Plumbers and Steamfitters Local 343,*
  94 F. 3d 597 (9th Cir. 1996)................................................................... 23

*Roman Catholic Bishop of San Jose v. Bowen,*
  219 Cal. App. 4th 484 (2013)................................................................. 17

*Scott v. Harris,*
  550 U.S. 372 (2007) ............................................................................... 3

*Smartdoor Holdings, Inc. v. Edmit Indus., Inc.,*
  78 F. Supp. 3d 275 (D.D.C. 2015) ........................................................... 9

*St. Martin Evangelical Lutheran Church v. South Dakota,*
  451 U.S. 772 (1981) ........................................................................... 4, 6

*Vann v. City and County of San Francisco,*
  97 Cal. App. 5th 1013 (2023) ......................................................... passim

**Statutes**

Cal. Corp. Code § 18008 ........................................................................ 20

Cal. Corp. Code § 18010 ........................................................................ 20

Cal. Corp. Code § 18130 ........................................................................ 21

Cal. Corp. Code § 18200 ........................................................................ 20

Fed. R. Bankr. Proc. 7056 ......................................................................... 2

**Other Authorities**

9 Witkin, *Summary of California Law* Corporations §44 (2026 ed.)................ 20

# I. INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Archbishop of San Francisco, a Corporation Sole, (the "Archdiocese") seeks a declaration that none of the Division Defendants is a separate legal entity from the Archdiocese.[1]

Until the eve of bankruptcy, the Archdiocese repeatedly represented—to the courts, to the ███, to the Justice Department, to the Division Defendants, and to the public—that the parishes, the parochial schools, the High Schools, the Cemeteries, and the Vallombrosa Retreat Center were not separate legal entities from the Archdiocese but were, rather, merely "divisions" or "departments" of the corporation sole entity. None of the Division Defendants ever challenged these representations until the Archdiocese filed for bankruptcy protection, at which point the Archdiocese and the Division Defendants concocted the "unincorporated association" defense. When the Archdiocese filed for bankruptcy, the entire legal entity filed bankruptcy, not a siloed portion of the corporation sole that the Archdiocese self-servingly decided would be convenient, both legally and financially.

The undisputed facts establish, as a matter of law, that none of the Division Defendants is a separate legal entity from the Archdiocese and that each of the Division Defendants is part of the Archdiocese's civil legal entity. No reasonable jury could conclude otherwise. Summary judgment on this issue is therefore appropriate.

# II. PROCEDURAL BACKGROUND

The Archdiocese filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 21, 2023 (the "Petition Date"). The Archdiocese is a debtor-in-possession of its assets pursuant to sections 1107 and 1108 of the Bankruptcy Code. Since the Petition Date, the Archdiocese has asserted that the Parishes, the Cemeteries, the High Schools, and Vallombrosa

---

[1] The term "Division Defendants" means the following entities: the parishes and related parochial schools listed in Exhibit A to the Committee's Motion (the "Parishes"); three of the archdiocesan Catholic high schools (the "High Schools"), Archbishop Riordan High School, Marin Catholic High School, and Junipero High School; each of six cemeteries (the "Cemeteries"), Holy Cross Catholic Cemetery (Colma), Holy Cross Catholic Cemetery (Menlo Park), Sant Mary Magdalene Catholic Cemetery (Bolinas), Mt. Olivet Cemetery (San Rafael), Our Lady of Pillar Cemetery, including St. Anthony's Pescadero (Half Moon Bay), and Tomales Catholic Cemetery (Tomales); and Vallombrosa Retreat Center ("Vallombrosa").

are not part of the Archdiocese's bankruptcy.[2]  Consequently, the Archdiocese has not provided the statutorily required reports regarding any of the Division Defendants' transactions.

On May 6, 2025, the Committee commenced this adversary proceeding for declaratory relief against the defendants seeking to resolve two crucial questions:  Who is the debtor? And what property belongs to the debtor's estate?  On September 11, 2025, the Committee filed its Second Amended Complaint. [Docket No. 52]. The Committee concurrently moved for authority to prosecute the adversary proceeding *nunc pro tunc* to the filing of the complaint. [Docket Nos. 50-52]. The Court granted the Committee's motion over objections from the Archdiocese and the Division Defendants.  [Docket No. 88].

In November 2025, the Committee served written discovery on the Archdiocese and the Division Defendants. The Committee's counsel reviewed thousands of pages of documents.  The undisputed facts establish that the Archdiocese consistently described and treated the Division Defendants as part of the Archdiocese *until immediately before the Archdiocese filed for bankruptcy protection*.  As a matter of law, no reasonable jury could find that the Division Defendants are civil legal entities separate and apart from the Archdiocese.

### III.  FACTUAL STATEMENT

The Committee submits herewith a separate statement of undisputed material facts in support of partial summary judgment on the Committee's declaratory relief claim establishing that the Division Defendants are each part of the Archdiocese, not separate legal entities.  The undisputed material facts ("UF") and supporting evidence are cited by paragraph number and are incorporated in this Memorandum.

### IV.  SUMMARY JUDGMENT STANDARDS

Pursuant to Bankruptcy Rule 7056, a party may move for summary judgment on all or part of a claim.[3]  Summary judgment should be granted if there is no "genuine issue of material fact."[4]

---

[2] *See, e.g., Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [Docket No. 14] at ¶¶ 18, 32, 34; and *https://sfarch.org/chapter-11/* Letter to the Faithful from Archbishop Salvatore J. Cordileone dated August 21, 2023.

[3] Fed. R. Bankr. Proc. 7056(a).

[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of showing that no disputed facts exist as to the essential issues.[5]  Once the moving party has carried its burden, the opposing party must "establish that there is a genuine issue of material fact…. [and] must do more than simply show that there is some metaphysical doubt as to the material facts."[6]

"As to materiality… [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."[7]  Additionally, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] Mirroring the standard for a directed verdict, summary judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion."[9]

At the summary judgment stage, where the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[10]  Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[11]  If no reasonable jury could find in the opposing party's favor, the court should grant summary judgment.[12]

//

//

//

//

---

[5] *Celotex Corp. v. Catrett,* 477 U.S. 321, 322-23 (1986).

[6] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[7] *Anderson,* 477 U.S. at 248.

[8] *Id.*

[9] *Id.* at 250.

[10] *Matsushita,* 475 U.S. at 587.

[11] *Scott v. Harris,* 550 U.S. 372, 380 (2007).

[12] *Id.* at 380-81; *see also In re Fox Ortega Enterprises, Inc.,* 631 B.R. 425, 438 (Bankr. N.D. Cal. 2021); *Bohnert v. Roman Catholic Archbishop of San Francisco,* 136 F. Supp. 3d 1094, 1113 (N.D. Cal. 2015).

# V. LEGAL ARGUMENT

## A. The Division Defendants Are Part of the Archdiocese's Civil Entity

Divisions of a corporation are not separate legal entities that can sue, be sued, or hold property independent of the corporation itself.[13]  By definition, an unincorporated division is not a separate legal entity from the corporation itself.  It is simply a part of the company.[14]  A division may have its own management, branding, or operational structure but, legally, it is indistinguishable from the company of which it is a part.

To distinguish between a division and a freestanding legal entity, courts consider the following factors: (i) whether the entity is separately incorporated or operates "within the charter of a larger corporation,"[15] (ii) whether the entity is required to submit financial reports to the larger corporation,[16] (iii) whether the entity is required to obtain approval from the larger corporation for the entity's actions or is otherwise subject to the larger corporation's control,[17] (iv) whether the entity holds assets in its own name,[18] and (v) whether the entity's leadership is subject

---

[13] *Breitman v. May Co. Cal.,* 37 F.3d 562, 564 (9th Cir. 1994); *EEOC v. St. Francis Xavier Parochial School,* 77 F. Supp. 2d 71, 72 (D.D.C. 1999); *Kaupthing Ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio,* 291 F. Supp. 3d 21, 29 (D.D.C. 2017).

[14] *See, e.g., Albers v. Church of Nazarene,* 698 F.2d 852, 857 (7th Cir. 1983) ("If you are injured because of a defect in a Chevrolet, you may sue General Motors and the dealer and individual employees of either but you may not sue the Chevrolet Division of General Motors or the dealer's maintenance department.  The reason is practical.  **An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part.**") (emphasis added).

[15] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 77 (divisions operate under the charter of the larger corporation); *Bohnert v. Roman Catholic Archbishop of San Francisco,* 136 F. Supp. 3d at 1111-13; *Galiano v. Inst. of Gov't Studies at the Univ. of Cal.,* 2008 U.S. Dist. LEXIS 68527, *11-13 (N.D. Cal. Sept. 5, 2008); *Vann v. City and County of San Francisco,* 97 Cal. App. 5th 1013, 1028 (2023); *Henry v. Red Hill Evangelical Lutheran Church of Tustin,* 201 Cal. App. 4th 1041, 1050 (2011); *LM v. Doe,* 2025 U.S. Dist. Lexis 8761, *3 (C.D. Cal. Jan. 16, 2025).

[16] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 75 (describing Archdiocese's control over parish budget, annual financial reporting, and expenditures); *Galiano ,* 2008 U.S. Dist. LEXIS 68527 at *13; *Vann,* 97 Cal. App. 5th at 1026.

[17] *Id.; see also St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 778 (1981) (unincorporated school owned, supported, and controlled by the church was not a separate legal entity); *Bohnert v. Roman Catholic Archbishop of San Francisco,* 136 F. Supp. 3d at 1112.

[18] *Albers v. Church of Nazarene,* 698 F.2d at 857 (unincorporated division does not possess separate assets); *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 75 n.6; *LM v. Doe,* 2025 U.S. Dist. Lexis 8761 at *3.

1  to appointment or removal by the larger corporation or by the larger corporation's board of

2  directors.[19]

3       These five factors rest in part on the holdings from the following cases and the legal

4  authorities on which those courts relied:

5       In *EEOC v. St. Francis Xavier Parochial School*, a Catholic parochial school and parish,

6  referred to collectively as the parish, moved for summary judgment to dismiss claims on grounds

7  that the defendants were unincorporated divisions of the Archdiocese of Washington and lacked

8  legal capacity.[20]  The plaintiff countered that the school and church were sufficiently autonomous

9  to be subject to suit as unincorporated associations under Fed. R. Civ. P. 17(b).[21]  The court

10  disagreed, citing evidence that the parish did not own any independent assets; the archdiocese

11  exerted varying degrees of control over parish operations, including financial reporting; and the

12  archdiocese appointed the parish pastor and provided guidelines for hiring teaching staff.[22]

13  Analyzing the question of capacity to be sued, the court concluded that an unincorporated division

14  acts within the charter of a larger corporation:

15           Unlike the unincorporated associations defined above, a division of a
            corporation does operate with a charter – the charter of the larger
16           corporation.  Although the division is not separately incorporated, it is still
            governed by the terms of the corporate charter and still enjoys corporate
17           status because it is a unit of the larger corporation.[23]

18  The *St. Francis Xavier Parochial School* court further explained that allowing a lawsuit against a

19  corporate division as a purported unincorporated association would serve no purpose because the

20  division lacks financial independence and the plaintiff can sue the corporation.[24]

21

22  _____

    [19] *Bohnert v. Roman Catholic Archbishop of San Francisco,* 136 F.Supp. 3d at 1112 (Archdiocese assigns
23  president to a high school and archdiocesan board has right to suspend school operations); *Vann,* 97 Cal.
    App. 5th at 1025-26; *Galiano,* 2008 U.S. Dist. LEXIS 68527 at *13.

24  [20] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 72.

25  [21] *Id.* at 74.

    [22] *Id.* at 75.
26
    [23] *Id.* at 77 (emphasis added).

27  [24] *Id.* at 77-79 (rejecting arguments that the parish operated independently by virtue of executing contracts
    on behalf of itself and the child care center, holding a bank account separate from the archdiocese, and
28  holding itself out to the community as an independent agent).

In *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,* another case involving the Catholic church hierarchy, the Seventh Circuit held that the parishes were not legally separate from the diocese because the parish did not hold any real and personal property.[25] The record further showed that individual priests had only limited authority and that the at-issue asset was paid for and owned by the archdiocese.[26]

In the *Archdiocese of Agaña* bankruptcy, the court granted summary judgment that the parishes and schools were divisions of the debtor, which was also a corporate sole. In reaching its decision, the court relied on many facts identical to those present here, including that the parishes and schools lacked independent incorporation, did not own independent assets, did not control the appointment or pay schedule of their priest or administrators, required approval for transactions exceeding a certain amount, and submitted annual financial reports to the archdiocese.[27] The court also noted that the debtor and parishes' argument that Guam law allows unincorporated associations to hold land was irrelevant because "the Parishes and Schools are unincorporated divisions of the Archdiocese of Agaña, not 'nonincorporated associations.'"[28]

Churches also often assert "division" status with respect to their parishes and schools to support exemptions under federal and state statutes.[29] This is precisely what the Archdiocese did in the case of *Bohnert v. Roman Catholic Archbishop of San Francisco.*[30] In *Bohnert,* the District Court concluded that Junipero Serra High School is part of the Archdiocese's corporate entity. On

---

[25] *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,* 754 F.2d 216, 218 (7th Cir. 1985).

[26] *Id.*

[27] *See* Request for Judicial Notice ("RJN") at Exhibit 21 (*Decision and Order Granting the Committee's Motion for Partial Summary Judgment Under Bankruptcy Rule 7056*, No. 19-00001 (D. Guam July 16, 2021), Docket No. 164.) ("Guam Summary Judgment Decision").

[28] *Id.* at p. 19.

[29] *St. Martin Evangelical Lutheran Church,* 451 U.S. at 778-85 (school and academy had no separate legal existence from church and were exempt under FUTA); *Henry v. Red Hill Evangelical Lutheran Church of Tustin,* 201 Cal. App. 4th 1041, 1050 (2011) (parochial school had no independent existence apart from the church and was exempt from FEHA); *Baker v. Roman Catholic Archdiocese of San Diego,* 2014 U.S. Dist. Lexis 119145, *7 (S.D. Cal. Aug. 26, 2014) (same).

[30] *Bohnert v. Roman Catholic Archbishop of San Francisco,* 67 F. Supp. 3d 1091, 1096-98 (N.D. Cal. 2014) (Junipero Serra High School is a division of the Archdiocese exempt from FEHA); and 136 F. Supp. 3d 1094, 1111-13 (N.D. Cal. 2015) (summary judgment granting dismissal of FEHA claim).

summary judgment, Judge Orrick relied on the evidence submitted by the Archdiocese, including articles of incorporation, archdiocesan financial statements, private school affidavit confirmations listing the Archbishop of San Francisco as the Director or Principal Officer, and the collective bargaining agreement between the Archdiocese and the teachers' union. The collective bargaining agreement covering "lay teachers in the archdiocesan high schools" identified the Archdiocese as the "employer," stated that the Archdiocese "operates and maintains all Archdiocesan high schools," affirmed school-level oversight by principals, and emphasized the Archbishop's ultimate leadership and exclusive right to suspend or discontinue operations of any Archdiocesan high school.[31] Judge Orrick held that the school's independent control over day-to-day operations had "little bearing on the legal existence of Serra."[32] Finally, Judge Orrick noted the plethora of cases holding that religious schools are not separate legal entities if they are not separately incorporated, and the dearth of cases to the contrary, before ruling that "no reasonable jury could find that Junipero Serra is a separate legal entity."[33]

Other cases within California similarly hold that a division of a corporation is not legally separate from its parent. Church defendants often assert "division" status to support federal diversity jurisdiction.[34] The Ninth Circuit recognized the fundamental distinction between a division and an incorporated subsidiary to determine federal diversity in *Breitman v. May Co. Cal.*, stating that "a division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes."[35] Courts continue to follow this precedent.[36]

---

[31] *Id.* at 1110–12.

[32] *Id.* at 1112.

[33] *Id.* at 1113.

[34] *See, e.g., LM v. Doe,* 2025 U.S. Dist. Lexis 8761 at *3-7 (unincorporated stake that lacks formal separateness, owns no property, and is controlled by the Utah-based parent church is not a separate civil entity).

[35] *Breitman,* 37 F.3d at 564 (California division of May Company was not separate and independent from its parent company).

[36] *See, e.g., L'Garde, Inc. v. Raytheon Space and Airborne Systems,* 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) (separately named space and air division was not independent of parent company).

The Northern District also considered whether an entity was a division of a larger corporation or an unincorporated association in *Galiano v. Inst. of Gov't Studies at the Univ. of Cal.,* when a UC Berkeley alumnus sued the Institute of Governmental Studies ("IGS") for civil rights violations and the defendants moved to dismiss on the grounds that the Board of Regents of the University of California was the proper defendant and it was protected by sovereign immunity.[37] The plaintiff responded that IGS was an unincorporated association, offering evidence of its alleged independence including that it generated its own funds, held an endowment of approximately $5.8 million, and was subject to a national advisory council comprised of private individuals.[38] The *Galiano* court concluded that IGS reported its financial activities to the university and was headed by individuals appointed by the university chancellor.[39] Therefore, although it had some degree of independence, IGS operated within the charter of the university to advance the goals of the university.[40] Evidence established that IGS was "a part of UC Berkeley."[41]

In this manner, cases consistently hold that an unincorporated division or subsidiary is not legally separate from the larger organization.[42] Taken together, these courts considered these five factors to determine whether an entity was a division of a larger corporation: (i) lack of separate incorporation or charter, (ii) financial reporting requirements, (iii) exertion of control by the parent, (iv) assets held in its name, and (v) control over leadership.[43] The Division Defendants

---

[37] *Galiano,* 2008 U.S. Dist. LEXIS 68527, *8.

[38] *Id.* at *12-13.

[39] *Id.* at *13.

[40] *Id.* at *13 ("However, the same evidence indicates that IGS's mission is in service of UC Berkeley's goal to advance research and to complement the academic goals of the University.").

[41] *Id.* at *14.

[42] *Vann,* 97 Cal. App. 5th at 1023-25 (SF Fire Department and SF Municipal Transportation Agency have no legal existence independent of the City of San Francisco); *See also In re Valley Media, Inc.,* 279 B.R. 105, 127-28 (Bankr. D. Del. 2002) (applying California and Delaware law, wholly owned unincorporated division of the debtor had no separate legal existence and operated under the parent's charter); *Klimkiewicz v. Regents of the Univ. of Cal.,* 2020 WL 1140477, *1-2 (Cal. W.C.A.B. Feb. 28, 2020) (employer was Regents of the University of California comprised of multiple campuses that are not separate entities; there is no legal entity known as UC Irvine).

[43] *See supra* fns. 13 - 19.

1  overwhelmingly satisfy each of the criteria considered by other courts and are divisions of the

2  Archdiocese.

### 1. The Division Defendants Operate Within the Archdiocese's Charter.

#### a. The Division Defendants Are Not Separately Incorporated.

5  The Division Defendants operate under the charter of the Archdiocese without any

6  identifiable charter of their own.[44] They are not separate legal entities that follow their own set of

7  rules. The Division Defendants are not separately incorporated, nor are they registered in any

8  manner with the California Secretary of State.[45]



[44] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 77 (parish and school operate under the charter of the archdiocese); *Smartdoor Holdings, Inc. v. Edmit Indus., Inc.,* 78 F. Supp. 3d 275, 277-78 (D.D.C. 2015) (unincorporated division operates under parent charter); *Galiano,* 2008 U.S. Dist. LEXIS 68527 at *11-13 (research unit's mission was consistent with that of the university); *LM v. Doe,* 2025 U.S. Dist. Lexis 8761 at *5-7 (unincorporated stake is "part of defendant LDS' network of churches and is subject to LDS' control"); *Neville v. Salvation Army Nat'l Corp.,* 2025 WL 3641846, *5 (W.D. Ky. Dec. 16, 2025) ("Southern Territory [corporation]'s bylaws and employee manual make clear that Southern Territory encompasses K/T Division, and therefore that K/T Division operates under its charter.").

[45] UF at ¶ 4.

[46] UF at ¶ 27.

[47] UF at ¶ 28.

[48] UF at ¶ 28.

[49] UF at ¶ 28.

The Defendants have not identified any instances in which the Division Defendants responded to a complaint on their own behalf in a lawsuit.[50] Instead, in lawsuits over the years, a Division Defendant was named in a lawsuit and the Archdiocese appeared in that litigation on its own behalf as the "erroneously sued" division.[51]

The Archdiocese has repeatedly moved for dismissal of claims on the grounds that its Parishes and High Schools are not separate legal entities. In *Bohnert,* the Archdiocese submitted evidence in support of its argument that Junipero Serra was not a separate legal entity, including its financials that refer to the schools as operating divisions, and the school's collective bargaining agreement that states the Archdiocese "operates and maintains" the High Schools and was signed by the Archbishop.[52] The Superintendent of the High Schools declared **under penalty of perjury**, based on her personal knowledge of "the Corporation Sole's business operations and structure, including the schools that it owns, operates, and maintains," that "**Serra does not exist as a separate legal entity.** Rather, it is wholly owned and **operated as part of the Corporation Sole.**"[53]

In *Planned Parenthood Ass'n of San Mateo County v. Holy Angels Catholic Church,* the Archdiocese appeared in place of the named parish defendant to oppose a preliminary injunction against picketing on the grounds that the Archdiocese is the owner and operator of Holy Angels Catholic Church, which is not a separate entity.[54] Two witnesses submitted declarations under

---

[50] UF at ¶¶ 37–54.

[51] UF at ¶¶ 37–54.

[52] *Bohnert,* 67 F. Supp. 3d at 1096-97.

[53] *Bohnert,* 136 F. Supp.3d at 1100 (N.D. Cal. 2015) (summary judgment granted; "There is no evidence that Serra is legally independent of the Archdiocese. Instead, the evidence indicates that the school is wholly governed by the Archdiocese.").

[54] UF at ¶¶ 38–39.

penalty perjury, each testifying that the Parish is **owned and operated by the Archdiocese** and is **not a separate legal entity**.[55]

All available evidence demonstrates that the Archdiocese asserted its ownership and operation of the Division Defendants in litigation to advance the civil interests of the Archdiocese as a whole.[56] All available evidence demonstrates that the Division Defendants never separately appeared as defendants in litigation.[57]

In this case, during the 341 hearing, the Archdiocese represented to the Justice Department and to its creditors that the parishes had not appeared in any of the underlying child sexual abuse state court cases and they do not have a separate legal existence from the Archdiocese. The Archdiocese's defense counsel put it bluntly: the parishes had not appeared in any abuse litigation because "they do not exist."[58] None of the sworn witnesses contradicted him.

> d. *The Defendants' Audited Financial Statements and Other Documents Consistently Describe the Division Defendants as Operating Divisions of the Archdiocese.*

Before the Petition Date, the Archdiocese explicitly and repeatedly described the Division Defendants in audited financial statements as "operating divisions of the Corporation Sole."[59] The Archdiocese also held itself out and entered agreements as owner and operator of the Division Defendants.[60] And before the Petition Date, all of the Division Defendants consistently described themselves as "operating divisions of the Corporation Sole."[61] Internal organization charts show the Cemeteries, High Schools, and Vallombrosa are departments of the Archdiocese.[62] The Archdiocese entered collective bargaining agreements with the High Schools' teachers as their

---

[55] UF at ¶ 39.

[56] UF at ¶¶ 37–53.

[57] UF at ¶¶ 37–54.

[58] UF at ¶ 41.

[59] UF at ¶¶ 5–26.

[60] UF at ¶¶ 33, 39(b), 46, 82, 84, 98, 102, 105, 114, and 130; *see also In re Casassa Revocable Trust v. Almada,* 2006 Cal. Super. Lexis 6473 at *2 (Sup. Ct. July 18, 2006) (settlement agreement executed by the Archdiocese "as owner and operator of St. Monica's Parish").

[61] UF at ¶¶ 11–16, 19-20, and 22.

[62] UF at ¶¶ 92–94.

employer, and the agreements expressly state that the Archdiocese operates and maintains the High Schools.[63] The Archdiocese refers to the parishes and schools as "under the civil law auspices of the Archbishop of San Francisco" in policy manuals.[64]

The Parishes, the High Schools, the Cemeteries, and Vallombrosa do not have a civil legal existence independent from the Archdiocese.

### 2. The Division Defendants Are Subject to Financial Reporting and Budget Controls That the Archdiocese Imposes on Them.

A division of a corporation typically reports to the corporation, including by submission of budgets or financial statements. In *St. Francis Xavier Parochial Schools,* the district focused on the parish's relationship to the archdiocese, describing financial controls over the defendants similar to this case:

> The Archdiocese exerts varying degrees of control over different aspects of the Parish's operations. As to financial matters, the Archdiocese maintains control over the Parish's budget by requiring the Parish to submit an annual financial report on all of its operations and to undergo periodic financial audits. Although the Archdiocese does not oversee the Parish's daily expenditures, Archdiocese approval is required for any expenditure exceeding $10,000.[65]

Undisputed facts demonstrate that the Archdiocese imposes on the Parishes and the High Schools annual financial reporting requirements.[66] The Archdiocese publishes a policy, titled *Parish and School Financial Policy and Parish/School Financial Accounting and Reporting System* ("Financial Policy"), which governs the administration of finances of the Parishes and High Schools.[67] The Financial Policy covers a range of subjects, including restrictions on the Division Defendants financial operations, for example, the Parishes, High Schools, and Cemeteries cannot incur any debt, enter into contracts that exceed $10,000 in amount or one year

---

[63] UF at ¶¶ 81–84.

[64] UF at ¶ 57(s).

[65] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 75; *Kaupthing Ehf.,* 291 F. Supp. 3d at 29 ("As in *St. Francis* [Xavier Parochial School], the Fund's exertion of control over the Account limited the latter's financial independence."). *See also Galiano,* 2008 U.S. Dist. LEXIS 68527 at *13; *Vann v. City and County of San Francisco,* 97 Cal. App. 5th at 1026.

[66] UF at ¶¶ 57(d)(f)(g), 60(c), 61.

[67] UF at ¶ 57.

in duration, enter to employment contracts of any duration, establish an endowment fund, complete construction or renovation projects exceeding $15,000, initiate legal action or formally engage outside legal counsel without the approval of the Archbishop or Vicar General.[68] The Financial Policy includes specific accounting procedures and annual financial reporting to the Archdiocese by each Parish and High School.[69] The Archdiocese testified that it has real-time access to the Parishes' and the High Schools' accounting data.[70] The Parishes admit that they must submit annual financial reports to the Archdiocese in a specified format, consistent with the Financial Policy.[71] The High Schools admit that the Archdiocese has reading access to their general ledger and accounting system.[72]

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ The pre-petition audited financials for the Cemeteries, for the High Schools, and for Vallombrosa were consistently addressed to the Archbishop.[74]

### 3. The Archdiocese Imposes Substantial Controls on Nearly Every Aspect of the Division Defendants' Operations and Personnel.

Courts look to a parent company's operational control to determine whether an entity is a division as opposed to its own legal entity.[75] The Archdiocese exercises a greater degree of control over the Division Defendants than the facts described in most cases addressing separateness. In addition to the Financial Policy, the Archdiocese publishes mandatory personnel

---

[68] UF at ¶ 57.

[69] UF at ¶¶ 57, 60.

[70] UF at ¶ 63.

[71] UF at ¶ 61.

[72] UF at ¶ 63.

[73] UF at ¶ 17.

[74] UF at ¶ 18.

[75] *Vann,* 97 Cal. App. 5th at 1027 ("While SFMTA undoubtedly enjoys autonomy over various aspects of its operations, in other significant areas it still must collaborate with, or answer to, other departments of the City and its elected officials. SFMTA is simply a part of, and subordinate to, the City it serves."); *see also* Guam Summary Judgment Decision; *Galiano,* 2008 U.S. Dist. LEXIS at *12.

policies applicable to the Parishes and the High Schools covering a range of subjects.[76]  By their terms, both the parish employee handbook and school employee handbook can only be modified by a writing signed by the Archbishop, the Vicar General, or the Vicar for Administration.[77] By their terms, these handbooks apply to the archdiocesan Parishes and High Schools.  The parish employee handbook also applies to lay employees of Vallombrosa.[78]

The Archdiocese issues directives pertaining to the operations of the Parishes, High Schools, and Cemeteries with respect to personnel issues as well as conflicts of interest,[79] ███, [80] and internet usage.[81]  These are not merely guidance from a third party.  These are the governing policies that an owner and operator imposes on a corporate division or department.

Even if certain archdiocesan policies are permissive, or not actually followed, the Archdiocese controls the Division Defendants because of its hierarchical structure. That the Division Defendants may issue additional policies governing the workplace, or that they sometimes disregard mandatory Archdiocese policies, does not vitiate or diminish the Archdiocese's control over the Division Defendants' operations and personnel.

### 4. The Division Defendants Do Not Separately Own Property and Have Never Held Property in Their Own Names.

In *St. Francis Xavier Parochial School,* the court explained that a corporate division cannot be sued because its assets are those of the corporation:  "The rationale for this precedent [that a division cannot be sued] is, above all, pragmatic, as an unincorporated divisions does not possess separate assets; all of its assets are owned by the corporation."[82]

---

[76] UF at ¶¶ 65–67.

[77] UF at ¶ 65(d).

[78] UF at ¶ 66.

[79] UF at ¶ 69.

[80] UF at ¶ 68.

[81] UF at ¶ 71.

[82] *St. Francis Xavier Parochial School,* 77 F. Supp. 2d at 75 n.6 and 76 (parish, school, and child development center did not independently own assets) (citing *Albers v. Church of Nazarene, supra*); *Kaupthing Ehf.,* 291 F. Supp. 3d at 28-29 (pension fund owned all assets; the account had no assets of its own).

The Division Defendants have never held assets in their own name. The Archdiocese holds title to the extensive real property used by the Cemeteries ████████.[83] The Archdiocese is signatory to certain leases of cemetery property, identifying itself as "Corporation Sole (Cemetery Department) ('Lessor')."[84] ████████████████████████████

████████████████████████████████████████████

████████████████████████

A support corporation that the Archdiocese created—the RPSC—holds legal title to the real properties that the Parishes and the High Schools use, and the Archdiocese transferred title for these properties to RPSC.[86] The Archbishop is the sole member of the RPSC, and if the RPSC is ever dissolved, all of its assets will be returned to the Archdiocese.[87] The RPSC leases the real property back to the Archdiocese.[88] The Archdiocese has never leased real properties to the Parishes or to the High Schools.[89]

It is undisputed that the Division Defendants have never held title to any real property. The Division Defendants merely operate and manage real property as part of the Archdiocese.

### 5. The Archdiocese Appoints and Retains Authority to Terminate the Division Defendants' Leaders.

Finally, to determine whether an unincorporated entity is independent of another corporation, courts consider whether the entity's leadership is subject to appointment or removal by the corporation, or its officers, or its directors. In this instance, the Archdiocese controls the leadership of all of the Division Defendants.

---

[83] UF at ¶¶ 108, 113.

[84] UF at ¶ 11.

[85] UF at ¶¶ 114–15.

[86] UF at ¶¶ 116–17.

[87] UF at ¶¶ 118–19.

[88] UF at ¶ 122.

[89] UF at ¶ 123.

No Division Defendant can enter into an employment contract unless it has been approved by the relevant authority at the Archdiocese.[90] Neither the parishes nor the schools can modify or alter an employee's at-will status without written approval from the Archbishop, the Vicar General, or the Vicar for Administration.[91]

In *Bohnert,* the court observed that the Archdiocese or its Superintendent of the Department of Catholic Schools had authority to assign a president to the school and the archdiocesan education board had the right to suspend school operations.[92] Whether these rights were exercised or not, they were confirmed in the school's collective bargaining agreement.[93] The same remains true today as to each of the High Schools.[94] The Archdiocese controls the Department of Catholic Schools, a department that oversees the High Schools and appoints the president of each High School.[95] The Archdiocese is a party to the High Schools' collective bargaining agreement as the teachers' employer.[96]

With respect to the Parishes, the Archdiocese appoints and can remove the pastor or administrator to each Parish, and has authority to suppress a Parish out of existence.[97] For the Cemeteries, the Archdiocese appoints a Director of Cemeteries who reports to the Archbishop.[98] The Director of Cemeteries and five other members, who are either appointed by the Archdiocese or by a majority of the board, serve on an **advisory** board.[99]

---

[90] UF at ¶ 65(e)(f)(k).

[91] UF at ¶ 65(f).

[92] *Bohnert,* 136 F. Supp. 3d at 1112.

[93] *Id.; see also Vann,* 97 Cal. App. 5th at 1025-26 (agency was governed by its own board of directors but directors were appointed and confirmed by the parent organization).

[94] UF at ¶ 76.

[95] UF at ¶¶ 77–80.

[96] UF at ¶¶ 81–84.

[97] UF at ¶¶ 73-75.

[98] UF at ¶ 85.

[99] UF at ¶ 86.

4907-9488-6480.12 05068.002

Finally, the Archdiocese appoints the Director of Vallombrosa.[100]  Ex-officio members of Vallombrosa's advisory board include the Vicar General and Chief Financial Officer of the Archdiocese.[101]

The undisputed facts establish that the Division Defendants are part of the Archdiocese. No reasonable jury could find otherwise.[102]

**B.  The Archdiocese Chose a Civil Structure of Centralized Control.**

Catholic dioceses are free to incorporate their parishes under civil law.  The *Archdiocese of Portland* court specifically recognized this point when it concluded that only one of the dozens of parishes in the Archdiocese of Portland was incorporated and therefore only that one parish had a separate civil legal existence.[103]  The contrast in the civil structures between the dioceses of Santa Rosa and Oakland reinforces this conclusion: the parishes in the Diocese of Santa Rosa are separately incorporated, while in the Diocese of Oakland, the parishes are unincorporated and, by that diocese's admission, "as a matter of California law they [the parishes] are not separate from the Debtor."[104]

All courts that have analyzed the relationship between a Catholic corporate sole diocese and its unincorporated parishes and schools have concluded that the parishes and schools are divisions of a single corporation:

- *District of Guam Bankruptcy Court*: Relying on civil law, the court ruled that the Archdiocese of Agaña's parishes and schools are not separate legal entities but unincorporated divisions of the debtor.[105]

- *Puerto Rico Supreme Court*: "[I]t is undeniable that each entity created that operates separately and with a certain degree of autonomy from the Catholic Church is in reality a fragment of only one entity that possesses legal personality." And "the entities created as a result of any internal configuration of the Catholic Church are not automatically equivalent to the formation of

---

[100] UF at ¶ 88.

[101] UF at ¶¶ 89–90.

[102] *See, e.g., In re Fox Ortega Enterprises, Inc.,* 631 B.R. at 455-56.

[103] *In re Roman Catholic Archbishop of Portland in Oregon,* 335 B.R. 842, 867–68 (Bankr. D. Or. 2005) ("*Portland*"); *see also Roman Catholic Bishop of San Jose v. Bowen,* 219 Cal. App. 4th 484, 491 (2013) (parish could organize as a nonprofit religious corporation to effectuate proposed dissolution procedure).

[104] *See* Docket No. 105 at Exh. C (attaching excerpt of Oakland Diocese's disclosure statement).

[105] Guam Summary Judgment Decision (RJN, Exhibit 21) at 23:16.

entities with different and separate legal personalities in the field of Civil Law. That because they are merely indivisible fragments of the legal personality that the Catholic Church has."[106]

- *District of Oregon Bankruptcy Court*: "Debtor has chosen to organize its operations under a corporation sole. . . . it could also have chosen to incorporate the other parishes as religious corporations, by which they would gain a civil legal status and could exercise the powers granted to such corporations, including the power to hold and dispose of property and to sue and be sued. Debtor did not, however, choose to do that, and gives no reason why it could not, under state law, have separately incorporated the parishes or in some other way organized itself to protect the canonical ownership rights, if any, of the schools and parishes."[107]

- *D.C. District Court*: "Because the Archdiocese of Washington is incorporated as a corporation sole and holds title to all Archdiocese assets, its unincorporated divisions also lack any independently recognized legal status."[108]

- *Pennsylvania Supreme Court*: "[T]here can be no such thing as a separate and independent church organization within the Roman Catholic Church, whereby property may be acquired and held. . . . It cannot in one breath claim life from the church, and the benefit of the faith that it follows with the protection granted under its laws, and, in the next breath deny its allegiance to the body under which it serves."[109]

- *Massachusetts Superior Court:* "Saint Albert the Great's Church and Parish (including its real estate and its personality) is an unincorporated subdivision of the Archdiocese of Boston."[110]

- *Seventh Circuit:* "As a 'corporation sole,' the Catholic Bishop owns all the real and personal property in the Chicago Archdiocese. The parishes themselves have no individual capacity to sue or be sued. In short, the parishes within the Archdiocese are not legal entities separate and independent from the Catholic Bishop, but are subsumed under the Catholic Bishop."[111]

Only one court has treated unincorporated parishes as distinct legal entities.[112] The isolated

*Spokane* decision assumed the parishes were unincorporated associations for the purposes of

---

[106] *Acevedo Feliciano v. Catholic, Apostolic and Roman Church et al.*, 2018 TSPR 106, 2018 WL 3078885 (P.R. 2018), *judgment vacated on other grounds.*

[107] *Portland*, 335 B.R. at 867–68.

[108] *St. Francis Xavier Parochial School*, 77 F. Supp. 2d at 79.

[109] *Canovaro v. Bros. of Order of Hermits of St. Augustine*, 326 Pa. 76, 81-82 (1937).

[110] *Akoury v. Roman Catholic Archbishop of Boston*, 2004 WL 2341333 at *2 (Mass. Super. Sept. 14, 2004).

[111] *F.E.L. Publications,* 754 F.2d at 221 (internal citations omitted).

[112] *Comm. of Tort Litigants v. Catholic Diocese of Spokane*, 364 B.R. 81, 91 (E.D. Wash. 2006).

analyzing trust beneficiary status without any evidence or analysis, and should be considered an anomaly. The *Spokane* court did not evaluate any of the factors that define and distinguish divisions from independent corporations.[113] Had the *Spokane* court applied and addressed the factors discussed above—control, financial reporting and oversight, limited authority, lack of property in the entity's name—the law would have dictated the same outcome as all of the other decisions on this issue and concluded that the parishes at issue were divisions of their diocese and not separate legal entities.

Here, the Archdiocese is incorporated as a corporation sole to manage "the affairs, property and temporalities of the Roman Catholic Church in said Archdiocese of San Francisco."[114] The Division Defendants are not separately incorporated, nor are they registered as separate unincorporated associations.[115] They satisfy all of the criteria of a division.[116] They are the property and temporalities of the Archdiocese. The Archdiocese chose not to separately incorporate the Division Defendants and, accordingly, under civil law, the Archdiocese retained both the assets and liabilities associated with these operations.[117] This Court should not allow the Archdiocese to now dissociate itself from the Parishes and the other Division Defendants just for purposes of this bankruptcy (and contrary to the position that the Archdiocese has taken in prior litigation).

---

[113] *Id.*

[114] UF at ¶ 3.

[115] UF at ¶¶ 4, 129.

[116] *See supra* Section A.

[117] *County of San Luis Obispo v. Ashurst,* 146 Cal. App. 3d 380, 383 (1983) ("One purpose of the corporation sole is to insure [sic] the continuation of ownership of property dedicated to the benefit of a religious organization which may be held in the name of its titular head."); *see also Portland,* 335 B.R. at 857 n. 15 (discussing the history of the corporation sole; "While such a structure is considered desirable by some because of the high degree of centralized control it affords, and because of its capacity to offer ample collateral as security for large construction and other loans, the corporation sole is viewed by others as highly undesirable from the viewpoint of liability, exposing as it does all parochial and other church-related assets within a diocese to satisfy creditors' claims against any individual parish or institution, and because centralized ownership and control of all church property within a diocese is contrary to the law of the Church.").

## C. The Division Defendants Do Not Qualify as Unincorporated Associations Under Applicable California Law.

The Archdiocese and the Division Defendants argue that the Division Defendants are each legally separate unincorporated associations under California law – despite abundant evidence and consistent pre-petition representations to the contrary. The Division Defendants do not qualify as unincorporated associations because the overwhelming undisputed facts demonstrate that these entities do not operate independently of the Archdiocese.

California courts hold that an unincorporated association is (1) a group whose members share a common purpose, and (2) who function under a common name under circumstances when equity requires recognizing the group as a legal entity.[118] Typical unincorporated associations include condominium associations, unions, athletic associations, and environmental societies.[119] Unincorporated associations operate as independent entities that by statute are deemed capable of being sued in their own name, capable of holding and purchasing property, and otherwise capable of engaging in business.[120]

### 1. The Division Defendants Are Not Unincorporated Associations.

Corporations Code sections 18000 *et seq.* governs unincorporated associations. Under Corporations Code Section 18008, the "governing document" of an unincorporated association is the constitution, articles of association, bylaws, or other writing that governs the purpose or operation of the unincorporated association.[121] An unincorporated association's "governing principles" are the principles stated in the governing documents or, if there are none, those inferred from established practices.[122] An unincorporated association can file a statement with the Secretary of State, identifying its name, principal address, and an agent for service of process.[123]

---

[118] *Barr v. United Methodist Church,* 90 Cal. App. 3d 259, 266 (1979).

[119] *Id.*

[120] *See generally* 9 Witkin, *Summary of California Law* Corporations §44 (2026 ed.).

[121] Corp. Code § 18008.

[122] Corp. Code § 18010.

[123] Corp. Code § 18200; *see* Statement by Unincorporated Association (Form UA-100).

Upon dissolution of the unincorporated association, assets are distributed in accordance with governing principles or pro rata to members.[124]

In this case, the Defendants have not produced a document before 2023 in which a Division Defendant is described or characterized as an unincorporated association.[125] The Division Defendants do not have articles of association or other governing documents that reference their purported legal status as unincorporated associations.[126] The Division Defendants are not registered as unincorporated associations with the California Secretary of State.[127] ███

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ [128]

### 2. Fairness Requires That This Court Treat the Division Defendants Not as Unincorporated Association but, Instead, as Part of the Archdiocese.

In *Barr v. United Methodist Church,* the California Court of Appeals framed the criteria for the existence of an unincorporated association in terms of equity.[129] The *Barr* court explained that "[f]airness includes those situations where persons dealing with the association contend their legal rights have been violated."[130] In *Barr*, the court held that fairness supported treating the United Methodist Church as an unincorporated association that could be sued because former residents and creditors of a bankrupt retirement-home operator alleged that the church was financially responsible for the debtor, and the debtor's articles and bylaws showed that it was

---

[124] Corp. Code § 18130.

[125] UF at ¶ 128; *see, e.g., Neville v. Salvation Army Nat'l Corp.,* 2025 WL 3641846 at *5-6 (rejecting arguments that Salvation Army's Kentucky-Tennessee Division was an unincorporated association; no evidence that it was formally separate and evidence indicated that it operated under a parent charter).

[126] UF at ¶ 4.

[127] UF at ¶ 129.

[128] UF at ¶¶ 27–36.

[129] *Barr v. United Methodist Church,* 90 Cal. App. 3d at 266.

[130] *Id.* at 267.

1  subject to the church's oversight.[131]  Equity required that the unincorporated "parent" church be

2  deemed a proper defendant so as to permit recovery by creditors.

3      After decades of successfully asserting ownership and control of the Division

4  Defendants,[132] this Court should not allow the Archdiocese to now disclaim them as separate

5  entities to reduce the scope of the bankruptcy estate.  Equity does not require recognizing the

6  Division Defendants as unincorporated associations.  On the contrary, fairness requires that the

7  Court treat the Division Defendants as what they are and what they always have been: part of the

8  Archdiocese itself.

9      Indeed, it would be unfair to treat the Division Defendants as separate legal entities

10  because, before filing bankruptcy: (1) the Defendants consistently benefited from treatment of the

11  Division Defendants as part of the corporation sole in civil litigation; (2) the Archdiocese

12  consistently described the Division Defendants, both internally and to third parties, as part of the

13  corporation sole; and (3)  the Division Defendants never held themselves out as legally separate,

14  let alone as unincorporated associations, until the eve of bankruptcy.

15      These are not happenstance facts or casual misstatements. The Defendants have repeatedly

16  and consistently held themselves out as a single enterprise and have systematically operated as a

17  single enterprise—namely, the Roman Catholic Archbishop of San Francisco, a Corporation Sole.

18  Based on the undisputed facts, no reasonable jury could find that the Division Defendants are

19  separate legal entities.

20  **D. The Archdiocese Should Be Judicially Estopped From Asserting that the Parishes, High Schools, and Cemeteries Are Unincorporated Associations.**

21

22      Judicial estoppel requires recognition of the Division Defendants as part of the

23  Archdiocese, not as unincorporated associations.  The Ninth Circuit applies judicial estoppel to

24

---

25  [131] *Id.* at 270-272 (relationship between debtor and church required church to be recognized as a suable legal entity). *See also Commodity Futures Trading Commission v. Ooki DAO,* 2022 WL 17822445, *8

26  (N.D. Cal. Dec. 20, 2022) ("[F]airness requires recognizing the DAO as a legal entity because as alleged in the complaint, the Protocol itself is unregistered in violation of federal law, and ***someone*** must be

27  responsible.  Holding responsible the entity that governs the Protocol is fair - again, at least for the purposes of the present motion [deeming DAO served and capable of suit].") (emphasis in the original).

28  [132] *See supra* Section A.

4907-9488-6480.12 05068.002

prevent a party from taking inconsistent legal positions across different litigation if three elements are met: (1) a clearly inconsistent legal position, (2) judicial acceptance of the party's earlier position, and (3) unfair advantage derived from the inconsistency.[133]  The doctrine is meant to protect the integrity of the judicial process and to prevent a party from "playing fast and loose" with the court.[134]  Judicial estoppel is appropriate to bar a party from taking inconsistent legal positions in two different proceedings even when other adverse parties are involved.[135]

The Archdiocese has consistently and repeatedly alleged in litigation that its Parishes, High Schools, and Cemeteries are not separate legal entities.[136] Courts have accepted the Archdiocese's position upon sworn affidavits.[137] The Archdiocese will derive an unfair advantage if it is permitted to change the purported civil status of the Division Defendants strictly for purposes of this bankruptcy in an effort to reduce the scope of the estate, particularly after benefiting from having taken an opposite position in previous litigation.

At a minimum, the Archdiocese should be estopped from now alleging that certain Parishes (Holy Angels, Saint Mary's Cathedral, Most Holy Redeemer, Our Lady of Angels, St. Philips, St. Isabella, Saint Cecilia, Mission Dolores) and all three High Schools (Junipero Serra, Archbishop Riordan, and Marin Catholic) are separate entities based on the Archdiocese's representation in civil cases prior to the bankruptcy that each of those entities was a DBA or otherwise a part of the Archdiocese's civil entity.

**E.  Canon Law Does Not Make the Division Defendants Unincorporated Associations Under California Law**

---

[133] *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001).

[134] *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F. 3d 597, 601 (9th Cir. 1996) (judicial estoppel precluded recovery on age discrimination claim after an earlier settlement for permanent disability; summary judgment affirmed on estoppel basis); *Finn v. Sullivan,* 228 F. Supp. 3d 972, 980 (N.D. Cal. 2017) (judicial estoppel applied to contradictory positions regarding winery ownership in divorce and district court litigation).

[135] *Id.*

[136] UF at ¶¶ 37–53.

[137] *See supra* Section A(1)(c).

23

The Division Defendants argue that they are separate legal entities by virtue of operating as "juridic persons" under canon law. As set forth in the parties' briefing on the canon law defense, courts may consider internal doctrine but only may do so based on its inclusion in governing civil documents and under civil law, not as a wholesale application of religious law.[138]

The Division Defendants may call themselves juridic persons and may follow a litany of canons, but that does not make them unincorporated associations under California law and Corporations Code sections 18000 *et seq*. The term "juridic person" has no significance under civil law. There are no deeds, bylaws, or other governing documents that are relevant to this proceeding that require consideration of canon law.[139] Moreover, no relevant civil document before 2023 identifies the Division Defendants as unincorporated associations. The Archdiocese cannot alter the Division Defendants' civil status simply by using a different label on the eve of filing bankruptcy. The Division Defendant have always been and remain unincorporated units of the Archdiocese.

## VI. CONCLUSION

Based on the undisputed facts, no reasonable jury could conclude that the Division Defendants are unincorporated associations or that they have civil legal existence separate from the Archdiocese. The Court therefore should grant the Committee's Motion for Partial Summary Judgment and declare that the Division Defendants are part of the corporation sole.

---

[138] *See, e.g., Jones v. Wolf*, 443 U.S. 595, 606 (1979) (religious parties can modify deeds or their corporate charter and civil courts will effectuate so long as it is embodied in a legally cognizable form); *Episcopal Church Cases,* 45 Cal. 4th 467, 493 (2009) ("The only intent a secular court can effectively discern is that expressed in legally cognizable documents.").

[139] Even the articles of incorporation and bylaws of the support corporations, RPSC and CASC, state that specified juridic persons are governed by the Archbishop and operated civilly by the corporation sole.

Dated:  February 19, 2026

PACHULSKI STANG ZIEHL & JONES LLP

By    /s/   *Brittany M. Michael*
James I. Stang
Brittany M. Michael (*Pro Hac Vice*)
Gail S. Greenwood
Michael L. Cohen

Attorneys for the Official Committee of
Unsecured Creditors

4907-9488-6480.12 05068.002