**RJN 8-1**



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Aug-06-2008 10:25 am

Case Number: CGC-08-476325

Filing Date: Aug-06-2008 10:22

Juke Box: 001    Image: 02210995

COMPLAINT

JOHN BATTY-SYLVAN et al VS. ARCHDIOCESE OF SAN FRANCISCO et al

001C02210995

**Instructions:**
Please place this sheet on top of the document to be scanned.

YOSEF PERETZ (SBN 209288)
KLETTER & PERETZ
22 Battery Street, Suite 202
San Francisco, California 94111
Telephone: (415) 732-3777
Facsimile: (415) 732-3791

Attorney for Plaintiffs,
JOHN BATTY-SYLVAN and
ANGELA SYLVAN

**F I L E D**
Superior Court of California
County of San Francisco

AUG 0 6 2008

**GORDON PARK-LI, Clerk**
BY: _____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

JOHN BATTY-SYLVAN and ANGELA
SYLVAN,

Plaintiffs,

v.

THE ROMAN CATHOLIC
ARCHBISHOP OF SAN FRANCISCO;
REVEREND TONY LATORRE, and
DOES 1 through 10,

Defendants.

Case No. CGC-08-476325

### FIRST AMENDED COMPLAINT

1. Breach of the Warranty of
   Habitability;
2. Maintenance of Nuisance;
3. Breach of Contract;
4. Breach of Covenant of Good Faith
   and Fair Dealing;
5. Breach of Covenant of Quiet
   Enjoyment;
6. Negligence (including Negligent
   Infliction of Emotional Distress);
7. Unlawful, Unfair and Fraudulent
   Business Practices In Violation of
   California Business and Professions
   Code § 17200, *et seq.*;
8. Invasion of Privacy; and
9. Menacing Conduct in Violation of
   California Civil Code §1954 and
   §1940.2.

Plaintiffs JOHN BATTY-SYLVAN and ANGELA SYLVAN allege as follows:

### PARTIES AND JURISDICTION

1.  Plaintiff JOHN BATTY-SYLVAN ("Mr. Batty-Sylvan") is an individual.

2.  Plaintiff ANGELA SYLVAN ("Ms. Sylvan") is an individual (Mr. Batty-Sylvan
and Ms. Sylvan are collectively referred to herein as "Tenants").

FIRST AMENDED COMPLAINT OF PLAINTIFFS JOHN BATTY-SYLVAN AND ANGELA SYLVAN

- 1 -

3. Defendant THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO ("Archbishop") is a corporation incorporated under the laws of the state of California which owns and/or operates and/or manages the building where 646-B Elizabeth Street is located (the "Subject Building").

4. Defendant REVEREND TONY LATORRE ("Reverend LaTorre") is an individual. (Reverend LaTorre and Archbishop are collectively referred to herein as "Defendants").

5. Defendant Does 1 through 10 are sued herein under fictitious names pursuant to California Code of Civil Procedure Section 474; these defendants are in some way liable for the damages sustained by Tenants; Tenants do not at this time know the true names or capacities of said defendants, but pray that the same may be inserted herein when ascertained.

6. Defendants at all times herein mentioned were the agents of their co-defendants, and in doing the things hereinafter alleged were acting within the course and scope of such agency, and with the permission and consent of their co-defendants.

7. Tenants are informed and believe, and on such grounds allege, that Defendants agreed and conspired among themselves to commit the acts that injured the Tenants as described below. Each co-conspirator committed the acts alleged herein in furtherance of their conspiracy to obtain financial gain. Defendants' conspiracy began on a date unknown to Tenants, but on a date full well known to Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Defendants own, lease, operate, manage, or control a multiple-family residence located at 646 Elizabeth Street in San Francisco, California, (the "Subject Building") including a cottage in the rear of the residence known as 646-B Elizabeth Street, San Francisco, California (the "Subject Premises").

9. Beginning in approximately spring 1988 and continuing to the present, Tenants have been residential tenants of the Subject Premises pursuant to an oral lease agreement between Tenants and Defendants. Defendants were thereby obligated under the laws and regulations of the State of California and the City and County of San Francisco to provide Tenants with a property that is safe and fit for human habitation.

10. Tenants are tenants of the Subject Premises as the term "tenant" is defined under

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 4 of 47

the San Francisco Administrative Code, Chapter 37, *et seq.*, as amended (the "San Francisco Rent Ordinance").

11.    As tenants of the Subject Premises, Tenants have timely paid rent, and Defendants have always accepted Tenants' payment of rent.

12.    Defendants own and operate the Subject Premises and serve as Tenants' landlords as the term "landlord" is defined by the San Francisco Rent Ordinance.

13.    Over the course of Tenants' tenancy, Defendants have intentionally mismanaged and continue to intentionally mismanage the Subject Premises in a way that causes deterioration of its physical structure and diminution or loss of the habitability and safety to which the Tenants' are legally entitled by design and with reckless disregard of the Tenants' welfare.

14.    As a result, the Subject Premises have constituted a threat to the health, safety, and welfare of the Tenants, as set forth in the report of the housing inspector, Claudio Bluer, which identifies 96 different defects and maintenance issues at the Subject Premises, and is attached hereto and incorporated herein as Exhibit "A."

15.    During their tenancy, Tenants have informed Defendants of untenable conditions in the Subject Premises and have repeatedly informed Defendants of the unsafe, unhealthful, and uninhabitable conditions at the Subject Premises, but Defendants have failed to make the repairs and ameliorate the conditions in the Subject Premises.

16.    Defendants have had the opportunity to correct the conditions at the Subject Premises, but despite their knowledge of the conditions and their opportunity to correct them, willfully have failed and refused to make the repairs necessary to bring the Subject Premises into compliance with applicable building codes, health and safety codes, regulations, ordinances, and laws, including, but not limited to, the habitability laws and standards contained there in the California Civil Code, the California Health and Safety Code, and the City and County of San Francisco Municipal, Building and Housing Codes.

17.    Additionally, on two separate occasions, Defendants and agents and/or employees of the Defendants entered the Subject Premises without permission, consent or knowledge by the Tenants.

18.    On May 5, 2008, Defendants' employee and/or agent, who identified himself as a "handyman", turned of the water with no prior notifications to the Tenants. The "handyman" then knocked and entered the unit to "check the water", without providing any notice to Tenants

FIRST AMENDED COMPLAINT OF PLAINTIFFS JOHN BATTY-SYLVAN AND ANGELA SYLVAN

- 3 -

1 about this entry.

2 19. On May 13, 2008, agents and/or employees of the Defendants and Reverend
3 LaTorre entered the Subject Premises without notice, permission or knowledge. Upon entering
4 the Subject Premises, they searched various areas in the Subject Premises and questioned a
5 guest of Tenants. Tenants were not in the Subject Premises at the time and had not been
informed that anyone working for the Defendants intended to enter the Subject Premises.

6

7 **FIRST CAUSE OF ACTION**
8 **Breach of the Warranty of Habitability**
**(Against Archbishop)**
9

10 20. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully
set forth herein.

11 21. California Civil Code §1941 mandates the lessor of a building intended for the
·12 occupation of human beings to "put it into a condition fit for occupation, and repair subsequent
13 dilapidations thereof, which render it untenable...".

14 22. The warranty of habitability is implied in all residential rental agreements and
15 imposes upon a landlord the obligation to maintain the leased dwelling in a habitable condition
16 throughout the term of the lease. This implied warranty of habitability is a corollary to the
17 residential landlord's statutory obligation under Civil Code §1941.

18 23. Defendants have violated and continue to violate the warranty of habitability and
19 Civil Code §1941 by undertaking the course of conduct described above that directly resulted in
the loss of habitable housing by Tenants.

20 24. Defendants have failed, and continue to fail, to protect the life, safety and
21 property of Tenants, and instead have disregarded, and continue to disregard, zoning and safety
22 laws to the detriment of Tenants.

23 25. As a result of Defendants' violations of the warranty of habitability, Tenants
24 have been damaged in an amount according to proof at trial.

25 26. As of the date of this complaint, Tenants have paid Defendants actual rent in the
26 total amount that exceeds the fair and reasonable rental value of the Subject Premises.

27 27. The fair and reasonable rental value of Tenants' tenancy for their use of the
Subject Premises as it existed and continues to exist in its unsafe, unhealthy and substantially
28

1  uninhabitable condition was and is an amount according to proof at trial, but in any event an
2  amount substantially less than the rent actually paid by Tenants.

3      28.    As a proximate result of Defendants' breach of their implied warranty of
4  habitability and their failure to maintain the Subject Premises in a safe, healthy and habitable
   condition or to have them so maintained within a reasonable time or at all, Tenants have and
5
   continue to sustain general damages in an amount according to proof at trial, but in no event less
6  than the difference between the fair and reasonable rental value and the actual rent paid by
7  Tenants.

8
                          SECOND CAUSE OF ACTION
9                           Maintenance of Nuisance
10                            (Against Archbishop)

11     29.    Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully
12  set forth herein.

13     30.    Defendants, as owners and landlords of the Subject Premises and subject to the
14  terms of the oral contract, owed a duty to Tenants.

15     31.    Defendants breached the duty they owed to Tenants by, among other things,
    maintaining a nuisance within the meaning of Civil Code §3479 and Code of Civil Procedure
16  §731.

17     32.    The defective and dangerous conditions of the Subject Premises as alleged herein
18  constitute a nuisance within the meaning of Civil Code §3479 and Code of Civil Procedure
19  §731 in that they deprived Tenants of the safe, healthy and comfortable use of the Subject
20  Premises, were indecent and offensive to the senses, and obtrusive to the free use of the Subject
21  Premises.

22     33.    As a proximate result of Defendants' maintenance of the nuisance, Tenants have
23  suffered and continue to suffer discomfort and annoyance, all to their general damage according
    to proof at trial.
24
       34.    In maintaining the nuisance, Defendants have acted and continue to act with full
25  knowledge of the consequences thereof and of the damage being caused to Tenants. Despite
26  this knowledge, Defendants have failed to abate the nuisance by repairing the defective and
27  dangerous conditions of the Subject Premises or causing them to be repaired. Defendants'
28  failure to act was both oppressive and malicious within the meaning of Civil Code §3294 in that

FIRST AMENDED COMPLAINT OF PLAINTIFFS JOHN BATTY-SYLVAN AND ANGELA SYLVAN

- 5 -

it subjected Tenants to cruel and unjust hardship in willful and conscious disregard of Tenants' rights and safety.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Against Archbishop)

35. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully set forth herein.

36. Defendants and Tenants entered into a rental agreement pursuant to which the Tenants are entitled to use the Subject Premises as a residence for the duration of their tenancy.

37. As alleged herein, the actions and conduct of Defendants breached the rental agreement between Tenants and Defendants.

38. Defendants have unlawfully and intentionally mismanaged the Subject Premises in a way that causes deterioration of its physical structures and diminution or loss of the habitability and safety in violation of the rental agreement between the parties.

39. Pursuant to the rental agreement, Tenants had the reasonable expectation that the Subject Premises will be habitable and safe throughout their tenancy.

40. As a proximate cause of Defendants' conduct, Tenants have suffered, and continue to suffer, actual damages and general damages in the form of pain and suffering, physical injury, emotional distress, humiliation and embarrassment in an amount according to proof.

### FOURTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (Against Archbishop)

41. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully set forth herein.

42. Tenants and Defendants entered into a rental agreement for the Subject Premises. Defendants and their agents are bound by this agreement.

43. Inherent in the contractual relationship between Defendants and Tenants is the covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the other's right to receive the benefits of the agreements between

the parties, and which protects the parties' reasonable expectations.

44. Defendants have violated the covenant of good faith and fair dealing in numerous respects as alleged above.

45. As a proximate cause of the conduct of Defendants, Tenants have suffered and continue to suffer damages in an amount according to proof.

## FIFTH CAUSE OF ACTION
### Breach of Covenant of Quiet Enjoyment
### (Against Archbishop)

46. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully set forth herein.

47. Defendants, by their conduct as alleged herein, have substantially interfered with, and continue to interfere with, the Tenants' quiet use and enjoyment of the Subject Premises.

48. Defendants have significantly impaired, and continue to significantly impair, the Tenants ability to peacefully enjoy their leasehold.

49. As a result of Defendants' conduct, the Tenants have suffered, and continue to suffer, damages in an amount to be proved at trial.

50. Defendants have committed, and continue to commit, the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Tenants, and have acted, and continue to act, with an improper and evil motive amounting to malice and in conscious disregard of the Tenants' rights. Because the acts taken towards the Tenants have been and continue to be carried out by Defendants acting in a despicable, deliberate, cold, callous, and intentional manner in order to injure and damage Tenants, Tenants are entitled to recover damages in an amount according to proof.

## SIXTH CAUSE OF ACTION
### Negligence (including Negligent Infliction of Emotional Distress)
### (Against Archbishop)

51. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully set forth herein.

52. By reason of the landlord-tenant relationship between Tenants and Defendants,

FIRST AMENDED COMPLAINT OF PLAINTIFFS JOHN BATTY-SYLVAN AND ANGELA SYLVAN

-7-

Defendants owe Tenants the duty to exercise reasonable care in the ownership, operation, management, and control of the Subject Premises, which included the following: the duty to refrain from interfering with Tenants' full use and quiet enjoyment of the unit; the duty to comply with all applicable state and local laws governing Tenants' rights and the duty to maintain the Subject Premises in a habitable and safe condition fit for human occupancy.

53. Defendants, by their acts and omissions described above, have breached and continue to breach duties owed to Tenants, including but not limited to those duties listed above.

54. The negligence of Defendants has caused and continues to cause Tenants to suffer damages.

55. Defendants knew, or should have known, that their failure to exercise due care with regard to the aforementioned conduct would cause Tenants severe emotional distress.

56. Tenants have been damaged in an amount according to proof at trial.

### SEVENTH CAUSE OF ACTION
**Unlawful, Unfair and Fraudulent Business Practices
In Violation of California Business and Professions Code §17200, *et seq.*
(Against Archbishop)**

57. Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully set forth herein.

58. California Business and Professions Code §17200 *et seq.* (the "Unfair Business Practices Act") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

59. California Business and Professions Code §17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the Unfair Business Practices Act.

60. Beginning at an exact date unknown to Tenants, but at least since the date four years prior to the filing of this suit, Defendants have committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts described in this Complaint.

61. The violations of these laws and regulations, as well as of fundamental California public policies protecting workers, serve as unlawful predicate acts and practices for

purposes of Business and Professions Code §17200 and 17203, *et seq.*

62.     The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §17200 and 17203, *et seq.*

63.     The acts and practices described above have allowed Defendants to gain an unfair competitive advantage over law-abiding landlords and competitors.

64.     Business and Professions Code §17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

65.     Tenants and others similarly situated are entitled to restitution pursuant to Business and Professions Code §17203.

66.     Tenants bring this cause action on behalf of themselves and all other similarly situated tenants in order to challenge the above policies and practices of Defendants.

67.     As a direct and proximate result of the aforementioned acts and practices, Defendants have received, and continue to receive, ill-gotten gains belonging to Tenants and others similarly situated.

68.     An order under §17203 and/or any other applicable law requiring Defendants to disgorge all the profits and gains they have repeated though their unlawful, unfair, and fraudulent conduct is necessary and appropriate to prevent Defendants from profiting and benefiting from these illegal and wrongful acts.

69.     Business and Professions Code §17203 provides that a court may make such orders or judgment as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

70.     Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair and fraudulent business acts and practices described herein.

71.     Business and Professions Code §17202 provides: "Notwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

72.     Pursuant to §17202, Tenants and others similarly situated are entitled to enforce all applicable provisions of the Civil Code.

73.     Tenants' success in this action will enforce important rights affecting the public

1  interest. Therefore, Tenants sue on behalf of the general public, as well as themselves and other
2  similarly situated tenants.

3  74.    An award of attorneys' fees is appropriate pursuant to California Code of Civil
4  Procedure §1021.5 and other applicable laws, because 1) this action will confer a significant
   benefit upon a large class of persons, 2) there is a financial burden involved in pursuing this
5  action, and 3) it would be against the interest of justice to force Tenants to pay attorneys fees
6  from any amount recovered in this action.

7

8                          **EIGHTH CAUSE OF ACTION**
9                               **Invasion of Privacy**
                            **(Against All Defendants)**
10
11  75.    Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully
   set forth herein.
12
13  76.    The right of privacy is protected by the California Constitution, Article I, Section
   1.

14  77.    At all times herein mentioned and up to and including the present, Tenants had a
15  legally protected interest in their personal and private information, including confidential
16  information pertaining to their home and its contents and their livelihood.

17  78.    In or about May of 2008, Defendants invaded Tenants' right to privacy in an
18  egregious and deceptive way by entering and inspecting the Subject Premises in the manner set
   forth above.
19
20  79.    As a proximate result of the conduct of Defendants, Tenants have suffered
   emotional and mental distress and an invasion of their constitutional right to privacy in an
21  amount to be proven at trial.

22  80.    The acts of Defendants were willful, wanton, malicious and oppressive, and
23  justify the awarding of exemplary and, as to Reverend LaTorre, punitive damages.

24

25                          **NINTH CAUSE OF ACTION**
   **Menacing Conduct in Violation of California Civil Code §1954 and §1940.2.**
26                          **(Against All Defendants)**

27  81.    Tenants refer to and herein incorporate Paragraphs 1 through 19, as though fully
28  set forth herein.

FIRST AMENDED COMPLAINT OF PLAINTIFFS JOHN BATTY-SYLVAN AND ANGELA SYLVAN

- 10 -

82. California Civil Code §1954(a) specifically delineates the situations when a landlord is permitted to enter a dwelling unit, such as the Subject Premises without notice.

83. California Civil Code §1954(d) mandates that if a landlord is going to enter a dwelling unit, such as the Subject Premises under a basis not identified in subsection (a), then notice to the tenant must be provided.

84. As set forth herein, Defendants and their agents entered the Subject Premises without notice and without a situation as set forth in California Civil Code §1954(a). This conduct was significant violation of California Civil Code §1954 *et seq.*

85. Tenants are informed and believe that the Defendants conduct was in an effort to influence the Tenants to vacate the Subject Premises.

86. Tenants have suffered damages as a result of this conduct.

87. Tenants are entitled to statutory penalties pursuant to California Civil Code §1940.2 as a result of Defendants violations.

## JURY DEMAND

88. The Tenants hereby demand a trial by jury in this action.

WHEREFORE, Tenants pray for judgment against the Landlords as follows:

1. For retroactive rent abatement equal to the difference between actual rent paid and reasonable rental value of Tenants' tenancy of the Subject Premises;

2. For compensatory damages and such other damages according to proof on all causes of action;

3. For general damages for emotional distress and mental anguish according to proof on all causes of action;

4. For punitive damages according to proof on the Eighth Cause of Action against Reverend LaTorre only;

5. For a declaratory judgment that Defendants have violated California Business and Professions Code §17200 and 17203, *et seq.*, as a result of the aforementioned violations of the Civil Code and of California public policy protecting tenants;

6. For a permanent and mandatory injunction prohibiting Defendants, their officers, agents, employees, affiliated companies, and all those working in concert with them, from committing future violations of the laws and public policies described herein;

7. For statutory penalties pursuant to California Civil Code §1940.2;

8. For attorney's fees and costs of suit;

9. For interest, including prejudgment interest at the legal rate, on all causes of action; and

10. For such other and further relief as the court may deem proper.

Dated: August 5, 2008                    KLETTER & PERETZ

By: _____
     Yosef Peretz
     Attorney for Plaintiffs
     JOHN BATTY-SYLVAN and ANGELA SYLVAN

EXHIBIT A

  



Claudio Bluer, RHI
5142 Clarke Street
Oakland, CA 94609-2113

Phone: (510) 654-1058
Fax: (510) 654-2577
E-mail: Claudio@Bluer.biz

# AUSTRAL

Housing Inspections          Claudio Bluer, RHI

*Member Housing Inspection Foundation*          *Member ICBO / ICC*          *Member Better Business Bureau*

5142 Clarke Street                                        Phone: (510) 654-1058
Oakland, California 94609-2113                            FAX: (510) 654-2577
www.ClaudioBluer.com                                     Claudio@Bluer.biz

## RESIDENTIAL HOUSING INSPECTION REPORT

**Client:**
Law office of,
Kletter & Peretz
Attn: Yosef Peretz
One Embarcadero Center, Suite 1200
San Francisco, CA 94111

**Subject address:**
645B Elizabeth St.
San Francisco, CA

**Occupant(s):**
Mr. John Batty-Sylvan

**Date of inspection:** December 17, 2007
**Date of report:** December 18, 2007

**Your reference case name:**     vs.
**AHI reference #:** 27223

**Index:**

Foreword ......................... Page # 2
Report ........................... Page # 5
Floor plan ....................... Page # 12
Images ........................... Page # 14
Invoice & cover letter ........... (Attached)

**Codes used:**
2001 San Francisco Housing Code (SFHC)

Note: as modified by amendments, additions, and deletions set forth by state and / or local municipality (i.e. H&SC Sec, 17920.3)

**Structure description:**
**Main structure:**
Multi unit
Number of units ... 3
Number of levels .. Unknown

**Subject unit:**
Single Family Detached Residential Dwelling
3 bedroom house

**Location within lot:**
Rear Center

**Room count and other facilities:**
Levels: (unit) ..... 1
Bedrooms: ........ 3
Bathrooms: ........ 1
Living rooms: ..... 0
Dining rooms: .... 0
Hallways: ......... 1
Other rooms: ..... No
Basement: ........ Yes
Attic: ........... Unknown
Parking: ......... No
Yards: ........... Yes
Passageways: ..... Yes
Laundry room: .... No
Utility room: ..... No
Other accessory
structures: ....... No
Miscellaneous: .... N/A

# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

*Member ICBO / ICC*

Claudio Bluer, RHI

*Member Better Business Bureau*

## FOREWORD

### Narrative:

The unit shows signs of decay, neglect, and lack of preventive and periodic maintenance for a prolonged period of time. There are code violations of several degrees of importance, some requiring immediate attention. Several violations constitute immediate life threatening hazards, directly affecting health and safety (habitability).

There is remodeling and repair work executed in an unprofessional manner and apparently without the proper and required building permits.

There is a pattern of lack of repairs and maintenance (periodic and preventive) and of unprofessional corrections that aggravates the unsuitable living conditions at this structure. Strong steps need to be taken in order to rectify the uninhabitable conditions and to render this dwelling habitational. Failure to bring this structure in compliance with all applicable construction codes should result in vacation of living unit.

Due to the several life threatening conditions, the inordinate number of habitability violations, the lack of maintenance, and their compounded effect, this building constitutes a threat to the health and safety of the occupants. Repairs towards rehabilitation of this unit should start immediately with properly trained and qualified contractors in order to safeguard the safety of the occupants. This building should be made to comply with all construction code requirements in order to be used for human habitation.

### General:

An inspection of this structure was conducted in order to identify the presence or lack of Housing Code violations. The purpose of the Housing Code (section 102) is "to provide minimum standards to safeguard life or limb, health, property, and public welfare by regulating and controlling the use and occupancy, location, and maintenance of all residential buildings and structures within this jurisdiction."

This report lists conditions that are in violation of the Housing Code and therefore, constitute a threat to the health and safety of the occupants. The inspection was non-intrusive and non-destructive, no access was gained to areas not readily available to tenants (see disclaimer).

Pictures included with this report represent only a sample of some of the violations found throughout the premises. Images included in this report are digital pictures shot during inspection. Some of the digital files might have been compressed and / or enhanced. All original electronic files (i.e. photography / videography) have been preserved.

This reports cites hazardous conditions, habitability issues, and maintenance conditions.

*1 Conditions refer to major conditions, threatening life and safety, requiring immediate correction. Due to the nature of these conditions, abatement work must commence immediately.

*2 Conditions refer to code violations that constitute habitability issues, requiring immediate correction. These conditions directly affect habitability on a daily basis and should be corrected promptly.

*3 Conditions refer to code violations that directly affect the living standards and they should be corrected in a timely manner.

Synopsis of code violations and the direct impact on occupants:

### Electrical:

Defective and non-original construction wiring (including boxes, conduit, fixtures, etc.) and

accessory contraptions can expose occupants to shock hazards, can damage appliances, and it can also result in electrical short circuits and fires.

### Fire hazards:

There are conditions at this building conducive to fires, that hinder the ability of occupants and fire personnel to fight fires, and also that do not allow for proper emergency egress.

Fire occurrences can be the result of improper/illegal construction and repairs (illegal wiring, flues, etc.). Lack of fire fighting equipments can also exacerbate fire hazards. Lack of emergency means of egress (stairs, hallways, roof access, etc.) and their appurtenances (handrails, automatic door closers, signage, etc.)

### Plumbing:

Water leakage seeps onto and dilapidates wood structural members, (including structural members in other units), it also damages non-structural members (personal property, etc.) Sewer waste is highly toxic, highly noxious, and flammable.

Potable and sewer waste on exposed surfaces (due to leakage) also aggravates insect and rodent infestations throughout buildings by providing available water to pests.

Fixtures (i.e. sink) can fall off walls (also constituting a nuisance)

### Heating:

This type of violation renders dwellings without required safe heating source(s). Use of unapproved type heating devices can contribute to overloading of electrical lines and consequent related problems (blown fuses, short circuits, fires, etc.)

### Weather protection:

Defective roofs, siding, windows, doors and related structural elements can expose occupants to the elements (rain, wind, cold, etc.), thus constituting a severe health hazard.

Broken window pane(s) also fail(s) to protect occupants from the elements.

Paint peeling off at outside locations exposes structural wood members to the elements.

### General maintenance:

Ceiling and wall surfaces, plumbing lines, and other members of the structure must be properly repaired. Defective units should be either properly repaired or replaced as necessary.

### Ventilation:

Windows must provide light, ventilation, while at the same time affording security, weather protection, and sanitation (caulking and glazing must be in good repair).Bathroom windows must also afford privacy.

### Sanitation:

All exposed surfaces (floor covering, walls, ceilings, counters, plumbing fixtures, etc.) must be maintained clean and sanitary. Plumbing fixtures (tub, toilet base, etc. must be properly sealed, caulked, grouted, etc.)

### Indoor air quality:

Improper window operation (panes that do not open fully) result in lack of ventilation an ensuing poor indoor air quality.

Fungus and mildew (i.e. at caulking) causes poor indoor air quality.

### Security:

Broken window panes, dilapidated doors, split door jambs, missing lock strike plate(s), defective locks (windows and doors), etc. constitute security failures.

### Installation and maintenance:

Doors, windows, floors, walls, and all other members must be professionally installed and maintained, resulting in appurtenances being able to be used as intended.

### Disclaimer:

This report is the result of a "walk-through"

inspection. No access was gained to attic, roofs, garages, and/or adjacent properties, unless otherwise explicitly noted. This visual inspection would not reveal any structural damage or "hidden" and unobservable items without incising access holes to the core of the structure. Other areas not available for inspection may include: interior of hollow walls, underside of decks and similar structures, interior of built-in furniture, around free standing appliances and furnishings, under floor coverings or heavy vegetation, and/or around stored materials. To execute this inspection no item was defaced, moved, removed, detached, probed, or in any other way physically altered by the inspector, unless otherwise explicitly noted. This report does not carry any warranty expressed or implied about the opinion of damages to the dwelling nor about any recommendation that may be included. The listed conditions were observed and existing on the date of inspection. This report is not mean to substitute a "termite report" or any other specific type of inspection (i.e. fire place inspection).

## INTERIOR

**Kitchen:**

1. The water heater, non-original construction unit, requires a proper plumbing permit for installation and it exhibits code violations. SFHC, Sec. 1001(f) [1]

2. The water heater water supply lines are of unapproved type material ( rigid copper piping). Flexible lines are code required. SFHC, Sec. 1001(f) [2]

3. The water heater water supply plumbing lines are not insulated. SFHC, Sec. 505(g) [3]

4. The water heater flue is not properly secured to draft diverter (3 screws required), thus constituting a venting hazard. SFHC, Sec. 1001(g) [1]

5. The water heater outer inspection door is detached and the inner door is loose and detaching, thus allowing for flare up and constituting a fire issue. SFHC, Sec. 1001(f) [2]

6. The water heater safety valve drain pipe has been illegally terminated. The pipe is too close to the floor, inside the structure, and in front of the appliance, thus constituting a fire and explosion hazard. SFHC, Sec. 1001(f) [2]

7. The water heater flue pipe assembly exhibits segments not fully inserted and improperly supported. SFHC, Sec. 1001(g) [2]

8. There are non original construction plumbing lines and shut off valves servicing the water heater, that require proper permits for installation. There are old, open, and abandoned plumbing lines. The wood paneling boards are loose and detaching (including exposed fastener points) due to unfinished water heater installation. SFHC, Sec. 1001(f) [2]

9. There is an extension cord permanently installed and the grounding adaptor is not grounded, thus constituting shock and fire hazards. This condition warrants upgrading of wiring system in order to meet present day demand and removal of extension wiring. SFHC, Sec. 1001(e) [1]

10. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. There are several types of "area flooring only" that were also noted severely dilapidated. This condition warrants installation of code compliant finished flooring throughout the room with proper underlayment. SFHC, Sec. 1001(b) [2]

11. The window exhibits paint peeling off and missing altogether, there is dilapidated glazing (cracked, loose and detaching, missing altogether), and there is mold growing on exposed surfaces. SFHC, Sec. 1001(h) [2]

12. There is evidence of roof failure and ensuing water intrusion. SFHC, Sec. 1001(h) [2]

13. The ceiling and walls are damaged due to leakage. There is a large hole in the ceiling, there is a large chunk of plaster missing altogether, there is exposed wood lath material, there is mold growth at affected areas, and there is paint peeling off and missing altogether at several locations. The plaster is loose and detaching from lath, thus also constituting a falling object hazard. Should paint be found to be lead based, it requires special abatement practices, as mandated by government regulations. This condition is long standing and pervasive. SFHC, Sec. 1301 [2]

14. There is evidence of structural shifting. The plaster paint was noted torn at inner corners in a manner consistent with excessive and uneven settling. This condition warrants further inspection by specialized professional (i.e. structural engineer). Major replastering and / or structural reinforcement work requires permits for installation / execution. SFHC, Sec. 1001(c) [2]

15. The rear window exhibits paint peeling off and missing altogether, there are exposed bare wood members, there is dilapidated glazing, and there are also a non conforming wood boards affixed at outside sill (exposed fastener points). SFHC, Sec. 1001(h) [2]

[1]. Major condition, threatening life and safety, requiring immediate correction.
[2]. Code violation, constituting habitability issue, requiring immediate correction.
[3]. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.
San Francisco, CA
Page #5

Case: 25-03021  Doc#164-8  Filed: 02/19/26  Entered: 02/19/26 18:11:36  Page 21
of 47

*Pantry / sink compartment;*

16. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [2]

17. There are structural stress cracks at walls at several locations. SFHC, Sec. 1301 [2]

18. There is plumbing work that is not original construction, it requires proper permits for execution, and it does not meet minimum code requirements. There is an undersized pipe (tail piece - 1/4 inch), there is a missing nut and washer (tail piece / extension), there are drain pipes of unapproved type material (plastic), and there is an "S-trap" sewer line (lack of vent line), thus failing to properly drain and vent out raw sewage and raw sewage gasses. Sewage waste and sewage gasses are noxious, toxic, and flammable. This condition is indicative of illegal remodeling. SFHC. Sec. 1001(f) [1]

19. The counter ceramic tiles are dilapidated due to excessive wear and tear and lack of maintenance. The top finished layer is chipped off and missing altogether at several locations, thus constituting an unsanitary condition. This condition warrants replacement of covering. SFHC, Sec. 1001(b) [2]

20. The door to the rear porch is missing. There is still hardware in place (hinges, strike plate). SFHC, Sec. 102 [3]

Rear porch:

21. There is evidence that this room has been illegally enclosed from original construction open configuration. There is outside siding at indoor location. This work requires construction permits and zoning clearances for installation / execution.

22. There is evidence of water intrusion and damage. There are stains on ceiling and walls, there is paint peeling off and missing altogether, and there are rotted wood structural members. This condition is long standing and pervasive. This condition warrants replacement of all dilapidated members. SFHC, Sec. 1001(h) [2]

23. The door to the toilet compartment is missing. There is still hardware in place (hinges, strike plate), thus not affording privacy to the occupants and failing to have separation to kitchen, thus constituting a severe unsanitary condition. SFHC, Sec. 505(f)2 [1]

24. This room was not originally meant for bathroom usage. There are walls that exhibit no plaster or similar covering. There is plastering work that is not original construction and it requires permits for installation / execution. This room can be used for storage or equipment only. Major work at this room requires permits for installation / execution.

25. The toilet compartment exhibits no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [2]

26. The toilet exhibits unprofessional installation workmanship. There is a securing bolts missing a proper washer and there is a bolt missing its nut and washer altogether, thus failing to properly secure fixture to structure, not making a positive seal at main sewer line, and thus releasing raw sewage gasses and waste onto the living areas. Sewage waste and sewage gasses are noxious, toxic, and flammable. SFHC, Sec. 1001(f) [2]

27. The toilet securing bolts are missing their plastic caps, thus constituting an unsanitary condition. SFHC, Sec. 505(g) [3]

28. The toilet tank flashing mechanism was noted defective. The tank does not shut off properly and it keeps refilling. SFHC, Sec. 505(g) [2]

29. The toilet caulking at base is dilapidated and missing, thus allowing water and vermin into the structure and constituting an unsanitary condition. SFHC, Sec. 505(g) [2]

[1]. Major condition, threatening life and safety, requiring immediate correction.
[2]. Code violation, constituting habitability issue, requiring immediate correction.
[3]. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.
San Francisco, CA
Page #6

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 22
of 47

30. The window exhibits paint peeling off and missing altogether throughout, thus failing to afford code required weather protection for material. The wood frame members are severely dilapidated due to lack of a protective coating and excessive exposure to the elements. This condition is long standing and pervasive. This condition warrants replacement of all dilapidated members. Major structural repairs and / or window replacement work requires permits for installation / execution. SFHC, Sec. 1001(h) [2]

31. The window metal members are dilapidated (severely rusted and corroded), missing altogether. and improperly repaired. There are several layers of caulking material (unapproved type material) also improperly installed, and dilapidated. This condition warrants replacement of window. This work requires permits for installation / execution. SFHC, Sec. 1001(h) [2]

32. The wood overhang at side window is dilapidated. SFHC, Sec. 1001(h) [2]

33. The floor is damaged due to former door dragging excessively on the floor. SFHC, Sec. 102 [2]

34. There is not original construction surface mounted wiring that requires proper permits for installation. There is exposed knob at tub wiring at this former outdoor location, thus constituting shock and fire hazards. SFHC, Sec. 1001(e) [1]

**Rear bedroom:**

35. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [2]

36. The window is missing one sash cord, thus not enabling window to stay open and provide code required ventilation for this habitable room. SFHC, Sec. 504 [2]

37. The window outside sill is missing most of its paint and there is exposed bare wood material. SFHC, Sec. 1001(h) [2]

38. The window bottom sash exhibits non conforming glazing. There is unapproved type material (several types of caulking), improperly applied, and applied on the inside. This condition is indicative of the poor workmanship found throughout the premises. SFHC, Sec. 1001(h) [2]

39. There is wiring work that is not original construction, it requires proper permits for execution, and it does not meet minimum code requirements. There is exposed wiring not rated for this usage and location, improperly secured (with staples meant for low voltage wiring), there are no fittings, and there is a multiple outlet, thus constituting shock and fire hazards. SFHC, Sec. 1001(e) [1]

40. The walls exhibit unprofessional repairs. The patching is non matching, not smoothed, and just painted over. SFHC, Sec. 102 [2]

**Hallway:**

41. The front door exhibits the following code violations:

     42. The door drags excessively on the wood threshold, there is paint peeling off and missing altogether, there is damaged wood, and there are exposed fasteners. SFHC, Sec. 102 [2]

     43. The front door is damaged. There is paint peeling off and missing altogether, there is exposed wood. SFHC, Sec. 102 [2]

     44. There is a lock missing hardware. SFHC, Sec. 102 [2]

     45. There is double cylinder dead bolt without a key available within 4 feet, thus constituting a fire hazard. SFHC, Sec. 705 [2]

46. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [2]

[1]. Major condition, threatening life and safety, requiring immediate correction.  
[2]. Code violation, constituting habitability issue, requiring immediate correction.  
[3]. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.  
San Francisco, CA  
Page #7

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 23
of 47

47. There are structural stress cracks at walls at several locations. SFHC, Sec. 1301 [*2]
48. There is an electrical extension cord, permanently installed, from bathroom leading to right bedroom (or viceversa), and through hallway. This condition warrants installation of permanent wiring under the benefit of permit.

## Bathroom:

49. There is an electrical switch missing its protective cover plate, thus constituting a shock hazard. SFHC, Sec. 1001(e) [*1]
50. There is excessive fungus and mildew on ceiling and wall surfaces, thus constituting an unsanitary condition. This condition is long standing and pervasive. The paint is damaged due to mold growth. There is paint peeling off and missing altogether throughout. Should paint be found to be lead based, it requires special abatement practices, as mandated by government regulations. Major replastering work requires permits for installation / execution. SFHC, Sec. 1001(b) [*2]
51. There are structural stress cracks at walls at several locations. The plaster is also damaged, there are cracks clear through plaster material. Major replastering work requires permits for installation / execution. SFHC, Sec. 1301 [*2]
52. There is a towel bar missing most of its hardware. SFHC, Sec. 102 [*3]
53. The sink enamel surface is dilapidated (chipped-off, exposed cast iron), thus constituting an unsanitary condition. SFHC, Sec. 505(g) [*2]
54. The sink cold and hot water faucets were noted leaking excessively. This condition is due to lack of periodic / responsive maintenance. SFHC, Sec. 1001(f) [*2]
55. The sink backsplash caulking is dilapidated and there are repairs with unapproved type material (clear household tape). This condition warrants professional abatement. SFHC, Sec. 505(g) [*2]
56. The tub hot water faucet is missing its handle and there are non conforming repairs in place (vise grip plyers). SFHC, Sec. 505(g) [*2]
57. There are non original construction plumbing lines and shut off valves that require proper permits for installation. There is a copper water supply line at sink. There are three water supply lines that lack shut off valves.
58. The tub wood molding at rim is water damaged, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [*2]
59. The tub lacks a proper enclosure (undersized - not set properly). SFHC, Sec. 102 [*2]
60. The window is damaged and it has been covered with plastic sheathing, thus constituting an unsanitary condition and negating code required ventilation. SFHC, Sec. 102 [*2]
61. There is exterior plant overgrowth protruding onto this room through window and frame and blocking window area for code required ventilation. This condition constitutes a severe unsanitary condition and the lack of maintenance. SFHC, Sec. 1001(h) [*2]
62. The existence of a code required heating system for this habitable room could not be verified.

## Right bedroom:

63. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [*2]
64. This room was noted used for storage. There was no evidence of human habitation at this room at time of inspection. There is a partition wall, serving no apparent purpose, set against exterior side wall.

[*1]. Major condition, threatening life and safety, requiring immediate correction.
[*2]. Code violation, constituting habitability issue, requiring immediate correction.
[*3]. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.
San Francisco, CA
Page #8

Case: 25-03021     Doc# 164-8     Filed: 02/19/26     Entered: 02/19/26 18:11:36     Page 24
of 47

65. The window lock is missing altogether, thus constituting a security hazard. SFHC, Sec. 705 [2]
66. The existence of a code required heating system for this habitable room could not be verified.

**Left bedroom:**
67. There is no approved type finished floor covering, there is exposed subfloor, thus constituting an unsanitary condition. SFHC, Sec. 1001(b) [2]
68. There is evidence of roof failure and ensuing water intrusion. SFHC, Sec. 1001(h) [2]
69. The ceiling and walls are damaged due to leakage. There is a large hole in the ceiling, there is a large chunk of plaster missing altogether, there is exposed wood lath material, there is mold growth at affected areas, and there is paint peeling off and missing altogether at several locations. Should paint be found to be lead based, it requires special abatement practices, as mandated by government regulations. This condition is long standing and pervasive. SFHC, Sec. 1301 [2]
70. There are structural stress cracks at walls at several locations. The plaster is also damaged, there are cracks clear through plaster material. This condition warrants further inspection by specialized professional (i.e. structural engineer). Major replastering work requires permits for installation / execution. SFHC, Sec. 1301 [2].
71. There is evidence of structural shifting. The plaster paint was noted torn at inner corners in a manner consistent with excessive and uneven settling. This condition warrants further inspection by specialized professional (i.e. structural engineer). Major replastering and / or structural reinforcement work requires permits for installation / execution. SFHC, Sec. 1001(c) [2]
72. The door drags excessively on the jamb and there is paint peeling off and missing altogether at friction surfaces. Should paint be found to be lead based, it requires special abatement practices, as mandated by government regulations. SFHC, Sec. 102 [2]
73. The window top sash is missing its glass pane altogether and there are non conforming repairs with unapproved type material (cardboard), thus failing to afford code required weather protection for material and occupants. The glazing and paint are also damaged and missing altogether. This condition warrants professional abatement. SFHC, Sec. 1001(h) [2]
74. The existence of a code required heating system for this habitable room could not be verified.

**EXTERIOR**
**General:**
75. The siding paint is dilapidated. There is paint peeling off and missing altogether at several locations, thus failing to afford code required weather protection for material. Should paint be found to be lead based, it requires special abatement practices, as mandated by government regulations. SFHC, Sec. 1001(h) [2]

**Front:**
76. The concrete slab is improperly sloped towards the structure, there is evidence of puddling (wet surfaces, particulate matter), and there is also plant growth consistent with flooding (fungi). This condition constitutes an unsanitary condition, a slip and fall hazard, and it aggravates the mold condition noted inside the dwelling. SFHC, Sec. 1001(h) [2]
77. There is excessive mold growth at windows sill and the paint and glazing are cracked due to exposure to the elements and lack of maintenance of the protective coating. SFHC, Sec. 1001(h) [2]
78. The overhang structure over front door is dilapidated (metal bent out of shape, broken, not draining

[1]. Major condition, threatening life and safety, requiring immediate correction.    645B Elizabeth St.
[2]. Code violation, constituting habitability issue, requiring immediate correction.    San Francisco, CA
[3]. Maintenance condition, directly affecting tenancy, requiring correction.    Page #9

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 25
of 47

water properly). SFHC, Sec. 1001(h) [2]

79. There is an overgrown tree protruding onto structure and overhanging roof, thus constituting an unsanitary condition, a fire hazard, and a harborage for vermin. SFHC, Sec. 1001(k) [2]

**Left:**

80. There is a new stair structure that is not original construction, it requires proper permits for execution, and it does not meet minimum code requirements. The handrails are non conforming, non grippable and the guardrails exhibit gaps larger than allowed by code (4 inches). SFHC, Sec. 1001(c) [2]

81. There is overgrowth across stairway, thus also constituting a slip and fall hazard. SFHC, Sec. 1001(k) [2]

82. The landing at top of stairs was noted dilapidated. The concrete material was noted cracked and there is an exposed reinforcement bar. SFHC, Sec. 1001(c) [2]

83. There is not original construction wiring that requires proper permits for installation.

84. The fencing exhibits unprofessional repairs. The fence has been connected to the main structure. SFHC, Sec. 102 [2]

85. There is a not original construction flue pipe that exhibits non conforming installation. The assembly is not properly secured, not set plumb, there is a missing bottom cap, set on a brick, and there are repairs with unapproved type material (aluminum foil). SFHC, Sec. 1001(g) [2]

86. The siding planks are dilapidated. The wood material is rotted, loose and detaching, and missing altogether, thus failing to afford code required weather protection for material and occupants and allowing vermin into the structure. SFHC, Sec. 1001(h) [2]

87. There is wood-soil contact, thus allowing pests and moisture into dwelling and structural members. SFHC, Sec. 601 and 1001(c) [2]

88. There is a downspout missing a segment and improperly discharging rain water by foundation and siding walls, thus failing to properly divert rain water at least four feet away from the structure. This condition causes and / or aggravates dampness of habitable rooms noted inside the dwelling. SFHC, Sec. 1001(h) [2]

**Rear:**

89. There are excessive amounts of plant overgrowth also pushing onto structure, thus constituting an unsanitary condition, a fire hazard, and a harborage for vermin. This condition is long standing and pervasive. SFHC, Sec. 1001(k) [2]

90. There is plant overgrowth at rain gutter and downspout, thus constituting an unsanitary condition and failing to properly treat rain water. SFHC, Sec. 1001(h) [2]

91. There is evidence of rain water downspout improperly discharging onto sewer system. This condition is not code compliant. SFHC, Sec. 1001(f) [2]

92. There is wood-soil contact, thus allowing pests and moisture into dwelling and structural members. SFHC, Sec. 601 and 1001(c) [2]

**Basement:**

93. There are miscellaneous items improperly set directly on the ground. SFHC, Sec. 1001(a) [2]

94. There is illegal wiring throughout, thus constituting shock and fire hazards. SFHC, Sec. 1001(e) [1]

95. There is evidence of leakage towards front of structure. SFHC, Sec. 1001(h) [2]

96. There is evidence of undermining at structural column. This condition warrants further inspection by

[1]. Major condition, threatening life and safety, requiring immediate correction.
[2]. Code violation, constituting habitability issue, requiring immediate correction.
[3]. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.
San Francisco, CA
Page #10

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 26
of 47

specialized professional. This condition constitutes a structural hazard. This condition is due to improper treatment of rain water. SFHC, Sec. 1001(c) [2]

END OF REPORT

*1. Major condition, threatening life and safety, requiring immediate correction.

*2. Code violation, constituting habitability issue, requiring immediate correction.

*3. Maintenance condition, directly affecting tenancy, requiring correction.

645B Elizabeth St.
San Francisco, CA
Page #11

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 27
of 47

# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

Member ICBO / ICC

Claudio Bluer, RHI

*Member Better Business Bureau*

# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

*Member ICBO / ICC*

Claudio Bluer, RHI

*Member Better Business Bureau*



Image #1. Room layout.

Subject property: 645B Elizabeth St.
San Francisco, CA
Page #13

# AUSTRAL
*Member Housing Inspection Foundation*

Housing Inspections
*Member ICBO / ICC*

Claudio Bluer, RHI
*Member Better Business Bureau*



Image #2. 3D Aerial View.

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 30
of 47



**Image #3.** Water heater non conforming installation.



**Image #4.** Another location.



**Image #5.** Flooring non conforming and dilapidated.



**Image #6.** Evidence of water intrusion and damage.



**Image #7.** Structural shifting.



**Image #8.** Illegal plumbing.

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 31
of 47



Image #9. Another location.



Image #10. Evidence of water intrusion and damage.



Image #11. Toilet non conforming installation.



Image #12. Close up.



Image #13. Dilapidated window.



Image #14. Another location.

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 32
of 47



Image #15. Exposed outdoor siding, illegal wiring.



Image #16. Exposed subfloor.



Image #17. Window missing sash cord.



Image #18. Sill missing paint.



Image #19. Unprofessional glazing.



Image #20. Another location.

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 33
of 47

# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

*Member ICBO / ICC*

Claudio Bluer, RHI

*Member Better Business Bureau*



Image #21. Illegal wiring.



Image #22. Front door damaged.



Image #23. Switch missing cover plate.



Image #24. Mold.



Image #25. Close up.



Image #26. Faucets dripping and damaged enamel surface.

Case: 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 34
of 47



# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

*Member ICBO / ICC*

Claudio Bluer, RHI

*Member Better Business Bureau*



**Image #27.** Missing handle and unprofessional repairs.



**Image #28.** Overgrowth protruding through window.



**Image #29.** Dilapidated plaster.



**Image #30.** Window missing lock.



**Image #31.** Evidence of water intrusion and damage.



**Image #32.** Another location.

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 35
of 47

# AUSTRAL

*Member Housing Inspection Foundation*

Housing Inspections

*Member ICBO / ICC*

Claudio Bluer, RHI

*Member Better Business Bureau*



Image #33. Structural cracks.



Image #34. Evidence of flooding.



Image #35. Overgrowth.



Image #36. Dilapidated siding.



Image #37. Window missing glass pane.



Image #38. Overgrowth.

Case: 25-03021    Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 36
of 47

# PROOF OF SERVICE

I, Chloe Quail declare that I am over the age of eighteen years, and not a party to the within action. My business address is 22 Battery Street, Suite 202, San Francisco, California 94111. On **August 6, 2008** I directed true and correct copies of the following attached documents:

    **a. Plaintiffs' First Amended Complaint**
    **b. Plaintiffs' Opposition to Motion to Strike**
    **c. Plaintiffs' Request for Judicial Notice in Support of Opposition to Defendants' Motion to Strike**

to be delivered to the below-named interested party(ies):

Peter O. Glaessner                            Attorney for Defendants
Lombardi, Loper & Conant, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

in the manner indicated below:

**[ X ]**   **Service By First Class Mail (C.C.P. §1013a):** I am readily familiar with the business' practice for collecting and processing of correspondence for mailing with the U.S. Postal Service, and that I sealed and deposited into the U.S. Postal Service mails the sealed envelope(s), with postage thereon fully prepaid, following ordinary business practices.

**[ ]**   **Service by Telecopied Facsimile (C.C.P. §1013(e)):** By written agreement between the parties, a facsimile of the document(s) was/were transmitted to telecopier machines maintained by the above-designated parties.

**[ ]**   **Via Personal Service.**

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and was executed on **August 6, 2008**, at San Francisco, California.

                                      Chloe Quail

**RJN 8-2**



## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Sep-02-2008 10:56 am

Case Number: CGC-08-476325

Filing Date: Aug-29-2008 10:46

Juke Box: 001    Image: 02237171

ANSWER TO 1ST AMENDED COMPLAINT FILED BY DEFENDANT

JOHN BATTY-SYLVAN et al VS. ARCHDIOCESE OF SAN FRANCISCO et al

001C02237171

**Instructions:**

Please place this sheet on top of the document to be scanned.

1   PETER O. GLAESSNER, State Bar No. 93830
    pog@llcllp.com
2   LOMBARDI, LOPER & CONANT, LLP
    Lake Merritt Plaza
3   1999 Harrison Street, Suite 2600
    Oakland, CA 94612-3541
4   Telephone:    (510) 433-2600
    Facsimile:    (510) 433-2699
5
    Attorneys for Defendants, THE ROMAN
6   CATHOLIC ARCHBISHOP OF SAN
    FRANCISCO, a corporation sole (sued erroneously
7   herein as the Archdiocese of San Francisco d.b.a. St.
    Phillip's Church; St. Philip's Church) and FR.
8   TONY LaTORRE

9
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN FRANCISCO

11

12  John Batty-Sylvan and Angela Sylvan,          Case No. CGC-08-476325

13              Plaintiff,                         DEFENDANTS' ANSWER TO FIRST
                                                  AMENDED COMPLAINT FOR DAMAGES
14      v.

15  Archdiocese of San Francisco d.b.a. St.
    Philip's Church; St. Philip's Church;                    **BY FAX**
16  Reverend Tony Latorre, and Does 1
17  through 10,

18              Defendants.

19

20          Defendants THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a

21  corporation sole, and FR. TONY LaTORRE, each answer the unverified complaint for damages

22  as follows:

23                              **GENERAL DENIAL**

24          Pursuant to *Code of Civil Procedure* §431.30(d), the defendants, and each of them,

25  specifically and generally deny each and every allegation in the complaint, individually and

26  collectively, and further deny that their acts or omissions have proximately caused any of the

27  damages alleged in the complaint, if any existed at all.

28  ///

Case: 3:20-cv-03021 Doc# 164-8    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 40
                                  of 47

DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

1    In addition, each defendant alleges the following affirmative defenses:

2                          **FIRST AFFIRMATIVE DEFENSE**

3              **(Failure to State a Claim Upon Which Relief Can Be Granted)**

4         The complaint, and each cause of action therein, fails to state facts sufficient to constitute

5    a claim upon which relief can be granted against defendants, and each of them.

6                         **SECOND AFFIRMATIVE DEFENSE**

7                               **(Statute of Limitations)**

8         Plaintiffs' claims are barred by the applicable statutes of limitations, including but not

9    limited to *Code of Civil Procedure* §§335 et seq. through 340 *et seq.*

10                          **THIRD AFFIRMATIVE DEFENSE**

11   **(Lawful Actions Taken Under Civil Code 1954.3 & San Francisco Rent Control Ordinance)**

12        Plaintiffs' claims are barred, in whole or in part, because defendants' actions as alleged in

13   the complaint were lawful and taken in accordance with *Civil Code* §1954.3 and the San

14   Francisco Rent Control Ordinance.

15                         **FOURTH AFFIRMATIVE DEFENSE**

16                        **(Doctrine of Avoidable Consequences)**

17        Plaintiffs' claims are barred, or their damages limited, by the doctrine of avoidable

18   consequences.

19                          **FIFTH AFFIRMATIVE DEFENSE**

20                               **(Failure to Mitigate)**

21        Plaintiffs' claims are barred or their damages limited, because they failed to mitigate their

22   damages.

23                          **SIXTH AFFIRMATIVE DEFENSE**

24                                    **(Waiver)**

25        Plaintiffs' claims are barred by the equitable doctrine of waiver.

26·  ///

27   ///

28   ///

DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94512-3541

1    **SEVENTH AFFIRMATIVE DEFENSE**

2    **(Estoppel)**

3    Plaintiffs' claims are barred by the equitable doctrine of estoppel because their acts,

4    conducts, and/or omissions estopped them from proceeding against defendant.

5    **EIGHTH AFFIRMATIVE DEFENSE**

6    **(Unclean Hands)**

7    Plaintiffs' claims are barred by the equitable doctrine of unclean hands as a result of their

8    own wrongful conduct.

9    **NINTH AFFIRMATIVE DEFENSE**

10   **(Laches)**

11   Plaintiffs' claims are barred by the equitable doctrine of laches as a result of their failure

12   to address in a timely fashion that alleged acts of defendants set forth in the complaint.

13   **TENTH AFFIRMATIVE DEFENSE**

14   **(Reasonable Care Exercised)**

15   Plaintiffs' claims are barred because defendants acted with due care, and conducted

16   themselves as a reasonable person, under the circumstances.

17   **ELEVENTH AFFIRMATIVE DEFENSE**

18   **(Contributory Negligence)**

19   Plaintiffs' claims are barred by their contributory negligence in that their negligent acts

20   and omissions have contributed to and proximately caused the injuries of which they complain in

21   the complaint.

22   **TWELFTH AFFIRMATIVE DEFENSE**

23   **(Comparative Fault/Apportionment)**

24   Plaintiffs' losses, damages, or injuries as alleged in the complaint, if any, were

25   proximately caused and contributed to by persons or entities other than Defendant, including

26   Plaintiffs. The liability of defendants and other responsible parties named or unnamed must be

27   apportioned according to their relative degrees of fault, and the liability of defendants must be

28   reduced accordingly, and in accordance with Proposition 51 (*Civil Code* §1431.1 *et seq.*)

DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT

1  **THIRTEENTH AFFIRMATIVE DEFENSE**

2  **(Lack of Malice)**

3  Plaintiffs' claims are barred to the extent that they require the element of lack of good

4  faith, insufficient justification, or the presence of malice or evil motive because the acts allegedly

5  performed by or on behalf of defendants as alleged in the complaint, if they occurred, were

6  performed reasonably and in good faith, without malice, or any evil motive whatsoever, and were

7  based upon legally-sufficient justification and founded on all relevant facts and circumstances

8  known by defendant(s) at the time they so acted.

9  **FOURTEENTH AFFIRMATIVE DEFENSE**

10  **(Performance/Excuse)**

11  Defendant(s) performed all acts required to be performed in their contractual relationship

12  with plaintiffs. In the alternative, defendants' performance was excused by the acts, conduct, or

13  omissions of plaintiffs and/or as a matter of law.

14  **FIFTEENTH AFFIRMATIVE DEFENSE**

15  **(Breach by Plaintiffs)**

16  Defendants' breach of contract alleged in the complaint, if any, was excused by the prior,

17  material breach of contract by plaintiffs.

18  **SIXTEENTH AFFIRMATIVE DEFENSE**

19  **(First Amendment)**

20  Plaintiffs' claims are barred and/or limited because the actions taken by defendants are

21  protected by the First Amendment's freedom of religion and/or Establishment Clauses.

22  **SEVENTEENTH FFIRMATIVE DEFENSE**

23  **(Treble/Punitive Damages – Constitutional Defenses)**

24  Plaintiffs' claims for treble and/or punitive damages are subject to the limitations and

25  rights afforded defendants by the provisions of the U.S. and California Constitutions, including

26  the due process, equal protection and excessive fines provisions therein.

27  / / /

28

DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1998 Harrison Street, Suite 2600
Oakland, CA 94612-3541

1    **EIGHTEENTH AFFIRMATIVE DEFENSE**

2                                    **(Privilege)**

3         Defendants' alleged actions were justified and/or privileged as permitted by common law

4    and statute, including but not limited to *Civil Code* §47; *Civil Code* §1954.

5                          **NINETEENTH AFFIRMATIVE DEFENSE**

6                                    **(Consent)**

7         Plaintiffs, acting by and through their actual or ostensible agent living within the subject

8    premises, expressly and/or impliedly consented to the entry of defendants, and/or their agents

9    onto the subject property, to fix and repair the property.

10                          **TWENTIETH AFFIRMATIVE DEFENSE**

11                                **(Assumption of Risk)**

12        Plaintiffs' knowingly inhabited the property in question for many years, and voluntarily

13   assumed the risk of all acts, injuries and damages which are alleged in the complaint.

14                       **TWENTY-FIRST AFFIRMATIVE DEFENSE**

15                                    **(Set Off)**

16        Plaintiffs owe defendants money for waste of the premises and/or unpaid rental payments

17   as of February 1, 2008 which amount shall be set off against any verdict on judgment against

18   defendants.

19                                    **PRAYER**

20        WHEREFORE, defendants, and each of them, pray as follows:

21.       1.      For judgment that plaintiffs, and each of them, take nothing on the complaint and

22   for judgment in favor of defendants, and each of them;

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

Case 25-03021   Doc# 164-8   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 44
05204-38028 POG 557063.1                        of 47   - 5 -

**DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT**

1    ///

2       2.    For attorney's fees to the full extent allowed by law;

3       3.    For cost of suit incurred herein, as permitted by law, and

4       4.    For such other and further relief as the court deems just and equitable.

5

     Dated:    August 29, 2008             LOMBARDI, LOPER & CONANT, LLP

6

7                                        By: _____ _Peter Glaessner_

8                                           PETER O. GLAESSNER
                                         Attorneys for Defendants, THE ROMAN
                                         CATHOLIC ARCHBISHOP OF SAN

9                                          FRANCISCO and FR. TONY LATORRE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFTS.' ANSWER TO FIRST AMENDED COMPLAINT

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

**PROOF OF SERVICE**
*Batty-Sylvan, et al. v. Archdiocese of San Francisco, et al.*
San Francisco County Superior Court Case No.: CGC-08-4763257

I, Pamela S. Hyrn, hereby declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the county of for the County of Alameda; my business address is: 1999 Harrison Street, Suite 2600, Oakland, CA 94612. On August 29, 2008, I served the within:

**DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT FOR DAMAGES**

on all parties in this action, as addressed below, by causing a true copy thereof to be distributed as follows:

Yosef Peretz, Esq.
Kletter & Peretz
22 Battery Street, Suite 202
San Francisco, CA 94111
T: (415) 732-3777
F: (415) 732-3791
*Attorneys for Plaintiffs, John Batty-Sylvan and Angela Sylvan*

☒ By United States Mail: I enclosed the document in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope/package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing documents for mailing. On the same day that the document is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Oakland, California.

☐ By Fax Transmission: Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐ By Overnight Delivery: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ By Personal Service: I personally delivered the documents to the persons at the addresses listed above. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with the receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

LOMBARDI, LOPER
& CONANT LLP
Lake Merritt Plaza
1999 Harrison Street
Suite 2600
Oakland, CA 94612-3542

1     ☐     By Messenger Service: I served the documents by placing them in an envelope or package
2           addressed to the persons at the addresses listed above and providing them to a professional messenger service
          for service.

3     ☐     By E-Mail or Electronic Transmission: Based on a court order or an agreement of the parties
          to accept service by email or electronic transmission, I caused the documents to be sent to the persons at the e-
4           mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic
          message or other indication that the transmission was unsuccessful.

5

          I declare under penalty of perjury under the laws of the State of California that the
6     foregoing is true and correct. Executed on August 29, 2008, at Oakland, California.

7

8                                        PAMELA S. HYRN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOMBARDI, LOPER
& CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street
Suite 2600
Oakland, CA 94612-3541

05204-38028 PHYRN 557170.001          - 2 -