**RJN 10-1**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ARCHDIOCESE OF SAN FRANCISCO, a religious organization; [ADDITIONAL PARTIES ATTCHEMENT FOR IS ATTACHED]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARC CROWTHER, an individual;

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* San Francisco County Superior Court <br> Civic Center Courthouse <br> 400 McAllister St., San Francisco, CA 94102-4514 | CASE NUMBER: *(Número del Caso):* <br> **CGC-20-584238** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mike Arias, Esq. | Arias Sanguinetti Wang & Torrijos LLP-6701 Center Drive West, Suite 1400, Los Angeles, CA 90045 (310)844-9696

| DATE: *(Fecha)* **APR 27 2020** | **Clerk of the Court** | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|---|

ANGELICA SUNGA

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)　　　☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)　☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)　☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courts.ca.gov |
|---|---|---|

| SHORT TITLE:<br>Marc Crowther vs. Archdioceses of San Francisco, et al. | CASE NUMBER: |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

ARCHDIOCESE OF SAN FRANCISCO, a religious organization; SAINT CECILIA CATHOLIC CHURCH, a religious organization; MISSION DOLORES PARISH, a religious organization; PATRICK O'SHEA, an individual; BISHOP SALVATORE JOSEPH CORDILEONE, an individual; and DOES 1 through 100, inclusive,

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Mike Arias, Esq. (CSB #115385)
Arnold C. Wang, Esq. (CSB #204431)
Jamie G. Goldstein, Esq. (CSB #302479)
Craig S. Momita, Esq. (CSB #163347)
**ARIAS SANGUINETTI WANG & TORRIJOS LLP**
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168

Andrew Janet, Esq. (pro hac vice to be submitted)
**JANET, JANET & SUGGS, LLC**
4 Reservoir Circle, Suite 200
Pikesville, MD 21208
Tel: (410) 653-3200

Attorneys for Plaintiff

**FILED**
**SUPERIOR COURT**
**COUNTY OF SAN FRANCISCO**

**APR 2 7 2020**

**CLERK OF THE COURT**
BY: _____
Deputy Clerk

**ANGELICA SUNGA**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

MARC CROWTHER, an individual;

Plaintiff,

vs.

ARCHDIOCESE OF SAN FRANCISCO, a
religious organization; SAINT CECILIA
CATHOLIC CHURCH, a religious
organization; MISSION DOLORES PARISH, a
religious organization; PATRICK O'SHEA, an
individual; BISHOP SALVATORE JOSEPH
CORDILEONE, an individual; and DOES 1
through 100, inclusive,

Defendants.

Case No. **C G C - 2 0 - 5 8 4 2 3 8**

**COMPLAINT FOR DAMAGES FOR:**

1. **SEXUAL BATTERY [CAL. CIV.
   CODE § 1708.5];**
2. **NEGLIGENCE;**
3. **NEGLIGENT SUPERVISION,
   MONITORING, TRAINING, AND
   RETENTION;**
4. **BREACH OF FIDUCIARY DUTY;**
5. **CONSTRUCTIVE FRAUD; AND**
6. **CIVIL CONSPIRACY TO
   COMMIT FRAUD**

**DEMAND FOR JURY TRIAL**

All allegations in this Complaint are based upon information and belief except for
those allegations that pertain to Plaintiff named herein and his counsel. Each allegation in
this Complaint either has evidentiary support or is likely to have evidentiary support after a
reasonable opportunity for further investigation and discovery.

Case: 25-03021   Doc# 164-10   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 4
of 44

1     1.    This is a claim allowed by the California Child Victims Act (Assembly Bill

2    218) because Plaintiff alleges damages resulting from childhood sexual assault pursuant to

3    CALIFORNIA CODE OF CIVIL PROCEDURE § 340.1(q).

**JURISDICTION AND VENUE**

5    2.    This Court has jurisdiction over this action pursuant to CALIFORNIA CODE OF

6    CIVIL PROCEDURE § 410.10.

7    3.    Venue is proper in this Court pursuant to CALIFORNIA CODE OF CIVIL

8    PROCEDURE § 395, because the personal injuries complained of herein occurred in the

9    County of San Francisco.

**THE PARTIES**

11    4.    Plaintiff MARC CROWTHER (hereinafter "Plaintiff") is a resident of the

12    State of California, County of San Diego. At all times relevant to the wrongful conduct

13    complained of herein, Plaintiff was a resident of the State of California, County of San

14    Francisco.

15    5.    Defendant ARCHDIOCESE OF SAN FRANCISCO (hereinafter

16    "Archdiocese") is a religious organization with its principal offices at One Peter Yorke

17    Way, San Francisco, CA 94109, doing business as an organized religion included but not

18    limited to the ownership, management, and operation of parishes and Catholic schools

19    within the County of San Francisco. All affiliated corporations and entities controlled by

20    the Bishop are included in this Complaint as the "Archdiocese." The Archdiocese functions

21    as a business by engaging in numerous revenue-producing activities and soliciting money

22    from its members in exchange for its services.

23    6.    Defendant SAINT CECILIA CATHOLIC CHURCH (hereinafter, "St.

24    Cecilia's") is a religious organization with its principal offices at 2555 Seventeenth

25    Avenue, San Francisco CA 94116.

26    7.    Defendant MISSION DOLORES PARISH (hereinafter, "Mission Dolores")

27    is a religious organization with its principal offices at 3321 16th St., San Francisco CA

28    94114.

Page 2

**COMPLAINT**

8.     Defendant PATRICK O'SHEA (hereinafter, "O'Shea") is a former priest who committed sexual battery against Plaintiff.

9.     Defendant ARCHBISHOP SALVATORE JOSEPH CORDILEONE (hereinafter, "Archbishop Cordileone") is an individual and current Archbishop of the Archdiocese. His office is at One Peter Yorke Way, San Francisco, CA 94109. Prior Archbishops of the Archdiocese, who are not parties to this Complaint, include Archbishop Joseph Thomas McGucken, Archbishop John Raphael Quinn, Archbishop William Joseph Levada, and Archbishop George Hugh Niederauer (collectively with Archbishop Cordileone, the "Archbishops").

10.     Non-party the Vatican, as led by all popes for the times relevant to this complaint, also acted in concert with the other entities and individuals as identified above.

11.     The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendant DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names pursuant to CALIFORNIA CODE OF CIVIL PROCEDURE § 474. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of Defendant DOES 1 through 100 when they are ascertained.

12.     Plaintiff is informed and believes, and based upon that information and belief alleges, that each Defendant named in this Complaint, including DOES 1 through 100, inclusive, is responsible in some manner for one or more of the events and happenings, and proximately caused Plaintiff's injuries and damages hereinafter alleged.

## BACKGROUND ALLEGATIONS

13.     The hierarchy of the Roman Catholic Church and, by implication, these Defendants, have been aware of the serious problem of sexual abuse of children since well before the incidents involving the Plaintiff.

14.     Plaintiff was born in 1958. At all times material to the sexual assaults he

COMPLAINT

suffered, he was a minor.

15.    In or around 1969, when Plaintiff was approximately 11 years old, Plaintiff was a student at the religious school operated by St. Cecilia's. He also attended church at St. Cecilia's regularly with his family, where he served as an altar boy.

16.    At the time, O'Shea led trainings of altar boys at a number of parishes in the area.

17.    O'Shea trained Plaintiff to be an altar boy at St. Cecilia's.

18.    At one point, O'Shea told Plaintiff he was special and summoned him to the St. Cecilia's rectory for what O'Shea described as private additional altar boy training.

19.    At this first encounter, O'Shea fondled Plaintiff's genitals.

20.    In or around 1969, O'Shea continued to summon Plaintiff to the rectories of either St. Cecilia's or Mission Dolores, approximately a dozen times in total.

21.    During the subsequent encounters, O'Shea performed oral sex on Plaintiff, penetrated Plaintiff's anus with his finger, and/or penetrated Plaintiff's anus with his penis.

22.    O'Shea warned Plaintiff that if he discussed these "training" sessions with anyone else, they would go to hell.

23.    In or around 1969 or 1970, Plaintiff was also sexually abused by a nun at Saint Cecilia's who taught one of his classes.

24.    The nun would call Plaintiff back to the rectory, claiming a need to impose corporal punishment.

25.    While there, she would whip Plaintiff with a belt while stroking his penis to orgasm.

26.    At all relevant times, the Archdiocese and Archbishops created, oversaw, managed, controlled, directed, and/or operated parishes, churches, and/or Catholic schools of the Archdiocese, including St. Cecilia's and Mission Dolores.

27.    At all relevant times, the Archdiocese and Archbishops managed, supervised, employed, directed, and/or controlled all clerics assigned to work in parishes, churches, and/or Catholic schools of the Archdiocese, including Defendant Patrick O'Shea.

**COMPLAINT**

1  28.  At all relevant times, St. Cecilia's managed, supervised, employed, directed,
2  and/or controlled all clerics assigned to work at Saint Cecilia's, including Defendant
3  Patrick O'Shea.

4  29.  At all relevant times, Mission Dolores managed, supervised, employed,
5  directed, and/or controlled all clerics assigned to work at Mission Dolores, including
6  Defendant Patrick O'Shea.

7  30.  The Archbishops were responsible for assigning, transferring, and/or
8  suspending all clergy within the Archdiocese. Clergy serve at the Archbishops' pleasure
9  and are subject to their authority.

10  31.  The Archdiocese was in a superior position to receive sensitive information
11  regarding immoral and criminal conduct pertaining to O'Shea and other priests that was of
12  critical importance to the well-being of Plaintiff and other children. This information was
13  not available to the Plaintiff or the public.

14  32.  The Archdiocese and/or certain Archbishops explicitly and implicitly
15  through their words, actions, and teachings represented to Plaintiff that each of its priests,
16  including O'Shea, were benevolent and trustworthy stewards of the church who would only
17  act in the best interests of the children whom they served.

18  33.  The Archdiocese and the priests and nuns it employed taught Plaintiff in the
19  classroom and during services to revere, trust, obey, and respect all priests.

20  34.  Through their words and deeds, the Archdiocese, St. Cecilia's, Mission
21  Dolores, and/or the Archbishops invited and encouraged the Plaintiff to accept each priest
22  assigned to St. Cecilia's and/or Mission Dolores and/or other positions within the
23  Archdiocese, including O'Shea, to be in good standing, to be men who were worthy of
24  being entrusted with children, and to be worthy of the responsibility for Plaintiff's physical
25  and spiritual safety, thereby inducing Plaintiff to entrust himself to the company and care
26  of O'Shea, and to subject himself to his instructions while on church or school property
27  and/or in his accompaniment.

28  35.  As a result of his position as Plaintiff's teacher priest and the corresponding

1   trust Plaintiff placed in him, O'Shea was able to learn private and personal information

2   about Plaintiff that made him a more vulnerable target for abuse.

3       36.    As a result of his position as Plaintiff's parish priest, O'Shea was able to use

4   the facilities of the church and school to further his sexual and criminal conduct with

5   Plaintiff.

6       37.    At all times relevant, Plaintiff entrusted his well-being to the Archdiocese,

7   St. Cecilia's, Mission Dolores, and O'Shea, and they had a corresponding obligation to be

8   solicitous for, as well as protective of, Plaintiff in the exercise of their positions of trust,

9   confidentiality, and moral authority.

10      38.    A confidential and fiduciary relationship existed between (a) the

11   Archdiocese, its Archbishops, and its priests with (b) parishioners, including Plaintiff.

12      39.    The Archdiocese, the Archbishops, Saint Cecilia's, and Mission Dolores

13   owed a secular duty to Plaintiff grounded upon the duty of good faith and fair dealing, to

14   act with the highest degree of trust and confidence. This relationship included the duty to

15   warn, disclose, and protect parish children and students from sexual abuse and exploitation

16   by clerics whom Defendants promoted as being chaste and moral.

17      40.    The Archdiocese and each of its Archbishops solicited funds from the

18   parishioners of its parishes and school attendees through assessments, direct appeals,

19   and/or tuition, which was a primary incentive to focus on the reputation of the Catholic

20   Church to the detriment of all other priorities.

21      41.    The Archdiocese, St. Cecilia's, and Mission Dolores had the responsibility to

22   manage, supervise, control, and/or direct clerics who served at St. Cecilia's and Mission

23   Dolores, and specifically had a duty not to aid pedophiles such as Defendant O'Shea by

24   allowing them, and/or assigning, maintaining, and/or appointing them to positions with,

25   access to minors.

26      42.    As a minor, Plaintiff was entrusted by his parents to the control and

27   supervision of Defendant O'Shea and the non-party nun, both of whom were agents,

28   servants, and/or employees of Defendants Archdiocese and St. Cecilia's; Defendant O'Shea

**COMPLAINT**

1    was also an agent, servant, and/or employee of Mission Dolores. During the times that

2    Plaintiff was entrusted Defendants Archdiocese, St. Cecilia's, Mission Dolores, and

3    O'Shea, they owed a duty to children entrusted to them to act *in loco parentis*, whereby

4    parents could expect that the care to be taken of their children while at the school would be

5    that afforded by a reasonably prudent parent.

6         43.    Defendants breached their duty to act *in loco parentis*.

7         44.    As a direct result of the negligent, grossly negligent, intentional, careless,

8    and/or reckless conduct of the Archdiocese, the Archbishops, St. Cecilia's, Mission

9    Dolores, and O'Shea, and their agents, servants, and/or employees, Plaintiff has suffered

10   serious and severe physical and emotional damages of a permanent and lasting nature,

11   including but not limited to:

12        a. post-traumatic stress disorder;

13        b. anxiety;

14        c. depression;

15        d. bipolar disorder;

16        e. alcoholism;

17        f. gambling addiction;

18        g. ongoing humiliation, embarrassment, shame, and guilt;

19        h. severe mental anguish and despair;

20        i. severe nervousness, fearfulness, intrusive thoughts, and panic attacks;

21        j. irritability;

22        k. personality changes;

23        l. physical pain, nausea, and loss of sleep;

24        m. a loss of enjoyment of life;

25        n. paraphilia;

26        o. a difficulty in trusting and interacting with others, including those in

27           positions of authority and/or those in intimate relationships with Plaintiff;

28        p. other emotional distress;

**COMPLAINT**

Case: 25-03021    Doc# 164-10    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 10
of 44

1     q.  a loss of earnings and earning capacity due to the trauma; and

2     r.  other damages.

3     45.  All of the counts described below involved despicable conduct that subjected

4  Plaintiff to cruel and unjust hardship and indicated a willful and conscious disregard for

5  Plaintiff's rights and safety, and intentional misrepresentations and/or concealments of

6  material facts known to Defendants.

## FIRST CAUSE OF ACTION

## FOR

## SEXUAL BATTERY

### [Cal. Civ. Code § 1708.5]

### (Against Defendant O'Shea)

12     46.  Plaintiff repeats, realleges, and incorporates by this reference each and all of

13  the allegations contained in paragraphs 1 through 45 of this Complaint.

14     47.  Defendant O'Shea took advantage of his position of authority and trust to

15  engage in unlawful sexual acts and other harmful misconduct with the minor Plaintiff,

16  including, but not limited to, by forcing him to engage in fellatio, digital anal penetration,

17  and genital anal penetration.

18     48.  Defendant O'Shea acted with the intent to cause harmful, offensive, and/or

19  sexually offensive contact with the intimate parts of Plaintiff's body, and such contact did

20  directly result.

21     49.  Defendant O'Shea also caused imminent apprehension of the aforementioned

22  conduct.

23     50.  Defendant O'Shea's sexual battery caused Plaintiff to sustain severe and

24  permanent damages as described above.

25     51.  Defendant O'Shea engaged in despicable conduct and acted with a conscious

26  disregard of the rights of Plaintiff with an intent to vex, injure and annoy Plaintiff, such as

27  to constitute oppression, fraud or malice under CALIFORNIA CIVIL CODE § 3294.  Plaintiff is

28  therefore entitled to punitive and/or exemplary damages in an amount sufficient to punish

**COMPLAINT**

1    and make an example of Defendant O'Shea.

**SECOND CAUSE OF ACTION**

**FOR**

**NEGLIGENCE**

**(Against All Defendants, Excluding Defendant O'Shea)**

52.    Plaintiff repeats, realleges, and incorporates by this reference each and all of the allegations contained in paragraphs 1 through 51 of this Complaint.

53.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese, by and through their agents, servants, and/or employees, knew or reasonably should have known of Defendant O'Shea's sexually violent propensities, that Defendant O'Shea had committed sexual violence to victims before Plaintiff, and/or that Defendant O'Shea was capable of committing sexual violence against Plaintiff and/or other children.

54.    Plaintiff's care, welfare, and/or physical custody was entrusted to Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese, including when he was under the care and supervision of St. Cecilia's, Mission Dolores, and the Archdiocese, and was on properties and premises operated by St. Cecilia's, Mission Dolores, and the Archdiocese.

55.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese voluntarily accepted the entrusted care of Plaintiff and each had a duty to protect Plaintiff during the time that he was entrusted to their care. As such, Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese owed Plaintiff, a minor child, a special duty of care, in addition to duty of ordinary care, to care for Plaintiff as a reasonably prudent parent would care for him.

56.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese each also owed Plaintiff a duty to protect him from harm because these Defendants invited Plaintiff onto their property and Defendant O'Shea represented a dangerous condition on the property.

57.    Plaintiff was owed by Defendants, including St. Cecilia's, Mission Dolores,

Page 9

**COMPLAINT**

1    and the Archdiocese a duty to be protected from, and warned of, harm inflicted upon
2    Plaintiff by Defendant O'Shea during the period in which Plaintiff was under the care of St.
3    Cecilia's, Mission Dolores, and the Archdiocese while he was a student and when Plaintiff
4    was on the premises owned and controlled by St. Cecilia's, Mission Dolores, and/or the
5    Archdiocese.

6          58.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese
7    systematically breached their duty to Plaintiff by:

8                  a.  enabling Defendant O'Shea with unrestricted access to children and
9                      placing him in a position of trust and authority;
10                 b.  allowing Defendant O'Shea to come into contact with Plaintiff without
11                     effective supervision;
12                 c.  failing to properly train and re-train staff who work with children about
13                     child supervision and detecting child sexual abuse;
14                 d.  failing to properly monitor and/or supervise Defendant O'Shea;
15                 e.  failing to prevent Defendant O'Shea from committing wrongful sexual
16                     acts with children;
17                 f.  failing to properly investigate the actions of agents, servants, and/or
18                     employees to ensure that children were subjected to safe and appropriate
19                     counselors;
20                 g.  failing to monitor for and subsequently investigate acts of sexual abuse
21                     and sexual violence committed by Defendant O'Shea, and thereafter
22                     reveal such facts to Plaintiff, the public, and/or law enforcement
23                     agencies;
24                 h.  failing to implement and/or enforce protocols to ensure that children
25                     would not fall victim to sexual predators like Defendant O'Shea;
26                 i.  failing to provide a safe environment where children are not subjected to
27                     sexual abuse;
28                 j.  holding Defendant O'Shea out to Plaintiff as being of sufficient moral

Page 10
**COMPLAINT**

1               and ethical repute;

2                k. failing to remove Defendant O'Shea from a position where he could act

3                   on his propensity and disposition to commit sexual abuse; and

4                l. other acts of negligence.

5          59.     It was reasonably foreseeable that if Defendants, including St. Cecilia's,

6 Mission Dolores, and the Archdiocese did not adequately exercise or provide the duty of

7 care owed to children in their care, including but not limited to Plaintiff, the children

8 entrusted to their care would be vulnerable to sexual abuse by servants, agents, and/or

9 employees, including Defendant O'Shea.

10          60.     The Defendants' aforementioned negligence directly and proximately caused

11 Plaintiff to sustain severe and permanent damages as described above.

12 **THIRD CAUSE OF ACTION**

13 **FOR**

14 **NEGLIGENT SUPERVISION, MONITORING, TRAINING, AND RETENTION**

15 **(Against All Defendants, Excluding Defendant O'Shea)**

16          61.     Plaintiff repeats, realleges, and incorporates by this reference each and all of

17 the allegations contained in paragraphs 1 through 60 of this Complaint.

18          62.     Supervision of agents, servants, and/or employees within Defendants' control

19 is a mandatory and unqualified duty.

20          63.     Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese,

21 by and through their agents, servants, and/or employees, each had a duty to engage in

22 reasonable supervision, monitoring, training, and retention for any employees who

23 interacted with children.

24          64.     Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese,

25 by and through their agents, servants, and/or employees, knew or reasonably should have

26 known of Defendant O'Shea's sexually violent propensities, that Defendant O'Shea had

27 committed sexual violence to victims before Plaintiff, and that he was capable of

28 committing sexual violence against Plaintiff and/or other children.

1    65.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese
2   failed to properly observe, supervise, and monitor areas and individuals where it was
3   known, knowable, and/or foreseeable that students could be victims of sexual abuse
4   without proper supervision.

5    66.    Defendants, including St. Cecilia's, Mission Dolores and the Archdiocese
6   systematically breached their duty to Plaintiff by:

a. enabling Defendant O'Shea with unrestricted access to children and
   placing him in a position of trust and authority;

b. allowing Defendant O'Shea to come into contact with Plaintiff without
   effective supervision;

c. failing to properly train and re-train staff who work with children about
   child supervision and detecting child sexual abuse;

d. failing to properly monitor and/or supervise Defendant O'Shea;

e. failing to prevent Defendant O'Shea from committing wrongful sexual
   acts with children;

f. failing to properly investigate the actions of agents, servants, and/or
   employees to ensure that children were subjected to safe and appropriate
   counselors;

g. failing to monitor for and subsequently investigate acts of sexual abuse
   and sexual violence committed by Defendant O'Shea, and thereafter
   reveal such facts to Plaintiff, the public, and/or law enforcement
   agencies;

h. failing to implement and/or enforce protocols to ensure that children
   would not fall victim to sexual predators like Defendant O'Shea;

i. failing to provide a safe environment where children are not subjected to
   sexual abuse;

j. holding Defendant O'Shea out to Plaintiff as being of sufficient moral
   and ethical repute;

1          k. failing to remove Defendant O'Shea from a position where he could act

2              on his propensity and disposition to commit sexual abuse; and

3          l. other acts of negligence.

4        67.    The failure of Defendants, including St. Cecilia's, Mission Dolores, and the

5 Archdiocese to protect Plaintiff from the foreseeable harm of Defendant O'Shea's sexual

6 misconduct was committed with negligence, gross negligence, wanton recklessness, and/or

7 reckless indifference to Plaintiff.

8        68.    The Defendants' aforementioned negligence directly and proximately caused

9 Plaintiff to sustain severe and permanent damages as described above.

### FOURTH CAUSE OF ACTION

### FOR

### BREACH OF FIDUCIARY DUTY

### (Against All Defendants, Excluding Defendant O'Shea)

14      69.    Plaintiff repeats, realleges, and incorporates by this reference each and all of

15 the allegations contained in paragraphs 1 through 68 of this Complaint.

16      70.    While he was a minor, Plaintiff was entrusted by his parents to the control

17 and supervision of St. Cecilia's, Mission Dolores, and Defendant O'Shea. During the times

18 that Plaintiff was entrusted to Defendant O'Shea, Defendant O'Shea was under the

19 supervision and control of St. Cecilia's, Mission Dolores, and/or the Archdiocese.

20      71.    Plaintiff's relationship with Defendants, including St. Cecilia's, Mission

21 Dolores, and the Archdiocese extended well beyond that of an ordinary parishioner. His

22 mother was a devout Catholic who entrusted his education, care, supervision, and safety to

23 the Archdiocese's institutions. Plaintiff attended Catholic school at St. Cecilia's from 1st

24 grade through 8th grade, where he was taught by priests and nuns employed by the

25 Archdiocese. He was instructed in catechism classes and otherwise that the bishop of the

26 Archdiocese and priests employed by the Archdiocese were moral authorities whom he was

27 obliged to trust and respect. He also participated in youth groups and sports through St.

28 Cecilia's and at Mission Dolores, all of which was sponsored by the Archdiocese. All of

1  these facts led Plaintiff to regard both St. Cecilia's, Mission Dolores, and the Archdiocese
2  as entities with superior positions of influence and authority in his life

3  72.    For the reasons stated above, there existed a fiduciary relationship of trust,
4  confidence, and reliance between Plaintiff and Defendants, including St. Cecilia's, Mission
5  Dolores, and the Archdiocese. The entrustment of the Plaintiff to the care, supervision, and
6  influence of St. Cecilia's, Mission Dolores, the Archdiocese, and O'Shea, while Plaintiff
7  was a minor child, required St. Cecilia's, Mission Dolores, the Archdiocese, and O'Shea to
8  assume a fiduciary relationship and to act in the best interests of the Plaintiff and to protect
9  him due to his infancy and vulnerability.

10  73.    Pursuant to their fiduciary relationship, Defendants, including St. Cecilia's,
11  Mission Dolores, and the Archdiocese were entrusted with the well-being, care, and safety
12  of Plaintiff.

13  74.    Pursuant to their fiduciary relationship, Defendants, including St. Cecilia's,
14  Mission Dolores and the Archdiocese assumed a duty to act in the best interests of
15  Plaintiff.

16  75.    Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese
17  breached their fiduciary duties to Plaintiff for all the reasons previously stated.

18  76.    The Defendants' aforementioned breach of fiduciary duty directly and
19  proximately caused Plaintiff to sustain severe and permanent damages as described above.

20  77.    Defendants engaged in despicable conduct and acted with a conscious
21  disregard of the rights of Plaintiff with an intent to vex, injure and annoy Plaintiff, such as
22  to constitute oppression, fraud or malice under CALIFORNIA CIVIL CODE § 3294.  Plaintiff is
23  therefore entitled to punitive and/or exemplary damages in an amount sufficient to punish
24  and make an example of Defendants.

25  ///
26  ///
27  ///
28  ///

---

Page 14

**COMPLAINT**

# FIFTH CAUSE OF ACTION

## FOR

## CONSTRUCTIVE FRAUD

### (Against Defendants Archdiocese, St. Cecilia's, and Mission Dolores)

78. Plaintiff repeats, realleges, and incorporates by this reference each and all of the allegations contained in paragraphs 1 through 77 of this Complaint.

79. As described above, Defendants, including St. Cecilia's, Mission Dolores, and the Archdiocese had a special fiduciary relationships of trust and confidence with Plaintiff.

80. Plaintiff's position in the relationship with Defendants St. Cecilia's, Mission Dolores, and the Archdiocese was one of weakness and dependence, whereas Defendants St. Cecilia's, Mission Dolores, and the Archdiocese's positions were one of superior knowledge and influence. They did not deal on terms of equality.

81. Defendants St. Cecilia's, Mission Dolores, and the Archdiocese were familiar with the acute problem of numerous priests sexually violating children, including in the Archdiocese and at St. Cecilia's and Mission Dolores.

82. Defendants St. Cecilia's, Mission Dolores, and the Archdiocese assumed control of information about O'Shea, which they knew or should have known. Plaintiff was in a subordinate position of weakness and lacked this information.

83. Defendants St. Cecilia's, Mission Dolores, and the Archdiocese betrayed the fiduciary duty owed to Plaintiff that resulted as a result of such relationship of trust and confidence, by their concealment of information about O'Shea that they knew or should have known, as well as by the other acts described above.

84. Defendants St. Cecilia's, Mission Dolores, and the Archdiocese held themselves out as institutions that would protect vulnerable children, but their failure to disclose the information about O'Shea was a course of conduct that had the intent and effect of deceiving and misleading Plaintiff and the public.

85. Defendants St. Cecilia's, Mission Dolores, and the Archdiocese had an

Case: 25-03021   Doc# 164-10   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 18 of 44

1    accumulation of knowledge of the sexual abuse of children by their servants, critical
2    information that they kept from Plaintiff and the public, when they had a duty to speak and
3    inform. When these Defendants did comment on this issue, they falsely assured the general
4    public, parishioners, parents, and law enforcement authorities that they would responsibly
5    deal with offending clerics.

6          86.    Plaintiff justifiably relied on Defendants St. Cecilia's, Mission Dolores, and
7    the Archdiocese's representations that they would protect children from harm and not
8    subject them to unsupervised contact with individuals who had a proclivity to commit acts
9    of sexual abuse and sexual violence against children.

10         87.    The Defendants' aforementioned constructive fraud directly and proximately
11   caused Plaintiff to sustain severe and permanent damages as described above.

12         88.    Defendants engaged in despicable conduct and acted with a conscious
13   disregard of the rights of Plaintiff with an intent to vex, injure and annoy Plaintiff, such as
14   to constitute oppression, fraud or malice under CALIFORNIA CIVIL CODE § 3294. Plaintiff is
15   therefore entitled to punitive and/or exemplary damages in an amount sufficient to punish
16   and make an example of Defendants.

17                          **SIXTH CAUSE OF ACTION**
18                                  **FOR**
19                   **CIVIL CONSPIRACY TO COMMIT FRAUD**
20        **(Against Defendants Archdiocese, St. Cecilia's, Mission Dolores, and**
21                          **Archbishop Cordileone)**

22         89.    Plaintiff repeats, realleges, and incorporates by this reference each and all of
23   the allegations contained in paragraphs 1 through 88 of this Complaint.

24         90.    The Vatican, as the governing body of the Catholic Church, was responsible
25   for, among other things, maintaining the safety and well-being of members of the Catholic
26   Church and oversight of all dioceses, clergy, and appointed church leaders.

27         91.    The Archdiocese, St. Cecilia's, Mission Dolores, and Archbishop Cordileone
28   were part of an agreement with other co-conspirators, including the Vatican, the non-party

Archbishops, and other U.S. dioceses, to engage in a coordinated effort to conceal allegations of sexual assault and abuse from the public, including by making representations that churches and Catholic schools were safe, that priests were to be trusted, and that incidents of sexual abuse were not symptomatic of a recurring problem in the Catholic Church. The conspiracy started before Plaintiff was abused and continues to this day.

92. The Archdiocese, St. Cecilia's, Mission Dolores, and Archbishop Cordileone, as well as the Vatican, the non-party Archbishops, and other U.S. dioceses, have, for decades and continuing to the present day, adopted policies and practices intended to conceal sexual abuse committed by their agents. These policies and practices endangered numerous children in the past and were created with the knowledge that such policies would cause the repeated commission of a variety of intentional and negligent torts.

93. The Archdiocese, St. Cecilia's, Mission Dolores, and Archbishop Cordileone, as well as other U.S. dioceses, conspired to publicly deny responsibility for and conceal the immoral and sexually abusive crimes committed by their agents against children, and did so with the coordination of various popes and officials of the Vatican. Such purposeful and overt acts effectively protected child predators within the Catholic Church and elicited further abuse of innocent children.

94. The Archdiocese, St. Cecilia's, Mission Dolores, and Archbishop Cordileone each took overt acts in furtherance of the common scheme, including but not limited to the following:

      a. concealing the sexual assaults of and the identities and patterns of its sexually abusive agents;

      b. concealing sexual assaults and abuse committed by its agents from proper civil authorities;

      c. attacking the credibility of victims of Defendants' agents;

      d. protecting Defendants' agents from criminal prosecution for sexual

Case: 25-03021    Doc# 164-10    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 20 of 44

1     assaults and abuse against children;

2          e. allowing known child molesters to live freely in the community without
3             informing the public;

4          f. after receiving reports or notice of sexual misconduct by clerics,
5             transferring them to new locations without warning parishioners or the
6             public of the threat posed by such sexual abusers;

7          g. making affirmative representations regarding Defendants' agents' fitness
8             for employment in positions that include working with children, while
9             failing to disclose negative information regarding sexual misconduct by
10            clerics; and

11         h. concealing Defendants' actions and their agents' actions from survivors
12            of past abuse, thereby causing separate, current harm.

13    95.    In an April 1, 2010 Baltimore Sun article by Matthew Hay Brown entitled

14 *Pope Paul VI Alerted to Clergy Abuse in 1960s*, it is reported that Rev. Gerald M.C.

15 Fitzgerald met with Pope Paul VI in 1963 to discuss the problem of pedophilia in the

16 priesthood, and additionally sent a follow-up letter recommending that any offending

17 priests be removed from the ministry. Rather than accept Rev. Fitzgerald's

18 recommendations, Pope Paul VI updated the Vatican's procedure for dealing with

19 allegations of childhood sexual abuse, ensuring that any procedure to investigate such

20 claims would be handled with the utmost secrecy, by threat of excommunication.

21    96.    Pope Francis issued a public statement on or about August 20, 2018

22 regarding the child sexual abuse crisis within the Catholic Church, stating that the Church

23 "must acknowledge our past sins and mistakes" and admitting the Church "showed no care

24 for the little ones" and "abandoned them."

25    97.    In fall 2018, Archbishop Cordileone used the floor discussion at the U.S.

26 Conference of Catholic Bishops as a platform to suggest studying homosexuality in the

27 priesthood will get to the root of the problem of the priest sexual abuse crisis, rather than

28 acknowledging the Catholic Church's institutional role in turning a blind eye to abuse.

Page 18
COMPLAINT

1       98.     Although many U.S. dioceses have released lists of clergy who have been

2 credibly accused of childhood sexual abuse, the Archdiocese of San Francisco has not done

3 so.

4       99.     Even beyond a list of names, all dioceses continue to conceal important

5 information about credibly accused priests' patterns of grooming and sexual abuse. As a

6 result, children remain at risk of being sexually assaulted. Similarly, no U.S. dioceses have

7 disclosed when and how they and their agents, servants, and/or employees learned of the

8 information about the accused priests, which would assist the public's investigation into the

9 rampant problem of abuse in the Catholic Church.

10       100.    In the case at hand, the Archdiocese, St. Cecilia's, Mission Dolores, and

11 Archbishop Cordileone, and their co-conspirators (as well as the agents, servants, and/or

12 employees of each) entered into the conspiracy with the common purposes of 1) concealing

13 the improper and illegal activities taking place within the Archdiocese and other dioceses,

14 2) making representations that would induce parishioners to continue to believe Catholic

15 churches and schools to be safe places for children and to continue to promote

16 unsupervised one-on-one time between a Catholic priest and a child to be an innocent,

17 ordinary occurrence, 3) concealing from the public the nature and scope of sexual abuse of

18 minors in the Archdiocese and the Catholic Church, 4) continuing to hold out sexually

19 abusive priests as trustworthy members of the community, and 5) delaying or preventing

20 individuals from reporting sexual abuse to civil or criminal authorities.

21       101.    It was essential for the Defendants to engage in such a conspiracy because

22 doing so allowed Defendants to retain their positions of authority, trust, respect, and

23 influence within their respective communities and on the national and/or international

24 stage.

25       102.    Plaintiff (and/or his parents, at the time when he was a minor) reasonably

26 relied on Defendants' and/or their co-conspirators' false representations and/or

27 concealment of material facts in concluding that St. Cecilia's and Mission Dolores were

28 safe places for Plaintiff to attend school and that clergy employed by the Archdiocese could

**COMPLAINT**

1  be entrusted with Plaintiff's supervision.

2     103.   By engaging in this continuing conspiracy, the Defendants directly

3  committed fraud and enabled the commission of other torts, including but not limited to

4  assault, battery, and child sexual abuse.

5     104.   The Archdiocese, St. Cecilia's, Mission Dolores, and Archbishop Cordileone

6  each intentionally entered into the agreement and performed the actions set forth above,

7  knowing they were continuing to promote the aforesaid fraudulent acts.

8     105.   The Defendants' aforementioned civil conspiracy to commit fraud to benefit

9  the Catholic Church and its agents directly and proximately caused Plaintiff to sustain

10  severe and permanent damages as described above.

11     106.   The Defendants' aforementioned constructive fraud directly and proximately

12  caused Plaintiff to sustain severe and permanent damages as described above.

13     107.   Defendants engaged in despicable conduct and acted with a conscious

14  disregard of the rights of Plaintiff with an intent to vex, injure and annoy Plaintiff, such as

15  to constitute oppression, fraud or malice under CALIFORNIA CIVIL CODE § 3294. Plaintiff is

16  therefore entitled to punitive and/or exemplary damages in an amount sufficient to punish

17  and make an example of Defendants.

18  / / /

19  / / /

20  / / /

21

22

23

24

25

26

27

28

COMPLAINT

1

<u>**PRAYER**</u>

2

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

3     1.     For an award of special, general, and punitive damages according to proof;

4     2.     For civil penalties;

5     3.     For reasonable attorneys' fees and costs of said suit;

6     4.     For prejudgment interest, according to proof; and

7     5.     For such other and further relief as the Court deems just and proper.

8

9     Dated: April 24, 2020                    **ARIAS SANGUINETTI WANG & TORRIJOS LLP**

10

11                                        By:

12                                            MIKE ARIAS
                                             ARNOLD C. WANG
13                                           JAMIE GOLDSTEIN
                                             CRAIG S. MOMITA

14                                           **JANET, JANET & SUGGS, LLC**
                                             ANDREW JANET
15

16                                           Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

Case: 25-03021    Doc# 164-10    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 24
of 44

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff demands a trial by jury of all issues so triable in this action.

3

4    Dated: April 24, 2020          **ARIAS SANGUINETTI WANG & TORRIJOS LLP**

5

6                                                    By: _____

7                                                         MIKE ARIAS
                                                          ARNOLD C. WANG
8                                                         JAMIE GOLDSTEIN
                                                          CRAIG S. MOMITA

9                                                    **JANET, JANET & SUGGS, LLC**
                                                     ANDREW JANET
10

11                                                   Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Mike Arias, Esq. (CSB #115385) | Arnold C. Wang, Esq. (CSB #204431)
ARIAS, SANGUINETTI, WANG & TORRIJOS, LLP
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
TELEPHONE NO.: (310) 844-9696    FAX NO.: (310) 861-0168
ATTORNEY FOR (Name): MARC CROWTHER

**FOR COURT USE ONLY**

**FILED**
**SUPERIOR COURT**
**COUNTY OF SAN FRANCISCO**

APR 27 2020

CLERK OF THE COURT
BY: _____ Deputy Clerk

ANGELICA SUNGA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Marc Crowther vs. Archdioceses of San Francisco, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-20-584230<br>JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [✓] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): Six (6)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 24, 2020

Mike Arias, Esq.
_____
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**RJN 10-2**

Paul E. Gaspari, State Bar No. 76496
Daniel C. Zamora, State Bar No. 224375
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
475 Sansome Street, Suite 510
San Francisco, CA 94111
Telephone:    415.433.1400
Facsimile:    415.433.3883
pgaspari@weintraub.com
dzamora@weintraub.com

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**07/27/2020**
**Clerk of the Court**
**BY: ANNA TORRES**
**Deputy Clerk**

Attorneys for Defendants
THE ROMAN CATHOLIC ARCHBISHOP OF
SAN FRANCISCO, A Corporation Sole,
erroneously sued herein as the "Archdiocese of San
Francisco," "Saint Cecilia Catholic Church" and
"Mission Dolores Parish" and ARCBISHOP SALVATORE
JOSEPH CORDILEONE, erroneously sued herein as
"Bishop Salvatore Joseph Cordileone"

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MARC CROWTHER,<br><br>        Plaintiff,<br><br>    v.<br><br>ARCHDIOCESE OF SAN FRANCISCO, a<br>religious organization, et al.,<br><br>        Defendants. | **Case No.  CGC-20-584238**<br><br>**DECLARATION FOR AUTOMATIC 30-DAY EXTENSION PURSUANT TO CODE OF CIVIL PROCEDURE §§ 430.41(a)(2) AND 435.5(a)(2)** |

{2966438.DOC:}

1

Declaration for Automatic 30-Day Extension
Pursuant to CCP §§ 430.41 and 435.5

weintraub tobin chediak coleman grodin
LAW CORPORATION

I, Daniel C. Zamora, declare:

1. I am attorney with the law firm of Weintraub Tobin Chediak Coleman Grodin law corporation, attorneys for defendant THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, A CORPORATION SOLE, erroneously sued herein as the "Archdiocese of San Francisco," "Saint Cecilia Catholic Church" and "Mission Dolores Parish", and defendant ARCHBIHSOP SALVATORE JOSEPH CORDILEONE, erroneously sued herein as "Bishop Salvatore Joseph Cordileone" (collectively as "Defendants"). I am familiar with the facts in this declaration and, if called as a witness, I could competently testify to such facts under oath.

2. Pursuant to Code of Civil Procedure sections 430.41(a)(2) and 435.5(a)(2), the Defendants and plaintiff must meet and confer in person, or by telephone, at least five days before the date a responsive pleading is due. The parties have been unable to comply with this requirement. Therefore, Defendants are filing this declaration and are entitled to an automatic, 30-day extension of their pleadings.

3. This action is one of dozens of lawsuits filed against Catholic church entities for childhood sexual abuse in California pursuant to Assembly Bill 218, which ostensibly revives previously time-barred claims.

4. Actions venued in Northern California, including in San Francisco County, have now been ordered coordinated by the Alameda County Superior Court, acting on order of the Judicial Council of California, in JCCP No. 5108 entitled *In Re Northern California Clergy Cases*. Defendants have been waiting for the Alameda County Superior Court to issue the coordination order, as this action would be subject to coordination as an "add-on" action.

5. The coordination order was issued on July 22, 2020, but a copy was not served on counsel for Defendants until the morning of July 27, 2020. The coordination order provides that cases are to be coordinated in the Alameda County Superior Court. A copy of the order is attached hereto as Attachment "A."

6. On the morning of July 27, 2020, I emailed a copy of the coordination order to counsel

Declaration for Automatic 30-Day Extension
Pursuant to CCP §§ 430.41 and 435.5

1  for plaintiff and proposed that we postpone all further proceedings in this Court, including
2  abstaining on filing a demurrer and motion to strike. I had not received a reply to my proposal
3  before this declaration was due to be filed.

4      7. I remain optimistic that Defendants' issues with the Complaint, including issues that
5  would be raised through a demurrer and motion to strike, can be addressed in the coordination
6  proceedings in Alameda County Superior Court.    If necessary, however, Defendants will go
7  through a "meet and confer" process for filing a demurrer and motion to strike.

8      I declare under penalty of perjury under the laws of California that the foregoing is true
9  and correct.  Executed on July 27, 2020 at San Francisco, California.

Daniel C. Zamora

weintraub tobin chediak coleman grodin
LAW CORPORATION

{2966438.DOC:}                              3      **Declaration for Automatic 30-Day Extension
                                                   Pursuant to CCP §§ 430.41 and 435.5**

# ATTACHMENT A



20907601

FILED
ALAMEDA COUNTY

JUL 2 2 2020

CLERK OF THE SUPERIOR COURT
By_____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| IN RE NORTHERN CALIFORNIA CLERGY CASES | No. JCCP 5108 |
|---|---|
| | ORDER GRANTING PETITION TO COORDINATE |
| | DATE 7/22/20<br>TIME 9:00<br>DEPT 21 |

The cases in the petition for coordination generally (1) allege childhood sexual assault as defined in CCP 340.1(d) and (2) were filed under the reprieve from the statute of limitations in CCP 340.1(q) as recently amended by AB 218. A group of plaintiffs opposes parts of the petition. No defendant has opposed the petition.

This court has been appointed coordination motion judge in JCCP 5108, but the court is aware of related cases in JCCP 5114 (which does not have an assigned coordination motion judge) and related cases filed in Alameda County. In the interest of case coordination generally, the court address all three categories of cases.

1

IN RE NORTHERN CALIFORNIA CLERGY CASES, JCCP 5108

On 5/8/20, plaintiff in John SF-1 Doe v. Doe 1, Superior Court of the State of California, San Francisco, Case no. CGC-20-584-162 filed a petition to coordinate.

On 6/15/20, the Chair of the Judicial Council issued an Order Assigning Coordination Motion Judge, authorizing the presiding Judge in Alameda County to appoint a Coordination Motion Judge. (CCP 404; CRC 3.524.)

On 7/1/20, Judge Brad Seligman as Supervising Judge of Complex assigned Winifred Smith to sit as coordination motion judge to determine whether coordination of the included actions is appropriate. (C.C.P. § 404; C.R.C. 3.524.)

On 7/22/20, Judge Smith as coordination motion judge considered whether to coordinate the included actions. The included actions are defined as the actions identified in the petition dated 5/8/20 and the Judicial Council's order dated 6/15/20.

The identified superior court case numbers in the Petition for Coordination filed 5/8/20 in *John SF-1 Doe v. Doe 1*, San Francisco Case No. CGC-20-584-162, and in the Judicial Council Order dated 6/15/20 are:

John SF-1 Doe v. Doe 1, San Francisco Case No. CGC-20-584-162

John OAK-4 Doe v. Roman Catholic Bishop of Oakland, Alameda Case No. RG20-056654

John M-1 Doe v. Doe 1, San Francisco Case No. CGC-20-583959

John SF-2 Doe v. Doe 1, San Francisco Case No. CGC-20-584124

John SF-1 Doe v. Doe 1, San Francisco Case No. CGC-20-584163

John SR-1 Doe v. Doe 1, Sonoma Case No. SCV-266141

2

BAY AREA CLERGY CASES, JCCP 5114

Separate and independent of the petition for coordination in JCCP 5108, plaintiffs filed a similar and overlapping petition for coordination. The Judicial Council has identified this petition for coordination as Bay Area Clergy Cases, JCCP 5114. The Judicial Council has not assigned JCCP 5114 to any county for appointment of a coordination motion judge. (https://www.courts.ca.gov/documents/CivilCaseCoord_2012toPresent_JCCPLog.pdf)

The identified superior court case numbers in the Petition for Coordination filed 6/15/20 in *Brogan v. Doe 1*, Alameda Case No. HG19-048691, are:

ALAMEDA CASES

McLennan v. Doe, Alameda Case No. RG20-061260

Doe OK 1009 v. Doe, Alameda Case No. HG20-053984

Barnes v. Doe, Alameda Case No. HG20-053983

Brogan v. Doe 1, Alameda Case No. HG19-048691

Doe OK 1017 v. Doe, Alameda Case No. RG20-057493

Doe OK 1008 v. Doe, Alameda Case No. HG20-053924

Doe OK 1011 v. Doe, Alameda Case No. RG20-057425

Doe OK 1031 v. Doe, Alameda Case No. HG20-053951

Doe OK 1014 v. Doe, Alameda Case No. HG20-053992

Stonebraker v. Doe, Alameda Case No. HG20-053989

Doe OK 1022 v. Doe, Alameda Case No. HG19-048685

Ash, McCann, and Stone v. Doe, Alameda Case No. RG19-039073

Duenas v. Doe, Alameda Case No. RG19-041044

Houle v. Doe, Alameda Case No. HG19-042086

Lopez v. Doe, Alameda Case No. RG20-048852

3

1  J.S. v. Doe, Alameda Case No. RG20-061096

2

3  SAN FRANCISCO CASES

4      Doe SF 1013 v. Doe, San Francisco No. CGC-20-583648

5      Doe SF 1010 v. Doe, San Francisco No. CGC-20-583643

6      Goldberg v. Doe, San Francisco No. CGC-19-581942

7

8  SONOMA CASES

9      Doe SR 1020 v. Doe, Sonoma No. SCV-265775

10      Doe SR 1021 v. Doe, Sonoma No. SCV-265774

11      Doe SR 1015 v. Doe, Sonoma No. SCV-266360

12      Holden, Doe 159, and Doe 164 v. Doe, Sonoma No. SCV-265359

13      Sloan, Doe 129, and Doe 130 v. Doe, Sonoma No. SCV-2665758 [typo?]

14      Doe 11 v. Doe, Sonoma No. SCV-265757

15      Zink and Doe 58 v. Roman Catholic Bishop of Santa Rosa, Sonoma No. SCV-265991

16

17  OTHER CASES

18      Doe MR 1006 v. Doe, Monterey No. 19CV---005258

19      Doe 74 and Doe 75 v. Doe, Monterey No. 19CV---004154

20      Hoey v. Doe, Contra Costa No. MSC19-02227

21      Doe 103 v. Doe, Santa Clara No. _____

22

23

24  ADDITIONAL CASES NOT IDENITFIED IN EITHER PETITION FOR COORDINATION

25      The Order of 7/1/20 assigning the coordination motion judge stated that the court

26  reviewed its own records and identified cases that could be added to the coordinated proceeding.

4

These are not "included cases," but can be added to the JCCP under CRC 3.531. Cases that are potential add-on cases include:

  Doe v. Doe, Alameda Case No. RG20065435

  Doe v. Doe, Alameda Case No. RG20065437

  Doe v. Doe, Alameda Case No. RG20065425

  Doe v. Roe, Alameda Case No. RG20064685

  Doe v. Doe, Alameda Case No. RG20064084

  Doe v. Doe, Alameda Case No. RG20064221

  Doe v. Roe, Alameda Case No. RG20064759

## THE INCLUDED CASES IN JCCP 5108 ARE COLLECTIVELY COMPLEX

The included cases in JCCP 5108 (and JCCP 5114) are complex, given the large number of parties, potentially extensive motion practice raising difficult or novel legal issues, and potentially extensive discovery practice. (Cal. Rules of Court 3.400(b).) This Court previously managed Clergy III, JCCP 4359, and a review of the court's own register of actions demonstrates that it was a complex matter. (Evid Code 452(d).)

## COORDINATION IN JCCP 5108 IS APPROPRIATE (CCP 404.1)

Section 404.1 of the Code of Civil Procedure outlines various factors that the court must consider when ruling on a Petition of Coordination. Coordination is appropriate if it "will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of the parties, witnesses, and counsel, the relative development of the actions and the work product of counsel, the efficient

utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and the likelihood of settlement of the actions without further litigation should coordination be denied." (CCP § 404.1.) (See also *Ford Motor Warranty Cases* (2017) 11 Cal. App.5th 626.)

The included cases share common questions of law and some common issues of fact. Although there is no doubt that numerous individual issues will ultimately have to be resolved in the included cases, that alone does not preclude coordination. (*McGhan Med. Corp. v. Superior Court* (1992) 11 Cal. App. 4th 804, 811-812.) The cases appear to be in all in their early stages. The cases will benefit from common and consistent orders on pleadings, discovery, and other matters. Coordination will provide substantial benefits to the efficient utilization of judicial facilities and manpower.

Courts in complex cases, coordinated or not, may approve stream-lined procedures including standardized complaints, plaintiff fact sheets and authorizations, and defendant fact sheets. In short, "the cases are ripe for coordination on discovery and related pretrial matters." (*Ford Motor Warranty Cases* (2017) 11 Cal. App.5th 626, 642.) Thus "the benefits of early coordination of discovery and motion practice...are in no way negated by the court's concern over litigation that is "heavily individualized ...." (*Ford Motor Warranty*, 11 Cal.App.5th at 643 [quoting *McGhan*, 11 Cal.App.4th at 808].)

Coordination would be more convenient for the parties, witnesses, and counsel. Coordination would prevent duplicative depositions of key defendant witnesses. Coordination will ease the scheduling demands on counsel because multiple judges will not be setting different and potentially inconsistent timelines.

6

Coordination has undeniable benefits in these cases. Coordination appears to be the most efficient utilization of judicial resources, taking into account the calendars of the courts and the disadvantages of duplicative and inconsistent rulings, orders or judgments.

The Court ORDERS that the included cases in JCCP 5108 are coordinated. (CCP 404.1; CRC 3.529.)

GEOGRAPHIC SCOPE OF COORDINATED PROCEEDING

The order of 7/1/20 setting the hearing on the petition to coordinate asked the parties to address the geographic scope of any coordinated proceeding. On reflection, the coordination motion judge does not need to, and does not, define the geographic scope of the coordinated proceeding. A JCCP is defined by (1) the identity of the included cases in the petition and (2) the identify of cases that are subsequently added to the JCCP. (CRC 3.521, 3.529(a), 3.531, 3.544.)

The convenience of the parties, witnesses, and counsel, as well as the efficient utilization of judicial resources will require some discussion about which cases belong in Northern California Clergy Cases, JCCP 5108, Southern California Clergy Cases, JCCP 5101, and the Diocesan [San Diego] Cases, JCCP 5105.

At the hearing on 7/22/2020, there was general agreement among counsel that the County of filing define the JCCPs. One proposal was that JCCP 5108 include all cases filed in counties north of and including Monterey, Kings, Tulare, and Inyo Counties. The court does not decide that issue in this order. This will require discussion among the parties as well as among the coordination trial judges assigned to manage the JCCPs.

7

SUBJECT MATTTER SCOPE OF COORDINATED PROCEEDING

The Judicial Council has identified the proceedings as Northern California Clergy Cases and Bay Area Clergy Cases. Complaints alleging childhood sexual assault as defined in CCP 340.1(d) are not necessarily limited to clergy in any specific religious denomination or to clergy in religious institutions.

The court does not limit the subject matter scope of the JCCP to clergy in religious institutions or to religious institutions in any specific religious denomination. The court will consider on a case specific basis whether any specific case should be added to the coordinated proceeding. (CRC 3.531, 3.544.)

At the hearing on 7/22/2020, there was general agreement among counsel that the JCCP include claims against clergy and against religious institutions (regardless of denomination). The views were unclear or mixed about the management of cases involving against religious schools and other religious affiliated institutions. There was general agreement that the JCCP should not include claims against non-religious institutions such as schools, camps, and scouting organizations. Regarding schools specifically, there was concern that claims regarding schools would involve public entity law and that perhaps claims against public entities, if any, should be managed separately.

LOCATION OF COORDINATED PROCEEDING

The coordination motion judge must recommend a particular superior court for the site of the coordinated proceeding. (CRC 3.530.) The factors to consider include: (1) the number of included actions in particular locations; (2) whether the litigation is at an advanced stage in a

8

particular court; (3) the efficient use of court facilities and judicial resources; (4) the locations of witnesses and evidence; (5) the convenience of the parties and witnesses; (6) the parties' principal places of business; (7) the office locations of counsel for the parties; and (8) the ease of travel to and availability of accommodations in particular locations. (CRC 3.530(b).)

The coordination motion judge recommends that that proceeding be located in Alameda County. All counsel agreed that Alameda was the appropriate location for the JCCP.

Alameda managed Clergy III, JCCP 4359. Alameda has institutional memory and experience in the form of court staff who worked on *Clergy III*. (*Center For Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 621 [appellate justices and trial court judges have "staff … to help them identify errors in counsel's reasoning, misstatements of law and miscitations of authority, and to do original research to uncover ideas and authorities that counsel may have missed, or decided not to bring to the court's attention"].)

The court is currently aware of more cases filed in Alameda than in San Francisco, but counsel states that dozens if not hundreds of additional cases might be filed and that they might be filed in many different counties. (Cunny Dec., para 19.) Alameda is marginally easier regarding ease of driving travel because it is closer to Contra Costa, Sacramento, and other counties to the east. All the identified cases appear to be at similar states of development, both courts have complex departments, both are equally convenient for parties and witness, both are the principal place of business for relevant defendant entities, and the office locations of counsel for the parties are throughout the state.

///

///

9

## DESIGNATION OF APPELLATE DISTRICT

The must designate a court of appeal for review of this order. (CCP 404.2.) The court selects the First District Court of Appeal for review of this order.

The court recommends that the Judicial Council designate a single District of the Court of Appeal as the intermediate reviewing court for all of (1) Southern California Clergy Cases, JCCP 5101, (2) Diocesan [San Diego] Cases, JCCP 5105, (3) Northern California Clergy Cases, JCCP 5108, and (4) Bay Area Clergy Case, JCCP 5114.

When the Judicial Council created Clergy I (JCCP 4286), Clergy II (JCCP 4297), and Clergy III (JCCP 4359) in 2004, the Judicial Council apparently designated the Court of Appeal, Second District, as the common intermediate court of appeal. *Doe v. Roman Catholic Bishop of San Diego* (2009, 2nd Dist) 101 Cal.Rptr 3d 398 at fn 3 [unpublished] states:

> The cases in this appeal are among many from throughout the State against various entities and individuals affiliated with the Catholic Church for childhood sexual abuse. Those cases have been coordinated in the Los Angeles County Superior Court and formerly in the Alameda County Superior Court. Southern California cases are known as *Clergy Cases I* (JCCP No. 4286) and *Clergy Cases II* (JCCP No. 4297). The Bay Area cases are known as *Clergy Cases III* (JCCP No. 4359). The Second District of the Court of Appeal is the intermediate appellate court for all of the coordinated cases.

(See also *Hightower v. Roman Catholic Bishop of Sacramento* (2006, 2nd Dist) 142 Cal.App.4th 759, 761 fn 1 [similar]; *Perez v. Roe 1* (2006, 2nd Dist) 146 Cal.App.4th 171, 173 fn 3 [similar]; (2006, 2nd Dist) 146 CalApp.4th 216, 220 fn 4 [similar].)

IT IS THEREFORE ORDERED:

1. The actions identified above in JCCP 5108 are complex (CRC 3.403);

2. Coordination of these actions is appropriate and therefore the Petition for Coordination is GRANTED (CCP 404.4; CRC 3.529);

10

3. All further proceedings in the included actions in JCCP 5108 are STAYED (CRC 3.529(b));

4. Alameda County Superior Court is recommended as the coordination trial court for further proceedings in JCCP 5108 and its Local Rules shall be the rules applicable except where modified by order of the Coordination Trial Judge (CRC 3.530);

5. The First District Court of Appeal is selected as the reviewing court (CCP 404.2) for this order;

6. The court recommends that the Judicial Council designate a single District of the Court of Appeal as the intermediate reviewing court for all of (1) Southern California Clergy Cases, JCCP 5101, (2) Diocesan [San Diego] Cases, JCCP 5105, (3) Northern California Clergy Cases, JCCP 5108, and (4) Bay Area Clergy Case, JCCP 5114.

7. Petitioners in JCCP 5108 are ORDERED to promptly file this order in each included action in JCCP 5108, serve all parties in the included actions, serve all counsel who filed any objection to the petition, and submit this order to the Chair of the Judicial Council. (CRC 3.529)

8. Counsel for Petitioners in JCCP 5114, who filed an objection to the petition in JCCP 5108, are ORDERED to promptly file this order in each included action in JCCP 5114 and to promptly serve a copy of this order on all parties in JCCP 5114.

9. Counsel for any party identified in the petition in JCCP 5114 or in any case that (1) alleges childhood sexual assault as defined in CCP 340.1(d) and (2) is filed under the reprieve from the statute of limitations in CCP 340.1(q) as recently amended by AB 218 may, after appointment of a coordination trial judge, request to coordinate any case as an add-on case. (CRC 3.544.) It appears that the add-on case procedure must wait until the

11

1  appointment of the coordination trial judge. The coordination trial judge will determine

2  whether JCCP 5108 is limited to cases with religious entity defendants.

3  10. The Court encourages distribution of this order widely, especially to counsel with any

4  cases that are likely to be coordinated in these proceedings. All counsel with cases filed

5  in Northern California that concern these proceedings are encouraged to attend further

6  CMCs and hearings in the JCCP. The early participation of counsel in these coordinated

7  proceedings will assist in moving the case forward. Counsel may attend hearings without

8  entering a formal appearance.

Dated: July 22, 2020

Winifred Y Smith
Judge of the Superior Court

12