**RJN 12**

GEORGE J. TICHY, II, Bar No. 041146
gtichy@littler.com
MICHELLE R. BARRETT, Bar No. 197280
mfalconer@littler.com
LISA LIN GARCIA, Bar No. 260582
llgarcia@littler.com
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, California 94108.2693
Telephone:  415.433.1940
Facsimile:  415.399.8490

Attorneys for Defendant
THE ROMAN CATHOLIC ARCHBISHOP OF SAN
FRANCISCO, A Corporation Sole (erroneously sued as
"Junipero Serra High School," and "The Roman Catholic
Archbishop of San Francisco")

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BOHNERT,<br>Plaintiff,<br><br>v.<br><br>JUNIPERO SERRA HIGH SCHOOL; THE<br>ROMAN CATHOLIC ARCHBISHOP OF<br>SAN FRANCISCO; and DOES 1 through 25,<br>Defendants. | Case No. 3:14-cv-02854-WHO<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT** |

Date:            September 2, 2015
Time:            2:00 p.m.
Location:        Courtroom 2
Judge:           Hon. William H. Orrick

COMPLAINT FILED:       May 15, 2014
FIRST AMENDED
COMPLAINT FILED:       October 3, 2014
TRIAL DATE:            November 30, 2015

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEE'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:14-cv-02854-WHO**

# TABLE OF CONTENTS

                                                                          PAGE

I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................... 1

II.   STATEMENT OF FACTS ............................................................................... 2

      A.    Junipero Serra High School ................................................................ 2

      B.    Plaintiff Was a Union Member Throughout Her Employment ................... 3

      C.    Plaintiff Was An Active Leader in Serra's Campus Ministry Department ................. 4

      D.    Serra Promptly Engaged in Corrective Action ..................................... 5

            1.    Serra Immediately Removed Graffiti About Plaintiff .................... 5

            2.    Serra Disciplined Two Students for a Social Media Post about Plaintiff ........ 6

            3.    Serra Conducted a Full Investigation Concerning the Upskirt Incident .......... 6

                  a.    May 16: Serra Began Investigation of an Upskirt Image
                        Rumor about Plaintiff ........................................................ 6

                  b.    May 17: Serra Contacted Police & Continued Investigation.............. 7

                  c.    May 17-20: Serra Began Executing on a Remedial Action Plan........ 8

                  d.    May 20: Plaintiff Provided More Information about the Rumor........ 8

                  e.    May 21: Serra's Investigation & Remedial Efforts Continued.......... 9

                  f.    May 22 to June 6: Serra Continued Remedial Action Through
                        Student Discipline ........................................................... 10

            4.    Serra Attempted to Find an Anonymous Meme's Creator ............................ 12

            5.    Serra's Remedial Action in School Year 2013-2014................................... 12

      E.    Plaintiff Took a Leave of Absence from May 17, 2013 through July 14, 2015 ........ 14

      F.    Plaintiff Initiated an EEOC Charge and Filed Her Lawsuit ..................................... 14

III.  ARGUMENT ............................................................................................ 14

      A.    Legal Standard For Summary Judgment.............................................. 14

      B.    Plaintiff's FEHA Claims Fail Because the FEHA Does Not Apply to
            Defendant ...................................................................................... 14

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

C.    Plaintiff's Title VII Claims Are Barred by the Exhaustion of Remedies Doctrine and the Statute of Limitations ................................................................. 15

D.    Plaintiff's Hostile Work Environment Claims Fail as a Matter of Law Because Serra Took Prompt Corrective Action ........................................................... 16

E.    Plaintiff's Failure to Prevent Harassment Claims Cannot Survive ........................... 18

     1.    No Actionable Harassment by Defendant Occurred ..................................... 18

     2.    Defendant Took Appropriate Steps to Correct and Prevent Harassment ...... 19

F.    Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claims Fail ..................................................................................................................... 19

G.    Deciding Plaintiff's Claims Infringes on Defendant's First Amendment Rights ...... 21

H.    Plaintiff's Title VII and FEHA Claims Fail Because of the Ministerial Exception ............................................................................................................ 23

I.    Plaintiff's Claims Are Waived Because She Did Not Timely File a Grievance ....... 25

IV.    CONCLUSION ................................................................................................................ 25

LITTLER MENDELSON, P.C.

650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**TABLE OF CONTENTS**
ii.
**Case No. 3:14-cv-02854-WHO**

Case: 25-03021    Doc# 164-12    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 4 of 34

**TABLE OF AUTHORITIES**

2

PAGE

3 FEDERAL CASES

4 *Alcazar v. Corporation of the Catholic Archbishop of Seattle*
5    627 F.3d 1288 (9th Cir. 2010) ........................................................................23, 24

6 *Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ....................................................................................14

7
*Brooks v. City of Mateo*
8    229 F.3d 917 (9th Cir. 2000) ......................................................................16

9 *Bryce v. Episcopal Church in the Diocese of Colorado*
10    289 F.3d 648 (10th Cir. 2002) ....................................................................21

11 *Campbell v. Lockheed Martin Energy Sys., Inc.*
   2007 U.S. Dist. LEXIS 57871 (E.D. Tenn. Aug. 7, 2007) ..........................17
12
*Celotex Corp. v. Catrett*
13    477 U.S. 317 (1986) ....................................................................................14

14 *Cozzi v. County of Marin*
   2010 U.S. Dist. LEXIS 37781 (N.D. Cal. Apr. 16, 2010) ..........................18
15
*Cramer v. Consolidated Freightways, Inc.*
16    209 F.3d 1122 (9th Cir. 2000) ....................................................................20

17 *Dezham v. Macy's West Stores, Inc.*
18    2015 U.S. Dist. LEXIS 73 (C.D. Cal. Jan. 2, 2015) ..................................18

19 *EEOC v. Catholic Univ. of Am.*
20    83 F.3d 455 (D.C. Cir. 1996) ....................................................................21

21 *Elvig v. Calvin Presbyterian Church*
   375 F.3d 951 (9th Cir. 2004) ......................................................................22
22
*Faragher v. City of Boca Raton*
23    524 U.S. 775 (1998) ....................................................................................16

24 *Folkerson v. Circus Circus Enters., Inc.*
   107 F.3d 754 (9th Cir. 1997) ......................................................................16
25
*Gellington v. Christian Methodist Episcopal Church, Inc.*
26    203 F.3d 1299 (11th Cir. 2000) ..................................................................21

27 *Harris v. Forklift Sys., Inc.*
28    510 U.S. 17 (1993) ......................................................................................16

LITTLER MENDELSON, P.C.

650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

TABLE OF AUTHORITIES        iii.        Case No. 3:14-cv-02854-WHO

Case: 25-03021    Doc# 164-12    Filed: 02/19/26    Entered: 02/19/26 18:11:36    Page 5 of 34

*Holly D. v. Cal. Institute of Tech.*
339 F.3d 1158 (9th Cir. 2002)..................................................................19

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*
132 S. Ct. 694 (2012) ..............................................................2, 21, 24, 25

*Johnson v. County of Yolo*
2013 U.S. Dist. LEXIS 24955 (E.D. Cal. Feb. 22, 2013) ........................20

*Kedroff v. St. Nicholas Cathedral*
344 U.S. 94 (1952)...................................................................................21

*Krause v. Sonora Community Hosp.*
1997 U.S. Dist. LEXIS 929 (E.D. Cal. Jan. 23, 1997) .............................15

*Lucero v. Nettle Creek Sch. Corp.*
566 F.3d 720 (7th Cir. 2009)....................................................................18

*MacDonald v. Grace Church Seattle*
457 F.3d 1079 (9th Cir. 2006)..................................................................15

*McGinest v. GTE Serv. Corp.*
360 F.3d 1103 (9th Cir. 2004)..................................................................16

*Miniace v. Pacific Mar. Ass'n*
424 F. Supp. 2d 1168 (N.D. Cal. 2006) ...................................................20

*Newcombe v. Adolf Coors Co.*
157 F.3d 686 (9th Cir. 1998)....................................................................20

*Oncale v. Sundowner Offshore Serv.*
523 U.S. 75 (1998)..............................................................................16, 25

*Ortiz v. Pacific,*
973 F.Supp.2d 1162 (E.D. Cal. 2013).................................................20, 21

*Rabidue v. Osceola Ref. Co.*
805 F.2d 611 (6th Cir. 1986), cert. denied, 107 S. Ct. 1983 (1987)........16

*Saba v. Unisys Corp.*
2015 U.S. Dist. LEXIS 93452 (N.D. Cal. July 17, 2015) ........................21

*Saxton v. AT&T*
10 F.3d 526 (7th Cir. 1993)......................................................................17

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Schneider v. TRW, Inc.*
938 F.2d 986 (9th Cir. 1991)...................................................................20

*Serbian Eastern Orthodox Diocese for United States & Canada v. Milivojevich*
426 U.S. 696 (1976) .......................................................................21

*Soremekun v. Thrifty Payless, Inc.*
509 F.3d 978 (9th Cir. 2007)..............................................................25

*Summa v. Hofstra University*
708 F.3d 115 (2d Cir. 2013)...............................................................17

*Tackett v. County of Imperial*
2006 U.S. Dist. LEXIS 83507. (S.D. Cal. Nov. 14, 2006) ...........................18

*United Air Lines v. Evans*
431 U.S. 553 (1977) ........................................................................15

*Vance v. Ball State Univ.*
2008 U.S. Dist. LEXIS 69288 (S.D. Ind. Sept. 10, 2008) ...........................18

*Watson v. Jones*
80 U.S. 679 (1872) .........................................................................21

*Werft v. Desert Southwest Annual Conf.*
377 F.3d 1099 (9th Cir. 2004).............................................................21

**CALIFORNIA CASES**

*Burgess v. Superior Court*
2 Cal.4th 1064 (1992).......................................................................20

*Charles J. Rounds Co. v. Joint Council of Teamsters*
4 Cal. 3d 888 (1971).........................................................................25

*Charles J. Vacanti, M.D. Inc. v. State Comp. Ins. Fund*
24 Cal. 4th 800 (2001).................................................................19, 20

*Cole v. Fair Oaks Fire Protect. Dist.*
43 Cal. 3d 148 (1987).................................................................20, 21

*Doe v. Capital Cities*
50 Cal.App.4th 1038 (1996) ..........................................................19, 20

*Fermin v. Fedco, Inc.*
7 Cal. 4th 701 (1994)........................................................................21

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Hughes v. Pair*
   46 Cal.4th 1035 (2009) ..................................................................................20

*Janken v. GM Hughes*
   46 Cal.App.4th 55 (1996) ..............................................................................20

*Lyle v. Warner Bros. Television Prod.*
   38 Cal. 4th 264 (2006) .............................................................................16, 25

*Martinez v. Scott Specialty Gases, Inc.*
   83 Cal. App. 4th 1236 (2000) .........................................................................25

*Okoli v. Lockheed Technical Operations Co.*
   36 Cal. App. 4th 1607 (1995) .........................................................................15

*Trujillo v. North Co. Transit Dist.*
   63 Cal. App. 4th 280 (1998) ......................................................................18, 19

**OTHER CASES**

*Elvig v. Ackles*
   123 Wn. App. 491 (2004) .........................................................................22, 23

**FEDERAL STATUTES**

42 U.S.C. § 2000e, et seq. ...................................................................... passim

**CALIFORNIA STATUTES**

Cal. Gov't Code § 12926(d)......................................................................14, 16

Cal. Gov't Code § 12940(j) ..............................................................................14

Cal. Gov't Code § 12940(j)(4)(B) ..................................................................1, 14

Cal. Gov't Code § 12940(k)..........................................................................19, 14

Cal. Labor Code § 3600(a) ...............................................................................21

Cal. Labor Code § 3602 ...................................................................................21

**OTHER AUTHORITIES**

29 C.F.R. § 1601.13(a)(2) .................................................................................16

29 C.F.R. § 1604.11(e) .....................................................................................16

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

Fed. R. Civ. P. 56(c) ...................................................................................................14

U.S. Constitution, First Amendment ...............................................................2, 21, 24, 25

LITTLER MENDELSON, P.C.

650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**TABLE OF AUTHORITIES**                                   vii.                          **Case No. 3:14-cv-02854-WHO**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

YOU ARE HEREBY NOTIFIED that, on September 2, 2015, at 2:00 p.m. in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendant The Roman Catholic Archbishop of San Francisco, A Corporation Sole[1] ("Defendant" or "Corporation Sole") will move, and hereby does move, for summary judgment or alternatively, partial summary judgment.

Pursuant to Federal Rule of Civil Procedure 56, Defendant seeks summary judgment on each claim pled in Plaintiff's First Amended Complaint and requests judgment in its favor. This motion is made on the grounds that there are no disputed issues of material fact, each cause of action fails as a matter of law, and Defendant is entitled to judgment. Alternatively, Defendant seeks partial summary judgment on those claims that this Court finds fail as a matter of law. This Motion is based upon this Notice of Motion and Motion; the Statement of Issues and Memorandum of Points and Authorities; Request for Judicial Notice; supporting declarations submitted and attachments thereto; the pleadings and records in this case; and such further oral and documentary evidence that may be presented at or before the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Defendant is entitled to summary judgment, or in the alternative to partial summary judgment, on the following grounds:

1. Plaintiff's claims under the California Fair Employment and Housing Act ("FEHA") against Junipero Serra High School ("Serra") fail because Serra is part of the Corporation Sole and not a separate legal entity. Summary judgment is proper because Defendant is a nonprofit religious corporation excluded from FEHA's definition of "employer." Cal. Gov't Code §§ 12926(d), 12940(j)(4)(B).

2. Plaintiff's Title VII claims fail because Plaintiff failed to properly exhaust her administrative remedies and the claims are barred by the statute of limitations. Plaintiff filed her administrative charge against Defendant with the EEOC on April 22, 2014 and all of the allegations supporting her charge arose more than 180 days before the filing of her EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1).

---

[1] Defendant The Roman Catholic Archbishop of San Francisco, A Corporation Sole, is the proper legal name for the defendant entities sued as "Junipero Serra High School" and "The Roman Catholic Archbishop of San Francisco."

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF.'S MOTION FOR SUMMARY JUDGMENT

Case No. 3:14-cv-02854-WHO

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 10 of 34

3.    Plaintiff's Title VII and FEHA claims fail because Defendant promptly took adequate corrective and preventative actions.  They also fail because no actionable harassment by Defendant occurred and Defendant had no prior knowledge of the disciplined students' propensity to engage in the conduct about which Plaintiff's complains.

4.    Plaintiff's intentional and negligent infliction of emotional distress claims fail because her claims are based on normal workplace actions, she cannot prove these claims' elements, and they are barred by California Workers' Compensation Act's ("WCA") exclusive remedy provision.

5.    All of Plaintiff's claims fail because the Court's involvement in evaluating Defendant's operations, investigation and remedial action infringes on Defendant's rights under the Establishment and the Free Exercise Clauses of the First Amendment.  U.S. Const. Amend I.  Defendant is a religious organization.  Evaluating the adequacy of Defendant's remedial actions requires involvement or entanglement in Defendant's ecclesiastical decisions, and infringes on Defendant's First Amendment rights.

6.    Plaintiff's Title VII and FEHA claims are barred by the ministerial exception.  *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 132 S. Ct. 694 (2012).  Plaintiff was employed by a religious institution and performed religious duties and responsibilities during her employment, and is therefore a "minister" within that exception.

7.    All of Plaintiff's claims are covered by a collective bargaining agreement ("CBA") between her union and the Corporation Sole.  It is undisputed that she did not file a grievance under the CBA's mandatory grievance procedure, and therefore, her claims are waived.

## II.    STATEMENT OF FACTS

### A.    Junipero Serra High School.

The Corporation Sole is a religious non-profit corporation recognized by the state of California. (Def's Request for Judicial Notice in Support of Motion to Dismiss, Exh. A [ECF No. 9]; Order re Defendants' Motion to Dismiss, 1:22-2:1, 6:2-3, 7:19-8:2, n. 4 [ECF No. 36].)  Serra is a Catholic college preparatory high school for young men. (Declaration of Michelle R. Barrett ("Barrett Decl."), ¶2, Exh. 1 [302:22-303:21, 318:21-319:23, Exh. 1030 at pp.6-7].)[2] Serra is owned, operated, and maintained by the

---

[2] All cited deposition excerpts and declarations are attached to the declaration of Michelle R. Barrett.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 11 of 34

Corporation Sole. (¶16, Exh. 15 [¶4, Exh. A].)

According to Serra's Philosophy Statement, Serra is a "Catholic school participating in the education ministry of the Church" that "has the responsibility to provide an integrated ministry through the celebration of Word and Sacrament, the building of community and the promotion of service to the world." (¶2, Exh. 1 [302:22-303:21, Exh. 1030 at p.7.]) It also calls on Serra teachers to have "a commitment to building the Kingdom of God" and "to serve as authentic adult examples of Christian faith, hope, love and service." It further provides that Serra's education process is "grounded in the Catholic tradition." (¶2, Exh. 1 [302:22-303:21, Exh. 1030 at p.7].) Through its curriculum, Serra focuses on developing students in the areas of faith, wisdom, service, community, and leadership. (¶2, Exh. 1 [302:22-303:21, 321:11-21, Exhs. 1030 at pp.6-7, 1032 at pp.6-7].) Students are expected to behave consistent with Serra's Catholic principles and to participate in school-sponsored religious activities. (¶2, Exh. 1 [321:11-21, Exh. 1032 at pp.4, 56-59].)

Serra's sexual harassment policy is in both its Faculty and its Student-Parent Handbooks and expressly prohibits sexual harassment of an employee. (¶2, Exh. 1 [319:24-320:5]; ¶3, Exh. 2 [184:18-185:20, 185:21-187:8, Exhs. 3, 6 at pp.9, 21, 8 at p.53].) Each school year, Serra distributes the faculty handbook to Serra faculty and staff and the student handbook to Serra faculty, staff and students. (¶17, Exh. 16 [¶3].) Both handbooks are also available on Serra's website. (¶17, Exh. 16 [¶3].) The Archdiocese's Harassment Policy, incorporated by reference into the Faculty Handbook, provides that it is the "duty, as God's family, to respect all those whom we encounter" and emphasizes that it "is essential that the Church take a leadership role in condemning such behavior and help those involved in providing ministry, and those who are the recipients of that ministry, to better understand and respond to these problems when they arise." (¶3, Exh. 2 [185:21-187:8, Exh. 6 at Preface].) The Policy also provides that administrators must consider "pastoral concern[s] for both the alleged victim and the alleged perpetrator when investigating and handling allegations of harassment." (¶3, Exh. 2 [185:21-187:8, Exh. 6 at p.24].) Students and employees who are found to engage in harassment are subject to possible disciplinary action. (¶2, Exh. 1 [319:24-320:5]; ¶3, Exh. 2 [184:18-185:20, 185:21-187:8, Exhs. 3, 6 at pp.10, 23, 8 at p.54].)

**B.    Plaintiff Was a Union Member Throughout Her Employment.**

Plaintiff began her employment at Serra in or around August 2006. (¶2, Exh. 1 [34:7-10, 121:3-8].) She was a member of the San Francisco Archdiocesan Federation of Teachers, Local 2240 (the "Union").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

(¶2, Exh. 1 [299:21-300:2, 324:25-326:12]; ¶ 20, Exh. 19 [RFA Request No. 2]; ¶21, Exh.20 [RFA Response No. 2].) The CBA prohibits discrimination against employees on the basis of protected categories such as sex. (¶2, Exh. 1 [324:23-326:12, Exh. 1033 at p.13].)

The CBA's grievance procedure provides that Union members, like Plaintiff, are to submit, through a Union representative, a written grievance regarding any disputes as to the CBA's application, meaning or interpretation to the Principal no later than 30 school days after the member has knowledge of the dispute. (¶2, Exh.1 [324:23-326:12, Exh. 1033 at pp.11-12].) When there are less than 30 school days remaining, then the grievance must be submitted within 30 calendar days from the dispute. (*Id*). Failure to comply with the time limits results in waiver of the grievance. (*Id*). Plaintiff did not utilize the grievance procedure as to any claims she has asserted. (¶21, Exh. 20 [RFA Response No. 5], ¶2, Exh. 1 [330:23-331:8].)

## C. **Plaintiff Was An Active Leader in Serra's Campus Ministry Department.**

At Serra's request, Plaintiff served on its Campus Ministry Review Board, a panel that revamped, redefined and revitalized the Campus Ministry program. (¶1, Exh. 1 [124:1-19, 125:3-22, 146:9-25, 149:23-150:3, 391:3-11, 392:24-393:3, Exh. 1046].) Plaintiff also helped develop and direct the Big Brother and Freshman formation programs.[3] (¶2, Exh. 1 [346:25-348:10, 391:3-11, 393:16-18, Exhs. 1040, 1046].) She also referred to herself as a "campus minister." (¶2, Exh. 1 [346:25-348:10, Exh. 1040].)

Plaintiff introduced the immersion program to Serra, assisted in developing it, and served as a chaperone on four immersion trips. (¶2, Exh. 1 [130:23-134:5, 137:7-138:3, 149:3-22, 391:3-11, 393:22-394:21, Exhs. 1006, 1046].) In immersion, students perform community service and apply Catholic teachings to their experiences through prayer and spiritual discussions. (¶2, Exh. 1 [132:8-14; 135:8-24].) On these trips, Plaintiff tried to accomplish the core values of spirituality, solidarity, justice; and community. (¶2, Exh. 1 [133:7-18; 134:13-135:6; Exh. 1005].)

Plaintiff also served as a Serra Kairos Retreat Director.[4] (¶2, Exh. 1 [130:17-22].) As explained by Plaintiff, "Kairos means 'God's time.' So it is for the kids to have some – it's a silent retreat to explore their

---

[3] "Formation" is a term used to reference the distinctive holistic educational program of a Catholic school in which students are educated in the context of the knowledge and values of the Catholic faith. Serra's formation program, and its various components, is designed to meet this requirement. (¶17, Exh. 16 [¶10].)
[4] Kairos is a Roman Catholic retreat program. (¶17, Exh. 16 [¶11].)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

own personal relationship with God...." (¶2, Exh. 1 [141:23-142:6].) As Kairos Retreat Director, she reported to the Campus Minister and developed the retreat, directed retreat activities, and trained students to be retreat leaders. [5] (¶2, Exh. 1 [140:4-15; 142:9-14, 144:9-21, 148:15-21, 391:3-11, 393:19-21, Exh. 1046].) As part of her duties, Plaintiff helped the adult Kairos participants develop their faith talks, a main retreat component. (¶2, Exh. 1 [140:16-141:22, 349:1-20, 349:23-351:24, 352:3-18, Exhs. 1042, 1043, 1044].) Plaintiff also helped student Kairos participants develop their faith talks. (¶2, Exh. 1 [352:21-353:10, Exh. 1045].) Plaintiff received stipends in addition to her base salary, as well as a free class period, for her Campus Ministry duties. (¶2, Exh. 1 [145:2-146:8, 150:10-151:8].) She was only assigned to teach four academic classes while other teachers typically had to teach five classes. (*Id.*)

**D.   Serra Promptly Engaged in Corrective Action.**

During Plaintiff's employment, Serra took prompt remedial action to address Plaintiff's concerns:

**1.   Serra Immediately Removed Graffiti About Plaintiff.**

On or around February 9 and 14, 2012, Serra maintenance staff found graffiti in a male restroom referencing Plaintiff in a graphic, sexual manner. (¶2, Exh. 1 [210:19-212:19]; ¶18, Exh. 17 [¶¶3-4, Exh. A].) They removed the graffiti as soon as it was discovered. (¶18, Exh. 17 [¶3].) After finding the graffiti, maintenance staff sent a February 15 email to an administrator to report it. (¶4, Exh. 3 [34:2-11]; ¶18, Exh. 17 [¶4, Exh. A].) In response, on February 16, Assistant Principal of Academics, Keith Strange, read an announcement to all students, reminding them that graffiti was vandalism and requesting any information students had about the graffiti. (¶5, Exh. 4 [104:7-20; 105:15-106:3, Exh. 26 at p.4]; ¶6, Exh. 5 [36:9-16]; ¶7, Exh. 6 [104:11-105:12, 106:9-107:7, Exh. 26].) Strange did not state in the announcement that the graffiti referenced Plaintiff so as not to encourage the spread of rumors, and additional graffiti. (¶4, Exh. 3 [45:9-48:1, 52:23-54:22, Exh. 104]; ¶5, Exh. 4 [105:15-106:3, 107:10-22, Ex. 26 at p.4].) Serra administers felt that giving specific detail about the graffiti was not respectful of Plaintiff. (¶7, Exh. 6 [106:23-107:7].) Additionally, administrators instructed maintenance staff to take pictures of other graffiti, if any, found before removing it, hoping they could determine who had written it by actually seeing it. (¶7, Exh. 6

---

[5] During her employment, the Kairos program expanded from one retreat each school year to three retreats each school year. (¶2, Exh. 1 [145:2-14].)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

[108:13-25].) Serra also checked all bathrooms for new graffiti during each class period, and limited use of the restroom. (¶7, Ex. 6 [108:13-109:10].) Serra reminded teachers to use hall passes, which contain time stamps, so that administrators could use time-stamped hall passes to investigate. (¶7, Ex. 6 [108:13-109:10]; ¶4, Ex. 3 [41:12-21].) Serra put up cameras near the restrooms. (¶2, Ex. 1 [215:20-24].) Serra also followed up with Plaintiff multiple times to discuss the graffiti and ensure she was doing okay. (¶2, Ex. 1 [215:21-217:13, Ex. 1013].) Although Serra was unable to find the perpetrator(s), no further graffiti about Plaintiff occurred. (¶2, Ex. 1 [214:12-20, 220:17-221:4]; ¶19, Ex. 18 [¶5].)

### 2. Serra Disciplined Two Students for a Social Media Post about Plaintiff.

In November 2012, a Serra employee informed Plaintiff and administrators that two students had made a sexual comment about Plaintiff on Twitter. (¶2, Ex. 1 [195:14-197:7, 197:23-198:19, 201:22-202:15, Exhs. 1008-1009.]) In response, Serra disciplined the students, including suspension from school for four school days, conduct probation for the remainder of the school year, forfeiture of the right to attend the semi-formal dance, completion of service hours and outside counseling, and requiring the students write apology notes to Plaintiff. (¶2, Ex. 1 [203:13-23, 204:20-206:17, Ex. 1010]; ¶19, Ex. 18 [¶8].) One of the two students also forfeited participating in the first two Serra home basketball games and had 15 school days of activity suspension.[6] (¶2, Ex. 1 [203:16-23]; ¶19, Ex. 18 [¶9].) The other student received 30 school days of activity suspension, and missed the remainder of the football season. (¶19, Ex. 18 [¶9].) The students also had to petition for permission to attend prom and to participate in graduation activities. (*Id.*) Since the Twitter incident, Serra is not aware of any Serra student posting any sexual comments about Plaintiff on any social media website. (¶19, Ex. 18 [¶10].)

### 3. Serra Conducted a Full Investigation Concerning the Upskirt Incident.

#### a. May 16: Serra Began Investigation of an Upskirt Image Rumor about Plaintiff.

On May 16, 2013,[7] Serra administrators learned that a student had shown another student an upskirt

---

[6] Students placed on activity suspension cannot attend or participate in any extracurricular events. (¶19, Ex. 18 [¶9].)

[7] May 16 was an early release day at 1:10 p.m. for students, which preceded a May 17 student holiday and a May 20 religious or papal holiday. (¶19, Ex. 18 [¶¶11, 16].)

LITTLER MENDELSON, P.C.
650 California Floor
20th Floor
San Francisco, CA 94108.2693
415.433.1940

photo allegedly taken of a teacher (████████). (¶4, Exh. 3 [62:25-63:21]; ¶7, Exh. 6 [214:3-215:3, 222:12-17]; ¶19, Exh. 18 [¶11].) Based on this information, Assistant Principal of Student Life, Marybeth Ortiz immediately began investigating. (¶7, Exh. 6 [215:1-216:17].) After learning preliminary information in two student interviews (████ and ████), Ortiz was assisted by other Serra administrators, Dean of Students Robert Ferretti, Keith Strange, and Principal Barry Thornton, in conducting the investigation. (¶7, Exh. 6 [228:17-229:2]; ¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].) As part of that day's investigation, Serra conducted 9 additional in-person student interviews (████, ████, ██████, ██████, ██████, ████, ██████, ██████ and ████). (¶7, Exh. 6 [215:1-223:8, 229:6-230:19, Ex. 30]; ¶5, Exh. 4 [23:2-21]; ¶4, Exh. 3 [70:6-71:23, 72:25-73:10].) When these students were removed from class, their cellphones (if they had one) were immediately taken from them and searched. (¶7, Exh. 6 [233:3-12, 245:8-246:6]; ¶19, Exh. 18 [¶13].) Of the phones searched, Serra kept the phones belonging to 5 students (████, ██, ██████, ██████, and ██████)—one because the student was believed to have taken the ██████ upskirt photo and the other 4 because the students were believed to have forwarded the image. (¶19, Exh. 18 [¶14].) Serra suspended these 5 students that day, pending further disciplinary review. (¶7, Exh. 6 [300:10-16, 323:18-324:8, Exh. 33 at p.2]; ¶19, Exh. 18 [¶14].)

During one of these 9 additional in-person interviews, Serra learned that there might be upskirt images of Plaintiff and a third female teacher, though no such images had been found at that point. (¶7, Exh. 6 [229:6-230:19, Ex. 30]; ¶19, Exh. 18 [¶15].) That same day, Plaintiff was informed by Ortiz and Thornton about this rumor. (¶2, Exh. 1 [254:9-255:6, 255:19-256:3, 256:4-11]; ¶7, Exh. 6 [242:16-243:6].) Despite the early release of students on May 16 and the holidays, administrators continued their investigation that evening and into the next day, interviewing 4 additional students. (¶4, Exh. 3 [96:22-97:4, 99:8-100:12,103:20-105:8, 105:20-106:5, 106:13-23, 108:13-25, Exh. 110]; ¶19, Exh. 18 [¶¶16-17, 20]; ¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].)

### b. May 17: Serra Contacted Police & Continued Investigation.

Very early the morning of May 17, Ferretti contacted the San Mateo Police Department ("SMPD") to report the upskirt incident. (¶7, Exh. 6 [235:18-236:2, 241:24-242:15]; ¶8, Exh. 7 [16:23-17:13; 17:17-18:11, Exh. 99]; ¶4, Exh. 3 [171:10-13].) During a pre-scheduled faculty meeting, which began around 8:15 a.m., Serra President, Lars Lund, and Principal Thornton, informed the faculty about the incident. (¶2, Exh. 1

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

[264:6-17].) Ortiz also assisted Plaintiff in completing a Sexual Misconduct and Harassment Complainant Statement Form ("Statement") that morning. (¶2, Exh. 1 [275:1-277:10, Exh. 1023].)

On the afternoon of May 17, SMPD Officer Brian Curley interviewed Ortiz, Ferretti, Thornton and Strange concerning the upskirt incident. (¶8, Exh. 7 [23:8-13, 23:25-24:21, 26:10-14, 43:14-22, 47:23-25, 49:24-50:2, Ex. 98]; ¶5, Exh. 4 [22:13-21]; ¶4, Exh. 3 [205:18-23].) Serra provided the officer with the 5 student phones that it had confiscated. (¶7, Exh. 6 [310:3-23]; ¶19, Exh. 18 [¶18].) On May 17, Ortiz interviewed 3 students (███, ███ and ███) named in Plaintiff's Statement. (¶7, Exh. 6 [229:6-230:19, 574:17-20, 577:9-10, 578:7-11, Ex. 30]; ¶19, Exh. 18 [¶17].) Two said that they were aware of a video that was supposedly of Plaintiff. (¶7, Exh. 6 [574:17-24, 577:9-14].) One student said he believed the video was taken by a Serra student who had been expelled earlier in the year. (¶7, Exh. 6 [229:6-230:19, 577:9-20, Ex. 30 at p.2]; ¶19, Exh. 18 [¶17]; ¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].) The third (███) said he received a video that was supposedly of Plaintiff, that he deleted it, and did not remember from where he had received it. (¶7, Exh. 6 [307:8-12, 312:17-24, 578:7-20]; ¶19, Exh. 18 [¶17].) Ortiz reviewed ███'s phone and did not find any images that appeared to be taken under anyone's skirt or any evidence that would demonstrate whether he had forwarded any such images to anyone else. (¶7, Exh. 6 [578:7-23]; ¶19, Exh. 18 [¶17].)

**c. May 17-20: Serra Began Executing on a Remedial Action Plan.**

Although the investigation was ongoing, Serra's Crisis Response Team met for several hours on May 17 and 20 to discuss: their plan to have an all student assembly on May 21 to address the upskirting; how to address the issue with students, parents, guardians, faculty, and the Serra community; how to best provide support and pastoral care to the women personally affected by the incident; and how to support female faculty and staff. (¶7, Exh. 6 [296:13-297:9, Ex. 30 at p.3]; ¶19, Exh. 18 [¶19].) On Saturday, May 18, Thornton and Lund sent a letter to parents and guardians to inform them of the incident, that the matter was being investigated, and how Serra had responded thus far. (¶17, Exh. 16 [¶4, Exh. A].)

**d. May 20: Plaintiff Provided More Information about the Rumor.**

On May 20, Plaintiff told Serra that a student (███), spoke to the police and said that he had watched a video on ███ phone, with another student (███), and that ███ claimed the video was

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

taken during a lab in Plaintiff's classroom.[8] (¶2, Exh. 1 [269:3-10, Exh. 1019].) She stated that she believed ███ took the video.[9] (*Id.*) She also said that a student (███) said he heard about images but had not seen any. (*Id.*) ███ allegedly also told Plaintiff that student (███) might have information. (*Id.*) [10]

**e.    May 21:  Serra's Investigation & Remedial Efforts Continued.**

On May 21, Serra held a mandatory all-student and faculty assembly to address the upskirting and implored students to come forward with any information they might have. (¶3, Exh. 2 [251:24-253:19, 255:6-21, Exh. 16]; ¶7, Exh. 6 [264:4-19]; ¶17, Exh. 16 [¶5].) Father Bradley proclaimed the Gospel and gave a sermon on why the conduct violates Catholic teachings. (¶14, Exh. 13 [99:11-102:9]; ¶3, Exh. 2 [252:21-253:2]; ¶17, Exh. 16 [¶5].) Campus Ministry Director, Kyle Lierk, led the group in prayer and asked that all students consider in their hearts what God was telling them at that moment. (¶17, Exh. 16 [¶5].) SMPD Officer, Dave Peruzzaro, discussed how and why such conduct might be criminal, and addressed the consequences of inappropriate text messaging, social media, and internet activity. (¶3, Exh. 2 [253:5-11]; ¶17, Exh. 16 [¶5].) Lund discussed how disappointed he was that this type of behavior had occurred and how he, as a father and a husband, viewed it. (¶3, Exh. 2 [253:3-5]; ¶17, Exh. 16 [¶5].) A student spoke to the group about how such conduct could affect the impacted teachers.  (¶17, Exh. 16 [¶5].) The assembly closed with a student-led prayer and a blessing by Father Bradley. (*Id.*) After the assembly, students went to their classrooms and engaged in classroom discussion and reflection upon the matter. (¶17, Exh. 16 [¶6].) Students were told that if they had any information to report, they could report it to Father Bradley, any school counselor, any Campus Ministry Department member, or any administrator. (*Id.*) That day, Lund and

---

[8] When Serra spoke with ███, Serra learned that he had supposedly seen an upskirt video of Plaintiff at ███ house, shown to him by ███. (¶4, Exh. 3 [179:13-25; ¶7, Exh. 6 [589:7-24].) ███ told Ferretti that he did not see, nor was he in possession of, any such video. (¶4, Exh. 3 [180:1-181:15].) Based on information learned, Serra also believed ███ had more information than he provided in his interview with Serra. (¶7, Exh. 6 [304:24-305:23].)  Therefore, on May 24, Serra suspended ███. (¶7, Exh. 6 [589:25-590:6, 639:25-640:1].)

[9] Both ███ and ███ were already suspended from school pending disciplinary review at the time Plaintiff provided this information to Serra. (¶7, Exh. 6 [323:18-324:8, Exh. 33 at p.2]; ¶19, Exh. 18 [¶14].)

[10] On May 20, Plaintiff also provided to Serra the Twitter screen names of several students. (¶2, Exh. 1 [269:11-25, 271:20-272:5, Exhs. 1020, 1022].)  Per Ortiz's customary practice when a student's social media activity is brought to her attention, she attempted to review these students' Twitter feeds. (*Id.* at ¶7, Exh. 6 [489:3-493:12].)  While Serra did not see any Twitter content about teachers, it addressed unrelated inappropriate social media content with 3 students.  (¶7, Exh. 6 [491:21-493:7, 498:5-501:11, 503:1-504:4]; ¶19, Exh. 18 [¶20].)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S MOTION FOR SUMMARY JUDGMENT     9.     Case No. 3:14-cv-02854-WHO

Thornton sent another letter to parents and guardians providing an update. (¶17, Exh. 16 [¶7, Exh. B].)

On May 21, two SMPD detectives also conducted student interviews at Serra. (¶9, Exh. 8 [21:6-23, 23: 11-14, Exh. 115]; ¶10, Exh. 9 [37:22-39:19].) They met with 8 students (████, ███████, ███████, ████, ███████, ████, ████████, and ████████) and Ferretti sat in on several of these interviews. (¶7, Exh. 6 [298:14-299:2, Ex. 30]; ¶9, Exh. 8 [21:6-23, 31:13-25, 36:22-37:17, 37:22-38:2 Exh. 115]; ¶10, Exh. 9 [8:6-10:1, 41:12-43:25, 50:2-21, 55:9-56:4, 59:19-60:3, Exh. 117]; ¶4, Exh. 3 [96:22-97:4, 99:7-100:12, 125:23-126:17, Exh. 110].) ████████ said he took two upskirt videos of Plaintiff. (¶9, Exh. 8 [21:9-22:6, 44:21-45:4, Exh. 115].) ████████ showed detectives an email from ████████ containing a very short (seconds long) video that was allegedly taken under Plaintiff's skirt. (¶9, Exh. 8 [49:13-19]; ¶ 19 Exh. 18 [¶30].) This was the only upskirt image ever located that was allegedly of Plaintiff. (¶2, Exh. 1 [290:6-9; 290:14-293:9]; ¶ 19, Exh. 18 [¶30].) ████ said he aided ████ in taking the upskirt image of ████. (¶7, Exh. 6 [320:5-14]; ¶10, Exh. 9 [8:6-10:1, 50:2-21, 51:22-52:22, Exh. 117].)

On May 21, Serra also interviewed 5 students (████, ████, ████, ███████, and ████). (¶7, Exh. 6 [297:17-301:1, Exh. 30]; ¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].) None of these students admitted to taking or distributing an image and no such images were found. (¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].) Based on the information learned at that point, ████████ and ████ were placed on suspension on May 21, pending further disciplinary action. (¶7, Exh. 6 [304:4-16, 642:16-24]; ¶19, Exh. 18 [¶22].)

> **f. May 22 to June 6: Serra Continued Remedial Action Through Student Discipline.**

From approximately May 22 to June 6, Serra's Disciplinary Review Board ("DRB") held meetings, with the Board being guided by a special committee tasked with evaluating student conduct in this matter and developing a discipline matrix to be applied. (Exh. 6 [323:18-324:9, Ex. 33]; ¶19, Exh. 18 [¶24].) Each meeting began with prayer. (¶19, Exh. 18 [¶24].) When administrators were considering what actions to take with respect to the students involved in the May 2013 incident, they considered, among other things: the harm done to the victims; the harm done to the community; the moral development of the students; the needs of the community to heal; the voluntary nature of a student's admission of guilt; and the role of forgiveness in the Gospel's context. (¶7, Exh. 6 [323:18-324:8, Exh. 33]; ¶19, Exh. 18 [¶24].)

LITTLER MENDELSON, P.C.
650 California St.
20th Floor
San Francisco, CA 94108.2693
415.433.1940

After discipline recommendations were made, Thornton, who makes final decisions approving any discipline, also prayed on the matter. (¶7, Exh. 6 [327:18-24]; ¶17, Exh. 16 [¶8].) In his prayers, Thornton asked the Lord for the strength and wisdom to make a decision that was consistent with the Catholic Church's tenets and conducive to carrying out Catholic values. (¶17, Exh. 16 [¶8].) Ultimately, Serra decided to expel ████, ███, ██████,[11] and ██████, who Serra believed to have taken or aided in taking an upskirt image. (¶7, Exh. 6 [323:18-324:9, Ex. 33]; ¶19, Exh. 18 [¶25].) Because Serra had also determined that ██████,[12] ████, and ██████ distributed an upskirt image teacher, they were disciplined as follows:

> (1) suspended for the remainder of the school year;
> (2) placed on conduct probation with review at the end of each grading period;
> (3) placed on activity suspension for Summer 2013 through 9/15/2013 and prohibited from participating in game and/or performance day activities until 10/15/2013;
> (4) required to complete an additional 30 hours of service by 8/1/2013 at a community outreach agency on a pre-approved list that Campus Ministry had prepared;
> (5) required to submit a statement reflecting on their service experience;
> (6) required to complete the requisite 20 service hours for graduation in consultation with Campus Ministry and/or the counseling department;
> (7) required to attend a reconciliation retreat; and
> (8) required to petition for permission in their senior year (the 2013-2014 school year) to attend any Graduation, Senior Holidays or Senior Prom activities.

(¶7, Exh. 6 [323:18-324:9, Ex. 33]; ¶19, Exh. 18 [¶26].) Serra also determined that ██████ had re-sent the ██████ photo to ███. (¶7, Exh. 6 [634:1-21]; ¶19, Exh. 18 [¶27].) However, because ██████ had voluntarily come forward to disclose this information, ██████ was disciplined through items 2, 4, 5, 6 and 7 above, was placed on activity suspension until 6/14/2013, and was suspended for the first game of the football season. (¶7, Exh. 6 [634:1-635:11]; ¶19, Exh. 18 [¶27].)

After Serra made its expulsion decisions, Lund and Thornton sent another letter to parents and guardians stating that Serra had expelled 5 students. (¶17, Exh. 16 [¶9, Exh. C].) The letter advised that a licensed marriage and family therapist would be on campus for students who wished to discuss the matter in confidence with a therapist who was not affiliated with Serra. (*Id.*) The letter further advised that Serra would take steps in the fall to assist the community to better deal with moral development and appropriate

---

[11] In the week of May 21, ██████ told Ferretti that he took upskirt images of ██████ (¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9].)

[12] ██████ was later asked to leave Serra after he failed to complete all of the disciplinary requirements to return to school. (¶19, Exh. 18 [¶27].)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

11

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 20 of 34

technology use issues. (*Id.*) At no time has Serra ever discovered or received a report that any upskirt image—whether of Plaintiff or any other Serra faculty or staff member—was or is circulating on the internet or any social media website. (¶19, Exh. 18 [¶31].) Since May 2013, no upskirt incidents or images of any Serra faculty or staff member have been reported to or discovered by Serra. (*Id.*)

### 4. Serra Attempted to Find an Anonymous Meme's Creator.

On August 21, 2013, Plaintiff reported to Serra that she found an anonymous meme posting about her. (¶2, Exh. 1 [223:20-224:14, Exhs. 1014, 1015]; ¶6, Exh. 5. [7:25-8:8, 11:17-13:3].) A member of Serra's IT staff investigated the meme by requesting information from the website and reviewing thousands of meme postings to find more information about the meme's creator. (¶6, Exh. 5 [25:5-15; 26:7-25]; ¶7, Exh. 6 [21:6-22:25].) The meme was taken down. (¶2, Exh. 1 [222:22-25; 226:20-227:15, Exh. 1017].) Neither Plaintiff nor Serra was able to find out who created the meme. (¶2, Exh. 1 [223:1-19; 226:20-227:15, Exh. 1017]; ¶6, Exh. 5 [26:7-12].)

### 5. Serra's Remedial Action in School Year 2013-2014.

After learning of the May 2013 incident, Serra has reinforced its previous efforts to encourage gender respect and to discourage harassment, as well as to discourage the inappropriate use of technology. (¶11, Exh. 10 [15:6-16:16; 18:6-19:1; 20:9-24, 21:22-22:18]; ¶6, Exh. 5 [128:11-17, 131:13-21, 146:18-147:8]; ¶3, Exh. 2 [137:4-11, 139:22-140:20, 147:20-148:16].) These steps have been taken with respect to both faculty and students. (¶3, Exh. 2 [256:13-24, 258:9-260:4, Exh. 17].) Serra held a series of formation presentations that students and faculty members were required to attend. (¶7, Exh. 6 [345:10-349:25]; ¶17, Exh. 16 [¶10]; ¶19, Exh. 18 [¶34].) Woven into these formation events was the message that harassment is prohibited and unacceptable at Serra. (¶3, Exh. 2 [56:21-57:20]; ¶19, Exh. 18 [¶34].) In order to make the subject more relatable to students and taking into account their age and life experience, examples were used that would pertain to students' everyday lives. (¶19, Exh. 18 [¶34].)

In August 2013, Serra held mandatory all-student formation presentations concerning technology, brotherhood and discipline. (¶3, Exh. 2 [284:11-20, 287:24-289:13, Exh. 19]; ¶4, Exh. 3 [199:13-25, Exh. 18]; ¶14, Exh. 13 [112:23-114:2].) The events that were investigated in May 2013 were specifically discussed as being inappropriate and unacceptable. (¶3, Exh. 2 [284:11-20, 287:24-289:13, Exh. 19].) On or around September 17, 2013, Serra held a mandatory parent formation meeting to discuss social media and

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 21 of 34

held a follow-up mandatory social media meeting on or around September 18 with students about online identity and social media responsibility. (¶19, Exh. 18 [¶35].) Before these meetings, faculty and staff received guidelines on these formation topics, as well as discussion points to discuss with students. (¶19, Exh. 18 [¶35].) The discussion points included proper technology use and the harmful effects of inappropriately using technology. (¶19, Exh. 18 [¶35].) On or around October 22, 2013, Serra held a mandatory all-student formation presentation on Sexism and Gender Respect. (¶19, Exh. 18 [¶36].) It was recorded so that parents could view the presentation and discuss the issue with their sons. (¶19, Exh. 18 [¶36].) In the fall semester of the 2013-2014 school year, parents were also encouraged to take parent formation webinars on topics such as "Gender, Sexuality and Diversity." (¶19, Exh. 18 [¶37].) In the spring semester of the 2013-2014 school year, faculty and staff received a two-hour online anti-harassment training. (¶6, Exh. 5 [147:2-8]; ¶3, Exh. 2 [203:5-204:2, 310:4-312:16, Exh. 22].)

In Spring 2014, Serra also held the disciplinary religious reconciliation retreat over two days. (¶7, Exh. 6 [204:21-205:4, 207:22-208:1].) The retreat was led by Ortiz and a Campus Ministry member with the support of Father Bradley and input from Lierk (before he left employment as Serra's Campus Minister). (¶7, Exh. 6 [205:9-11, 207:18-21, 208:25-209:6]; ¶12, Exh. 11 [158:23-160:7]; ¶12, Exh. 12. [8:25-9:9].) The retreat held at Serra's chapel was attended by ███, ███, ███ and ███. (¶7, Exh. 6 [207:6-17].) Forgiveness is an important aspect of the Catholic Sacrament of Reconciliation. (¶19, Exh. 18 [¶38].) Thus, during the retreat, the students watched a TED Talk by Jackson Katz, "Violence Against Women – It's a Men's Issue," and a movie, "The Mission." (¶7, Exh. 6 [208:4-13]; ¶19, Exh. 18 [¶38].) Both address proper and respectful treatment of others. (¶19, Exh. 18 [¶38].) "The Mission" also addresses themes of faith and forgiveness. (¶19, Exh. 18 [¶38].) The students discussed why their conduct was inappropriate. (¶18, Exh. 17 [¶38].) They each wrote and read an apology letter to ███. (¶7, Exh. 6 [208:4-18].) Moreover, each boy received the Catholic Sacrament of Reconciliation, which per Catholic teachings allows the penitent to obtain forgiveness for his sins and to reconcile with God and the Catholic Church. (¶7, Exh. 6 [205:18-206:7, 208:4-20]; ¶19, Exh. 18 [¶38].)

Serra also continued to have students complete an online training program that focuses on various topics on responsible behavior, including avoiding situations that would fall within the category of harassment. (¶3, Exh. 2 [131:13-133:11, 204:17-210:3, Exh. 10]; ¶15, Exh. 14 [21:15-24, 26:20-23]; ¶7,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Exh. 6 [175:6-15].)

**E.**     **Plaintiff Took a Leave of Absence from May 17, 2013 through July 14, 2015.**

On May 17, Plaintiff went on a leave of absence. (¶2, Exh. 1 [331:9-23].) While on leave, Plaintiff received full workers' compensation benefits. (¶2, Exh. 1 [368:8-10, 369:4-371:21, 372:8-10].) She remained on a leave until she resigned from her employment on July 31, 2014. (¶2, Exh. 1 [121:9-17, 151:9-16, 331:24-332:3, 335:3-14, 337:3-8, Exh. 1036].) During this leave, Plaintiff never taught another Serra class or attended any school event. (¶2, Exh. 1 [337:3-339:7].)

**F.**     **Plaintiff Initiated an EEOC Charge and Filed Her Lawsuit.**

On April 21, 2014, Plaintiff signed a Charge of Discrimination against the Corporation Sole and Serra alleging that she was subjected to a hostile work environment due to the May 2013 upskirt incident. (¶2, Exh. 1 [18:17-21:5, 21:6-22:14; Exhs. 1001, 1002].) The Charge was received by the EEOC on April 22, 2014. (*Id.*; Def's Request for Judicial Notice ["RJN"] ¶ 1, Exh. A.) On May 15, 2014, Plaintiff initiated this lawsuit. (ECF No. 1.)

**III.**     **ARGUMENT**

**A.**     **Legal Standard For Summary Judgment.**

Summary judgment is appropriate when the pleadings, discovery, and exhibits show there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has shown no genuine issue of material fact exists, the non-moving party must go beyond the pleadings and offer sufficient proof to establish her burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A minor factual dispute will not preclude summary judgment if there is no "genuine" issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**B.**     **Plaintiff's FEHA Claims Fail Because the FEHA Does Not Apply to Defendant.**

Plaintiff's first and third causes of action against Defendant are premised on California Government Code sections 12940(j) and (k). Section 12940(j) prohibits an "employer" from harassing an employee based on a protected category, such as sex. Section 12940(k) prohibits an "employer" from failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring. Nonprofit religious organizations are expressly excluded from FEHA's definition of "employer." Cal. Gov't Code § 12926(d) ("'Employer' does not include a religious association or corporation not organized for private profit");

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

§ 12940(j)(4)(B) ("for purposes of this subdivision, 'employer' does not include a religious association or corporation not organized for private profit[.]") FEHA does not apply to Defendant because Serra is not an independent legal entity. (¶16, Exh. 15 [¶4].) Rather, Serra is a part of the Corporation Sole, which is a nonprofit religious corporation. (¶16, Exh. 15 [¶4, Exh. A].) As such, Plaintiff's FEHA claims must fail.

## C. Plaintiff's Title VII Claims Are Barred by the Exhaustion of Remedies Doctrine and the Statute of Limitations.

Title VII has two potential time limitations within which an administrative charge must be filed with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). A Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination. *Id.* The limitations period is extended to 300 days if the plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice." The 180-day time limit applies where the State or local agency lacks subject matter jurisdiction over a charge. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1082 (9th Cir. 2006).

Here, Plaintiff's Title VII claims fail because she failed to file her EEOC Charge within 180 days of the incidents that form the basis of her claims. The EEOC received Plaintiff's charge on April 22, 2014. (¶2, Exh. 1 [21:6-22:14; Exh. 1002]; Def's RJN, ¶ 1, Exh. A.) All of Plaintiff's allegations supporting her Title VII claims preceded October 24, 2013, which is 180 days prior to April 22, 2014. Specifically, Plaintiff alleges that Serra failed to take prompt corrective action after the February 2012 graffiti incident, the November 2012 Twitter incident, the May 2013 upskirt incident and the August 2013 meme incident.[13] Any claims based on a pre-October 24, 2013 incident are time-barred and cannot form the basis of her Title VII claims because they arose more than 180 days before the Charge's filing.

Any contention that the 300-day limitation applies to Plaintiff's claims is incorrect because the California Department of Fair Employment and Housing has no jurisdiction over non-profit religious organizations, such as the Corporation Sole. *Krause v. Sonora Community Hosp.*, 1997 U.S. Dist. LEXIS

---

[13] Plaintiff was aware of each of these incidents at or near the same time they became known to Defendant, but only alleges the May 2013 incident in her EEOC Charge. (¶2, Exh. 1 [18:17-21:5, 21:6-22:14, 195:10-196:23, 210:24-211:15, 221:17-19, 253:15-254:18, Exhs. 1001, 1002]; Def's RJN, ¶1, Exh. A.) As such, claims based on these unpled incidents cannot be maintained because Plaintiff did not exhaust her administrative remedies as to these incidents. *United Air Lines v. Evans*, 431 U.S. 553, 554-55 (1977); *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1617 (1995).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1  929, *4-9 (E.D. Cal. Jan. 23, 1997); 29 C.F.R. § 1601.13(a)(2); Cal. Gov't Code § 12926(d); ECF No. 36.[14]

2      **D.**    <u>**Plaintiff's Hostile Work Environment Claims Fail as a Matter of Law Because Serra**</u>

3            <u>**Took Prompt Corrective Action.**</u>

4          Plaintiff's hostile work environment claims fail because Defendant's responses to the conduct

5  reported were prompt and reasonably likely to stop harassment. Under Title VII, establishing the existence

6  of actionable "hostile environment" harassment requires proof that harassment was sufficiently "severe or

7  pervasive" to alter the work environment based on sex. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993);

8  *Brooks v. City of Mateo*, 229 F.3d 917, 923-24 (9th Cir. 2000). The "objectionable environment must be

9  both objectively and subjectively offensive" such that a reasonable person would find it hostile or abusive

10  and the victim perceived it to to be. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). When

11  evaluating the objective hostility of a work environment, the court must consider all of the circumstances,

12  including the social context in which particular behavior occurs, the "frequency of discriminatory conduct;

13  its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

14  unreasonably interferes with an employee's work performance." *Oncale v. Sundowner Offshore Serv.*, 523

15  U.S. 75, 81-82 (1998); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); *Lyle v. Warner*

16  *Bros. Television Prod.*, 38 Cal. 4th 264, 283 (2006); *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 620 (6th

17  Cir. 1986), cert. denied, 107 S. Ct. 1983 (1987). The harassment about which Plaintiff complains consists of

18  discrete acts—2 graffiti, 1 Twitter, 1 seconds long video Plaintiff claims is her, and 1 meme—each of which

19  never occurred again after Serra discovered, investigated and took action. (¶19, Exh. 18 [¶¶5, 10, 31, 33].)

20          An employer is only liable for third parties' harassing behavior "where the employer either ratifies

21  or acquiesces in the harassment by not taking immediate and/or corrective actions." *Folkerson v. Circus*

22  *Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997); 29 C.F.R. § 1604.11(e). Third party conduct creates

23  liability only "when [the employer] knew or should have known of the conduct." *Folkerson*, 107 F.3d at

24  756. An employer is not liable for hostile environment harassment if it promptly investigates a complaint

---

26  [14] Even if the 300-day limit applied (which it does not), the only incident that fell within 300-day period was

27  the August 2013 meme. Defendant is still entitled to summary judgment as to Plaintiff's sexual harassment

28  and failure to prevent claims as this August 2013 incident is neither severe nor pervasive and Defendant
adequately investigated this incident, as described below. *See* Section D.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

when made and then, if warranted, "take[s] steps reasonably likely to stop the harassment." *Saxton v. AT&T*, 10 F.3d 526, 536 (7th Cir. 1993). It is undisputed that Serra investigated and took action as soon as it became aware of any offensive conduct. Moreover, it is undisputed that no such further conduct occurred thereafter.

In *Summa v. Hofstra University*, the plaintiff, a football team manager, claimed she was subjected to inappropriate behavior by football players. 708 F.3d 115 (2d Cir. 2013). Some players made sexual comments about her and created a Facebook page insulting both her and her boyfriend. *Id.* at 120. After she reported this incident to the coach, the players were ordered to take down the postings, which they did. *Id.* While riding on a bus from a game and watching a movie containing sex scenes, one player told the plaintiff, "This is what you white women want, our black dicks. That shit will make you crazy." *Id.* at 121. She reported it to a coach. He stopped the movie, told the team to quiet down and stayed near the plaintiff for the rest of the ride. *Id.* The player who made the comment was ejected from the football team. *Id.* The plaintiff filed a complaint with the school. *Id.* Approximately a month later, an investigator concluded that the bus incident offered an opportunity to educate staff about the school's harassment policy and the school gave a training eight months later. *Id.* Later, the plaintiff filed suit, alleging hostile work environment. *Id.* at 123. In affirming the trial court's grant of summary judgment to the school, the Court of Appeal concluded the school took prompt corrective action. *Id.* at 125. "The fact that [the coach] took action at once – completed within just days in all cases – speaks to the appropriateness of the University's response in this case." *Id.* The court also found the training provided was a reasonably appropriate action taken. *Id.*

Like Hofstra, Serra took prompt corrective action in response to each incident known to Serra about which Plaintiff complains. Serra interviewed more than 40 students in response to the upskirt incident. (¶22, Exh. 21 [Second Supplemental Interrogatory Responses, No. 9]; ¶19, Exh. 18 [¶¶12, 16, 17, 21].) The students who Serra knew to have made the 2012 Twitter comments and distributed or aided in the upskirt image taking were disciplined. (¶2, Exh. 1 [203:13-23, 204:20-206:17, Exh. 1010]; ¶19, Exh. 18 [¶¶8, 9].) Further, Serra took appropriate steps to investigate the anonymous graffiti by removing the graffiti, making an announcement to students and monitoring restrooms for further graffiti. (¶5, Exh. 4 [105:15-106:3, Ex. 26 at p.4]; ¶6, Exh. 5 [36:9-16]; ¶7, Exh. 6 [104:11-105:12, 106:9-107:7, 108:13-109:10, Exh. 26].) *Campbell v. Lockheed Martin Energy Sys., Inc.*, 2007 U.S. Dist. LEXIS 57871, *41-48 (E.D. Tenn. Aug. 7, 2007) (employer reasonably responded to anonymous graffiti by removing it, instructing supervisors to remove

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

further graffiti and announced to employees graffiti would not be tolerated). It also properly investigated the anonymous meme by contacting the website and reviewing other meme postings. *Vance v. Ball State Univ.*, 2008 U.S. Dist. LEXIS 69288, *54-57 (S.D. Ind. Sept. 10, 2008) (school not liable under Title VII with regard to anonymous posts on an electronic billboard as it had no control over what posted).[15] Serra also engaged in proactive efforts to maintain a harassment-free working environment by increasing training on its anti-harassment policy and reinforcing its policy on respect for others, such as the May 21, 2013 assembly, the Fall 2013 formation presentations, the Spring 2014 reconciliation retreat, and online harassment training for faculty and staff. (¶3, Exh. 2 [203:5-204:2, 251:24-253:19, 255:6-21, 284:11-20, 287:24-289:13, 310:4-312:16, Exhs. 16, 19, 22]; ¶6, Exh. 5 [146:18-147:8]; ¶4, Exh. 3 [199:13-25, Exh. 18]; ¶17, Exh. 16; ¶7, Exh. 6 [67:19-68:8, 204:21-205:4, 207:22-208:1; 264:4-19]; ¶15, Exh. 14 [21:15-24, 25:15-26:2, 26:20-23].)

Indeed, since investigating and taking corrective action for each incident, no further inappropriate or harassing conduct like this has occurred. (¶19, Exh. 18 [5, 10, 31, 33].) Accordingly, Plaintiff's hostile work environment claims fail. *See Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 732 (7th Cir. 2009) (school's suspension and counseling of students, who placed Playboy magazines on teacher's desk and displayed a picture of student's buttocks in the classroom, was reasonable; while teacher disagreed with discipline, disagreement did not mean the school was unreasonable or indifferent).[16]

**E.    Plaintiff's Failure to Prevent Harassment Claims Cannot Survive.**

**1.    No Actionable Harassment by Defendant Occurred.**

A failure to prevent harassment claim cannot exist without an actionable harassment claim. *See Trujillo v. North Co. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998); *Dezham v. Macy's West Stores, Inc.*, 2015 U.S. Dist. LEXIS 73, *34-35 (C.D. Cal. Jan. 2, 2015); *Cozzi v. County of Marin*, 2010 U.S. Dist. LEXIS 37781, *39 (N.D. Cal. Apr. 16, 2010); *Tackett v. County of Imperial*, 2006 U.S. Dist. LEXIS 83507. *41-42 (S.D. Cal. Nov. 14, 2006).  As discussed herein, and even assuming Defendant is not exempt from Title VII or FEHA, Plaintiff cannot establish a sexual harassment claim and so cannot establish a failure to

---

[15] Notably, neither the graffiti nor meme were ever found to have been created by any Serra student or employee.  (¶2, Exh. 1 [214:12-20, 220:23-221:1]; ¶6, Exh. 5 [26:7-12]; ¶19, Exh. 18 [¶¶5, 33 ].)

[16] While Plaintiff may disagree with Defendant's actions, her disagreement with its post May 17, 2013 actions are not based on personal knowledge of those actions. (¶2, Exh. 1 [337:3-339:6].)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S MOTION FOR SUMMARY JUDGMENT

18

Case No. 3:14-cv-02854-WHO

prevent harassment claim.

## 2. Defendant Took Appropriate Steps to Correct and Prevent Harassment.

Plaintiff's failure to prevent harassment claims cannot survive summary judgment because Plaintiff cannot show that Defendant failed to establish anti-harassment preventative measures or fully investigate the inappropriate actions reasonably known to Serra. Cal. Gov't Code § 12940(k); *Trujillo*, 63 Cal. App. 4th at 286. An employer's efforts to prevent and correct harassment are not evaluated by "whether any additional steps or measures would have been reasonable if employed, but [by] whether the employer's actions as a whole establish a reasonable mechanism for prevention and correction." *Holly D. v. Cal. Institute of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2002) (Title VII).

The students involved in upskirting had no history of this type of behavior. (¶19, Exh. 18 [¶29]; *see also* ¶2, Exh. 1 [353:11-364:10; 367:15-368:7].) As such, Defendant was not reasonably on notice that they would engage in such behavior. *Cf. Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1053-54 (1996). Nevertheless, both before and after, Defendant took preventative measures by implementing and distributing a policy against unlawful harassment and by conducting both staff and student training on the issue, including the May 21, 2013 assembly, the Fall 2013 formation presentations, the Spring 2014 reconciliation retreat, and the online harassment training. (¶3, Exh. 2 [203:5-204:2, 310:4-312:16, 251:24-253:19, 255:6-21, 284:11-20, 287:24-289:13, Exhs. 16, 19, 22]; ¶6, Exh. 5 [146:18-147:8]; ¶4, Exh. 3 [199:13-25, Exh. 18]; ¶17, Exh. 16 [¶7]; ¶7, Exh. 6 [67:19-68:8, 204:21-205:4, 207:22-208:1; 264:4-19]; ¶15, Exh. 14 [21:15-24, 25:15-26:2, 26:20-23].) Indeed, since investigating and taking corrective action for the incidents, no further inappropriate or harassing conduct like this has occurred. (¶19, Exh. 18 [¶¶5, 10, 31, 33].)

## F. Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claims Fail.

Plaintiff's emotional distress claims fail for multiple reasons. First, emotional distress claims cannot be premised on normal workplace practices. *See Charles J. Vacanti, M.D. Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 821 (2001) (reasonable attempts to investigate are a normal part of the employment relationship and "cannot give rise to court action against the employer"). Here, Plaintiff alleges that students engaged in sexually harassing conduct toward her, but does not claim Defendant engaged in the harassment. (First Amended Complaint, ¶¶ 9, 10, 12, 19 [ECF No. 39].) As such, her alleged emotional distress was either caused by students, who engaged in the objectionable conduct, or by Defendant, which investigated

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

and addressed the conduct. Plaintiff is not suing students for emotional distress; she is suing Defendant. Therefore, the focus of any emotional distress inquiry must be on Defendant's investigation and remedial steps, not the harassing conduct. Given that, Plaintiff's emotional distress claims are improper and must fail. *See Charles J. Vacanti*, 24 Cal.4th at 821; *Miniace v. Pacific Mar. Ass'n*, 424 F. Supp. 2d 1168, 1182-83 (N.D. Cal. 2006) (emotional distress claims preempted by the WCA because plaintiff's complaints about employer's "biased investigation" was intertwined with workplace practice).

Second, Plaintiff cannot in any event make a *prima facie* case with regard to her intentional infliction of emotional distress ("IIED") claim. For IIED, Plaintiff must prove, among other elements, outrageous conduct by Defendant. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 696 (9th Cir. 1998); *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal. 3d 148, 155, n.7 (1987). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). Summary judgment is proper if a claim cannot "reasonably be regarded as so extreme and outrageous as to permit recovery." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991). Given that investigations are "normal" workplace actions, Plaintiff cannot make the requisite showing of "outrageous" conduct. *Hughes*, 46 Cal.4th at 1050-51; *Janken v. GM Hughes*, 46 Cal.App.4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of [IIED], even if improper motivation is alleged"); *Johnson v. County of Yolo*, 2013 U.S. Dist. LEXIS 24955, *25-28 (E.D. Cal. Feb. 22, 2013). Moreover, Plaintiff cannot dispute that Defendant investigated the inappropriate conduct at issue, nor can she dispute that it took remedial action against students. *Ortiz v. Pacific*, 973 F.Supp.2d 1162, 1186 (E.D. Cal. 2013) (NIED and IIED claims fail because employer conducted reasonable investigation of alleged wrongdoing).

Similarly, Plaintiff also cannot demonstrate negligent infliction of emotional distress ("NIED"). To prevail on NIED, Defendant must have owed a duty of care to Plaintiff and breached that duty. *Cramer v. Consolidated Freightways, Inc.*, 209 F.3d 1122, 1133 (9th Cir. 2000); *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992). Negligence depends on the "foreseeability of the risk and a weighing of policy considerations…." *Burgess*, 2 Cal.4th at 1072. As discussed above, Defendant could not have reasonably foreseen risk to Plaintiff, as these students did not have a history of this type of conduct. *Cf. Doe v. Capital Cities*, 50 Cal.App.4th at 1053-54. Moreover, Plaintiff cannot sustain any of her harassment claims. *Ortiz*,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

973 F.Supp.2d at 1186. As such, she cannot show a breach of duty and cannot demonstrate negligence.

Finally, the WCA also bars Plaintiff's emotional distress claims. California Labor Code section 3600(a) provides that "subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.'" *See Fermin v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994). When an employee receives workers' compensation benefits, "the right to recover such compensation is...the sole and exclusive remedy of the employee or his or her dependents against the employer...." Cal. Labor Code § 3602. Plaintiff received full workers' compensation benefits stemming from the May 2013 incident. Serra's investigation and actions surrounding Plaintiff's harassment claims are personnel management activities, which are "a normal part of the employment relationship," and therefore subject to the WCA's exclusive remedy provisions. *Cole*, 43 Cal. 3d at 159-60 (awareness of danger is not basis for damages liability and thus "reckless disregard of the probability of injury" cannot overcome the WCA's exclusive remedy provisions); *Saba v. Unisys Corp.*, 2015 U.S. Dist. LEXIS 93452, *20-24 (N.D. Cal. July 17, 2015) (IIED claim preempted by the WCA). As such, these claims also fail.

### G. Deciding Plaintiff's Claims Infringes on Defendant's First Amendment Rights.

Evaluating Defendant's investigation and remedial action infringes on Defendant's rights under the Establishment and Free Exercise Clauses of the First Amendment, which "permit[s] hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters." U.S. Const. Amend. I; *Serbian Eastern Orthodox Diocese for United States & Canada v. Milivojevich,* 426 U.S. 696, 710-711 (1976); *Hosanna-Tabor*, 132 S. Ct. at 705-06. The Free Exercise Clause protects the power of religious organizations to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. *Werft v. Desert Southwest Annual Conf.*, 377 F.3d 1099, 1102 (9th Cir. 2004). The church autonomy doctrine under the First Amendment prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116-17 (1952); *Watson v. Jones*, 80 U.S. 679, 729 (1872); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 655-59 (10th Cir. 2002); *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1304 (11th Cir. 2000); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 460-64

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

(D.C. Cir. 1996).

In *Elvig v. Ackles*, 123 Wn. App. 491 (2004), the plaintiff worked at a church and alleged that the church's senior minister sexually harassed her. *Id.* at 493. In response, the church conducted an investigation governed by its Book of Order, which includes member discipline and conflict resolution processes, and concluded charges would not be filed against the senior minister. *Id.* The church's decision was affirmed by its adjudicatory body. *Id.* The plaintiff filed a civil action in federal court. The district court granted the Church's motion to dismiss, holding that the claims would improperly entangle the court with the church's ecclesiastical decision-making process. The Ninth Circuit reversed and remanded, holding, in part, that the plaintiff's sexual harassment claim could proceed. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 964 (9th Cir. 2004). In reaching its decision, the Ninth Circuit focused on the case's procedural stage, *e.g.*, motion to dismiss, and that certain information cannot be considered at such a procedural stage. *Id.* at 964.

The *Elvig* plaintiff also filed a state case, suing the senior minister for sexual harassment and other related claims, and suing various other entities. 123 Wn. App. at 495. The defendants filed a motion to dismiss, which was reviewed as a motion for summary judgment because the defendants filed a supporting declaration. *Id.* at 496-96. The Washington Court of Appeals affirmed the trial court's order dismissing the plaintiff's claims, on the grounds that the court could not adjudicate the plaintiff's claims without "second-guessing church doctrine and its interpretation." *Id.* at 529. The Court of Appeal further provided:

> What distinguishes our case from the federal case is the procedural posture in which we and they reviewed the case. The federal court was presented with an appeal from a motion for judgment on the pleadings, while we are reviewing a motion for summary judgment. Thus, unlike the Ninth Circuit, we are able to consider the substantive evidence presented--particularly the evidence pertaining to the church's dispute resolution process as mandated by its *Book of Order*.

*Id.* at 500.

Here, the procedural posture is the same as that in the *Elvig* state case – this Court can, and should, consider the substantive evidence showing that Serra's actions in response to the May 2013 incidents were deeply influenced by Catholic doctrine. Like *Elvig*, a critical issue in this action is the reasonableness of Defendant's remedial efforts, which includes every step it took in the investigation, disciplinary, and corrective process. However, Serra's response to the incidents about which Plaintiff complains were intrinsically intertwined with Serra's Catholic tenets and ecclesiastical decision-making. Just like the church

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

in *Elvig*, governed by its Book of Order, Serra is must follow its philosophy and mission statements and is governed by policies that are entrenched with Catholic values, as well as the Gospel. (¶3, Exh. 2 [290:22-291:17].) As an express condition of enrollment, students must behave in a manner that is consistent with the school's Catholic principles. (¶2, Exh. 1 [321:11-21, Exh. 1032 at pp. 4].) These religious values and Serra's emphasis on faith are highlighted in its policies against sexual harassment. Serra's policies emphasize that it is the Church's "duty as God's family, to respect all those whom we encounter, both in our private lives and in the ministry, school, and workplace settings" and stresses that it "is essential that the Church take a leadership role in condemning such behavior and help those involved in providing ministry, and those who are the recipients of that ministry, to better understand and respond to these problems when they arise."

In enforcing these harassment policies, administrators are called upon to consider "pastoral concern[s] for both the alleged victim and the alleged perpetrator when investigating and handling allegations of harassment." (¶3, Exh. 2 [185:21-187:8, Exh. 6 at p. 24].) Like the Book of Order in *Elvig*, which stressed conciliation and mediation, Serra's policies emphasize pastoral concern, and are intrinsically tied to Serra's Catholic tenets and ecclesiastical decision-making. Serra's investigation into the May 2013 incident was motivated by a sense of Christian justice. (¶3, Exh. 2 [292:7-13].) When administrators were considering what actions to take with respect to the students involved in the May 2013 incident, they considered, among other things: the harm done to the victims; the harm done to the community; the moral development of the students; the needs of the community to heal; the voluntary nature of a student's admission of guilt; and the role of forgiveness in the context of the Gospel. (¶7, Exh. 6 [323:18-324:8, Exh. 33]; ¶19, Exh. 18 [¶24].) The DRB prayed before meetings. (¶19, Exh. 18 [¶24].) In considering the DRB's recommendations, Thornton sought divine guidance through prayer before finalizing disciplinary actions. (¶7, Exh. 6 [327:18-24]; ¶17, Exh. 16 [¶8].) Further, a key theme integrated into the Spring 2014 reconciliation retreat and the 2013-2014 school year religious formation programs was the Catholic Sacrament of Reconciliation. (¶7, Exh. 6 [205:18-206:7, 208:4-20]; ¶19, Exh. 18 [¶38].) Therefore, any review by a court as to the reasonableness of Serra's actions would entail a review of the reasonableness of Catholic principles that were followed in responding to Plaintiff's complaints.

**H.    Plaintiff's Title VII and FEHA Claims Fail Because of the Ministerial Exception.**

The ministerial exception is a non-statutory constitutionally compelled exception to federal and state

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 32 of 34

civil rights legislation. *Alcazar v. Corporation of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1290 (9th Cir. 2010). This doctrine holds that the U.S. Constitution's Establishment and Free Exercise Clauses preclude civil courts from inquiring into ecclesiastical matters. *Hosanna-Tabor*, 132 S. Ct. at 706. The Ninth Circuit has held that if a person (1) is employed by a religious institution, (2) was chosen for the position based largely on religious criteria, and (3) performs some religious duties and responsibilities, that person is a "minister" for purposes of the ministerial exception. *See Alcazar*, 627 F.3d at 1291-92.

In *Hosanna-Tabor*, an employment disability discrimination case, the plaintiff taught a religion class (in addition to secular subjects), led her students in prayer and devotional exercises, and took her students to a weekly school-wide chapel service, which she led herself about twice a year. 132 S. Ct. at 700. The Supreme Court held that the plaintiff was a minister within the meaning of the ministerial exception, and therefore the First Amendment required dismissal of the suit against her religious employer. *Id.* at 708. The court noted that the church held the plaintiff out as a minister, with a role distinct from most of its members, and that the plaintiff also held herself out as a minister by accepting the formal call to religious service. *Id.* The court also noted that the plaintiff's job duties reflected a role in conveying the Church's message and carrying out its mission, and that the plaintiff played an important part in transmitting the Lutheran faith. *Id.*

Here, like the *Hosanna-Tabor* teacher, Plaintiff played an important part in transmitting the Catholic faith to Serra students. Plaintiff was an active and integral member of Serra's Campus Ministry Department. (¶2, Exh. 1 [130:17-22].) At Serra's request, Plaintiff served on its Campus Ministry Review Board to revamp, redefine and revitalize the Campus Ministry program. (¶2, Exh. 1 [124:1-19, 125:3-23, 146:9-25, 149:23-150:3, 391:3-11, 392:24-393:3, Exh. 1046].) Plaintiff also helped develop and direct the Big Brother program and Freshman formation program. (¶2, Exh. 1 [346:25-348:10, 391:3-11, 393:16-18, Exhs. 1040, 1046.]) Plaintiff introduced the immersion program to Serra, assisted in developing it, and served as a chaperone on four immersion trips. (¶2, Exh. 1 [130:23-131:9; 137:7-138:3; 149:3-22; 391:3-11, 393:22-394:21, Exhs. 1006, 1046].) In the immersion program, students perform community service and apply Catholic teachings to their experiences through prayer and spiritual discussions. (¶2, Exh. 1 [132:8-14; 135:8-24].) On these trips, Plaintiff tried to accomplish the core values of spirituality, solidarity, justice and community. (¶2, Exh. 1 [133:7-18; 134:13-135:6; Exh. 1005].)

As Kairos Retreat Director, she reported to the Campus Minister, developed the retreat, directed

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

retreat activities, and trained student retreat leaders. (¶2, Exh. 1 [140:4-15; 142:9-14, 144:9-21, 148:15-21, 346:25-348:10, 391:3-11, 393:19-21, Exhs. 1040, 1046].) Plaintiff helped adult and student Kairos participants develop faith talks. (¶2, Exh. 1 [140:16-141:22, 349:1-20, 349:23-351:24, 352:3-18, 352:21-353:10, Exhs. 1042-1045].) Just as teaching a religious class and leading her students in prayer and devotional exercises was an important part of the *Hosanna-Tabor* teacher's job duties, Plaintiff's assignment to spend one class period on Campus Ministry duties is important. (¶2, Exh. 1 [145:3-146:8; 150:18-151:8].) Therefore, like the teacher in *Hosanna-Tabor*, Plaintiff is a minister covered by the ministerial exception, and therefore the First Amendment requires dismissal of her claims. 132 S. Ct. at 708.

## I.  **Plaintiff's Claims Are Waived Because She Did Not Timely File a Grievance.**

Plaintiff is precluded from pursuing all of her claims in court because she failed to exhaust the CBA's mandatory contractual grievance procedures. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007); *Charles J. Rounds Co. v. Joint Council of Teamsters*, 4 Cal. 3d 888, 899 (1971); *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1245-46 (2000). Plaintiff was a union member whose employment was governed by the CBA. (¶2, Exh. 1 [299:21-300:2]; ¶21, Exh.20 [RFA Response No. 2].) The CBA prohibits discrimination on the basis of sex. (¶2, Exh. 1 [324:25-326:12, Exh. 1033 at p. 13].) It also provides that claims or disputes pertaining to the CBA must be grieved within the time prescribed in the CBA and that failure to timely assert a grievance results in a waiver of the claim. (¶2, Exh. 1 [324:25-326:12, Exh. 1033 at pp. 11-12].) Plaintiff's claims are covered by the CBA as they stem from her claim of being mistreated on the basis of her sex. *See Oncale*, 523 U.S. at 80-81 (finding sexual harassment is a form of discrimination); *Lyle*, 38 Cal. 4th at 278 (same). However, Plaintiff filed no grievance concerning the claims alleged in this action. (¶21, Exh. 20 [RFA Response No. 5]; ¶2, Exh. 1 [330:23-331:8].) Accordingly, each of Plaintiff's six causes of action is waived.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment, or in the alternative, partial summary judgment.

Dated:  July 29, 2015                                 Respectfully submitted,

*/s/ Michelle R. Barrett*
MICHELLE R. BARRETT
Attorneys for Defendant

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF.'S MOTION FOR SUMMARY JUDGMENT                25                Case No. 3:14-cv-02854-WHO

Case: 25-03021   Doc# 164-12   Filed: 02/19/26   Entered: 02/19/26 18:11:36   Page 34 of 34